JUDGE KAPLAN

# United States District Court
# Southern District of New York

13 CV 1730



JERRY PINKS,
> individually and on behalf of
> others similarly situated,

*Plaintiffs,*

> *-against-*

M & T BANK CORP.,
*Defendant.*

## CLASS ACTION COMPLAINT

Plaintiff, in his own right and on behalf of a multi-state class as herein defined, brings suit for mandatory, statutory damages, computed according to the formula set forth in Uniform Commercial Code (hereinafter the "UCC") § 9-625(c)(2), for the failure of Defendant M&T Bank Corp., or persons acting on its behalf, to send written notice in compliance with UCC §§ 9-613 and 9-614 with respect to what are believed to be more than one hundred instances of repossession and sale of consumer collateral in various states throughout the United States. Because the case involves Defendant's liability for sending form notice documents to the putative class members, the factual and legal issues determinative of liability in this case are common to all class members. Because the statutory damages sought are computed by applying a single statutory formula to the terms of each class member's contract

with Defendant, the determination of damages is a purely ministerial task following the establishment of Defendant's liability.

## Parties

1.    Plaintiff Jerry Pinks (hereinafter "Class Representative Plaintiff Pinks") is a citizen of the State of South Carolina, currently residing at 82 Buck Island Road Apt. 101, Bluffton, South Carolina 29910.

2.    Defendant M&T Bank Corp., the successor by merger with M&T Credit Services, LLC., (collectively "Defendant"), is a corporation organized under the laws of the State of New York with its principal place of business located in the State of New York, which conducts and transacts business at numerous locations throughout the Southern District of New York, including but not limited to 350 Park Avenue, 6th Floor, New York, New York 10022.

3.    Defendant holds itself out to the public on its website as "one of the 20 largest US headquartered commercial bank holding companies, with current assets of $79 billion (as of June 1, 2011) and over 700 branches, free account access at more than 2,000 M&T Bank ATMs and nearly 13,000 employees throughout New York, Maryland, Pennsylvania, Washington, D.C., Virginia, West Virginia, New Jersey, Florida, [and] Delaware." https://www.mtb.com/aboutus/Pages/WhoIsMT.aspx, visited 03/11/2013.

4.    At all times relevant herein Defendant was in the business of providing purchase money retail installment sales loans to consumers residing in various

states and/or was the holder by way of assignment of purchase money security agreements between other entities and consumers residing in numerous states, thereby becoming the secured party to numerous purchase money security agreements with such consumers.

## Jurisdiction

5.     Defendant is a citizen of the State of New York.

6.     Class Representative Plaintiff Pinks seeks to represent a class with numerous members, such as Class Representative Plaintiff Pinks, who are citizens of states other than New York, thus establishing requisite diversity under 28 U.S.C. § 1332(d)(2)(A).

7.     On information and belief, the number of class members is more than 100, and the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, in the aggregate.

8.     This Court accordingly has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(d), as amended.

## Venue

9.     Venue is proper in this District, in that Defendant maintains branch offices and conducts extensive, continuous and systematic business in this District. Defendant thus has contacts with this District sufficient to subject it to personal jurisdiction as if this District were a separate state, rendering Defendant a resident of this District within the meaning of 28 U.S.C. § 1391(d).

## Class Representative Plaintiff Pinks

10.     On August 6, 2008, Class Representative Plaintiff Pinks entered into a Retail Installment Contract and Security Agreement (hereinafter the "RICSA") with Boat-N-RV Megastore in Ridgeland, South Carolina, in order to purchase a 2009 Big Country Fifth Wheel (VIN 5SFGF34249E011784) (hereinafter the "Big Country") as consumer goods.   A true copy of the RICSA is attached at **Exhibit 1.**

11.     Thereafter the RICSA was assigned to Defendant, and Defendant thereby became the secured party under the terms of the RICSA.

12.     On or about July 29, 2010, Defendant sent Class Representative Plaintiff Pinks at his address at the time, 26 Bluehaw Court, Bluffton, South Carolina 29910, a letter entitled "Notice of Repossession and Sale of Merchandise" (hereinafter "the July 29, 2010 Notice"). A true copy of the July 29, 2010 Notice is attached as **Exhibit 2.**

13.     The July 29, 2010 Notice stated that Defendant had repossessed the Big Country due to Class Representative Plaintiff Pinks' alleged default under the terms of the RICSA, and that the Big Country was subject to private sale on or after August 7, 2010.

14.     On or about September 21, 2010, Defendant sent Class Representative Plaintiff Pinks a letter stating that the Big Country had been sold at private auction on September 15, 2010.

4

15.     The July 29, 2010 Notice (**Exhibit 2**) is subject to Article 9 ("Secured

Transactions") of the UCC, specifically UCC §§ 9-601 through 9-625 as enacted in

South Carolina at § 36-9-601, *et seq., S.C. Code Ann.*, which provides that following

a debtor's default under the terms of his/her retail installment sales contract and

repossession by the secured creditor of the collateral, the secured party may sell

the collateral to protect its interest therein.

16.     UCC § 9-611 provides that the secured creditor must send authenticated post-

repossession, written notice of the intended sale of the collateral to the debtor and

to any other obligors a reasonable time before the sale of the collateral.

17.     UCC §§ 9-613 and 9-614 set forth information that must be included in the

contents of the secured party's notice of intended sale in consumer goods

transactions. As explained in the Official Comments to UCC § 9-614, a written

notice of intended sale to a consumer debtor or obligor which lacks such required

information is insufficient as a matter of law.

18.     The July 29, 2010 Notice (**Exhibit 2**) fails to comply with UCC §§ 9-613 and 9-

614 in one or more of the following particulars:

    A.      It does not state that the debtor is entitled to an accounting of his

    unpaid indebtedness or state the charge, if any, for the accounting as required

    by UCC §§ 9-613(1)(D) and 9-614(1)(A), enacted in South Carolina at § 36-9-

    613(1)(D) and § 36-9-614(1)(A), S.C. Code Ann.;

5

B. It lacks "a description of any liability for a deficiency" as required by UCC § 9-614(1)(B) as enacted in South Carolina at § 36-9-614(1)(B), S.C. Code Ann.; and,

C. It includes additional information not required by UCC § 9-614(1), enacted in South Carolina at § 36-9-614(1), S.C. Code Ann., which materially misstates the debtor's redemption rights provided by way of UCC § 9-623(b) and (c), enacted in South Carolina at § 36-9-623(b) and (c), S.C. Code Ann., and therefore is in violation of UCC § 9-614(6) enacted in South Carolina at § 36-9-614(6), S.C. Code Ann.

19. Further, the July 29, 2010 Notice (**Exhibit 2**) does not conform to the "safe harbor" notice provision of UCC § 9-614(3), enacted in South Carolina at § 36-9-614(3), S.C. Code Ann., a statutorily-sanctioned, alternative form notice which the secured party may copy and accurately fill out in order to escape liability for failure to send adequate or compliant notice.

20. Class Representative Plaintiff Pinks has not at any time waived his right to be sent statutorily-compliant, written notice of intended sale of repossessed consumer collateral, which waiver, pursuant to UCC § 9-602(7) & (12) and § 9-624(a), enacted in South Carolina at § 36-9-602(7) & (12) and § 36-9-624(a), S.C. Code Ann., cannot occur except by way of the debtor's signed writing after default.

21. As detailed in paragraph 35 below, Class Representative Pinks is entitled to automatic statutory damages in the total amount of $70,144.20, according to the formula set forth in UCC § 9-625(c)(2), enacted in South Carolina at § 36-9-625(c)(2), S.C. Code Ann.

## Class Action Allegations

22. All allegations set forth in paragraphs (1) through (20) are repeated and incorporated by reference as if fully set forth herein.

23. The provisions of the UCC cited in paragraphs 15-20 herein above have been enacted *verbatim* in all, or almost all, other states, including New York.

24. On information and belief, the July 29, 2010 Notice (**Exhibit 2**) is a form notice of intended sale of repossessed collateral which was sent by or on behalf of Defendant as secured creditor to numerous consumer debtors residing in various states.

25. The name and address of each putative class member to whom notice substantially in the form attached as **Exhibit 2** was sent by or on behalf of Defendant is readily ascertainable from business records kept and maintained by and/or available to Defendant.

26. The class is defined as:

> Consumer obligors residing in states which had adopted UCC §§ 9-601-611, 9-613-614, and 9-623-625, when M&T Bank, Corp, M&T Credit Services, LLC, or persons or entities acting on their behalf, sent them a Notice of intended sale of repossessed collateral in the form of Exhibit 2 prior to disposition of the consumer obligors' collateral.

Excluded from the Class are:

A.    All persons who, prior to certification of this class, retained counsel and filed suit against Defendant in connection with its failure to comply with the notice provisions of intended sale of repossessed collateral of the UCC, but only as to that failure.

B.    Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, its officers, directors, agents, servants or employees and the immediate families of such persons.

C.    All persons who, with respect to a claim, timely opt out of this proceeding.

D.    All persons who, with respect to a claim, have given Defendant a valid release.

E.    All persons who, after default, have signed a statement in conformity with UCC §§ 9-602 and 9-624(c) renouncing or modifying the right to be sent notification of intended sale of their collateral in compliance with UCC §§ 9-613 and 9-614, but only as to such notification of that sale.

27.    This case meets the requirements for class certification set forth in Rule 23(a) and Rule 23(b)(3), Fed.R.Civ.P., as follows:

A.    The class, which on information and belief includes 100 or more members, is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact common to the class, including:

    (1)     whether the July 29, 2010 Notice (**Exhibit 2**) is a form Notice which complies with UCC §§ 9-613(1) and 9-614(1) and (6); and,

    (2)     if it does not comply, whether the class members are entitled to automatic, statutory damages calculated according to the formula provided by UCC § 9-625(c)(2).

C.     Class Representative Plaintiff Pinks' claim is representative and typical of the class claims because:

    (1)     it arises from the same course of conduct that gives rise to the class members' claims;

    (2)     it arises out of the same form Notice language;

    (3)     it arises out of the same legal theory and uniform state statutory provisions of the UCC; and,

    (4)     it gives rise to identically-computed, mandatory damages determined according to formula provided by UCC § 9-625(c)(2).

D.     Class Representative Plaintiff Pinks will fairly and adequately protect the interests of the class by vigorously prosecuting the interests of the class, and to that end he has retained counsel experienced in prosecuting this type of class claim based upon the same UCC statutes in class litigation. Neither he nor his counsel has any interests antagonistic to the interests of the class.

E.    The questions of law or fact common to the class members set forth above are fully determinative of both liability and damages as to each member of the class and thus, by definition, predominate over any questions which might affect only individual class members.

28.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy. There is little or no interest on the part of the class members in individually controlling the prosecution of separate actions, because, among other reasons, most class members are unlikely to be aware they have a claim and, if aware, are unlikely to be in a position to pursue the claim individually.

29.    Class counsel are not aware of any other class litigation concerning this claim.

30.    There are no management difficulties inherent in handling class members' claims through a class action that would render the class mechanism inferior to the maintenance of individual actions in that:

A.    This case involves a common theory of strict liability based upon uniform statutes which were enacted for the express purpose of providing uniformity of adjudications throughout the enacting states;

B.    This case involves the automatic imposition of liability based upon the contents of a written form document sent to each putative class member by Defendant or entities acting on its behalf;

C.    UCC § 9-625(c)(2) provides for automatic statutory damages in an amount derived by application of a mathematical formula to the terms

contained within the four corners of the putative class members' sales contracts, and therefore does not require individualized determinations of actual damages, proof of reliance, or Defendant's state of mind;

D.     Any potential class members who have provided a post-default, signed waiver or release of adequate UCC notice of intended sale of repossessed collateral, and other categories of persons who are excluded from the class can be readily identified by Defendant's records and/or self-identify in response to class notice; and,

E.     Putative class members' names, addresses, and the contractual terms (charges) necessary for identification and determination of statutory damages can be readily gleaned from Defendant's records.

31.   Other state and federal courts have certified class actions against other secured creditors based upon UCC claims arising out of defective written notices of intended sale of repossessed consumer collateral.

### FIRST CLAIM FOR RELIEF

32.   All allegations set forth in paragraphs (1) through (30) are repeated and incorporated by reference as if fully set forth herein.

33.   When a written notice of intended sale of repossessed collateral fails to comply with the statutory requirements of UCC §§ 9-613(1), 9-614(1) and 9-614(6), UCC § 9-625(c)(2) provides, *inter alia*, for minimum, non-discretionary statutory damages in consumer goods transactions, in a mandatory amount calculated by formula

11

applied to the terms contained within the four corners of the consumer debtor's sales contract.

34.     Under the provisions of the UCC cited herein, each and every member of the Class defined above in paragraph 25 is entitled to recover from Defendant statutory damages in an amount computed according to identical formula set forth in UCC § 9-625(c)(2), for each notice which fails to comply with UCC §§ 9-613 and 9-614, but not more than one measure of statutory damages per account.

35.     Pursuant to § 36-9-625(c)(2), S.C. Code Ann., Class Representative Plaintiff Pinks is entitled to statutory damages in the amount of $70,144.20, plus pre-trial interest according to South Carolina law, consisting of :

   A.     the "time-price differential" of $64,214.00, disclosed in his RICSA (**Exhibit 1**) as the "finance charge," plus

   B.      "10% of the cash price", to-wit: $5,930.20.

**Wherefore,** Class Representative Plaintiff Pinks hereby requests that this Court:

   1.     Enter an Order certifying the proposed class and appointing Plaintiff Jerry Pinks as Class Representative and his attorneys as Class Counsel;

   2.     Enter judgment in his favor in the amount of $70,144.20, plus pre-judgment interest according to South Carolina law, and in favor of the Class against Defendant M& T Bank Corp. for statutory damages provided for by UCC § 9-625(c)(2) as applied to the terms of each class members' retail

installment sales contracts, plus any pre-judgment interest as provided by applicable state law;

3.      Award Class Counsel their reasonable attorney fees and expenses of suit pursuant to Rule 23(h), Fed.R.Civ.P.; and,

4.      Order such other, further and different relief as to the Court shall appear necessary and proper.

Dated:   March 14, 2012

HERZFELD & RUBIN, P.C.

By: _____
        Daniel N. Gsovski (dg4413)
        A Member of the Firm
125 Broad Street
New York, New York 10004-1300
Telephone: (212) 471-8512
E-mail: dgsovski@herzfeld-rubin.com


PHILIP FAIRBANKS, ESQ., P.C.


By: /s/Philip Fairbanks _____
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580
Telefax: (843) 521-1580
E-mail: philip@lowcountrybankruptcy.com
*PENDING ADMISSION PRO HAC VICE*

LAW OFFICE OF FREDERICK CORLEY


By: /s/Frederick Corley
1214 King Street
Beaufort, SC 29902
Telephone: (843) 524-3232
E-mail: rcorley@islc.net
*PENDING ADMISSION PRO HAC VICE*


KATHY D. LINDSAY, P.A


By: Kathy D. Lindsay
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1581
E-mail: klindsay@islc.net
*PENDING ADMISSION PRO HAC VICE*

ATTORNEYS FOR PLAINTIFF
AND THE CLASS

14

Exhibit 1

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT<br><br>No.<br>Date　·-· · · | Seller<br>B..T N SC RD.A..A.. F<br>SC: SYCAMPE DR<br>RIDGELAND, SC 29936<br>"We" and "us" mean the Seller above, its successors and assigns. | Buyer<br>JERRY STILES<br>28 BLUEGRAY COURT<br>BLUFFTON, SC 29910<br>"You" and "your" mean each Buyer above, and guarantor, jointly and individually. |

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below. The Vehicle is sold in its present condition, together with the usual accessories and attachments.

| Description of Motor Vehicle Purchased | Year<br>2009<br>Make<br>BIG COUNTRY<br>Model<br>3490RA | VIN　53FGF·42·49F841184<br>Lic. No./Year<br>☐ New ☒ Used | Other: |

| Description of Trade-In | 2005 GMC 2500<br>2008 CONQUEST 36MLB |

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract, except where prohibited by law.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ _55462.00_ , plus credit service charges accruing on the unpaid balance at the rate of _8.99_ % per year from today's date until paid in full. If goods are delivered or services performed more than ten days from today, credit service charges will begin to accrue on the date of delivery or performance. Credit service charges accrue on a _Actual 365_ day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☒ **DOCUMENTATION FEE:** You also agree to pay a documentation fee of $ _395.00_ , and it will be ☐ paid in cash ☐ paid pro rata over the loan term ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ **MINIMUM CREDIT SERVICE CHARGE:** You agree to pay a minimum credit service charge of $ _N/A_ if you pay this Contract in full before we have earned that much in credit service charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

☐ **SOUTH CAROLINA UCCC APPLIES:** Even if the South Carolina Uniform Consumer Credit Code would not otherwise apply, this Contract is a consumer credit transaction. This Contract is, therefore, subject to the South Carolina UCCC, including the permissible rates and charges.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 4280.00 |
|---|---|---|---|---|
| 8.95 % | $ 64214.00 | $ 55462.00 | $ 119676.00 | $ 123956.00 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | 498.65 | MONTHLY BEGINNING: 9.9.2008 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.

☐ **Late Charge:** If a payment is more than _____ days late, you will be charged _____

☐ These amounts may change pursuant to §§ 37-2-203 and 37-1-109 of the S.C. Code Ann. so as to be the maximum allowed by law.
**Prepayment:** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Credit Service Charge.
☐ If you pay off this Contract early, you will not be entitled to a refund of part of the documentation fee.
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds.

**CREDIT INSURANCE: Credit life, credit disability (accident and health or accident and sickness), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium.** If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured _____
☐ Single ☐ Joint  Prem. $ _____ N/A ____ Term _____

Credit Disability: Insured _____
☐ Single ☐ Joint  Prem. $ _____ N/A ____ Term _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

Buyer _____ Dated _____ d/o/b

Buyer _____ Dated _____ d/o/b

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ _____ N/A . If you get insurance from or through us you will pay $ _____ for _____ _____ of coverage.

This premium is calculated as follows:      N/A
☐ $ _____ N/A _____ Deductible, Collision Coverage $ _____
☐ $ _____ N/A _____ Deductible, Comprehensive Cov. $ _____
☐ Fire-Theft and Combined Additional Coverage $ _____ N/A
                                               $ _____

**Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.**

☐ **SINGLE-INTEREST INSURANCE:** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ _____ XX for _____ of coverage.

☐ **SERVICE CONTRACT:** With your purchase of the Vehicle, you agree to purchase a Service Contract to cover _____

_____ . This Service Contract will be in effect for _____

| ASSIGNMENT: This Contract and Security Agreement is assigned |
|---|
| to _____ , |
| the Assignee, phone _____ . This assignment is made |
| ☐ under the terms of a separate agreement. ☐ under the terms of |
| the ASSIGNMENT BY SELLER on page 2. ☐ This assignment is made |
| with recourse. SELLER'S SIGNATURE   9/6 2008 |
| Seller: By _____ Date _____ |

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| Vehicle Price (incl. sales tax of $ 800.00 ) $ | | 54346.00 |
| Service Contract, Paid to: PREMIER C/S * $ | | 4456.00 |
| **Cash Price** $ | | 59302.00 |
| | N/A | |
| Manufacturer's Rebate $ | | |
| Cash Down Payment $ 1550.00 | | |
| Deferred Down Payment $ | N/A | |
| a. Total Cash/Rebate Down $ | | 1550.00 |
| b. Trade-In Allowance $ 42130.00 | | |
| c. Less: Amount owing $ 39400.00 | | |
| Paid to (includes f.): | | |
| d. Net Trade-In (b. minus c.) $ | | 2730.00 |
| e. Net Cash/Trade-In (a. plus d.) $ | | 4280.00 |
| f. Amount to Finance line e. (if e. is negative) $ | | N/A |
| **Down Payment (e.; disclose as $0 if negative)** $ | | 4280.00 |
| **Unpaid Balance of Cash Price** $ | | 55022.00 |
| Paid to Public Officials - Filing Fees $ | | 45.00 |
| Insurance Premiums* $ | | N/A |
| To: $ | | N/A |
| To: CAT 1 1/C NEGATIVE $ | | 395.00 |
| To: $ | | N/A |
| To: $ | | N/A |
| To: $ | | N/A |
| To: $ | | 440.00 |
| **Total Other Charges/Amounts Pd. to Others** $ | | N/A |
| **Less: Prepaid Charges** $ | | |
| **Amount Financed** $ | | 55462.00 |

*We may retain or receive a portion of this amount.

**NOTICE TO BUYER**
**(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the credit service charge.**

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

Buyer: _____

Signature _____ Date _____
                                    9/6/2008

Signature _____ Date _____

Seller: By _____

**SOUTH CAROLINA** RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT
Experts © 1995, 1998 Bankers Systems, Inc., St. Cloud, MN  Form RS-SI-MV-SC 5/22/2001

(page 1 of 2)
MOTOR VEHICLE – NOT FOR MANUFACTURED HOMES

inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

A. You fail to make a payment as required by this Contract.

B. The prospect of payment, performance, or realization of the Property is significantly impaired.

If you default, you agree to pay our reasonable attorneys' fees limited to 15% of the unpaid debt after default and referral, if we refer this contract to an attorney who is not a salaried employee of ours. You also agree to pay any other reasonable expenses and charges allowed by law.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have, subject to any right to cure that you may exercise, all of the remedies provided by law and this Contract:

A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, credit service charges and all other agreed charges.

B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. This amount will be due immediately. This amount will earn credit service charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| | |
|---|---|
| Signature | Date |

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

---

## ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.

B. The statements contained in this Contract are true and correct.

C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.

D. This sale was completed in accordance with all applicable federal and state laws and regulations.

E. This Contract is valid and enforceable in accordance with its terms.

F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.

G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.

H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.

I. The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.

J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including credit service charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

Experts™  © 1995, 1996 Bankers Systems, Inc., St. Cloud, MN  Form RS-SI-MV-SC 5/22/2001

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any credit service charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a credit service charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

The law of South Carolina will govern this transaction. It is also governed by applicable federal law and regulations. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in South Carolina, unless otherwise required by law.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**NAME AND LOCATION:** Your name and address indicated on page 1 are your exact legal name and your principal residence. You will provide us with at least 30 days' notice prior to changing your name or principal residence.

**BALLOON PAYMENT:** If any payment is more than twice as large as the average of earlier scheduled payments, you may refinance that payment when due without penalty. Your right is subject to the exceptions specified in S.C. Code Ann. § 37-2-405.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

If a documentation fee has been collected and the loan is prepaid in full, or upon maturity by acceleration, this fee, or a portion thereof, may be refundable if the prepayment causes the recalculated APR to exceed the finance charge allowed by law.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:

A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.

B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of anyone else.

C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.

E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.

F. You will pay all taxes and assessments on the Property as they become due.

G. You will notify us of any loss or damage to the Property. You will

peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.

E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

**PROPERTY INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn credit service charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**CREDIT INSURANCE:** CREDIT INSURANCE MAY NOT COVER THE AMOUNT DUE UNDER THIS CONTRACT. YOU SHOULD REVIEW YOUR POLICY OR CERTIFICATE TO DETERMINE THE EXACT AMOUNT OF COVERAGE.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

A. You must pay this Contract even if someone else has also signed it.

B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

C. We may release any security and you will still be obligated to pay this Contract.

D. If we give up any of our rights, it will not affect your duty to pay this Contract.

E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. Except for giving a required notice of right to cure for the failure to make a payment, we are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

Exhibit 2

 **M&T Bank**

Consumer Lending Department

## NOTICE OF REPOSSESSION AND SALE OF MERCHANDISE

07/29/10

JERRY PINKS
26 BLUEHAW CT
BLUFFTON, SC  29910

Storage Location: PAR GASTON SC 29053
Collateral: 09 BIG COUN 3490RB
Name: JERRY PINKS
Account Number: I 11097375200001                    VIN 5SFGF34249E011784

Dear JERRY PINKS:
This letter provides the following information:
I.   NOTICE OF PRIVATE SALE: We hereby notify you that you are in default
under the contract listed above.  Because of your default, M&T Bank
(MTB) has repossessed the collateral and will sell it
by private sale on or after 08/07/10.

II.  NOTICE OF RIGHT TO REDEEM: At any time before the sale, you have the
right to redeem (get back) the collateral by paying certified funds
to MTB at the address listed below, for the full amount of all past
due installment payments under your contract (including all late
charges) and the costs of repossession, preparing, holding and
advertising the collateral for sale.  The amount due as of the date
of this letter is as follows:

        PAST DUE PAYMENTS ON YOUR LOAN:     990.50
        ACCRUED LATE CHARGES:               138.25
        REPOSSESSION FEES:                1,000.00
        TOTAL AMOUNT DUE:                 2,128.75

This amount is subject to change as additional payments become due, or
costs continue to accrue.  Any additional amount must be paid in order
to redeem the collateral. Once the sale of the collateral has taken
place, MTB will deduct from the sales proceeds all amounts owed
to it.  If there is still money owing after this is done, you are
responsible to pay MTB this deficiency.  If there is money left over,
MTB will pay you this surplus.

If you have filed for relief under the United States Bankruptcy Code,
please understand that this Notice is given to you as a requirement of
State Law and is not an attempt to collect a debt, including any
deficiency after the sale.  Further, if you are no longer the titled
owner of the collateral, this Notice is only for your information, as
the rights referred to above may only be held by the new owner.

Your right to redeem continues until the collateral is sold.  If
you wish to redeem the collateral, or if you have any questions
regarding this notice, please contact us immediately at
1-800-724-8644, or in writing to the address listed below.

Sincerely,
Mr. Guzman
Repossession Specialist

M&T Bank, P.O. Box 767, Buffalo, New York 14240