UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JERRY PINKS, individually and on behalf of others similarly situated,

        Plaintiff,

v.

M & T BANK CORP.,

        Defendant.

No.: 13-cv-1730

---

**DEFENDANT M & T BANK CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

REED SMITH LLP
Steven Cooper
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

Roy W. Arnold (*pro-hac vice* forthcoming)
Andrew J. Soven (*pro-hac vice* forthcoming)
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

*Attorneys for Defendant M & T Bank Corp.*

Dated: May 17, 2013

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL ALLEGATIONS AND PLAINTIFF'S CLAIM ........................................................ 2

ARGUMENT .................................................................................................................................. 4

I. APPLICABLE LEGAL STANDARD UNDER FED. R. CIV. P. 12(B)(6) ...................... 4

II. THE NOI FULLY COMPLIED WITH THE UCC ........................................................... 5

    A. Statutory Framework Of The UCC ....................................................................... 5

    B. The NOI Is Sufficient Because It Provided An Accounting .................................. 6

    C. The NOI's Description Of Liability For A Deficiency Is Sufficient ................... 10

    D. The NOI Does Not Misstate The Debtor's Redemption Rights .......................... 10

III. ALTERNATIVELY, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE THE ALLEGED DEFECTS WERE IMMATERIAL TO HIM .................... 11

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) ...................................................................... 4, 12, 13

*Crane v. Citicorp National Services*,
  437 S.E.2d 50 (S.C. 1993) .................................................................................................. 9

*First Bank & Trust Co. of Ithaca, N.Y. v. Mitchell*,
  473 N.Y.S. 2d, 697 (Sup. Ct. 1984) .................................................................................... 9

*General Electric Capital Corp. v. Net Transportation Inc.*,
  2006 WL 3741828 (D. Conn. Dec. 8, 2006) .................................................................. 8, 9

*Hudson v. Eaglemark Savings Bank*,
  475 F. App'x 423 (3d Cir. 2012) ...................................................................................... 13

*Hudson v. Eaglemark Savings Bank*,
  No. 10-6994, 2011 WL 1755540 (E.D. Pa. May 9, 2011) .......................................... 12, 13

*In re Jerry Pinks & Kathleen Wendy Pinks*,
  No. 12-00317-dd (Bankr. D.S.C. 2012) ............................................................................. 3

*In re Parker*,
  363 B.R. 769 (Bankr. D.S.C. 2006) .................................................................................... 8

*Mosca v. Brookline Bank*,
  No. 07-771-G, 2009 WL 3779818 (Mass. Super. Ct. Jan. 26, 2009) ................................. 8

*Reuter v. Citizens & N. Bank*,
  599 A.2d 673 ....................................................................................................................... 9

*Singleton v. Stokes Motors, Inc.*,
  595 S.E.2d 461 (S.C. 2004) ................................................................................................ 9

*Wells Fargo Bank Minn. v. BrooksAmerica Mortg. Corp.*,
  No. 02 Civ. 4467(HB), 2004 WL 2072358 (S.D.N.Y. Sept. 14, 2004) ............................. 8

*Worldcom, Inc. v. Gen. Elec. Global Asset Mgmt. Servs.*,
  339 B.R. 56 (Bankr. S.D.N.Y. 2006) ................................................................................. 8

**Statutes**

S.C. Code Ann. § 36-9-102(a)(4) ............................................................................................. 7

S.C. Code Ann. § 36-9-610(a) ................................................................................................. 5

S.C. Code Ann. § 36-9-610(b) ........................................................................................... 5, 12

S.C. Code Ann. § 36-9-611(b) ................................................................................................. 5

S.C. Code Ann. § 36-9-613 .................................................................................................. 5, 6

S.C. Code Ann. § 36-9-613(1)(D) ........................................................................................... 6

S.C. Code Ann. § 36-9-614 .................................................................................................. 5, 6

S.C. Code Ann. § 36-9-614(2) ........................................................................................... 7, 10

S.C. Code Ann. § 36-9-614(3) ....................................................................................... 7, 10, 11

S.C. Code Ann. § 36-9-625 cmt. 4 .................................................................................... 9
S.C. Code Ann. § 9-625(c)(2) ........................................................................................... 6

Defendant M & T Bank Corporation ("M&T"), by and through its undersigned counsel, Reed Smith LLP, respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint filed by Plaintiff Jerry Pinks ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff brings this putative class action based on purportedly deficient language, contained in a notice of intent to sell its collateral, which was sent to Plaintiff, in connection with Plaintiff's default on a loan back on August 6, 2008. The loan at issue had been extended to Plainitff for his purchase a 2009 Big Country Fifth Wheel. Plaintiff brought his Complaint over two-and-a-half years after the NOI was sent, and some ten months after emerging from his personal bankruptcy proceedings.

Plaintiff, a borrower, brings a single claim against M&T, a secured creditor, alleging that the post-surrender NOI violated the Uniform Commercial Code, as adopted by South Carolina (the "UCC"). Plaintiff does not allege any actual harm, but seeks more than $70,000 in statutory penalties under the UCC. Plaintiff's allegations about the NOI are overstated and inaccurate.

*First,* Plaintiff's main contention is that the NOI does not use the words "you have the right to an accounting," and instead, simply provides Plaintiff with an accounting (i.e., a breakdown of the amount owed on the loan). Courts that have considered this same form-over-substance claim have rejected it. As explained below, the NOI more than fulfilled the purposes of the UCC.

*Second*, Plaintiff claims that the NOI violated the UCC because it did not tell Plaintiff that he was potentially liable for any deficiency if the amount achieved by selling the Vehicle at auction did not equal or exceed his debt. However, the NOI *does* tell Plaintiff about his potential

liability for a deficiency. In fact, the NOI sets forth, in the sort of plain, easy-to-understand English encouraged by the UCC, the same information which the UCC requires. As a result, this claim is meritless as well.

*Third*, Plaintiff vaguely suggests that the NOI materially misstated his redemption rights. However, Plaintiff does not explain in his pleading how the NOI has misstated his rights, or allege any facts that would support his perfunctory legal conclusion. Accordingly, this claim also fails.

*Finally*, Plaintiff's Complaint fails because he does not plead that he would have taken some action if the NOI had contained the information that he says it should have contained. Clearly, none of the alleged defects affected Plaintiff in any way. Back on July 19, 2010, Plaintiff told M&T that he was no longer able to make his loan payments, and voluntarily surrendered the Vehicle because he could no longer afford the payments. Plaintiff does not allege that he ever sought to reinstate his loan, or recover the Big Country RV. Under such circumstances, no claim for over $70,000 in statutory penalties should lie.

## FACTUAL ALLEGATIONS AND PLAINTIFF'S CLAIM

On August 6, 2008, Plaintiff entered into a Retail Installment Contract and Sales Agreement ("RICSA") to purchase a Big County Fifth Wheel (the "Vehicle" or the "RV"). Compl. ¶ 10.[1] The RICSA was immediately assigned to M&T. Compl. ¶ 11.

On July 19, 2010, Plaintiff sent M&T a letter indicating his desire to voluntarily surrender the Vehicle.[1] On July 29, 2010, M&T sent Plaintiff a "Notice of Repossession and

---

[1] A copy of the Complaint is attached to the accompanying Affidavit of Steven Cooper, dated May 17, 2013 ("Cooper Affidavit") as Exhibit A. Because parts of the copy of the RICSA attached as Exhibit 1 to the Complaint are almost illegible, attached as Exhibit B to the Cooper Affidavit is a readable copy of the RICSA. For the purposes of this motion only, Defendants accept as true the factual allegations made in the Complaint.

Sale of Merchandise" (the "NOI"), attached to the Complaint as Exhibit 2. Compl. ¶ 12. The NOI explained that, because Plaintiff was in default under the RICSA, M&T had repossessed the Vehicle and intended to sell it by private sale on or after August 7, 2010. Compl. Ex. 2. The NOI also explained the steps Plaintiff could take to redeem the Vehicle, what would happen if the Vehicle sold for an amount less than Plaintiff owed M&T, and encouraged Plaintiff to contact M&T at a toll free telephone number with any questions. *Id.* The Vehicle was sold at auction on September 15, 2010. Plaintiff raises no issue with any aspect of the auction process. On September 21, 2010, M&T sent Plaintiff a second letter, informing Plaintiff that the Vehicle was sold at private auction on September 15, 2010.

Plaintiff does not allege that he had any communication with M&T following his receipt of the NOI. Plaintiff also does not allege that he ever intended or desired to reinstate the loan or recover the Vehicle after it was surrendered. To the contrary, as made clear by Plaintiff's July 19, 2010 letter to M&T, Plaintiff could no longer afford the payments and told M&T that he wished to surrender the RV. *See* Cooper Affidavit, Ex. C.

On January 20, 2012, Plaintiff initiated a bankruptcy proceeding in the District of South Carolina. *See In re Jerry Pinks & Kathleen Wendy Pinks*, No. 12-00317-dd (Bankr. D.S.C. 2012). Plaintiff received a discharge order on May 1, 2012. *Id.* Ten months later, Plaintiff filed his Complaint on March 14, 2013.[2]

The Complaint contains one Claim for Relief. Plaintiff essentially claims that the NOI violated the UCC by misstating or omitting information that must be provided to a consumer

---

[2] Plaintiff is represented in this action by Philip Fairbanks, the same attorney who represented Plaintiff in his bankruptcy action. *See In re Jerry Pinks & Kathleen Wendy Pinks*, No. 12-00317-dd (Bankr. D.S.C. 2012). Plaintiff initiated his bankruptcy on January 20, 2012 and received a discharge order on May 1, 2012. *Id.*

before collateral is sold. Plaintiff seeks statutory penalties pursuant to Section 9-625(c)(2) of the UCC. Plaintiff purports to represent a nationwide class of consumers who received a similar notice from M&T.

## ARGUMENT

### PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF FOR VIOLATIONS OF THE UCC

**I.    APPLICABLE LEGAL STANDARD UNDER FED. R. CIV. P. 12(B)(6)**

A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead enough facts to state a claim for relief that is "plausible" (as opposed to just "conceivable"). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). To survive a motion to dismiss, a complaint must contain more than "labels and conclusions;" rather, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1964-65. A plaintiff's showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966). Before a district court can determine whether the well-pleaded factual allegations plausibly can give rise to an entitlement to relief, it should "identify . . . pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S. Ct. at 1950. It is only after a district court eliminates conclusory allegations from consideration, that it should "determine whether [the well-pleaded factual allegations] plausibly give rise to an entitlement to relief." *Id.*

## II. THE NOI FULLY COMPLIED WITH THE UCC

### A. Statutory Framework Of The UCC

In South Carolina, the rights and obligations of a secured creditor with respect to the default and enforcement of a security interest are governed by Article 9, Chapter 6 of the UCC. Under South Carolina law, in transactions governed by the UCC, a secured party has the right to repossess and sell collateral after a debtor's default. S.C. Code Ann. § 36-9-610(a). Every aspect of the disposition of the collateral must be "commercially reasonable." *Id.* § 36-9-610(b). After the repossession, the secured party must send the debtor "a reasonable authenticated notification of disposition." *Id.* § 36-9-611(b).

Sections 9-613 and 614 set forth the elements of a reasonable notice in a consumer goods transaction.[3] *See id.* §§ 36-9-613, 614. These provisions of the UCC together require the creditor to include the following information in the NOI in a consumer goods transaction: (i) the names of the debtor and the secured party; (ii) the collateral; (iii) the method of intended disposition; (iv) that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for an accounting; (v) the time and place of a public disposition or, in the event of a private sale, the time after which any other disposition is to be made; (vi) a description of any liability for a deficiency of the person to which the notification is sent; (vii) a telephone number from which the amount which must be paid to the secured party to redeem the collateral is available; and (viii) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available. *Id.*

---

[3] Section 9-613 sets forth the notice requirements for non–consumer goods transactions subject to Article 9 of the UCC. Section 9-614 incorporates the notice requirements of Section 9-613(1) and sets forth additional requirements for consumer goods transactions, which is directly applicable. S.C. Code Ann. §§ 36-9-613, 614.

Damages for a secured party's failure to comply with Article 9 are calculated pursuant to Section 9-625. In a consumer goods transaction, the debtor "may recover for that failure in any event an amount not less than the credit service charge plus ten percent of the principal amount of the obligation or the time-price differential plus ten percent of the cash price." *Id.* § 9-625(c)(2). Pursuant to this section of the UCC, Plaintiff claims a statutory penalty of $70,144.20. Compl. ¶ 21.

### B. The NOI Is Sufficient Because It Provided An Accounting

Plaintiff first claims that the NOI is deficient because it "does not state that the debtor is entitled to an accounting of his unpaid indebtedness or state the charge, if any, for the accounting," as required by the UCC. Compl. ¶ 18(A) (citing S.C. Code Ann. §§ 36-9-613, 614). This conclusion is based on an erroneous reading of both the facts and law. As shown below, the NOI went above and beyond the requirements of the UCC by providing an actual accounting.

Section 9-613(1)(D) requires that the notice state "that the debtor is entitled to an accounting of his unpaid indebtedness and state[] the charge, if any, for an accounting." S.C. Code Ann. § 36-9-613(1)(D). Section 9-614 in turns makes clear that "[a] particular phrasing of the notification is not required." *Id.* § 36-9-614.

The NOI sent to Plaintiff states:

> The amount due as of the date of this letter is as follows:
>     PAST DUE PAYMENTS ON YOUR LOAN:   990.50
>     ACCRUED LATE CHARGES:   138.25
>     REPOSSESSION FEES:   1,000.00
>     TOTAL AMOUNT DUE:   2,128.75
> This amount is subject to change as additional payments become due, or costs continue to accrue. Any additional amount must be paid in order to redeem the collateral.

Compl. Ex. 2.

Section 9-102 defines the terms used in Sections 9-613 and 9-614. "Accounting" is defined, in relevant part, as "a record . . . indicating the aggregate unpaid secured obligations . . . and identifying the components of the obligations in reasonable detail." S.C. Code Ann. § 36-9-102(a)(4). The NOI provided this information. The NOI stated the total amount due (i.e., the aggregate unpaid secured obligations), and identified the components of such in reasonable detail (i.e., past due payments, late charges, and repossession fees). Compl. Ex. 2. The NOI further clarified that the amount was subject to change as additional payments came due. And the NOI provided a toll free telephone number and instructed Plaintiff to contact M&T "immediately" if he wished to redeem the collateral, or if he had "any questions regarding this notice." *Id.* Plaintiff does not allege that any fees or charges assessed by M&T following that sale of the RV at auction were inaccurate, or not disclosed in the NOI.

M&T complied with the UCC by providing Plaintiff with his "aggregate unpaid secured obligations" and "identifying the components of the obligations in reasonable detail." S.C. Code Ann. § 36-9-102(a)(4). As with all elements of the NOI, a "particular phrasing of the notification is not required" for a notice to be satisfactory. S.C. Code Ann. § 36-9-614(2). The sample notice in the UCC contains the following language:

> You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us as [*telephone number*]. If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at [*telephone number*] [or write us as [*secured party's address*] and request a written explanation.

*Id.* § 36-9-614(3). M&T went one step further by telling Plaintiff "how we have figured the amount that you owe us" in the first instance. *Id.*

Courts that have considered Plaintiff's argument have rejected it. In *Mosca v. Brookline Bank*, the Superior Court of Massachusetts held that a notice that provided less information than M&T's NOI was sufficient. *See* No. 07-771-G, 2009 WL 3779818 (Mass. Super. Ct. Jan. 26, 2009).[4] The notice in *Mosca* stated:

> You may cure your default if we received certified funds totaling $9,587.13 within 20 days of the date of this letter. You will also be responsible for interest to the date of payment, together with all expenses incurred in this repossession. Please call for this amount.

Referencing the UCC's definition of an accounting, the court concluded that the notice "sufficiently informed the plaintiff of her right to an accounting" because it stated "the amount in default and that the plaintiff would be responsible for interest and repossession expenses." Further, the notice encouraged the plaintiff to call with questions.

By comparison, the NOI provided by M&T included more information than provided by the *Mosca* notice by breaking down the amount Plaintiff owed into components, including the past due payments, accrued late charges, and repossession fees. *See* Compl. Ex 2. The NOI likewise encouraged the Plaintiff to call with "any questions regarding this notice." *Id.* The same result was reached in *General Electric Capital Corp. v. Net Transportation Inc.*, where the court held that a notice that did not use the word "accounting," but provided the debtor with

---

[4] M&T has not located any published South Carolina authority relating to the purported notice defects at issue here. Accordingly, and because the UCC is a uniform law, this Court can and should rely on decisions from other courts in resolving these questions. *See Worldcom, Inc. v. Gen. Elec. Global Asset Mgmt. Servs.*, 339 B.R. 56, 63-64 (Bankr. S.D.N.Y. 2006) ("As the UCC is intended as a uniform law, the Court will consider decisions from other state and federal courts interpreting [the relevant provision]."); *Wells Fargo Bank Minn. v. BrooksAmerica Mortg. Corp.*, No. 02 Civ. 4467(HB), 2004 WL 2072358, at *5 n.11 (S.D.N.Y. Sept. 14, 2004) (explaining that the parties' "extensive[]" reliance on cases from other jurisdictions is "appropriate[]" given that "the UCC's purpose was to aid uniformity" (citation omitted)); *In re Parker*, 363 B.R. 769, 774 (Bankr. D.S.C. 2006) ("Since South Carolina has adopted a uniform law, the Court is guided by decisions in other jurisdictions that have interpreted this provision of the UCC.")

contact information, was sufficient under the UCC. No. 3:03 cv 316 (WWE), 2006 WL 3741828, at *2 (D. Conn. Dec. 8, 2006).

Courts have also made clear that the sufficiency of a notice should be assessed based on the purpose the notice is designed to serve. *See, e.g., Reuter v. Citizens & N. Bank*, 599 A.2d 673, 678-79 (analyzing the sufficiency of a notice based on the purpose of the notice); *First Bank & Trust Co. of Ithaca, N.Y. v. Mitchell*, 473 N.Y.S. 2d, 697, 702 (Sup. Ct. 1984) ("All of the circumstances surrounding the giving of notice must be evaluated in light of the purpose of the notice requirement . . . ."). In *Crane v. Citicorp National Services*, the South Carolina Supreme Court explained that the purpose of the notice required by an analogous section of the UCC, prior to the 2001 revisions,[5] was to "allow the debtor to discharge the debt and redeem the collateral, produce another purchaser, or see that the sale is conducted in a commercially-reasonable manner." 437 S.E.2d 50, 52 (S.C. 1993), *superseded by statute on other grounds*.

Plaintiff has not, and cannot, allege how what M&T did—provide an actual accounting, free of charge—would interfere with the purpose of the notification, e.g., enabling the Plaintiff to redeem the collateral, find another buyer, or monitor the sale. M&T's provision to Plaintiff of an actual accounting enabled Plaintiff to take any of these steps, if Plaintiff had actually desired to do so. Plaintiff has not alleged that he desired or attempted to redeem the collateral at any time. In light of the purpose of the notification under Section 9-614, the NOI and its accounting were patently reasonable and sufficient.

---

[5] The revised Article 9 of the UCC became effective in July, 2001. *See Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 464 n.3 (S.C. 2004). Many of the revised sections are modeled on pre-revision sections. *See, e.g.*, S.C. Code Ann. § 36-9-625 cmt. 4 (noting that the section is "patterned on former Section 9-507(1)").

### C. The NOI's Description Of Liability For A Deficiency Is Sufficient

Plaintiff further alleges that the NOI fails to comply with the UCC because it "lacks a description of any liability for a deficiency." But even the most cursory of readings shows that the NOI clearly includes a more than adequate description of any liability for a deficiency. The NOI sent to Plaintiff states:

> Once the sale of the collateral has taken place, MTB will deduct from the sales proceeds all amounts owed to it. *If there is still money owing after this is done, you are responsible to pay MTB this deficiency.* If there is money left over, MTB will pay you this surplus.

Compl. Ex. 2 (emphasis added). By comparison, the sample notice provided by the UCC states:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you [will or will not, as applicable] still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

S.C. Code Ann. § 36-9-614(3).

The language of the NOI at issue is almost identical to that provided in the UCC's sample notice. As noted, a "particular phrasing of the notification is not required" for a notice to be satisfactory. *Id.* § 36-9-614(2). There can be no question that the NOI placed Plaintiff on notice of his liability for any deficiency. Plaintiff has alleged no facts supporting his conclusory statement that the NOI lacks a description of liability for a deficiency. The NOI clearly includes such a description, and Plaintiff's assertion to the contrary is without merit.

### D. The NOI Does Not Misstate The Debtor's Redemption Rights

Plaintiff next vaguely alleges that the NOI fails to comply with the UCC because it includes additional information that "materially misstates the debtor's redemption rights provided by way of [Sections] 9-623(b) and (c)." Plaintiff does not explain how the NOI has misstated his rights, or allege any facts that would support his legal conclusion. Neither M&T

nor the Court should be required to ascertain the unstated basis for Plaintiff's allegation, and for this reason alone this aspect of Plaintiff's claim should be dismissed.

Even more importantly, on its face, the NOI does *not* misstate the Plaintiff's redemption rights. The NOI states:

> At any time before the sale, you have the right to redeem (get back) the collateral by paying . . . the full amount of all past due installment payments under your contract (including all late charges) and the costs of repossession, preparing, holding, and advertising the collateral for sale.

Compl. Ex. 2. M&T's language concerning redemption rights is consistent with that provided by the sample notice related to redemption rights, *see* S.C. Code Ann. § 36-9-614(3) ("You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses."), and fully complied with the purpose of the UCC.

In sum, Plaintiff's Complaint cannot withstand judicial scrutiny. The NOI provided Plaintiff with an accounting, it described Plaintiff's liability for a deficiency, and it did not materially misstate Plaintiff's redemption rights. For these reasons, this Court should dismiss the Complaint for failure to state a claim upon which relief can be granted.

### III. ALTERNATIVELY, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE THE ALLEGED DEFECTS WERE IMMATERIAL TO HIM

As shown above, the NOI complied with the UCC. Moreover, Plaintiff's claim should also be dismissed because he fails to allege any facts that suggest that Plaintiff was in any way affected by the alleged defects in the NOI.

The U.S. District Court for the Eastern District of Pennsylvania and the Third Circuit Court of Appeals were both recently presented with this issue and both courts held that a consumer is required to plead facts that could support a finding that the alleged defects in a

notice to sell collateral impacted him or her in some way. In *Hudson v. Eaglemark Savings Bank*, the plaintiff, William Hudson, alleged that a notice to sell collateral was unreasonable as to both the timing of the notice and its contents. No. 10-6994, 2011 WL 1755540, at *1 (E.D. Pa. May 9, 2011). Specifically, Hudson alleged that the ten-day notice period the bank had provided was insufficient and that the notice lacked certain information required by the UCC, as adopted in Pennsylvania. *Id.*

The court then evaluated whether Hudson could in fact state a claim that the notice he received was not "commercially reasonable" under Pennsylvania's analog to S.C. Code Ann. § 36-9-610(b) that was adequate under *Twombly* if he pled no facts other than that the notice did not comply with the UCC. In dismissing Hudson's claim, on a Rule 12(b)(6) motion, the district court made clear that Hudson's "mere assertion that notice was unreasonable is insufficient to state a claim upon which relief may be granted."[6] *Id.* at *5. The court explained that:

> In the absence of any factual allegations to support Plaintiff's claim that ten days notice was unreasonable in the case, e.g. facts suggesting that Plaintiff could not act on or take account of the notification in a ten day period, the bald assertion that the notice period was unreasonable is simply implausible.

*Id.* (citation omitted). The court, using language that would apply here as well, emphasized that "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to state a plausible claim." *Id.* (internal citation omitted).

The *Hudson* court likewise found Hudson's pleading insufficient as to the alleged defects contained in the contents of the notice. Hudson alleged that the notice did not properly explain his possible liability for a deficiency after the sale, how he could go about redeeming his vehicle,

---

[6] Hudson's claim failed for additional reasons as well, including that Pennsylvania's Motor Vehicle Sales Finance Act did not apply to the loan at issue.

or the telephone number he could call to learn the exact amount he owed. The court reviewed the notice and found that, "[c]ontrary to Plaintiff's allegations," the notice was "in full compliance with the UCC's requirements." *Id.*

Hudson appealed, and the Third Circuit agreed with the district court that Hudson's allegations failed to satisfy *Twombly*:

> Hudson's conclusory assertion that the notice was unreasonable, *without facts showing how he could not be expected to act in response to the notice or take account of the notice,* was insufficient to state a claim upon which relief may be granted.

*Hudson v. Eaglemark Savings Bank*, 475 F. App'x 423, 426-27 (3d Cir. 2012) (emphasis added).

Here too, Plaintiff's Complaint is devoid of a single factual assertion in support of a conclusion that the NOI was commercially unreasonable, or that he could have or would have undertaken some other course of action in response to the NOI. Plaintiff provides no indication whatsoever that he would have taken some other action had the NOI contained the information that he claims it should have contained. Like the plaintiff in *Hudson*, Plaintiff has only provided a list of alleged—and, in fact, nonexistent—defects in the NOI, without any explanation of how these supposed defects rendered him unable to respond to or take account of the NOI. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted for this reason as well.

## CONCLUSION

For the foregoing reasons, this Court should grant M&T's Motion to Dismiss and dismiss the Complaint with prejudice.

Dated: May 17, 2013
      New York, New York

                                      Respectfully submitted,

                                      **REED SMITH LLP**

By: _____
Steven Cooper (SC-4394)
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

Roy W. Arnold (*pro-hac vice* forthcoming)
Andrew J. Soven (*pro-hac vice* forthcoming)
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

*Attorneys for Defendant M & T Bank Corp.*