UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JERRY PINKS, individually and on behalf of others similarly situated,

    Plaintiff,

v().

M & T BANK CORP.,

    Defendant.

No.: 13-cv-1730

---

**DEFENDANT M & T BANK CORP.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

 

**REED SMITH LLP**
Steven Cooper
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

Roy W. Arnold (*pro-hac vice* forthcoming)
Andrew J. Soven (*pro-hac vice* forthcoming)
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

*Attorneys for Defendant M & T Bank Corp.*

Dated: July 9, 2013

## TABLE OF CONTENTS

Page

I. THE NOI IS SUFFICIENT BECAUSE IT PROVIDED PLAINTIFF WITH AN ACCURATE ACCOUNTING. .............................................................................. 1

    A. The Accounting Provided to Plaintiff Was Accurate. ............................................. 1

    B. The Accounting Provided to Plaintiff Was Sufficient. ........................................... 6

        1. *Parks v. CNAC-Joliet* ............................................................................ 6

        2. *Mosca v. Brookline Bank* ...................................................................... 8

II. THE NOI PROVIDED PLAINTIFF WITH AN ACCURATE DESCRIPTION OF HIS LIABILITY FOR A DEFICIENCY. ........................................................... 9

III. THE THIRD CIRCUIT'S DECISION IN *HUDSON* IS RELEVANT AND PERSUASIVE. ........................................................................................................ 11

IV. CONCLUSION ....................................................................................................... 12

## TABLE OF AUTHORITIES

Page

**Cases**

*Brockbank v. First Capital,*
 534 S.E.2d 688 (S.C. 2000) ............................................................................................. 6

*Hassler v. Account Brokers of Larimer Cnty.,*
 274 P.3d 547(Co. 2012) ................................................................................................ 10

*Hinton v. S.C. Dep't of Prob., Parole, and Pardon Servs.,*
 592 S.E.2d 335 (S.C. Ct. App. 2004) ............................................................................. 3

*Hudson v. Eaglemark Savings Bank,*
 475 F. App'x 423 (3d Cir. 2012) ............................................................................ 11, 12

*Mendes v. Filip,*
 554 F.3d 335 (2d. Cir. 2009) .......................................................................................... 3

*Mosca v. Brookline Bank,*
 No. 07-771-G, 2009 WL 3779818 (Mass. Super. Ct. Jan. 26, 2009) ......................... 8, 9

*Parks v. CNAC-Joliet, Inc.,*
 886 N.E.2d 376 (Ill. Ct. App. 2008) ........................................................................... 6, 7

*TRW Inc. v. Andrews,*
 534 U.S. 19 (2001) .......................................................................................................... 3

**Statutes**

S.C. Code Ann. § 36-9-102(a)(4) ........................................................................................... 2

S.C. Code Ann. § 36-9-210 cmt. 2 ......................................................................................... 5

S.C. Code Ann. § 36-9-504(3) (1999) .................................................................................... 6

S.C. Code Ann. § 36-9-611(b) .............................................................................................. 11

S.C. Code Ann. § 36-9-613 ................................................................................................ 2, 3

S.C. Code Ann. § 36-9-613(1)(D) .......................................................................................... 5

S.C. Code Ann. § 36-9-614 .................................................................................................... 2

S.C. Code Ann. § 36-9-614(1)(B) .................................................................................... 9, 11

S.C. Code Ann. § 36-9-614(2) .............................................................................................. 10

S.C. Code Ann. § 36-9-614(3) ......................................................................................... 6, 10

S.C. Code Ann. § 36-9-614(5) ................................................................................................ 5

Defendant M & T Bank Corporation ("M&T"), by and through its undersigned counsel, Reed Smith LLP, respectfully submits this Reply Brief in Further Support of its Motion to Dismiss the Complaint filed by Plaintiff Jerry Pinks ("Plaintiff"). Plaintiff's opposition is based principally on the flawed premise that the accounting that M&T provided with the notice of intent to sell collateral ("NOI") misstated the amount due to M&T when the notice was sent. In fact, M&T's notice told Plaintiff exactly what M&T was required to tell Plaintiff pursuant to his contract with M&T and the South Carolina Commercial Code. Plaintiff's second argument, that the NOI did not explain the concept of a deficiency balance, is also flawed. The NOI, in plain and easy to understand language, more than adequately explained that a deficiency would be due if the sale of collateral did not satisfy the entire loan. M&T's NOI satisfied all of the Code's requirements, and Plaintiff's attempt to manufacture a class action based on a document that he all but concedes he never read or relied on in any way should be rejected and the Complaint should be dismissed.

I.  **THE NOI IS SUFFICIENT BECAUSE IT PROVIDED PLAINTIFF WITH AN ACCURATE ACCOUNTING.**

   A.  **The Accounting Provided to Plaintiff Was Accurate.**

When a secured creditor repossesses a vehicle after a debtor's default, sections 9-613 and 9-614 of the Uniform Commercial Code, as adopted in South Carolina (the "Code"), require the creditor to inform the debtor that he is entitled to an accounting. M&T's NOI satisfied this requirement by actually providing Plaintiff with an accounting. Presumably realizing the weakness of his argument to the contrary, Plaintiff advances the new theory that M&T's NOI was inaccurate because it "understates" the amount of Plaintiff's indebtedness; indeed, this argument permeates the opposition. Pls. Mem. of Points and Authorities in Opp'n to Def.'s Mot. to Dismiss at 10 ("Plaintiff's Opp'n Br."). Plaintiff did not assert this in his Complaint; it

appears for the first time in his Opposition Brief. This lynchpin of Plaintiff's defense is premised on an erroneous reading of both the law and facts of this case.

Sections 9-613 and 9-614, which the parties agree apply, require the NOI to state "that the debtor is entitled to an accounting of the unpaid indebtedness." S.C. Code Ann. §§ 36-9-613, 614. Section 9-102, which Plaintiff does not mention, defines an accounting as "a record . . . indicating the aggregate unpaid secured obligations . . . and identifying the components of the obligations in reasonable detail." *Id.* § 36-9-102(a)(4). M&T's NOI, sent to Plaintiff on July 29, 2010, provided Plaintiff with an accounting, as defined by the Code, by including the following information:

> The amount due as of the date of this letter is as follows:
> PAST DUE PAYMENTS ON YOUR LOAN:      990.50
> ACCRUED LATE CHARGES:                138.25
> REPOSSESSION FEES:                 1,000.00
> TOTAL AMOUNT DUE:                  2,128.75
> This amount is subject to change as additional payments become due, or costs continue to accrue. Any additional amount must be paid in order to redeem the collateral.

Compl. Ex. 2. According to Plaintiff's Opposition Brief, this accounting was incorrect and should have instead reported the "*full amount* for which he was 'indebted' to M&T under the RICSA," i.e., $55,580.64 (emphasis added). Plaintiff's Opp'n Br. at 10. Plaintiff's argument fails for two reasons. Plaintiff's interpretation of "unpaid indebtedness" is wrong as M&T provided the unpaid indebtedness—the actual amount due and owing—as of the date of the notice; following Plaintiff's logic, M&T would have had to provide an inflated figure ($55,580.64), which was inaccurate and misleading. Plaintiff's argument thus fails, as discussed below.

*First,* Plaintiff's argument fails because it is premised on an erroneous reading of the Code. The key to understanding this issue is the word "unpaid." Section 9-613 requires an accounting of the debtor's "*unpaid* indebtedness." S.C. Code Ann. § 36-9-613 (emphasis added). A debtor's "unpaid indebtedness" can, and often will, be different than the debtor's **total** "indebtedness." For example, the day after Plaintiff signed the Retail Installment Contract and Sales Agreement (the "RICSA"), he was indebted to M&T for the total amount of $55,462, the total amount financed through the transaction. *See* Def.'s Mot. to Dismiss, Ex. B. However, because no payment was past due as of that date, there was no "unpaid" indebtedness on the date the transaction closed. On the date of the NOI, Plaintiff's "unpaid indebtedness" totaled $2,128.75, comprised of past due payments, late charges, and repossession fees, while his overall "indebtedness" to M&T was, of course, much larger. *See* Compl. Ex. 2.

This distinction between "indebtedness" and "unpaid indebtedness" is required by the fundamental canon of statutory construction that requires courts to construe statutes to give each word its own effect. "It is 'a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Mendes v. Filip*, 554 F.3d 335, 341 (2d. Cir. 2009) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)); *see also Hinton v. S.C. Dep't of Prob., Parole, and Pardon Servs.*, 592 S.E.2d 335, 342 (S.C. Ct. App. 2004) (applying "the rule that we should seek a construction that gives effect to every word of a statute rather than adopting an interpretation that renders a portion meaningless"). Under Plaintiff's argument, there is no difference between "indebtedness" and "unpaid indebtedness." This reading of section 9-613 of the Code would render the word "unpaid" superfluous, void, or insignificant, and is accordingly prohibited.

*Second*, Plaintiff's argument fails because it would be both factually erroneous and materially misleading to include the *total* indebtedness in the NOI. Plaintiff would, under Plaintiff's approach, need to pay his *entire indebtedness* in order to reclaim his vehicle. This would have the potential to mislead Plaintiff as far as his obligations concerning his vehicle.

Moreover, M&T did not and was not required to accelerate the Plaintiff's debt. Pursuant to the RICSA, Plaintiff's debt was not automatically accelerated upon default. Instead, M&T had the *option* to accelerate the debt. The RICSA states:

> DEFAULT: You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
> A. You fail to make a payment as required by this Contract. . . .
>
> REMEDIES: If you are in default on this Contract, we have, subject to any right to cure that you may exercise, all of the remedies provided by law and this Contract:
> A. We *may* require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, credit service charges and all other agreed charges.

Def.'s Mot. to Dismiss, Ex. B, at 2 (emphasis added). The RICSA clearly allows M&T to accelerate Plaintiff's payment, but does not do so automatically upon default, as is the case in some consumer and commercial loans. Plaintiff has conceded in his Opposition Brief that the payment was not accelerated: "Since the redemption period extends until the sale, it follows that *his debt was not accelerated prior to sale.*" Plaintiff's Opp'n Br. at 16 (emphasis added). Indeed, the post-sale correspondence, dated September 21, 2010, which Plaintiff improperly attaches to his Brief as Exhibit 1, only further emphasizes the correctness of M&T's argument. The September 21, 2010 letter states that the total amount due as of that date is $41,963.82 because at that point, the debt has been accelerated. *Id.* Ex. 1.

Since Plaintiff's debt was not accelerated before the September 15, 2010 auction, on July 29, 2010, the date the NOI was sent, Plaintiff's "unpaid indebtedness" was not $55,580.64. Instead, his unpaid indebtedness was the amount stated in the NOI: $2,128.75. This was the "unpaid" amount that Plaintiff would have needed to pay, prior to the auction, to become current with his payments and redeem the vehicle. To report an unpaid indebtedness of $55,580.64 on the date of the NOI would have been inaccurate and potentially misleading—and unnecessarily discouraging to M&T's borrower. A recipient of such a notice would conclude that the debt had been accelerated and that the only way to redeem the vehicle would be to pay the full outstanding contract balance, which was not the case here. And this is exactly the type of misleading information that secured parties are prohibited from including in their notices. *See* S.C. Code Ann. § 36-9-614(5) (stating that a notice that includes misleading errors is insufficient).

*Finally,* M&T's decision not to accelerate the debt prior to the date of sale provides borrowers with a better opportunity to cure their default and redeem their vehicles. The NOI in this case presented an accurate picture of Plaintiff's financial reality. Plaintiff could have redeemed his vehicle up until the date of the sale by paying his *unpaid* indebtedness, which at that time was only $2,128.75.

Plaintiff's attempts to bolster this weak argument only serve to muddy the issue with semantic distinctions that are ultimately meaningless. Plaintiff cites to Section 9-210 of the Code, which allows a debtor to request an accounting at any time. However, unlike Section 9-613, which provides for an "accounting *of the unpaid indebtedness*," S.C. Code Ann. § 36-9-613(1)(D), the comment to section 9-210 cited by Plaintiff, on the other hand, refers to "information concerning the *secured* indebtedness." *Id.* § 36-9-210 cmt. 2. "Secured

indebtedness" is a broader term than "unpaid indebtedness," which makes sense given that section 9-210, which deals with pre- and post-default, is broader than section 9-613. Plaintiff's attempt to conflate the two accordingly must fail.[1]

### B.  The Accounting Provided to Plaintiff Was Sufficient.

Plaintiff next asks the Court to hold that providing an accounting in the NOI—as opposed to only stating that the consumer has a right to obtain an accounting—violates section 9-613 of the Code. Plaintiff cites no authority for his suggested holding that providing an accounting, as opposed to saying there is a right to an accounting, is a material Code violation.[2]

#### 1.  *Parks v. CNAC-Joliet*

Plaintiff relies heavily on *Parks v. CNAC-Joliet, Inc.*, 886 N.E.2d 376 (Ill. Ct. App. 2008), a decision that has never been followed by any court. In *Parks*, the plaintiff entered into two loans, i.e., a loan for an unsecured down payment that she had not been able to pay in full at

---

[1]  Plaintiff's other semantic argument concerns the difference between the amount "due" and the amount "owed." Plaintiff points to that fact that the Code's sample notice uses the language "If you want us to explain . . . the amount you owe," as opposed to "the amount due" as is used in M&T's NOI. Plaintiff's Opp'n Br. at 12. This is a distinction without a difference. Plaintiff provides no support from the Code or case law concerning the difference between the amount "owed" and the amount "due." The Code never defines either term and only ever uses the word "owe" in section 9-614's (completely optional) sample notice. S.C. Code Ann. § 36-9-614(3).

[2]  M&T has not been able to identify any published South Carolina authority relating to this specific issue. Plaintiff cites *Brockbank v. First Capital*, 534 S.E.2d 688, 694 (S.C. 2000), for the proposition that a secured creditor must "scrupulously adhere" to the notice provisions of the Code. However, *Brockbank* was decided prior to the adoption of revised sections 9-613 and 9-614 and thus says nothing about either section and does not address the sufficiency of the content of the notice at issue. Indeed, the notice provision in *Brockbank* is completely different from that in this case. It states, in relevant part:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made must be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent.

S.C. Code. Ann. § 36-9-504(3) (1999).

the time of purchase and a secured loan for the balance of the vehicle purchase price. *Id.* at 587-90. While the plaintiff was still current with the regular, secured loan payments, she was late on one of the $200 down payment installments, and the creditor declared a default. *Id.* at 588. The notice of intent to sell the collateral provided only the "unpaid contract balance" and storage fees. *Id.* at 590.

In ruling in favor of the plaintiff, the court emphasized that the plaintiff had not defaulted on the secured transaction because only the unsecured down payment installment was late. *Id.* Accordingly, the repossession violated the Code. Furthermore, "if more details had been provided in the notice, then both defendant and Ms. Parks could have discovered the secured $9314.17 loan was not in default." *Id.* at 592. Under the circumstances, "[c]ommon sense dictates that the components, required by the Code, should include something more than simply the bottom line or the balance due." *Id.* at 591. Clearly, the court wanted the debtor to know why there was a default and what needed to be paid to cure the default—*information that was provided to Plaintiff by M&T*. The NOI sent to Plaintiff does exactly that.

Further, the reach of the *Parks* decision is questionable given the compelling dissenting opinion by Justice Carter. *Id.* at 592-94 (Carter, J., dissenting). The dissenting opinion looks to section 9-102 for the definition of an accounting ("a written explanation of how the secured creditor 'figured the amount that [the debtor] owes'"), and concludes that "[t]hat is exactly what was provided in the present case." *Id.* at 594. The dissent further explained: "There is no support in the Code for the additional information the majority sets forth as necessary for a proper accounting. In fact, the majority cites no authority for its statement, other than a reliance upon common sense." *Id.*[3]

---

[3] The majority opinion acknowledged that in different circumstances, provision of an actual

2. *Mosca v. Brookline Bank*

Plaintiff also challenges *Mosca v. Brookline Bank*, which declined to follow *Parks*, for the proposition that a notice that includes an actual accounting is sufficient under the Code. In *Mosca*, the Superior Court of Massachusetts held that a notice that provided less information than M&T's NOI was sufficient. *See* No. 07-771-G, 2009 WL 3779818 (Mass. Super. Ct. Jan. 26, 2009). The notice in *Mosca* stated:

> You may cure your default if we received certified funds totaling $9,587.13 within 20 days of the date of this letter. You will also be responsible for interest to the date of payment, together with all expenses incurred in this repossession. Please call for this amount.

*Id.* at 2. Referencing the UCC's definition of an accounting, the court concluded that the notice "sufficiently informed the plaintiff of her right to an accounting" because it stated "the amount in default and that the plaintiff would be responsible for interest and repossession expenses." *Id.* Further, the notice encouraged the plaintiff to call with questions. *Id.* The NOI sent to Plaintiff fulfills all of these goals.

Plaintiff takes issue with the fact that in *Mosca*, it is not clear whether the plaintiff's debt had been accelerated upon her default. Plaintiff's Opp'n Br. at 19. Regardless of whether the debt had been accelerated, the *Mosca* court was satisfied that the "notice stated *the amount in default*." 2009 WL 3779818, at 2 (emphasis added). Likewise here, the NOI stated the amount that Plaintiff was in default. That the *Mosca* court did not discuss whether Mosca's debt had been accelerated is irrelevant. Furthermore, we know that Plaintiff's debt had not been

---

accounting can be sufficient: "Under the proper circumstances, we could agree with Justice Carter's conclusion that an accurate accounting set forth on the face of a notice may excuse the omission of language explaining a consumer's right to an accounting." *Id.* at 592 (majority opinion).

accelerated and that it would have been incorrect and misleading to state that Plaintiff would have to pay the entire remaining balance of his contract in order to redeem the vehicle.

Plaintiff also argues that *Mosca* is of limited value because it "erroneously applied UCC § 9-613(3)," which is applicable to non–consumer goods transactions. Plaintiff's Opp'n Br. at 19. However, even a cursory reading of *Mosca* makes clear that the court cites section 9-613(3) in an <u>entirely different section of the opinion</u>, totally unrelated to the issue of whether the accounting provided was sufficient under the Code. 2009 WL 3779818, at 3. Indeed, *Mosca* cites 9-613(3) in a discussion related to whether the notice adequately disclosed whether the sale was public or private. *Id.* This section of the opinion is completely irrelevant to our case and was not cited or relied upon by M&T. Further, it is questionable to what extent *Mosca* even relied on section 9-613(3), since after first citing the general proposition of section 9-613(3), the opinion never again cites or applies that section.[4]

## II. THE NOI PROVIDED PLAINTIFF WITH AN ACCURATE DESCRIPTION OF HIS LIABILITY FOR A DEFICIENCY.

Plaintiff's Opposition Brief is particularly confusing on the issue of whether the NOI was deficient for failing to provide Plaintiff with an accurate description of his liability for a post-sale deficiency. In any event, section 9-614 of the Code requires only that the notice include a "description of any liability for a deficiency of the person to which the notification is sent." S.C. Code Ann. § 36-9-614(1)(B).[5] The sample notice provides as an example of such a description:

---

[4] Plaintiff also alleges that *Mosca*'s "misreading" of *Parks* "seriously undermines [*Mosca*'s] persuasive force." Plaintiff's Opp'n Br. at 19. However, *Mosca*'s two citations to *Parks* are brief and they accurately represent the case. A more plausible reading of *Mosca* is simply that the court recognized the limitations of the holding in *Parks* and declined to follow it, especially in light of the very different factual record presented in *Mosca*.

[5] M&T has not been able to identify any published South Carolina authority interpreting this section of the Code.

> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you [*will or will not, as applicable*] still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

*Id.* § 36-9-614(3). By comparison, and using very similar language, M&T's NOI stated:

> Once the sale of the collateral has taken place, MTB will deduct from the sales proceeds all amounts owed to it. If there is still money owing after this is done, you are responsible to pay MTB this deficiency. If there is money left over, MTB will pay you this surplus.

Compl. Ex 2. Both the sample notice and Plaintiff's NOI make clear that after the sale, the debtor may still owe money to the creditor.[6] As with all aspects of the notice, a "particular phrasing of the notification is not required" for a notice to be satisfactory. S.C. Code Ann. § 36-9-614(2). None of Plaintiff's challenges to this aspect of the NOI is compelling.

Plaintiff makes a convoluted argument that the NOI's description of the deficiency is confusing because M&T had not yet accelerated Plaintiff's debt at the time of the NOI. In the four pages that Plaintiff dedicated to this issue in his Opposition Brief, he cites no authority for the proposition that a notice that uses this sort of language or that could *hypothetically* confuse the recipient is insufficient. Instead, Plaintiff cites two sources—a legal treatise and *Hassler v. Account Brokers of Larimer Cnty.*, 274 P.3d 547, 554 (Co. 2012) (en banc)—that discuss the timing of a secured party's decision to accelerate a debt. At issue in these sources is whether a secured party who has not accelerated a debt prior to sale can retain any surplus sale proceeds after recouping the pre-acceleration amount in default. Plainly, this is not the issue in this case and these sources are irrelevant.

---

[6] Further, M&T's notice makes clear that the "total amount due" at the time of the NOI could continue to increase over time. Compl. Ex. 2. The NOI provides an accounting of "the amount due *as of the date of this letter.*" *Id.* (emphasis added). And the NOI states that "[t]his amount is subject to change as additional payments become due, or costs continue to accrue." *Id.*

The Code requires only a "description of any liability for a deficiency," without any further requirements as to the content of the notice. S.C. Code Ann. § 36-9-614(1)(B). Plaintiff has offered no authority for his proposition that language such as that used in the NOI is insufficient. And the similarity of the language used in the NOI to the sample notice's language belies any such characterization.

### III. THE THIRD CIRCUIT'S DECISION IN *HUDSON* IS RELEVANT AND PERSUASIVE.

Finally, Plaintiff fails to distinguish *Hudson v. Eaglemark Savings Bank*, 475 F. App'x 423 (3d Cir. 2012), when he argues that the Third Circuit's holding with respect to *Twombly* and fact-pleading requirements only applies to claims involving the timing of the collateral sale. *See* Plaintiff's Opp'n Br. at 22-25. The Third Circuit's analysis begins with the correct statement that Pa. Cons. Stat. 9611(b) (which is identical to S.C. Code Ann. § 36-9-611(b)), requires "a reasonable authenticated notification of disposition" to be sent. *Id.* at 426. <u>Plaintiff agrees that section 9-611 applies to his claims as well.</u> *See* Plaintiff's Opp'n Br. at 4. The Third Circuit then held that "Hudson's conclusory assertion that the notice was unreasonable, without facts showing how he could not be expected to act in response to the notice *or take account of the notice*, was insufficient to state a claim upon which relief may be granted." *Hudson*, 475 F. App'x at 426-27 (emphasis added).

Although the Third Circuit was dealing with claims relating to timing of the collateral sale as well as a challenge based on sections 9613 and 9614, the Court's holding does not say, as Plaintiff suggests, that it applies only to issues relating to timing. Furthermore, Plaintiff pleads no facts to suggest that he did anything "to take account of the notice." *Id.* Plaintiff does not claim that he ever read, much less relied on, the NOI. To the contrary, Plaintiff does not dispute that he voluntarily surrendered the RV due to an inability to make payments, he never read the

- 11 -

NOI, he made no attempt to recover the RV before it was sold, and several months later, he filed for bankruptcy.

The Court should not excuse Plaintiff from pleading facts that show that he took "account of the notice." *Id.* The fact that the *Hudson* decisions also held that all aspects of *Hudson*'s notice substantively complied with the Pennsylvania equivalents of sections 9-613 and 9-614—a result which applies to Plaintiff's Notice too—does not mean that *Hudson*'s holding as to fact-pleading goes away. *Hudson* is the only federal trial or appeals authority cited by either party and the reasoning of both the District Court and Third Circuit is persuasive.

## IV.   CONCLUSION

For the foregoing reasons, along with those asserted in M&T's Memorandum of Law in Support Motion to Dismiss Plaintiff's Complaint, this Court should grant M&T's Motion to Dismiss and dismiss the Complaint with prejudice.

Respectfully submitted,

**REED SMITH LLP**

By: /s/ Steven Cooper

Steven Cooper (SC-4394)
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

Roy W. Arnold (*pro-hac vice* forthcoming)
Andrew J. Soven (*pro-hac vice* forthcoming)
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

*Attorneys for Defendant M & T Bank Corp.*

Dated: July 9, 2013