UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

JERRY PINKS,
*individually and on behalf of others similarly situated,*

                       **Plaintiffs,**

          - against -

M&T BANK CORPORATION,

                       **Defendant.**

**REPORT AND RECOMMENDATION**

**13 Civ. 1730 (LAK) (RLE)**

**To the HONORABLE LEWIS A. KAPLAN, U.S.D.J.:**

Plaintiff Jerry Pinks ("Pinks") filed his Complaint on March 14, 2013,[1] on behalf of himself and as a class action. He seeks mandatory, statutory damages for the alleged failure of Defendant M&T Bank Corporation ("M&T Bank") to comply with Sections 9-613 and 9-614 of the Uniform Commercial Code as adopted by the State of South Carolina ("the UCC") when it issued him a Notice of Repossession and Sale of Merchandise. Pinks alleges that M&T Bank failed to comply with the UCC because the Notice: 1) did not state that he is entitled to an accounting of his unpaid indebtedness or state the charge, if any, for such an accounting; 2) did not include a description of any liability for a deficiency; and 3) included additional information that materially misstated his redemption rights under the UCC.

This case was referred to the undersigned on March 26, 2013, for general pretrial and dispositive motions. (Docket No. 4.) Before this Court is M&T Bank's motion to dismiss Pinks's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Docket No. 7.)

---

[1] The Complaint is dated March 14, 2012, but it was filed on ECF on March 14, 2013.

For the reasons stated below, I recommend that M&T Bank's motion be **DENIED**.

## I. BACKGROUND

The facts herein were provided by Pinks in his Complaint, and are presumed true for the purposes of the motion. On August 6, 2008, Pinks entered into a Retail Installment Contract and Security Agreement ("RICSA") with Boat-N-RV Megastore in Ridgeland, South Carolina, to purchase a 2009 Big Country Fifth Wheel ("Big Country"), a consumer good. (Compl. ¶ 10.) The RICSA, attached to the Complaint as Exhibit 1, was then assigned to M&T Bank, which, under its terms, made M&T Bank the secured party. (*Id.* ¶ 11.) M&T Bank sent Pinks the Notice, attached to the Complaint as Exhibit 2, on or around July 29, 2010. (*Id.* ¶ 12.) The Notice stated that Pinks was in default under the terms of the RICSA, and as a result, M&T Bank had repossessed the Big Country (*Id.* ¶ 13) The Notice also stated that the Big Country was "subject to a private sale" on or after August 7, 2010. (*Id.*) Under a section titled "Notice of Right to Redeem," the Notice stated the following:

> At any time before the sale, you have the right to redeem (get back) the collateral by paying certified funds to MTB at the address listed below, for the full amount of all past due installment payments under your contract (including all late charges) and the costs of repossession, preparing, holding, and advertising the collateral for sale. The amount due as of the date of this letter is as follows:
> Past Due Payments On Your Loan: 990.50
> Accrued Late Charges: 138.25
> Repossession Fees: 1,000
> Total Amount Due: 2,128.75
> This amount is subject to change as additional payments become due, or costs continue to accrue. Any additional amount must be paid in order to redeem the collateral. Once the sale of the collateral has taken place, MTB will deduct from the sales proceeds all amounts owed to it. If there is still money owing after this is done, you are responsible to pay MTB this deficiency. If there is money left over, MTB will pay you this surplus. Exh. 2.

On or around September 21, 2010, M&T Bank sent Pinks a letter stating that the Big Country had been sold at a private auction on September 15, 2010. (*Id.* ¶ 14.)

## II. DISCUSSION

**A. Applicable Standards for Dismissal under Rule 12(b)(6)**

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). The test is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). The factual allegations in the complaint are presumed to be true, and all reasonable inferences are drawn in the plaintiff's favor. *See EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir. 2000).

Where a plaintiff proceeds *pro se*, a court must construe the complaint liberally and "interpret [it] to raise the strongest arguments that [it] suggest[s]." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). *See also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (holding that *pro se* complaints should be "held to less stringent standards than formal pleadings drafted by lawyers"). However, "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation . . . fails to state a claim under Rule 12(b)(6)." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) (quoting *Martin v. N.Y. State Dep't of Mental Hygiene*, 558 F.2d 371, 372 (2d Cir. 1978)); *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").

B.  **Pinks's Complaint States a Claim Pursuant to Rule 12(b)(6)**

    1.  **Pinks's Complaint states a claim regarding the Notice's failure to provide language that informed him of his entitlement to an accounting of his unpaid indebtedness.**

Pinks claims that the Notice does not comply with the UCC's requirements for notifications before disposition of collateral because it does not state that he is entitled to an accounting of his unpaid indebtedness or state the charge, if any, for such an accounting. Section 36-9-614 of the Commercial Code of South Carolina governs notifications of disposition before collateral for consumer goods transactions. S.C. Code Ann. § 36-9-614. Section 36-9-614(1)(A) states that notifications for consumer goods must include all of the information specified for notices for non-consumer goods in Section 36-9-613(1). S.C. Code Ann. § 36-9-614(1)(A). Section 36-9-613(1)(D) states that "[t]he contents of a notification of disposition are sufficient if the notification . . . states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting . . . ." S.C. Code Ann. § 36-9-613(1)(D). The South Carolina Commercial Code defines an accounting as "a record . . . authenticated by a secured party; indicating the aggregate unpaid secured obligations as of a date not more than thirty-five days earlier or thirty-five days later than the date of the record; and identifying the components of the obligations in reasonable detail." S.C. Code Ann. § 36-9-102.

M&T Bank argues that its Notice provided an actual accounting, and therefore it complied with the UCC, even though it did not contain the phrase, "you are entitled to an accounting of your unpaid indebtedness," or state the charge, if any, for such an accounting, as indicated. § 36-9-613(1)(D). (Defendant's Memorandum of Law (Def. Mem.), at 6-10.) The statute, however, does not provide for any alternative means of compliance. Moreover, the

4

South Carolina Code provides that a notice in a consumer goods transaction that does not contain information required by the statute is "insufficient as a matter of law." *See* S.C. Code Ann. § 36-9-614, cmt. 2.

M&T Bank argues that by providing an actual accounting, the Notice "went above and beyond the requirements of the UCC." (Def. Mem., at 6.) This Court disagrees. M&T Bank's argument appears to be based on the assumption that providing an actual accounting necessarily fulfills the requirement of the statute that the debtor be informed of their entitlement to an accounting, and also goes "beyond" by providing the accounting without the debtor first requesting it. However, providing an actual accounting does not fulfill the requirement of the statute. It is different for a debtor to receive an accounting than to be told he or she has the right to an accounting. Simply receiving an accounting does not inform the debtor that he or she was *entitled* to receive it. Informing the debtor of their entitlement to an accounting also has important practical effects. If the accounting provided is inaccurate, a debtor who has been informed of their entitlement to an accounting is at an advantage to one who has not been informed. The informed debtor can demand to have the inaccuracies corrected based on the entitlement, but the uninformed debtor may not have the knowledge to make such an argument, and as a result, may be less likely to contest any inaccuracies.

M&T Bank also argues that Section 36-9-614 states that "particular phrasing" of the notification is not required. S.C. Code Ann. § 36-9-614(2). However, the fact that no particular phrasing is required relieves M&T Bank of having to use the actual word "accounting," but does not relieve it of its obligation to comply with the statute's requirements. *See Gen. Elec. Capital Corp. V. NET Transp., Inc.*, 3:04CV316 (WWE), 2006 WL 3741828 (D. Conn. Dec. 18, 2006) (finding that notice did not have to use the word "accounting," as long as it "notified the debtors

of their right to request the specific amount owing by contacting certain GE Capital Employees").

M&T Bank further argues that its notice is sufficient because it is similar to the safe harbor notice provided in Section 36-9-614(3). That notice, in relevant part, contains the following phrasing:

> You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at [*telephone number*]. If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at [*telephone number*] [or write us at [*secured party's address*] and request a written explanation. [We will charge you $ for the explanation if we sent you another written explanation of the amount you owe us within the last six months.] If you need more information about the sale, call us at [*telephone number*] [or write us at [*secured party's address*]. S.C. Code Ann. § 36-9-614(3).

Section 36-9-614(3) does not require that this language be used, but rather specifies that it is sufficient. *Id.* The safe harbor notice is different from the Notice because it informs the debtor that he or she is entitled to an accounting. It does so in layman's terms by using the language "how we have figured the amount that you owe" in place of "accounting." There is no such language in the Notice. The Notice only states that Pinks may call if he has any questions about the notice, but does not state that he may call to find out how M&T Bank has "figured the amount" that he owes it. (Compl. Exh. 2.)

Even if an actual accounting were allowed in place of the notice of a right to an accounting, the accounting must be complete, and include the total indebtedness, not just the amount needed to redeem. The Notice's actual accounting only provides information on the amount Pinks must pay to redeem Big Country. (*Id.*) It does not provide information on the full amount of Pinks's liability, which was $55, 580.64 (Gsovski Decl., Exh. 1).

M&T Bank argues that an actual accounting of the amount needed to redeem Big Country is sufficient because the statute requires that a debtor be informed that they are entitled to an accounting of their "unpaid indebtedness." (Defendant's Reply Memorandum (Def. Reply), at 2-4.) M&T Bank submits that, under the canon of statutory construction, "unpaid indebtedness" must mean past due payments, otherwise the word "unpaid" would be superfluous. This argument is without merit. It would not make any sense to only provide an accounting with respect to past due payments, when a debtor is still liable for the full amount of his or indebtedness, and will be held liable for any deficiency after a sale of the repossessed consumer good. M&T Bank maintains that it would be confusing to include the total indebtedness as part of the accounting: "Plaintiff would, under Plaintiff's approach, need to pay his *entire indebtedness* in order to reclaim his vehicle." This argument is meritless. M&T Bank could supply Pinks with information about the amount he needed to pay to redeem Big Country and information about his total liability and properly distinguish the two amounts.

In addition to its arguments, M&T Bank cites only one case to supports its claim that the Notice complied with the UCC. In *Mosca v. Brookline Bank*, the Superior Court of Massachusetts upheld a notice that stated: "You may cure your default if we receive certified funds totaling $9,58713 within 20 days of the date of this letter. You will also be responsible for interest to the date of payment, together with all expenses incurred in this repossession. Please call for this amount." *Mosca v. Brookline Bank*, No. 07-771-G, 2009 WL 3779818, at *2 (Mass. Super. Ct. Jan. 26, 2009). *Mosca* in turn relies on a case decided by the Illinois Appellate Court, *Parks v. CNAC Joliet, Inc.*, 381 Ill. App. 3d 586 (Ill. App. Ct. 2008).

In *Parks v. CNAC Joliet, Inc.*, the court rejected as insufficient a notice which stated, "To REDEEM your vehicle, you must pay the amount shown below to CNAC at its address shown

above," and then listed figures for the "unpaid contract balance," "delinquency and collection charges," "expenses of retaking the vehicle," "expenses of repairing the vehicle," "expenses of storing the vehicle," and "Other (Specify): Mechanical Fees" which it summed up to a total of "$9,639.17." 381 Ill. App. 3d 586, 590 (Ill. App. Ct. 2008). The court found that such notice "does not advise Miss Parks of her right to obtain information revealing how defendant 'figured the amount' necessary for her to redeem the vehicle because the notice was devoid of transactional details." *Id.* at 589. It did not rule on the question of whether an actual accounting can ever be sufficient enough to satisfy the UCC's requirements that the debtor be informed of their entitlement to an accounting: "Under the proper circumstances, we could agree with Justice Carter's conclusion that an accurate accounting set forth on the face of a notice may excuse the omission of language explaining a consumer's right to an accounting." *Id.* at 592. Instead, it found that the notice at issue was so "devoid of detail," that it did not "create[] the correct circumstances to develop such a rule." Relying on the definition of accounting in the UCC, cited by M&T Bank, *id.* at 591, the court reasoned that the notice was not "sufficiently detailed to constitute an accurate 'accounting' as defined by the Code" because it does not "identif[y] the components of the debtor's obligations in reasonable detail." It held that "[c]ommon sense dictates that the components . . . should include something more than simply the bottom line or the balance due," and suggested that they include "financial details such as: (1) the amount borrowed by the consumer and secured by the collateral for repayment; (2) the amounts paid by the consumer towards the secured debt; (3) the identification of any defaulted payments, and (4) any additional charges incurred by the secured creditor." *Id.* at 591. As the court makes clear, before any accounting could be even considered in lieu of notice of a right to an accounting, such accounting must be comprehensive. The Notice fails this threshold.

M&T Bank argues that any reliance on *Parks* should be limited because the case involves special circumstances. (Defendant's Reply Memorandum of Law ("Def. Reply"), at 9-10.) The existence of special circumstances in relevant precedent, however, counsels against the granting of a motion to dismiss. The parties should be allowed to develop a record to assess what circumstances should support a substitution of the requirements. M&T Bank also argues that the holding of *Parks* is limited because of its strong dissent. This argument is without merit.

The Court finds *Coxall v. Clover Commercial Corporation* persuasive. In *Coxall*, the Kings County Civil Court found that a letter that informed the debtor that he had a right to redeem his vehicle by paying a certain amount "did not provide [the debtor] with all of the information it was required to provide" because it did not "state[] that [he] was 'entitled to an accounting of the unpaid indebtedness' nor . . . 'the charge, if any, for an accounting.'" 4 Misc. 3d 654, 659-60 (Civ. Ct. 2004).

M&T Bank also relies on *General Electric Capital Corporation v. Net Transportation, Inc.*, 3:04CV316 (WWE), 2006 WL 3741828 (D. Conn. Dec. 18, 2006) in which the court upheld a notice which "provided the debtor with contact information." (Def. Mem., at 8.) The notice in that case did more than simply provide contact information: it "notified the debtors of their right to request the specific amount owing by contacting certain GE Capital employees." 2006 WL 3741828, at *2. This notice therefore informed the debtor in laymen's terms that he or she could get an accounting.

M&T Bank also argues that "the sufficiency of a notice should be assessed based on the purpose the notice is designed to serve." (Def. Mem., at 9.) To support this point, M&T Bank cites cases that do not involve the Uniform Commercial Code: *Reuter v. Citizens & N. Bank*, 599 A.2d 673, 678-79 (Pa. Sup Ct. 1991), *First Bank & Trust Co. of Ithaca, N.Y. v. Mitchell*, 473

9

N.Y.S.2d 697, 702 (Sup. Ct. 1984), and *Crane v. Citicorp National Services*, 437 S.E.2d 50, 52 (S.C. 1993). These cases also all involve oral notice and non-consumer goods, and were decided prior to the 2000 revisions to Article 9 of the Uniform Commercial Code, which were adopted by the State of South Carolina. *See* Unif. Commercial Code Refs & Annos. These cases are therefore not relevant to deciding the issue in this case. Therefore, the Court finds that Pinks has stated a claim regarding the Notice's failure to provide language that informed him of his entitlement to an accounting of his unpaid indebtedness.

The Court does not reach Pinks's other bases for challenging the Notice, but does note that when the Notice states that once a sale has taken place, "MTB will deduct from the sales proceeds all amounts owed to it," (*id.*), it is not clear what the phrase "all amounts owed to it" means.

### 2. Pinks Complaint need not allege that the defects in the notice were material.

M&T Bank argues that Pinks's Complaint should be dismissed because he fails to allege any facts to suggest that he was "affected by the alleged defects" in the Notice. (Def. Mem., at 11-13.) M&T Bank relies on *Hudson v. Eaglemark Savings Bank, et al.*, in which the court found that the plaintiff failed to state a claim that his notice was not sent within a reasonable period of time because he did not allege facts to support his claim, including, for example, "facts suggesting that [he] could not act on or take account of the notification in a ten day period." CIV.A. 10-6994, 2011 WL 1755540, at *5 (E.D. Pa. May 9, 2011), *aff'd*, 475 F. App'x 423 (3d Cir. 2012). The Third Circuit affirmed, stating that "Hudson's conclusory assertion that the notice was unreasonable, without facts showing how he could not be expected to act in response to the notice or take account of the notice, was insufficient to state a claim upon which relief

10

may be granted." 475 F. App'x 423, 426-27 (3d Cir. 2012). The trial court had also dismissed Hudson's claims that the contents of the notice were deficient under the UCC because it found the Notice in full compliance. *Hudson*, 2011 WL 1755540, at *5-6.

The question before the court in *Hudson* was whether his notice had been sent a reasonable time before repossession. The claim was based on Sections 9611 and 9612 of the UCC as adopted by Pennsylvania, which state respectively that a creditor must send "a reasonable authenticated notification of disposition," and that "whether a notification is sent within a reasonable time is a question of fact." 13 Pa. Const. Stat. Ann. §§ 9611-12. Because the UCC did not define "a reasonable time," the trial court held that it was necessary for Hudson to allege facts as to how "he could not act on or take account of the notification." 2011 WL, 1755540, at *5.

Pinks has alleged that the *contents* of the Notice were deficient. (Compl. ¶ 18.) The UCC in this case does not state only that a notice must be reasonable, but rather lists what it must include. S.C. Code Ann. §§ 36-9-613(1), 36-9-614(1)(A). A notice that does not contain the required contents is "insufficient as a matter of law." S.C. Code Ann. § 36-9-614, cmt. 2. Unlike the plaintiff in *Hudson*, Pinks was not required to allege an element of reasonableness. He need only allege non-compliance. 2011 WL, 1755540, at *5.

M&T Bank maintains that *Hudson*'s holding that plaintiffs must allege that they were unable to act on a notice applies to the contents of the notice as well as its timeliness. (Def. Mem., at 16.) It argues that because the court in *Hudson* relied on Section 9611, which applies to both the timeliness and the contents of a notice, its holding must apply to both the contents and timeliness of a notice. (Def. Reply, at 14.) This argument is meritless. The trial court in *Hudson* clearly analyzed the timeliness of the notice and the contents of the notice separately.

11

2011 WL 1755540. The fact that the court relied on a section of the UCC that applies to both does not warrant the conclusion that the court's holdings with respect to timeliness should apply to the contents of the notice.

### III. CONCLUSION

For the foregoing reasons, I recommend that M&T Bank's motion to dismiss be **DENIED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: March 13, 2014**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge