**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JERRY PINKS, individually and on behalf of
others similarly situated,

                    Plaintiff,

                    vs.

M & T BANK CORP.,

                    Defendant.

Index No.: 13-cv-1730

---

**DEFENDANT M&T BANK CORPORATION'S OBJECTIONS UNDER FEDERAL
RULE OF CIVIL PROCEDURE 72(a) TO MAGISTRATE JUDGE ELLIS' REPORT
AND RECOMMENDATION RELATING TO DEFENDANT'S RULE 12(B)(6) MOTION**

**REED SMITH LLP**
Steven Cooper
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for M&T Bank Corp.*

Dated:  May 1, 2014

## INTRODUCTION

Pursuant to the Court's Order dated April 30, 2014, Defendant M&T Bank Corporation ("M&T") hereby objects, pursuant to Fed. R. Civ. P. 72(a), to the March 13, 2014 Report and Recommendation ("Report") of Hon. Magistrate Judge Ronald L. Ellis recommending that M&T's Motion to Dismiss be denied in all respects.

Magistrate Ellis's Report involves an issue of first impression under South Carolina law, specifically whether M&T's notice of intent to sell collateral ("NOI") violated the Code when it provided Plaintiff Jerry Pinks with an accounting of his unpaid indebtedness, instead of telling Plaintiff that he was entitled to ask M&T to give him the accounting that M&T voluntarily provided. *See* S.C. Code. Ann. § 36-9-631(1)(D).   Respectfully, M&T contends that the Report contains three fundamental errors.

*First,* the Report errs in concluding that M&T did not provide Plaintiff with an "accounting" as the term is defined by the Code.  Although M&T indisputably fulfilled the purpose of the notice – by telling Plaintiff what he needed to pay M&T to get his motor home back before it would be sold at auction – the Magistrate went beyond what the Code requires. Specifically, the Magistrate found that to provide an accounting for purposes of the Code M&T also needed to tell Plaintiff, in the pre-sale notice of intent to sell, the total amount due under the loan (as opposed to just what was needed to pay to get the motor home back).  This requirement cannot be found anywhere in the Code, which defines an accounting as a description of the debtor's "*unpaid* indebtedness," not his "total indebtedness."  Allowing this new, judicially-crafted requirement to be imposed without further scrutiny will engender potential confusion and uncertainty on the part of creditors and debtors.

The Magistrate's holding, in addition to being contrary to the language of the Code, also ignores the fact that the pre-sale notice of intent to sell is consistent with the structure of the Code provisions relating to post-repossession sale of collateral.  After collateral is repossessed (or, as in this case, voluntarily surrendered), the Code first requires a notice of intent to sell the collateral.  This notice is the borrower's last and best chance to pay what must be paid to obtain a return of the vehicle.  If the borrower takes no action, the creditor sells the collateral and, under the Code, the creditor *then* must send the borrower a second notice which sets for the total remaining on the loan after deducting the amount received from the sale of the collateral and including sale costs.  This second notice, commonly referred to as a "deficiency notice," tells the consumer the total remaining on the loan.  Plaintiff does not dispute that the deficiency notice sent to him by M&T after the motor home was sold provided him with this information.   Neither Plaintiff nor the Report cites any authority for the proposition that this information needs to be provided earlier, or *twice*, and finding as much is inconsistent with the two distinct notices contemplated by the Code.

*Second,* the Report errs in finding that a notice that provides an accounting to a borrower instead of telling the borrower that he has a "right to an accounting" violates the Code.  Although the Report claims to interpret the Code with an eye toward protecting consumer interests, it does just the opposite.  A borrower such as Plaintiff has a very short time to act to prevent the sale of a repossessed vehicle.  Rather than forcing a borrower with a genuine interest in redeeming the vehicle to ask its creditor for the amount needed to prevent a sale, M&T's notice did away with that burden and proactively told Plaintiff exactly the amount that was needed to prevent a sale. (As it turns out, the language of the notice in this case was immaterial to Plaintiff since he does not contend he read it or that he had any interested in redeeming the motor home he voluntarily

surrendered).   Respectfully, the Magistrate incorrectly interpreted the Code, and in a way that disfavors providing consumers with the single fact they most need to know – the amount they must pay to get their car back (and when the car will be sold).

White and Summers make clear that "[t]he purpose of the notice is to give the debtor an opportunity either to discharge the debt and redeem the collateral, to produce another purchaser or to see the sale is conducted in a commercially reasonable manner."   4 White, Summer & Hillman, *Uniform Commercial Code* § 34-21 (6th ed. 2013).   M&T's notice to Plaintiff satisfied this purpose completely.

*Third*, and finally, the Report erred by failing to address M&T's arguments for dismissal of Plaintiff's allegations of other notice deficiencies.   The notice accurately provided the required information describing any liability for any deficiency and the debtor's redemption rights.   For all these reasons, M&T's Motion to Dismiss should have been granted.

<u>SUMMARY OF RELEVANT FACTS</u>

On August 6, 2008, Plaintiff entered into a Retail Installment Contract and Sales Agreement ("RICSA") to purchase a Big County Fifth Wheel (the "Vehicle").   Compl. ¶ 10.   The RICSA was assigned to M&T.   Compl. ¶ 11.   On July 19, 2010, Plaintiff sent M&T a letter indicating his desire to voluntarily surrender the Vehicle.

On July 29, 2010, M&T sent Plaintiff the NOI, a copy of which is attached to the Complaint as Exhibit 2.   Compl. ¶ 12.   The NOI explained that because Plaintiff was in default under the RICSA, M&T intended to sell the vehicle by private sale on or after August 7, 2010.   Compl. Ex. 2.   The NOI also explained the steps Plaintiff could take to redeem the Vehicle, what would occur if the Vehicle sold for an amount less than Plaintiff owed M&T, and encouraged Plaintiff to contact M&T at a toll free telephone number with any questions.   *Id.*

Plaintiff's Complaint alleges that the NOI violated the Code by failing to set forth or misstating information that must be provided to a debtor before collateral is sold.  Magistrate Ellis's Report addresses only one of the alleged defects in the NOI, namely whether Plaintiff states a claim for relief under the Code as a result of M&T's alleged failure to state in the NOI that Plaintiff was "entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting."  S.C. Code. Ann. § 36-9-631(1)(D).

I.   **THE ACCOUNTING PROVIDED BY M&T WAS
     SUFFICIENT AND FULFILLED THE PURPOSES OF THE CODE**

The conclusions contained in the Report are subject to *de novo* review.  *See* Fed. R. Civ. P. 72(b)(3).

In South Carolina, the rights and obligations of a secured creditor with respect to the default and enforcement of a security interest are governed by Article 9, Chapter 6 of the Code. Under South Carolina law, a secured party has the right to repossess and sell collateral after a debtor's default.  S.C. Code Ann. § 36-9-610(a).  Every aspect of the disposition of the collateral must be "commercially reasonable." *Id.* § 36-9-610(b).  After the repossession, the secured party must send the debtor "a reasonable authenticated notification of disposition." *Id.* § 36-9-611(b). Section 9-613 sets forth the notice requirements for non–consumer goods transactions subject to Article 9 of the UCC.  Section 9-614 incorporates the notice requirements of Section 9-613(1) and sets forth additional requirements for consumer goods transactions. *Id.* §§ 36-9-613, 614.

The Code provides for a two-step process for repossession and disposition of secured collateral.  First, the secured creditor must provide the debtor with a notice informing the debtor of the repossession and the planned disposition of the collateral. *Id.* §§ 36-9-613, 614.  The purpose of that notice is to allow the debtor to redeem the collateral, find another buyer, or monitor the sale. *See Crane v. Citicorp National Services*, 437 S.E.2d 50, 52 (S.C. 1993),

*superseded by statute on other grounds*.[1]   Second, after the disposition of the collateral, the secured creditor must provide the debtor with a notice informing the debtor that the collateral has been disposed of and the amount of any post-disposition surplus or deficiency, among other information.  S.C. Code Ann. § 36-9-616.

At issue in this case and the Report is only the first step in the process, *i.e.,* the post-repossession notice of intended disposition of the collateral.  Section 9-613(1)(D) provides that the notice state "that the debtor is entitled to an accounting of his unpaid indebtedness and state[] the charge, if any, for an accounting." S.C. Code Ann. § 36-9-613(1)(D).  As noted above, this provision applies to commercial and consumer transactions.

The NOI sent to Plaintiff states:

The amount due as of the date of this letter is as follows:

|  |  |
|---|---|
| PAST DUE PAYMENTS ON YOUR LOAN: | $  990.50 |
| ACCRUED LATE CHARGES: | $  138.25 |
| REPOSSESSION FEES: | $1,000.00 |
| TOTAL AMOUNT DUE: | $2,128.75 |

This amount is subject to change as additional payments become due, or costs continue to accrue.  Any additional amount must be paid in order to redeem the collateral.

Compl. Ex. 2.  Code section 9-102 defines the terms used in Sections 9-613 and 9-614.

"Accounting" is defined, in relevant part, as "a record . . . indicating the aggregate unpaid secured obligations . . . and identifying the components of the obligations in reasonable detail." S.C. Code Ann. § 36-9-102(a)(4).

The NOI provided this information.   The NOI stated the total amount due (*i.e.*, the aggregate unpaid secured obligations), and identified the components of such in reasonable detail

---

1   *Crane* is discussed in greater detail, *infra*.

(*i.e.*, past due payments, late charges, and repossession fees).  Compl. Ex. 2.  The NOI further clarified that the amount was subject to change as additional payments came due.  The NOI also provided a toll free telephone number and instructed Plaintiff to contact M&T "immediately" if he wished to redeem the collateral, or if he had "any questions regarding this notice."  *Id.* Plaintiff does not allege that any fees or charges assessed by M&T following that sale of the Vehicle at auction were inaccurate, or not disclosed in the NOI, or that he ever contacted M&T after he received the NOI.

Both the Report and Plaintiff take issue with the specific information provided in NOI. The Report concludes that "[e]ven if an actual accounting were allowed in place of the notice of a right to an accounting, the accounting must be complete, and include the *total indebtedness*, not just the amount to redeem."  Report at 6 (emphasis added).  Respectfully, this conclusion is erroneous based on both the language and the purpose of the Code.

First, Section 9-613 of the Code requires only that the NOI state that the debtor is entitled to an "accounting of the *unpaid* indebtedness," not the *total* indebtedness as the Report and Plaintiff both assert.  The key to understanding this issue is the word "unpaid" and the context in which it is used by the Code.  A debtor's "unpaid indebtedness" can, and often will, be different than the debtor's ***total*** "indebtedness."  For example, the day after Plaintiff signed the RICSA, he was indebted to M&T for the total amount of $55,462 (principal plus interest, less payments). *See* Def.'s Mot. to Dismiss, Ex. B.  Because no payment was past due as of that date, there was no "unpaid" indebtedness on the date the transaction closed.  However, as of the date of the NOI, Plaintiff's "**unpaid** indebtedness" totaled only $2,128.75, comprised of past due payments, late charges, and repossession fees, while his total "indebtedness" to M&T was, of course, still much larger.  *See* Compl. Ex. 2.

This distinction between "indebtedness" and "unpaid indebtedness" is required by the fundamental canon of statutory construction that requires courts to construe statutes to give each word its own effect.  "It is 'a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"  *Mendes v. Filip*, 554 F.3d 335, 341 (2d. Cir. 2009) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)); *see also Hinton v. S.C. Dep't of Prob., Parole, and Pardon Servs.*, 592 S.E.2d 335, 342 (S.C. Ct. App. 2004) (applying "the rule that we should seek a construction that gives effect to every word of a statute rather than adopting an interpretation that renders a portion meaningless").

According to the Report and Plaintiff, there is no difference between "indebtedness" and "unpaid indebtedness."  This reading of section 9-613 of the Code would render the word "unpaid" superfluous, void, or insignificant, and is accordingly prohibited under basic rules of statutory construction.

The conclusion that the NOI should have included the *total* indebtedness also fails because, in addition to being factually erroneous, it is contrary to the purpose of the Code.  Including the total indebtedness would indicate that the Plaintiff might need to pay his *total indebtedness* in order to reclaim his vehicle. This would have the potential to mislead Plaintiff as far as how to recover possession of his vehicle.

Relatedly, M&T did not and was not required to accelerate the Plaintiff's debt.  Pursuant to the RICSA, Plaintiff's debt was <u>not</u> automatically accelerated upon default.  Instead, M&T had the *option* to accelerate the debt.  The RICSA states:

> DEFAULT:  You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
>
>    A.  You fail to make a payment as required by this Contract. . . .

> REMEDIES:  If you are in default on this Contract, we have, subject to any right to cure that you may exercise, all of the remedies provided by law and this Contract:
>
> > A.  We *may* require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, credit service charges and all other agreed charges.

Def.'s Mot. to Dismiss, Ex. B, at 2 (emphasis added).  The RICSA clearly allows M&T to accelerate Plaintiff's payment, but does not do so automatically upon default, as is the case in some loans.[2]

Because Plaintiff's debt was not accelerated as of, the date the NOI was sent, Plaintiff's "unpaid indebtedness" was not $55,580.64.  Instead, his unpaid indebtedness was the amount stated in the NOI: $2,128.75.  This was the "unpaid" amount that Plaintiff would have needed to pay, prior to the auction, to become current with his payments and redeem the vehicle.  To report an "unpaid indebtedness" of $55,580.64 on the date of the NOI would have been inaccurate and potentially misleading—and unnecessarily discouraging to the borrower.  A recipient of such a notice would conclude that the debt had been accelerated and that the only way to redeem the vehicle would be to pay the full outstanding contract balance, which was not the case here.  And this is exactly the type of confusing information that secured parties are prohibited from including in their notices.  *See* S.C. Code Ann. § 36-9-614(5) (stating that a notice that includes misleading errors is insufficient).

---

[2]  Plaintiff concedes in his Opposition Brief that the payment was not accelerated: "Since the redemption period extends until the sale, it follows that his debt was not accelerated prior to sale."  Plaintiff's Opp'n Br. at 16 (emphasis added).  Indeed, the post-sale correspondence, dated September 21, 2010, which Plaintiff attached to his Brief as Exhibit 1, only further emphasizes the correctness of M&T's argument.  The September 21, 2010 letter states that the total amount due as of that date is $41,963.82 because at that point, the debt had been accelerated.  *Id.*

The Report dismisses M&T's argument by noting that "M&T Bank could supply Pinks with information about the amount he needed to pay to redeem Big County and information about his total liability and properly distinguish the two amounts."  However, the issue here is not what information M&T *could* have provided, it is whether the information provided by M&T satisfied the requirements and purpose of the Code.  Section 9-613 speaks only of the "*unpaid* indebtedness," and that is precisely the information M&T provided to Plaintiff.  This information was accurate and precisely that which was necessary to satisfy the purpose of the Code, i.e., to allow Plaintiff to reclaim the vehicle prior to disposition if he so desired (which he obviously did not in this instance).

The non-mandatory sample notice provided by the Code supports M&T's argument.  The "safe harbor" notice contains the following language:

> You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses.  To learn the exact amount you must pay, call us as [*telephone number*].  If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at [*telephone number*] [or write us as [*secured party's address*] and request a written explanation.

*Id.* § 36-9-614(3).  The sample notice tells the consumer that if he wants to find out what he needs to pay to "get the property back at any time before we sell it," he can contact the lender.  In this case, it is indisputable that M&T told Plaintiff exactly the amount he needed to pay to "get the property back before we sell it" -- $2,128.75.  The Magistrate's conclusion that M&T needed to tell Plaintiff the total amount still due on the loan (in excess of $50,000) is contrary to the language and purpose of the Code's pre-sale notice provision.

Both White & Summers and numerous courts have made clear that the sufficiency of a notice should be assessed based on the purpose the notice is designed to serve.  *See* White, Summer & Hillman, *Uniform Commercial Code* § 34-21 (6th ed. 2013) (purpose of notice is to

tell the consumer what he needs to do to "redeem the collateral"); *Reuter v. Citizens & N. Bank*, 599 A.2d 673, 678-79 (Pa. Super. Ct. 1991) (analyzing the sufficiency of a notice based on the purpose of the notice); *First Bank & Trust Co. of Ithaca, N.Y. v. Mitchell*, 473 N.Y.S. 2d, 697, 702 (Sup. Ct. 1984) ("All of the circumstances surrounding the giving of notice must be evaluated in light of the purpose of the notice requirement . . . ."). In *Crane v. Citicorp National Services*, the South Carolina Supreme Court explained that the purpose of the notice required by an analogous section of the UCC, prior to the 2001 revisions,[3] was to "allow the debtor to discharge the debt and redeem the collateral, produce another purchaser, or see that the sale is conducted in a commercially-reasonable manner." 437 S.E.2d 50, 52 (S.C. 1993), *superseded by statute on other grounds*.

Plaintiff has not, and cannot, allege that doing what M&T did—provide an actual accounting, free of charge—would interfere with the purpose of the notification, *i.e.*, enabling the Plaintiff to redeem the collateral, find another buyer, or monitor the sale. M&T's provision to Plaintiff of an actual accounting enabled Plaintiff to take any of these steps, if Plaintiff had actually desired to do so.

The NOI in this case presented an accurate picture of Plaintiff's financial reality. Plaintiff could have redeemed his vehicle up until the date of the sale by paying his *unpaid* indebtedness, which at that time was only $2,128.75. Plaintiff has not alleged that he desired or attempted to redeem the collateral at any time. In light of the purpose of the notification under Section 9-614, the NOI and its accounting were reasonable and sufficient.

---

3   The Revised Article 9 of the UCC became effective in July, 2001. *See Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 464 n.3 (S.C. 2004). Many of the revised sections are modeled on pre-revision sections. *See, e.g.*, S.C. Code Ann. § 36-9-625 cmt. 4 (noting that the section is "patterned on former Section 9-507(1)").

## II.    THE LIMITED AUTHORITY ON THE
##         ISSUE SUPPORTS M&T'S POSITION

The Report relies heavily on the majority opinion in *Parks v. CNAC-Joliet, Inc.*, 886 N.E.2d 376 (Ill. Ct. App. 2008).  In *Parks*, the plaintiff entered into two loans, i.e., a loan for an unsecured down payment that she had not been able to pay in full at the time of purchase, and a secured loan for the balance of the vehicle purchase price.  *Id.* at 587-90.  Although the plaintiff was still current with the regular, secured loan payments, she was late on one of the $200 down payment installments, and the creditor declared a default.  *Id.* at 588.  The notice of intent to sell the collateral disclosed the "unpaid contract balance" and storage fees.  *Id.* at 590.

The court ruled in favor of the plaintiff.  However, the main reason it did so was not the content of the notice, but the fact that the repossession was improper because the loan was not even in default. The court did say, in *dicta*, that "if more details had been provided in the notice, then both defendant and Ms. Parks could have discovered the secured $9,314.17 loan was not in default," but the principal grounds for the court's holding was that the notice violated the Code because the loan was not in default.  *Id.* at 592.

Furthermore, the *Parks* dissent correctly describes the purpose of the Code's requirement with respect to an accounting. Justice Carter's dissent looks to section 9-102 for the definition of an accounting ("a written explanation of how the secured creditor 'figured the amount that [the debtor] owes'"), and concludes that "*[t]hat is exactly what was provided in the present case*." *Id.* at 594 (emphasis added).  Justice Carter further explained:  "There is no support in the Code for the additional information the majority sets forth as necessary for a proper accounting. In

fact, the majority cites no authority for its statement, other than a reliance upon common sense."

*Id.*[4]

Indeed, in *Mosca v. Brookline Bank*, No. 07-771-G, 2009 WL 3779818 (Mass. Super. Ct. Jan. 26, 2009). the Superior Court of Massachusetts rejected the reasoning of the majority in *Parks* and held that a notice that provided less information than M&T's NOI was sufficient. *Id.* The notice in *Mosca* stated:

> You may cure your default if we received certified funds totaling $9,587.13 within 20 days of the date of this letter. You will also be responsible for interest to the date of payment, together with all expenses incurred in this repossession. Please call for this amount.

*Id.* at 2. Referencing the UCC's definition of an accounting, the court concluded that the notice "sufficiently informed the plaintiff of her right to an accounting" because it stated "the amount in default and that the plaintiff would be responsible for interest and repossession expenses." *Id.* Further, the notice encouraged the plaintiff to call with questions. *Id.* The NOI sent to Plaintiff fulfills all of these goals.

The Report did not meaningfully analyze *Mosca*. Regardless of whether the debt had been accelerated, the *Mosca* court was satisfied with the notice because the "notice stated *the amount in default*." 2009 WL 3779818, at 2 (emphasis added). Likewise, here, the NOI stated the amount that Plaintiff was in default and the "amount in default." *Id.* That the *Mosca* court did not discuss whether Mosca's debt had been accelerated is irrelevant. Furthermore, here, we know that Plaintiff's debt had not been accelerated and that it would have been incorrect and

---

[4] The majority opinion in *Parks* acknowledged that in different circumstances, provision of an actual accounting can be sufficient: "Under the proper circumstances, we could agree with Justice Carter's conclusion that an accurate accounting set forth on the face of a notice may excuse the omission of language explaining a consumer's right to an accounting." *Id.* at 592 (majority opinion).

misleading to state that Plaintiff would have to pay the entire remaining balance of his contract in order to redeem the vehicle.

Plaintiff argued that *Mosca* is of limited value because it "erroneously applied UCC § 9-613(3)," which is applicable to non–consumer goods transactions.  Plaintiff's Opp'n Br. at 19.  However, *Mosca* cites section 9-613(3) in an entirely different section of the opinion, totally unrelated to the issue of whether the accounting provided was sufficient under the Code.  2009 WL 3779818.   Indeed, *Mosca* cites 9-613(3) in a discussion related to whether the notice adequately disclosed whether the sale was public or private.  *Id.*  This section of the opinion is completely irrelevant and was not cited or relied upon by M&T.  Further, it is questionable to what extent *Mosca* even relied on section 9-613(3), since after first citing the general proposition of section 9-613(3), the opinion never again cites or applies that section.   Moreover, the "accounting" notice applies to consumer and consumer transactions.

Finally, the Report also cites to a New York trial court decision, *Coxall v. Clover Commercial Corp.*, 4 Misc. 3d 654, 659 (Civ. Ct. 2004), but *Coxall* does not explain what specific information was provided in the creditor's notice and is, thus, of limited value.

Whether a notice that provides an actual accounting instead of informing a debtor of his entitlement to an accounting is sufficient under the Code is a matter of first impression in South Carolina.  This Court has *de novo* review over the Report, and is free to be guided by whatever case law from other jurisdictions the Court finds to be most compelling.  M&T respectfully submits that the holdings of *Mosca* and the dissenting opinion in *Parks* provide the most sound analysis, and best reflect the language and intent of the Code.

### III.   THE REMAINDER OF PLAINTIFFS' ARGUMENTS THAT WERE
####      NOT ADDRESSED BY THE REPORT AND RECOMMENDATION ALSO FAIL

In Plaintiff's Complaint, he alleged two additional supposed deficiencies with M&T's Notice. The Report did not address these claimed deficiencies, *see* Report at 10, but as was explained in M&T's Motion to Dismiss, both arguments plainly fail. Therefore, these aspects of Plaintiff's Complaint also should be dismissed.

*First*, Plaintiff alleged that the NOI fails to comply with the UCC because it "lacks a description of any liability for a deficiency." The NOI includes a more than adequate description of any liability for a deficiency. The NOI sent to Plaintiff states:

> Once the sale of the collateral has taken place, MTB will deduct from the sales proceeds all amounts owed to it. *If there is still money owing after this is done, you are responsible to pay MTB this deficiency.* If there is money left over, MTB will pay you this surplus.

Compl. Ex. 2 (emphasis added). By comparison, the sample notice provided by the UCC states:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you [will or will not, as applicable] still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

S.C. Code Ann. § 36-9-614(3).

The language of the NOI is almost identical to that provided in the Code's sample notice, and a "particular phrasing of the notification is not required" for a notice to be satisfactory. *Id.* § 36-9-614(2). The NOI definitely placed Plaintiff on notice of his liability for any deficiency. Plaintiff has alleged no facts supporting his conclusory statement that the NOI lacks a description of liability for a deficiency. The NOI includes such a description.

*Second*, Plaintiff alleged that the NOI fails to comply with the UCC because it includes additional information that "materially misstates the debtor's redemption rights provided by way

of [Sections] 9-623(b) and (c)."  Plaintiff has not explained how the NOI has misstated his rights, or allege any facts that would support his legal conclusion.  Neither M&T nor the Court should be required to ascertain the unstated basis for Plaintiff's allegation, and for this reason alone this aspect of Plaintiff's claim should be dismissed.

Even more importantly, on its face, the NOI does *not* misstate the Plaintiff's redemption rights.  The NOI states:

> At any time before the sale, you have the right to redeem (get back) the collateral by paying . . . the full amount of all past due installment payments under your contract (including all late charges) and the costs of repossession, preparing, holding, and advertising the collateral for sale.

Compl. Ex. 2.  M&T's language concerning redemption rights is consistent with that provided by the sample notice related to redemption rights, *see* S.C. Code Ann. § 36-9-614(3) ("You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses."), and fully complied with the purpose of the UCC.

## CONCLUSION

For the reasons set forth above, M&T respectfully requests that this Court not accept the Report and grant M&T's Motion to Dismiss.

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Steven Cooper*
Steven Cooper
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212)-521-5450
Email: scooper@reedsmith.com
*Attorneys for M&T Bank Corp.*

Dated:  May 1, 2014