# United States District Court
# Southern District of New York

JERRY PINKS,
        individually and on behalf of others
        similarly situated,
*Plaintiffs,*

              *-against-*

M & T BANK CORP.,
*Defendant.*

No.: 1:13-cv-1370 – LAK-RLE

## MEMORANDUM OF POINTS AND AUTHORITIES

## IN OPPOSITION TO DEFENDANT'S "MOTION FOR PARTIAL JUDGMENT

## ON THE PLEADINGS" (Dkt. #53)

*(corrected copy)*

**HERZFELD & RUBIN, P.C**.
Daniel V. Gsovski (dg4413)
125 Broad Street
New York, New York 10004-1300
Telephone: (212) 471-8512
E-mail: dgsovski@herzfeld-
rubin.com
ATTORNEYS FOR PLAINTIFF
(additional counsel on signature
page)

November 17, 2014
*(corrected copy e-filed 11/19/14)*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.   M&T'S MOTION MUST BE DENIED UNDER *NECA-IBEW'S* "CLASS STANDING" TEST. ................................................................................................. 2

        *A. Pinks Is Not Required to Establish Article III Standing with Respect to the Class Claims.* ......... 2

        *B. Pinks' Complaint Establishes "Class Standing" Under NECA-IBEW.* ...................................... 5

        *C. NECA-IBEW's "Class Standing" Test Applies to All Class Actions.* ........................................... 7

    II.   M&T's MOTION ALSO FAILS UNDER THE "RULE 23 APPROACH." ..................... 8

    III. THE CASES M&T RELIES UPON ARE EITHER INAPPOSITE OR NOT CONTROLLING. ................................................................................................. 13

CONCLUSION .................................................................................................................. 16

**TABLE OF AUTHORITIES**

**Cases**

*Arreola v. Godinex*
    546 F.3d 788 (7th Cir. 2008) ................................................................................................. 11

*Avritt v. Reliastar Life Ins. Co.,*
    615 F.3d 1023 (8th Cir. 2010) ............................................................................................... 9

*Bais Yaakov of Spring Valley v. Houston Mifflin Harcourt Pub., Inc.,*
    2014 WL 3907995 (S.D.N.Y. Aug. 7, 2014)......................................................................... 10

*Blessing v. Sirius XM Radio, Inc.*
    756 F.Supp.2d 445 (S.D.N.Y. 2010)...................................................................................... 13

*Blum v. Yaretsky,*
    457 U.S. 99 (1982).......................................................................................................... 2, 4, 7

*Braden v. Wal-Mart Stores, Inc.*
    588 F.3d585 (8th Cir. 2009) .................................................................................................. 11

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
    504 F.3d 229 (2d Cir. 2007).............................................................................................. 9, 10

*DaimlerChrysler Corp. v. Cuno*
    547 U.S. 332 (2006) .............................................................................................................. 13

*Denney v. Deutsche Bank AG*
    443 F.3d 253 (2d Cir. 2006)................................................................................................... 9

*Fallick v. Nationwide Mut. Ins. Co.,*
    162 F.3d 410 (6th Cir. 1998) ................................................................................................. 11

*Gates v. United Health Ins. Co.*
    561 Fed. Appx. 73 (2d Cir. 2012)........................................................................................... 15

*Gates v. United Healthcare Ins. Co.*
    2014 WL 5800573 (S.D.N.Y. Nov. 7, 2014).......................................................................... 14

*Gratz v. Bollinger,*
    539 U.S. 244 (2003)........................................................................................................... 4, 8

*Gunther v. Capital One, N.A.*
    703 F. Supp. 2d 264 (E.D.NY. 2010) ..................................................................................... 15

*HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation,*
    1 F. Supp.3d 34 (E.D.N.Y. 2014) ........................................................................................... 15

ii

*In re Bupirone Patent Litig.*,
185 F.Supp.2d 363 (S.D.N.Y. 2002) ....................................................................... 12

*In re Frito-Lay North America, Inc. All Natural Litig.*
2013 W.L 4647512 (E.D.N.Y. Aug 29, 2013) ................................................... 10, 15

*In re G-Fees Antitrust Litig.*
584 F.Supp.2d 26, 46 (D.D.C. 2008) ....................................................................... 15

*In re Grand Theft Auto Video Game Consumer Litig. (No.II)*
2006 WL 3039993, (S.D.N.Y. Sept. 16, 2010) ......................................................... 12

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation*
1 F. Supp.3d 34 (E.D.N.Y. 2014) ............................................................................. 15

*In re Wellbutrin XL Antitrust Litig.*,
260 F.R.D. 143, 155 (E.D. Pa. 2009) ................................................................... 5, 15

*Jurgensen v. Felix Storch, Inc.*
2012 WL 2354247 (S.D.N.Y. June 14, 2012) .......................................................... 14

*Lauren v PNC Bank, N.A.*
296 F.R.D. 389 (W.D. Pa. 2014) .............................................................................. 15

*Lewis v. Casey,*
518 U.S. 343 (1996), ................................................................................................... 2

*Lujan v. Defenders of Wildlife,*
504 U.S. 555, 560-61 (1992) ...................................................................................... 3

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2010) ....................................................................................... 13

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs Co.*,
693 F.3d 145, 158 (2d Cir. 2012), cert. denied, 133 S.Ct. 1624 (2013) ........................ *passim*

*Parks v. Dicks Sporting Goods, Inc.*
2006 WL 1704477 (W.D.N.Y. June 15, 2006). ................................................... 14, 15

*Plumbers' Union Loc. No.12 Pension Fund v. Nomura Asset Accept. Corp.*,
632 F.3d 762 (1st Cir. 2011 ........................................................................................ 7

*Simington v. Lease Fin. Grp., L.L.C.*
2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2010) ................................................... 14

*Sosna v. Iowa,*
419 U.S. 393, 403 (1975) ..................................................................................... 9, 10

*Temple v. Circuit City Stores, Inc.*
   2007 WL 2790154 (E.D.N.Y. Sep. 25, 2007)...........................................................14

*Vt. Agency of Natural Res. v. U.S. ex rel. Stevens,*
   529 U.S. 765 (2000)...........................................................................................11

**Statutes**

S.C. Code Ann § 36-9-614(1).................................................................................6

S.C. Code Ann. § 36-9-611...................................................................................5

**Rules**

Rule 23, Fed. R. Civ. P. ...............................................................................*passim*

**Other Authorities**

*McLaughlin on Class Actions* (10th ed.) (update through Dec. 2013) ........................12

Wright & Miller, *Fed. Prac. & Proc. Civ.* (3d ed. 2010) ...........................................11

## INTRODUCTION

Plaintiff Jerry Pinks ("Pinks") respectfully submits his Memorandum in Opposition to Defendant M&T Bank Corp.'s ("M&T's") Motion for Partial Judgment on the Pleadings, Dkt. #53. M&T moves for partial judgment pursuant to Rule 12(c), Fed.R.Civ.P., on all putative class claims which arose under the Uniform Commercial Code ("UCC") as adopted in states other than South Carolina. *Id,* at 4.

M&T offers no explanation why this Motion, filed twenty months after this litigation began, was not joined with its previous Rule 12(b)(6) Motion to Dismiss (Dkt. #7) or filed a year ago. Its avowed objective, which could not be clearer, is to attempt to delay a ruling on class certification and to throttle class discovery in aid of Pinks' motion for certification.[1] This gambit must fail.

M&T argues that Pinks, a South Carolina resident asserting a claim under South Carolina UCC law, cannot represent the class as pled. M&T contends that "Pinks' purported class should be dismissed insofar as he seeks to assert any claim under the [UCC] laws of any state other than South Carolina, because he lacks [Article III] standing to pursue any claim under the laws of states in which he does not reside or in which he suffered no injury." Dkt. #53, at 1.

This is not the law. In a recent controlling decision directly contrary to M&T's position – a decision that M&T never mentions – the Second Circuit firmly rejected the notion that a named plaintiff who has Article III standing to bring his own claim must also have Article III standing with respect to all class claims. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs Co.,* 693 F.3d 145, 158 (2d Cir. 2012), *cert. denied,* 133 S.Ct. 1624 (2013). Under *NECA-IBEW* the

---

[1] Dkt. #46, p. 2. ("Thus, *before* this Court can, or should, consider directing purported multi-state, "class-wide" discovery, Plaintiff must meet his burden of demonstrating his standing to assert claims on behalf of persons outside of South Carolina.") (emphasis original.)

relevant inquiry is whether: (1) the named plaintiff has Article III standing to assert his own claim(s) against the defendant, and (2) whether he has "class standing" to assert the class claims. Moreover, the Second Circuit in *NECA‑-IBEW* gutted the standing argument M&T makes in support of its Motion in reliance upon the very same Supreme Court cases which M&T now argues, without reference to *NECA-IBEW*, should be read to the contrary.[2] 693 F.3d at 158, 162.

In a holding which disposes of this Motion, the Second Circuit in *NECA-IBEW* ruled that a named plaintiff's "class standing" is established by applying a two pronged test. A named plaintiff has "plausibly pled" "class standing" when he alleges that:

> (1) he has personally suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendant.

*NECA-IBEW,* 693 F.3d at 162 (internal cites and quotation marks omitted.) Inasmuch as M&T's erroneous Article III standing argument fails, and Pinks will demonstrate that he has established "class standing" under the *NECA-IBEW* test, M&T's Motion must be denied.


**ARGUMENT**

**I.      M&T'S MOTION MUST BE DENIED UNDER *NECA-IBEW'S* "CLASS STANDING" TEST.**

*A.      Pinks Is Not Required to Establish Article III Standing with Respect to the Class Claims.*

Because *NECA-IBEW* is controlling on the matter of "class standing," its holdings must be applied to this case. In *NECA-IBEW,* the named plaintiff brought a class action under §§ 11,

---

[2] *E.g., Blum v. Yaretsky,*  457 U.S. 991 (1982), cited by *NECA-IBEW,* 693 F.3d at 160, cited by M&T at Dkt. #53, p. 4; *Lewis v. Casey,* 518 U.S. 343 (1996), cited by *NECA-IBEW,* 693 F.3d*,* at 159-161, cited by M&T at Dkt. #53, p. 3, 4.

12(a)(2) and 15 of the Securities Act of 1933 for common misrepresentations in 17 securities offerings.  It had only purchased certificates with respect to two of the offerings, but sought to represent a class including purchasers from the other offerings as well. 693 F.3d at 149.  The district court dismissed all class claims with respect to offerings that the named plaintiff had not purchased for lack of Article III standing.  693 F.3d at 156.

The Second Circuit reversed.  The Circuit court first noted that the named plaintiff had Article III (and statutory) standing to sue the defendants "in its own right" with respect to misrepresentations in the two offerings from which it had bought certificates. 693 F.3d at 158, citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  It also acknowledged that the named plaintiff lacked Article III standing with respect to class claims involving non-purchased certificates: "NECA clearly lacks [Article III] standing to assert such claims on its behalf because it did not purchase them." 693 F.3d at 158.  The Court of Appeals, however, found this immaterial to the question of the named plaintiff's standing to assert the class claims: "But whether NECA has 'class standing' – that is, standing to assert claims *on behalf of* purchasers of Certificates from other offerings, or from tranches of the same Offering – does not turn on whether NECA would have statutory or Article III standing to seek recovery for misleading statements in those Certificates' Offering Documents." *Id.* (emphasis original.) *NECA-IBEW* thus directly rejects M&T's argument that Pinks' Article III standing will determine whether he has the requisite "class standing."  M&T's complete failure to acknowledge *NECA-IBEW* furnishes no escape from the Second Circuit's clear ruling.

The Second Circuit then held, based upon its survey of many of the same Supreme Court decisions upon which M&T mistakenly relies:

> Admittedly, constitutional litigation seeking injunctive relief does not map all that
> neatly onto statutory based securities litigation seeking monetary damages. But

distilling these cases down to a broad standard for class standing, we believe that they stand collectively for the proposition that, in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he "personally has suffered some actual…injury as a result of the putatively illegal conduct of the defendant." *Blum*, 457 U.S. at 999, 102 S.Ct. 2777 (quotation marks omitted), and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants. *Gratz*[ *v. Bollinger*,] 539 U.S. [244,] 267 , 123 S.Ct. 2411 [(2003)]. Therefore the district court's requirement that NECA "show that [its] injuries . . . are the same . . . as those allegedly suffered by [class purchasers of certificates from other offerings]" was error.

*NECA-IBEW*, 693 F.3d at 162.

> *NECA-IBEW* is dispositive here: A named plaintiff's "class standing" is distinct from his individual, Article III standing. He may thus have "class standing" even when he would lack individual, Article III standing to assert the class members' claims "in his own right." 693 F.3d at 158. Like the plaintiff in *NECA-IBEW,* Pinks has individual, Article III standing to bring his UCC claim against M&T. It is undisputed that he would lack Article III standing to bring a UCC claim under any other states' laws in his own right. However, this is as irrelevant in the instant case as it was in *NECA-IBEW,* because whether Pinks may represent the class as pled "does not turn upon whether [he] would have [Article III] standing to seek recovery *on behalf of*" the class members. *Id.,* at 158. (emphasis original.) Rather, as *NECA-IBEW* makes clear, Pinks' "class standing" turns upon whether he has plausibly pled that the conduct giving rise to his claim "implicates 'the same set of concerns' as the conduct alleged to have caused injury to the other members of the putative class." 693 F.3d at 162 (internal citations omitted.)

While the reason the named plaintiff in *NECA-IBEW* lacked Article III standing to assert the class claims "in its own right" and the reason Pinks lacks Article III standing to assert the non-South Carolina class members' UCC claims "in his own right" are different, both lack individual, Article III standing with respect to other members of the putative class. The Second

Circuit held this to be of no consequence, provided the named plaintiff has successfully alleged "class standing" under the two-part *NECA-IBEW* test. When a named plaintiff such as Pinks has plausibly pled "class standing," he may go forward and seek to certify the putative class. The existence of "class standing" does not require that the case will be certified, but it does establish justiciability and that the case can move to certification proceedings under Rule 23. 693 F.3d at 165.

M&T's argues (citing a pre-*NECA-IBEW* out-of-circuit district court decision) that the class members' injuries arising under other states' UCC laws are not "shared" by Pinks. Dkt. #53, at 5, citing *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009). This is irrelevant under *NECA-IBEW,* as class standing does not require the named plaintiff to have the "same injury" as the class members. Indeed, the Second Circuit reversed the lower court in *NECA-IBEW* on this precise point. *NECA-IBEW,* 693 F.3d at 162. *NECA-IBEW* thus specifically upholds class standing in the face of a "variation between (1) the named plaintiff's claims and (2) the claims of the putative class members." 693 F.3d at 160. The Second Circuit's test is not whether the injuries are "the same" or "shared," but whether a named plaintiff like Pinks has plausibly alleged the requisite "same set of concerns as the conduct alleged to have caused injury to other members of the putative class." 693 F.3d at 162. Therefore, M&T's sole objection to this class as pled cannot be sustained under *NECA-IBEW.*

B.    *Pinks' Complaint Establishes "Class Standing" Under NECA-IBEW.*

The first *NECA-IBEW* prong requires Pinks to allege that "he has personally suffered some actual injury as a result of the putatively illegal conduct of the defendant[.]" *Id.* Pinks alleges in this Complaint that M&T, as the secured party to his installment loan for a recreational camper trailer, violated South Carolina's UCC – specifically, § 36-9-611, *SC Code Ann.*

Complaint (Dkt. #1), ¶16.  This statute requires a secured party to send "reasonable…notification of…disposition" of repossessed collateral to the consumer obligor.  Pinks alleges that the Notice of Disposition that M&T sent him on July 29, 2010 (Dkt. #1, Exh. 2), is not "reasonable notification" because it did not contain the information required by § 36-9-614(1). Dkt. #1, ¶¶12, 18.  He alleges this entitles him to automatic, mandatory, statutory damages. Dkt. #1, ¶21. In denying M&T's Motion to Dismiss, this Court has established as law of the case that Pinks has validly alleged his own claim against M&T, which M&T does not dispute. *E.g.,* Dkt. #34.

Pinks also seeks to represent a putative class under Rule 23(b)(3), Fed.R.Civ.P., alleging upon information and belief that M&T sent the same Notice of Disposition with the same defective contents to consumer debtors residing in South Carolina and other states prior to sale of their consumer-goods collateral. Dkt. #1, ¶24.  He has limited his class to those members whose claims arose under South Carolina law or other states' versions of the UCC which are the same as South Carolina's UCC.[3] Dkt. #1, ¶26.

With respect to the second prong of the *NECA-IBEW* "class standing" test, Pinks alleges that his claim: "(1)… arises from the same course of conduct that gives rise to the class members' claims; (2)… arises out of the same form Notice [of Disposition] language; (3)… arises out of the same legal theory and uniform state statutory provisions of the UCC; and, (4)… gives rise to identically-computed, mandatory damages determined according to [the same statutory formula.]" Dkt. #1, ¶27(c).  These pleadings more than sufficiently establish that the

---

[3]  Information about what notification M&T sent where is uniquely within M&T's control, and discovery is ongoing under this Court's Order of October 20, 2014 (Dkt. #51).  Pinks thus does not yet know how many or which other states will be involved. What is known, however, is that all states east of the Mississippi have enacted relevant UCC provisions identical to South Carolina's.

"conduct [which injured Pinks] implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendant." *NECA-IBEW*, 693 F.3d at 162.

The *NECA-IBEW* court explained that the "same set of concerns" inquiry also directs the court's consideration to whether a named plaintiff has "the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." 693 F.3d at 160 (quoting *Blum,* at 457 U.S. at 999.)  In this case, the purportedly "similar conduct" "to which [Pinks] has not been subject" is identical conduct identically proscribed by other states' identical UCC law. This establishes that Pinks will have the same "stake in litigating" M&T's "injurious conduct" toward the putative class as he has with respect to his own claim, because of the complete factual and legal overlap of these claims.  This is a case where "the claims of the named plaintiffs necessarily give them – and not just their lawyers – essentially the same incentive to litigate the counterpart claims of the class members, because the establishment of the named plaintiffs' claims necessarily establishes those of other class members." *NECA-IBEW,* 693 F.3d at 164, quoting *Plumbers' Union Loc. No.12 Pension Fund v. Nomura Asset Accept. Corp.,* 632 F.3d 762, 770 (1st Cir. 2011).  Therefore, Pinks has more than plausibly pled "class standing" under the two-part *NECA-IBEW* test.

C.      *NECA-IBEW's "Class Standing" Test Applies to All Class Actions.*

Finally, *NECA-IBEW* makes clear that its two-part test is a justiciability test to be applied as a "broad standard for class standing" across the board in all types class actions, even those seemingly as disparate as civil rights classes seeking injunctive relief under the Fourteenth Amendment to class litigation seeking monetary damages under the Securities Act of 1933. 693

F.3d at 162. The Second Circuit derived its "class standing" holding by "distilling [the relevant Supreme Court cases] down" to a uniform "broad standard" for class standing.

Therefore, while M&T correctly notes in its Memorandum that Pinks' claim does not arise under federal law, it will not be able to provide any post-*NECA-IBEW* authority for or logic why the Second Circuit intends to exempt state law classes from its "broad standard." Likewise, *NECA-IBEW* leaves M&T with no room to argue that that the relevant Supreme Court cases should mean something different with respect to state classes, as it is the Second Circuit's interpretation and not M&T's interpretation that controls here. The relevant Supreme Court cases, as applied by the Second Circuit, "stand collectively for the proposition that in a class action," (i.e. any class action), the *NECA-IBEW* class standing test must apply. 693 F.3d at 162.

## II. M&T's MOTION ALSO FAILS UNDER THE "RULE 23 APPROACH."

*NECA-IBEW* recognizes that once the named plaintiff's individual, Article III standing is established, precisely how the matter of whom he may represent, including what claims he may assert on behalf of others, is to be resolved has not been free of confusion. This is because some Supreme Court decisions have said that it is a matter of justiciability or standing, while others have said that it is a matter of Rule 23(a)'s adequacy and typicality requirements. 693 F.3d at 159-160. *See, e.g., Gratz v. Bollinger,* 539 U.S. at n. 15 ("Although we do not resolve here whether such an inquiry in this case is a matter appropriately addressed under the rubric of standing or adequacy, we note that there is a tension in our prior cases in this regard.") *NECA-IBEW,* though firmly on the side of justiciability in pronouncing its "class standing" rule, noted that some decisions have applied a "Rule 23 approach." *Id.,* at 159. On the facts of this case, Pinks prevails under the Rule 23 approach for the same reasons he has plausibly alleged his class standing under *NECA-IBEW*.

Under the Rule 23 approach, once a named plaintiff's individual, Article III standing is established with respect to his own claim against the defendant (or multiple defendants if present), justiciability is fully satisfied, and the question of whom he may represent and what claims may be included is to be decided under Rule 23. *See, Sosna v. Iowa,* 419 U.S. 393, 403 (1975) (quoting Rule 23(a), Fed.R.Civ.P.) ("The conclusion that a named plaintiff has a case or controversy does not automatically establish that he or she is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of the examination from the elements of justiciability to the ability of the named plaintiff to 'fairly and adequately' protect the interest of the class."); *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 241 (2d Cir. 2007) ("[F]or every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to class action analysis.") [4]

The difference between the two approaches is that per *NECA-IBEW,* the requisite elements of justiciability are (1) the named plaintiff's individual, Article III standing to bring his own claim and (2) his "class standing" to assert claims on behalf of others, while the Rule 23 approach only requires the named plaintiff to establish his individual Article III standing with respect to his own claim, leaving all other matters respecting certification for determination under Rule 23. Even in the wake of *NECA-IBEW,* the Rule 23 approach provides alternative

---

[4]  In order to qualify for inclusion in the class at the time of certification under Rule 23, each member of the putative class must possesses Article III standing with respect to his own claim. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263-64 (2d Cir. 2006)(" The class must . . . be defined in such a way that anyone within it would have standing."). Accord, *Avritt v. Reliastar Life Ins. Co*., 615 F.3d 1023, 1034 (8th Cir. 2010) ("[A]  named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves."), citing *Denney*.  The self-evident individual standing of members of the putative class as to their own individual claims will be further addressed in connection with class certification.

grounds for denying M&T's Motion. In terms of the Rule 23 approach, Pinks has established his individual, Article III standing to assert his own claim against M&T, therefore all issues of who may be included in this class will be decided at certification under Rule 23.

In light of *NECA-IBEW's* acknowledgement that the two approaches are in a state of "tension" with each other, some post-*NECA-IBEW* decisions from this Circuit have simply applied both. *See, Bais Yaakov of Spring Valley v. Houston Mifflin Harcourt Pub., Inc.,* 2014 WL 3907995, at *3 (S.D.N.Y. Aug. 7, 2014), citing *NECA-IBEW,* 693 F.3d at 158, and *Central States* 504 F.3d at 241). ("Article III standing is distinct from 'class standing,' *i.e.,* standing to assert claims on behalf of others[.] . . . The Second Circuit further explained that 'we have said that, to establish Article III standing in a class action for every named defendant there must be at least one named plaintiff who can assert a claims directly against that defendant and at that point standing is satisfied and only then when inquiry shift to a class action analysis.'"); *In re Frito-Lay North America, Inc. All Natural Litig.,* 2013 W.L 4647512, at *11 (E.D.N.Y. Aug 29, 2013), citing *NECA-IBEW,* 693 F.3d at 158 and *Sosna,* 419 U.S. at 403. ("The [*NECA-IBEW*] court reinforced that standing to assert claims on behalf of other purchasers did not turn on whether the plaintiff had Article III standing for the offerings it did not purchase…That inquiry turned upon whether the plaintiff had 'class standing[.]'. . . Once the plaintiff satisfied Article III (and statutory) standing requirements, the inquiry shifted from the elements of justiciability to the ability of the named plaintiff to fairly and adequately protect the interest of the class.")

Many commentators favor the Rule 23 approach: "While a potential class representative must demonstrate individual standing vis-à-vis the defendant, once [individual] standing has been established, whether he will be able to represent the putative class…depends solely on whether he is able to meet the additional criteria encompassed in Rule 23." 7AA Wright &

Miller, *Fed. Prac. & Proc. Civ.* § 1785.1 (3d ed. 2010).  Other circuits have also applied the Rule 23 approach.[5]  Likewise, Professor McLaughlin considers it the preferred approach, as well as the majority rule, within the context of nationwide class actions involving absent class members' claims which did not arise under the same state statues as the named plaintiff's:

> [M]ost courts have determined that variances in state laws applicable to the claims of each class member usually preclude a finding that common questions predominate over individual questions…However, most courts have rejected standing challenges to named plaintiffs who plainly have standing as to their personal claims, but also purport to represent a class, for example, with claims under the consumer protection laws of states in which the named plaintiffs do not reside. At least as a matter of standing, these courts have determined that it is not necessary for named plaintiffs to have suffered harm under other states' laws in order for them to seek to pursue claims on behalf of putative class members residing in those states.

1 *McLaughlin on Class Actions* § 4:28 (10th ed.) (update through Dec. 2013).  Here, of course, where identical documents are alleged, and have been held, to violate identical UCC provisions, there can be no "variances in state law," as will be demonstrated in support of certification under Rule 23.

---

[5]  *E.g., Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585, 592 (8th Cir. 2009) ("[C]onstitutional standing is only a threshold inquiry, and 'so long as [Article III] is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others.'") (quoting *Vt Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 771-72(2000)); *Arreola v. Godinex,* 546 F.3d 788, 795 (7th Cir. 2008) (Article III standing concerns only whether the named plaintiff suffered an injury redressable by a lawsuit; questions regarding the plaintiff's ability to seek relief on behalf of a class should be answered in the context of Rule 23.); *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir. 1998) ("Once his [individual] standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely upon whether he is able to meet the additional criteria encompassed in Rule 23[.]").

Pre-*NECA-IBEW,* many decisions from this district have applied the Rule 23 approach to determine whether a named plaintiff, like Pinks, who has standing to bring his individual claim under his state's law, may represent absent class members whose claims arose under laws of other states. *In re Grand Theft Auto Video Game Consumer Litig. (No.II),* 2006 WL 3039993, at *1 (S.D.N.Y. Sept. 16, 2010) (multiple state consumer protection laws) ("The relevant question is not whether the Named Plaintiffs have standing to sue Defendants – they most surely do – but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action. . .This question is, at least in the first instance, appropriately answered through the certification process.")[6]; *In re Bupirone Patent Litig.*, 185 F.Supp.2d 363, 377 (S.D.N.Y. 2002) (patent law, Sherman Act, state anti-trust law, common law unjust enrichment, and state unfair or deceptive trade acts) (Where defendant alleged named plaintiffs "lack standing to assert state antitrust and unfair competition claims…nationwide because they only allege to have purchased [drugs] in fifteen states," matters of typicality and adequacy will be established at certification as "there is no question each of the named plaintiffs has standing" to sue the defendant on "at least some claims."); *Blessing v. Sirius XM Radio, Inc.,* 756 F.Supp.2d 445, 452 (S.D.N.Y. 2010) (state consumer protection laws) (Where there is "no question" that named plaintiffs have standing to bring their own claims under their states' consumer protection laws, "[t]he class certification process will address whether the named plaintiffs' injuries are sufficiently similar to justify a nationwide class action[.]")

---

[6] M&T purports to distinguish *In re Grand Theft Auto* because the class was later decertified for lack of commonality under Rule 23. Dkt. # 53, at 8, n. 2. This is of no matter. The Rule 23 approach recognizes that even where justiciability is satisfied with respect to the named plaintiff's individual standing, the class may still fail at certification. *NECA-IBEW* also recognizes that even where "class standing" is adequately established as an element of justiciability, the case may not be appropriate for certification under Rule 23. 693 F.3d at 165.

Therefore, the Rule 23 approach provides an alternative basis for denying M&T's Motion. Under that approach Pinks has established: (1) the requisite, Article III standing to bring his own UCC claim against M&T under South Carolina law, and (2) any determination whether he may also fairly and adequately represent the non-South Carolina putative class members will be decided at class certification under Rule 23.

## III. THE CASES M&T RELIES UPON ARE EITHER INAPPOSITE OR NOT CONTROLLING.

Some of the cases M&T cites merely support the non-controversial point that a party is required to plead Article III standing with respect to every claim which he asserts on his own behalf against the defendant. *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352-53 (2006), cited, Dkt. #53, p. 3 (ancillary standing) (plaintiffs who had Article III standing to assert a claim of injury derived from status as municipal taxpayers were not conferred standing as state taxpayers simply because the latter involved the same "nucleus of operative facts"); *Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59, 61 (2d Cir. 2010) cited, Dkt. #53, p.6 (juridical standing) (named plaintiff must have individual, Article III standing with respect to each defendant she sues in case involving multiple defendants.) M&T then proceeds to its next non-controversial point: "Applying these principals, a named plaintiff in a class action lacks [Article III] standing under the laws of the states where the named plaintiff does not reside or in which he was not injured." Dkt. #53, at 4. Finally, as the last step in its argument, M&T replicates the same flawed step that the lower court took in *NECA-IBEW,* claiming because the named plaintiff lacks individual, Article III standing with respect to some of the class claims "on its own behalf," it necessarily follows that he cannot assert those claims "on behalf of" others. As authority from this district M&T relies upon two pre-*NECA-IBEW* decisions, *Simington v. Lease Fin. Grp.,*

*L.L.C.,* 2012 WL 651130 (S.D.N.Y. Feb. 28, 2010) and *Jurgensen v. Felix Storch, Inc.,* 2012 WL 2354247 (S.D.N.Y. June 14, 2012), cited, Dkt. #53, p. 4. M&T's reliance is misplaced in the wake of *NECA-IBEW,* as recently acknowledged by the district judge who decided them both.

Judge Forrest, who authored both of those decisions, has recently issued a post-*NECA-IBEW* decision which applies the Second Circuit's ruling in terms which, in explicit reliance on *NECA-IBEW,* compel the rejection of M&T's argument:

> *NECA-IBEW* is about justiciability[.]. . . In that context, the Second Circuit reviewed whether the plaintiff had Article III and statutory standing in [its] his own right to bring certain claims as to offerings of securities which [it] had purchased, versus "class standing" to assert claims on behalf of purchasers of certificates [it had not purchased]. . . Once a plaintiff has established justiciability, the question as to whether he 'can' represent a class turns on the analysis of the Rule 23 factors; in *NECA-IBEW,* as here, class certification was a question for another day.

*Gates v. United Healthcare Ins. Co.*, 2014 WL 5800573, at *13 (S.D.N.Y. Nov. 7, 2014) (internal citations omitted.) It is noteworthy that this most recent decision in *Gates* was issued on remand from the Second Circuit, which reversed and remanded an earlier "standing" dismissal of class claims, with instructions to consider "whether [the named plaintiff] may bring claims on behalf of the beneficiaries of other plans…in light of this Court's decision in *NECA-IBEW* . . .." *Gates v. United Health Ins. Co.,* 561 Fed. Appx. 73, 78 (2d Cir. 2012). To the extent M&T relies upon other pre-*NECA-IBEW* authority from other districts of this Circuit, they are not controlling for the same reason.[7]

---

[7] *E.g., Gunther v. Capital One, N.A.,* 703 F. Supp. 2d 264, 274-75 (E.D.NY. 2010); *Temple v. Circuit City Stores, Inc.,* 2007 WL 2790154, at *8 (E.D.N.Y. Sep. 25, 2007); *Parks v. Dicks Sporting Goods, Inc.,* 2006 WL 1704477, at *2 (W.D.N.Y. June 15, 2006).

M&T also cites various district court decisions from other circuits[8], which therefore are not controlling, in support of its Article III standing argument. To the extent courts in this Circuit have been confronted post-*NECA-IBEW* with the same Article III standing argument that M&T makes here, and where that argument is supported by out-of-circuit, contra authority, our courts have not found such conflicting authority persuasive. *E.g., In re Frito-Lay North America, Inc. All Natural Litigation,* 2013 WL 4647512, at *6. ("The cases Frito-Lay relies upon discuss this question in terms of Article III standing, not class standing. They admittedly conflict with *NECA-IBEW*, but are district court decisions from outside of this Circuit and not binding on this Court.")

In the end, M&T is left in its Memorandum with a single, post-*NECA-IBEW* class action case from another District in this Circuit to support its position: *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation,* 1 F. Supp.3d 34 (E.D.N.Y. 2014), Dkt. #53, at 4 (state law breach of contract, breach of implied covenant of good faith and fair dealing, conversion, unjust enrichment, and claims under state consumer protection laws.) In so ruling the *HSBC* court relied upon either out-of-circuit authority such as *Wellbutrin XL Antitrust Litig., supra,* or pre-*NECA-IBEW* cases from this district and circuit such as *Simington Lease, supra,* and *Parks v. Dick's Sporting Goods, supra.* The *HSBC Bank* decision does not address the *NECA-IBEW* decision, "class standing," or "Rule 23 approach" authority from the Supreme Court or the Second Circuit. As such, it cannot guide this Court's decision in this Motion where those issues have been squarely raised.

---

[8] *E.g., In re Wellbutrin XL Antitrust Litig., supra*; *Lauren v PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014); *In re G-Fees Antitrust Litig.,* 584 F.Supp.2d 26, 46 (D.D.C. 2008).

# CONCLUSION

For the reasons stated, M&T's Motion must be denied, and pre-certification proceedings should continue as ordered by this Court, preceding class certification proceedings under Rule 23, Fed.R.Civ.P.

Dated: November 17, 2014        Respectfully Submitted,
(corrected copy filed 11/19/14)

HERZFELD & RUBIN, P.C.

By: _____
Daniel V. Gsovski  (dg4413)
A Member of the Firm
125 Broad Street
New York, New York 10004-1300
Telephone: (212) 471-8512
E-mail: dgsovski@herzfeld-rubin.com

PHILIP FAIRBANKS, ESQ., P.C.
Philip Fairbanks, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580
E-mail philip@lowcountrybankruptcy.com
ADMITTED PRO HAC VICI

LAW OFFICE OF FREDERICK CORLEY
Frederick M. Corley, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 524-3232
E-mail: rcorley@islc.net
*admitted pro hac vice*

KATHY D. LINDSAY, P.A.
Kathy D. Lindsay, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1581
E-mail klindsay@islc.net
*admitted pro hac vice*