# United States District Court
# Southern District of New York

| | |
|---|---|
| **JERRY PINKS,** individually and on behalf of others similarly situated, | ) ) ) |
| *Plaintiffs*, | ) |
| v. | ) No.: 1:13-cv-1370-LAK-RLE |
| **M&T BANK CORP.,** | ) ) ) |
| *Defendant*. | ) ) ) |

### SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
### "MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS" (Dkt. #53)
### FILED WITH LEAVE OF COURT (Dkt. #65)

**HERZFELD & RUBIN, P.C.**
Daniel V. Gsovski (dg4413)
125 Broad Street
New York, New York 1004-1300
Telephone: (21) 471-8512
E-mail: dgsovski@herzfeld-rubin.com
ATTORNEYS FOR PLAINTIFF**S**
(other counsel listed on signature pages)

January 23, 2015

**UNDER *RETIREMENT BD.*, PROVING MR. PINKS' CLAIM WILL "ENCOMPASS PROVING" ALL CLASS CLAIMS AND ESTABLISH HIS "CLASS STANDING."**

The Second Circuit's recent decision in *Retirement Bd. of the Policemen's Ann. & Benefit Fund of the City of Chicago v. BNYM,* _F.3d._, Slip Op. (2d Cir. Dec. 23, 2014) defines how similar the named plaintiff's individual claim must be to the putative class claims to confer "class standing." In so ruling, the *Retirement Board* court fleshed out the second part of the two-part, *NECA-IBEW* "class standing" test – that the defendant's "putatively illegal conduct" towards the named plaintiff must "implicate the same set of concerns as the conduct alleged to have caused injury to other members of the putative class[.]" *Id.* at 15, citing *NECA-IBEW Health &Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145, 162 (2d Cir. 2012).

Specifically, *Retirement Bd.* requires the named plaintiff's individual claim to "'raise a sufficiently similar set of concerns'" as the class claims, so that proving his own claim will "encompass proving" the class claims. *Retirement Bd.* at 17, quoting *NECA-IBEW,* & 22. Where such overlapping proof exists, a named plaintiff has the same "personal and concrete" stake in proving the class claims as he does in proving his own claim. *Id.* at 22. "When [the *NECA-IBEW*] standard is satisfied, the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." *Id.* at 15-16.

The *Retirement Bd.* court explained why that named plaintiff failed the "same set of concerns" part of the *NECA-IBEW* "class standing" test (in connection with Trust Indenture Act ("TIA"), breach of contract, and breach of good faith claims for trusts in which it had not invested), while the *NECA-IBEW* plaintiff had succeeded. In *NECA-IBEW,* "the absent class members' claims were similar to those of the named plaintiff in all essential respects." *Id.* at 17. In particular, the *NECA-IBEW* plaintiff's claims involved "similar if not identical" common misrepresentations with respect to all class claims. *Id.* This "confluence of similarities" of common misrepresentations in connection with the same originators gave the named plaintiff in *NECA-IBEW* "the right incentives" to litigate the class claims, "largely because the proof contemplated for all of the claims would be sufficiently similar." *Id. Retirement Bd.* also distinguished *NECA-IBEW* from *DiMuro v. Clinique Labs, LLC,* 572 F.App'x 27, 29 (2d Cir. 2014), a recent decision "holding that class standing was lacking because

1

'unique evidence' will be required to prove" the class claims. *Id.* at 17-18. Likewise, "the nature of the [class] claims in [*Retirement Bd.*] unavoidably generates significant differences in proof," so that proving the named plaintiff's individual claims will not "encompass proving" the class claims. *Id.* at 22.

Here, Mr. Pinks has "plausibly pled" that his "set of concerns" in litigating his own claim is "sufficiently aligned" with the concerns of the non-South Carolina class members to confer "class standing." *See,* Dkt. #57 at 5-7. He has expressly limited his class definition to include class members whose claims arose under South Carolina law or other states which have enacted the same UCC laws applicable to his cause of action. Dkt. #1, ¶¶ 26, 27C(3). The complete overlap of evidentiary proof, based upon the same form documents when applied to identical statutory causes of action, also means Mr. Pinks has the same "personal and concrete stake" in litigating the class claims as in litigating his own claim.

M&T has not pointed to a single difference in evidentiary proof, legal theory or statutory language between Mr. Pinks' claim and the class claims to destroy the "same set of concerns" or to defeat "class standing" – because it cannot. Instead, M&T proceeds as if there were an Article III defect with Mr. Pinks' individual claim, *e.g.,* "[Mr. Pinks] wholly ignores the requirement that a named plaintiff must possess Article III standing with respect to each individual claim that he asserts[.]" Dkt. #58 at 4. M&T therefore largely relies upon inapplicable cases where the named plaintiffs had Article III defects in asserting their individual claims – defects which would exist if asserted in individual cases and not class actions. For example, in *Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59 (2d Cir. 2012), cited by M&T at Dkt. #53 at 6-7 and Dkt. #58 at 1, the named plaintiff had Article III standing to sue one defendant, but lacked Article III standing to sue two other, named defendants with which she had no relationship. *Id.* at 61-62. The fact that she sued them in a class action could not cure her lack of individual standing with respect to the two non-injurious defendants. *Id.* at 64. M&T similarly relies upon *In re LIBOR-Based Financial Inst. Antitrust Litig.,* 2014 WL 2815645 (June 23, 2014) in which the court discussed *NECA-IBEW*. Dkt. #58 at 3, 7. *LIBOR* was also a multiple defendant case where some named defendants had no contractual relationship

2

with any named plaintiffs. Therefore in *LIBOR,* unlike this case, no named plaintiff had Article III standing to bring any individual breach of contract claim against the non-counterparty defendants, which required dismissal against them and mooted any "class standing" issues with respect to those class claims. *LIBOR* at *23. [1]

Here, Mr. Pinks has Article III standing to assert his sole, individual claim, described as named plaintiffs' "claims based on their own injuries," or claims he brings "in his own right." *Retirement Bd., supra* at 15; *NECA-IBEW, supra* at 158. He has Article III standing under South Carolina UCC law to sue the only defendant he names (M&T), and there are no separate class claims against any defendants other than M&T. Thus like the named plaintiffs in *NECA-IBEW* and *Retirement Board,* and unlike the named plaintiffs in *LIBOR* and *Mahon*, Mr. Pinks meets the "threshold Article III requirement" to sue M&T on his individual UCC cause of action. No Article III standing impediment prevents consideration of his "class standing."

If M&T means instead, in arguing that Mr. Pinks must have "Article III standing with respect to each individual claim he asserts," that he must also have Article III standing in connection with the class members' identical causes of action, arising under different states' statutory authority, it is mistaken. The Second Circuit has already rejected any argument that once Pinks has established Article III standing to bring his own, individual claim against M&T under South Carolina UCC law, he is additionally required to establish equivalent Article III standing with respect to the class members' claims. *See, NECA-IBEW, supra* at 158; *Retirement Bd.* at 13-14. The clear ruling of *NECA-IBEW* on this point has not escaped the leading commentator:

> In *NECA-IBEW*…the Second Circuit reviewed *Blum* [*v. Yaretsky*, 457 U.S. 991 (1982)], *Lewis* [*v. Casey*, 518 U.S. 343 (1996)], and *Gratz* [*v. Bollinger*, 539 U.S. 244 (2003)], and *concluded that once a class representative had established Article III and statutory standing to sue the defendant on at least one claim, he would additionally possess "class standing"* if "he plausibly alleges (1) that he 'personally has suffered some actual … injury as a

---

[1] "[N]amed plaintiffs lack standing to sue each of the named defendants 'in their own right' under Article III…Therefore using the frame work articulated in *NECA-IBEW,* plaintiffs' claims against non-counterparty defendants do not meet the threshold Article III standing requirements, and those claims are dismissed." *Id.*

3

>result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants… *The court ultimately found that the putative class representative, a large institutional investor, lacked Article III standing and statutory standing to assert all of the security claims of the putative class but possessed class standing* to pursue a subset of those claims because the above test was satisfied.

*Newberg on Class Actions* §2:6, n. 25 (5th ed.) internal citations omitted. (emphasis added.)

M&T also claims that Mr. Pinks' standing to "assert other states' laws because they implicate the 'same set of concerns' has been squarely rejected by this Court." Dkt. #58 at 7, citing *Oklahoma Police v. US Bank Nat.'l Ass'n.*, 986 F. Supp. 2d 412 (S.D.N.Y. 2013) and *LIBOR, supra* at *22. Mr. Pinks, however, is not asserting a claim under "other state's laws;" he seeks to represent a multi-state class based upon identical causes of action giving rise to the "same set of concerns" and conferring "class standing" under *Retirement Bd*.

In any event, neither of these cited cases supports M&T. *LIBOR*, as noted *infra,* involved the named plaintiffs' individual standing defects, and therefore never reached any matters of "class standing," while *Oklahoma Police* explicitly distinguished multi-state class actions from the situation in suit. The named plaintiff in *Oklahoma Police* asserted TIA claims for which it had its own Article III standing, and also breach of contract claims which had been dismissed. It nevertheless claimed "class standing" with respect to the class members' contract claims because they were "sufficiently similar" under *NECA-IBEW* to its TIA claims. In a passage which M&T purports to quote, Judge Koeltl rejected this argument: "the sole plaintiff itself has no contract claim and thus cannot bring a contract claim on behalf of anyone else. The fact that the plaintiff still has a TIA claim is of no consequence: there is no case law supporting the plaintiff's theory that a plaintiff can pursue a class claim that it does not have on behalf of the class simply because the plaintiff suffered a 'similar injury' for a different claim." Dkt. # 58 at 7, *Oklahoma Police* at 419.  This is completely different from the situation at bar, in which Mr. Pinks has unchallenged standing in his own right, and his individual claim and the absent class members' claims are identical, down to the documentary and statutory punctuation, so that proving his claim "encompasses proving the class claims." *Retirement Bd*. at 17.

4

Tellingly, M&T omits reference to the footnote appended to its quoted passage from *Oklahoma Police*. In that note, Judge Koeltl distinguished, *inter alia*, *In re Grand Theft Auto Con. Litig.,* 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006); *In re Buspirone,* 185 F.Supp.2d 363 (S.D.N.Y. 2002); and *Blessing v. Sirius XM,* 756 F.Supp.2d 445 (S.D.N.Y. 2010), three multi-state class actions upon which Mr. Pinks relies, *e.g.,* Dkt. #57 at 12.

> [N]one of the [multi-state class cases cited above] involved a situation in which a plaintiff sought to bring a claim under a different theory for which the plaintiff had no standing. Many of the cases were nationwide class actions in which claims were brought under parallel provisions of different state's consumer protection or antitrust laws, which is again not the situation in this case: the standing challenges [which were rejected] in those cases did not concern whether the plaintiffs could bring the consumer protection or antitrust claims but whether they could represent plaintiffs in other states.

*Oklahoma Police, supra,* at n. 3. Moreover, in his own earlier decision in *In re Buspirone,* Judge Koeltl rejected the argument that "plaintiffs . . . lack standing to raise claims under the [antitrust and consumer protection] laws of other states [where they made no purchases and therefore sustained no injuries], and that this poses an Article III obstacle to this Court's jurisdiction." 185 F.Supp.2d at 377. In short, *Oklahoma Police* does not support the position for which M&T cites it – that the "same set of concerns" test under *NECA-IBEW* has been "squarely rejected" in multi-state class actions.

## CONCLUSION

For the reasons stated above and in prior briefing, M&T Bank Corp.'s Motion for Partial Judgment on the Pleadings under Fed.R.Civ.P. 12(c) should be denied.

Dated: January 23, 2015                                   Respectfully submitted,

                                                          HERZFELD & RUBIN, P.C.
                                                          By: _____
                                                               Daniel V. Gsovski (dg4413)
                                                          A Member of the Firm
                                                          125 Broad Street
                                                          New York, New York 10004-1300
                                                          Telephone: (212) 471-8512
                                                          E-mail: dgsovski@herzfeld-rubin.com

5

**PHILIP FAIRBANKS, ESQ., P.C.**
Philip Fairbanks, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580
E-mail philip@lowcountrybankruptcy.com
ADMITTED PRO HAC VICI

**LAW OFFICE OF FREDERICK CORLEY**
Frederick M. Corley, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 524-3232
E-mail: rcorley@islc.net
*admitted pro hac vice*

**KATHY D. LINDSAY, P.A.**
Kathy D. Lindsay, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1581
E-mail klindsay@islc.net
*admitted pro hac vice*