

**Roy W. Arnold**
Direct Phone:  +1 412 288 3916
Direct Fax:  +1 412 288 3063
Email:  rarnold@reedsmith.com

Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Tel +1 412 288 3131
Fax +1 412 288 3063
reedsmith.com

March 5, 2015

**VIA ECF**

Hon. Magistrate Judge Ronald L. Ellis
Daniel Patrick Moynihan
United States Courthouse
Courtroom 11C
500 Pearl Street
New York, NY  10007

**Re:  Pinks v. M&T Bank Corporation,**
**Index No. 13-cv-1730-LAK-RLE (S.D.N.Y.)**

Dear Magistrate Judge Ellis:

On behalf of Defendant M&T Bank Corporation ("M&T"), we write in response to Plaintiff's March 2, 2015 letter motion (the "Letter Motion").  (Dkt. 75).  Plaintiff's Letter Motion should be rejected and denied.  Plaintiff has failed to demonstrate that the remaining two items of discovery (nationwide "templates" and state-by-state data) are relevant to any requirement of Federal Rule of Civil Procedure 23.  In fact, he fails to offer any analysis of the relevance of the discovery sought other than to recite certain elements of Rule 23(a) and Rule 23(b)(3).  As they could not do at the February 17, 2015 status conference or in any prior correspondence, Plaintiff's counsel has not sufficiently articulated why these remaining items are relevant and necessary for purposes of the Rule 23 analysis.

Consistent with the Court's October 20, 2014 Order, M&T has reasonably and appropriately responded to Plaintiff's discovery requests and worked in good faith with Plaintiff's counsel to supply them with discovery as to Plaintiff's individual claim and Rule 23 class certification issues.  In fact, as Plaintiff concedes, there is no dispute that M&T provided him with complete discovery concerning his claim for violation of § 36-9-9613 and § 36-9-9614 of the South Carolina Commercial Code relating to the challenged Notice of Repossession and Sale of Merchandise ("Notice") and all requested data (except personally-identifying information) concerning the putative South Carolina class for the applicable period of time.  He also concedes that the parties resolved the issue concerning the availability of non-South Carolina transaction data that Mr. Gsovski discussed at length at the February 17, 2015 status conference.[1]  Plaintiff inexplicably seeks to ignore his admission that he lacks Article III standing to assert any claims under the laws of any State other than South Carolina[2] and the incontrovertible information that ***he asked for*** regarding the putative South Carolina class showing that

---

[1]  Mr. Gsovski's representation to the Court at the February 17, 2015 conference that the data being sought was all available electronically was inaccurate and mistaken.  Several pieces of the requested data must be obtained from individual transaction documents.  Plaintiff's counsel has no basis to contend otherwise.

[2]  *See* Dkt. 56 & 57 at 4 ("[i]t is undisputed that [Plaintiff] would lack Article III standing to bring a UCC claim under any other states' laws in his own right").



March 5, 2015
Page 2

there is an insufficient amount in controversy to sustain jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).[3]

Plaintiff's counsel's overblown rhetoric notwithstanding, M&T's Motion to Stay and/or Extend does not seek to "hijack" the proceedings.  To the contrary, M&T appropriately preserved the jurisdictional issue in its Answer (Dkt. 38 at ¶¶ 5-8), advised the Plaintiff and the Court of the issue in the Rule 26 case management report (Dkt. 44 at 3-4), filed a timely Rule 12(c) motion regarding Plaintiff's lack of Article III standing to assert non-South Carolina claims (Dkt. 52-54),[4] and promptly raised the insufficient jurisdictional amount issue regarding the South Carolina putative class once the information was gathered and provided to counsel.  (Dkt. 73-74 & 76-77).  Most importantly, the record has become abundantly clear that M&T's pending Motion for Judgment on the Pleadings (the "Pending Motion") is a *dispositive* motion because the granting of the Pending Motion will limit Plaintiff to pursuing his individual South Carolina claim and a putative South Carolina class – neither of which can support the required jurisdictional amount.  That the potential amount in controversy for the putative South Carolina class was ascertained during the course of discovery concerning Plaintiff's claim and Rule 23 issues is neither unusual nor surprising – this is the stage of the proceedings when such information is gathered, analyzed and exchanged.[5]

Plaintiff has failed to meet his burden to establish why the requested nationwide discovery is relevant to the propriety of class certification under Rule 23.  Moreover, to the extent that Plaintiff intends to proceed with seeking certification of a putative nationwide or multi-state class, M&T has provided Plaintiff with sufficient information for him to do so.  Finally, Plaintiff's nationwide discovery request is overly broad and not supported as to scope and time period.  For all of these reasons, Plaintiff's Letter Motion should be denied.[6]

1.    **Discovery Provided By M&T**

M&T has provided significant discovery related to Plaintiff's claim in response to Plaintiff's discovery requests.  M&T has produced the loan file, collection notes and repossession/sale notes

---

[3]    *See* Dkt. 73-74 & 76-77.

[4]    The only conceivable timeliness issues concerning the Rule 12(c) motion is whether it was filed early enough not to delay trial. Fed. R. Civ. P. 12(c).  M&T raised the undisputed lack of Article III standing issue in the September 26, 2014 case management report (Dkt. 44 at 3, 12), in an October 1, 2014 letter to the Court (Dkt. 46) and in its Pending Motion.  (Dkt. 52-54).  The Pending Motion was filed October 30, 2014 and has been *sub judice* since November 24, 2014.  As of today, no trial date has been set; nor is a trial imminent under any scenario.

[5]    And, if Plaintiff believed that he could show that the data concerning the putative South Carolina class reasonably could have been provided sooner, then Plaintiff had the ability to file a motion to compel in early December, 2014.  M&T provided timely written responses, including objections, and worked to gather and assemble the South Carolina data.  Plaintiff has no factual basis to support any accusation of dilatory conduct.  To the contrary, as M&T first explained in early October, 2014, the data collection process (undisputedly) requires a tedious and time-consuming, manual review of individual transaction documents in order to gather certain requested information.  *See* Dkt. 46 at 2-3.  That South Carolina alone took several months only highlights (and confirms) the reasons why Plaintiff's nationwide request is so unduly burdensome, time consuming and costly. *See* Dkt. 46.  Therefore, simply put, Plaintiff's attacks are completely meritless and unsubstantiated.

[6]    This letter responds to Plaintiff's counsel's two-page March 2, 2015 (Dkt. 75) letter and five-page February 27, 2015 letter (Dkt. 75-3), both of which form the basis for Plaintiff's Letter Motion.

March 5, 2015
Page 3

relating to Mr. Pinks' two separate accounts.  M&T also has provided Plaintiff with a declaration specifying the Notices of Repossession and Sale of Merchandise used by M&T in South Carolina between March 14, 2010 and June 25, 2012, when the notice was revised.  Additionally, without waiver of its objections and in order to resolve a dispute between the parties, after several months of investigation and the examination of individual customer transaction files, M&T provided Plaintiff with certain available data for all M&T customers in South Carolina whose consumer goods collateral was repossessed and sold during the period from March 14, 2010 until June 24, 2012.  *See* Dkt. 75-2 (M&T's counsel's February 26, 2015 letter to Plaintiff's counsel).  The retrieval of certain of the information provided by M&T required a manual examination of individual customer transaction records.  *Id.*

Moreover, as early as December 3, 2014, M&T advised Plaintiff's counsel that M&T was *not* contesting numerosity with respect to *any* motion for class certification filed by Plaintiff.  *See* Dkt. 71-1 at 10 and 13 of 28 (Responses to Interrogatory Nos. 6 and 8).  M&T's counsel reiterated this position at the February 17, 2015 status conference.  Additionally, in early October, 2014, M&T explained that, based on its preliminary analysis at that time, the nationwide discovery or "initial disclosures" that Plaintiff was seeking for more than a six year time period going back to January 2007 may require the review of "more than 51,000 repossession transactions," and would require the hiring and training of at least 10 temporary employees, cost more than $250,000 and require a substantial period of time to complete after the temporary employees were recruited and trained.  (Dkt. 46).  The Court correctly rejected Plaintiff's unduly burdensome, costly and time-consuming request.  (Dkt. 51).

2.      **Because He Admittedly Lacks Article III Standing to Assert Any Non-South Carolina Claim, Plaintiff Does Not, and Cannot, Personally Assert Any Such Claim, and He Is Not Entitled To Discovery Concerning Claims Under Different States' Laws or Transactions in Other States Before The Court Determines Whether He Can Pursue Any Such Claims.**

Plaintiff is a South Carolina resident, who has asserted a claim for violation of § 36-9-9613 and § 36-9-9614 of the South Carolina Commercial Code.  Dkt. 1 (Compl.) ¶¶ 1, 18-21.  Plaintiff seeks to represent a class of South Carolina residents who received the Notice based on an alleged violation of the South Carolina Commercial Code.  *Id.* ¶ 26.  M&T has provided discovery relevant to Plaintiff's actual claim and the propriety of class certification of any putative South Carolina class, and Plaintiff's Letter Motion does not contend otherwise.

Despite the fact that he is a South Carolina resident and admittedly lacks Article III standing to assert any claim under any other State's law, Plaintiff seeks information regarding M&T's nationwide repossession practices because Plaintiff contends that he also seeks to represent a putative nationwide or multi-state class (or subclasses) of residents from other States who received the Notice based on an alleged violation of the unidentified laws of other States.  Dkt. 1 ¶ 26.  However, Mr. Pinks is the sole Plaintiff, and he does not possess a claim under any State's law other than South Carolina.  Plaintiff's admitted lack of Article III standing to assert claims under the laws of States other than South Carolina forecloses his ability to obtain discovery relating to States in which he suffered no injury and possesses no claim.

Plaintiff's Letter Motion seeks to compel M&T to provide information relating to "template" "Notice of Disposition" documents used by M&T in States other than South Carolina dating back to March 14, 2007.  Plaintiff's Letter Motion should be rejected and his request denied for several compelling reasons.  First, Plaintiff admittedly lacks Article III standing to assert claims under the laws

March 5, 2015
Page 4

of any States other than South Carolina. *See* Dkt. 56 and 57 at 4. Plaintiff was allegedly aggrieved only in South Carolina and asserts a specific claim under South Carolina statutory law. Compl. ¶¶ 1, 18-21. As a result, the reach of Plaintiff's claim extends only to the borders of the State of South Carolina. Plaintiff's artful pleading of an alleged violation of the "Uniform Commercial Code" is subterfuge. Compl. ¶¶ 18-21, 26. There is no such thing as a "Uniform Commercial Code" or "UCC" claim. Rather, a plaintiff must be able to show that he or she was aggrieved in a particular State where he or she resides and in violation of that specific State's law or statute.

Mr. Pinks is the sole plaintiff, and he has failed to identify any other individual who possesses a claim under the laws of any State other than South Carolina, whether in his Rule 26(a)(1) Initial Disclosures or otherwise. Simply put, Mr. Pinks' admitted lack of Article III standing to assert claims under the laws of States other than South Carolina prohibits him from obtaining discovery relating to states in which he suffered no injury and possesses no claim. A contrary rule:

> would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union. At the conclusion of that discovery, the plaintiffs would apply for class certification, proposing to represent the claims of parties whose injuries and modes of redress they would not share. ***That would present the precise problem that the limitations of standing seek to avoid.***

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (emphasis added). *Accord In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 50 (E.D.N.Y. 2014) (citing *Smith v. Pizza Hut, Inc.*, No. 09-CV-632, 2011 WL 2791331, at *9 (D. Colo. July 14, 2011)).

Plaintiff's reliance on *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishing, Inc.*, No. 12cv45577 (KMK)(LMS), 2014 WL 3907995 (S.D.N.Y. Aug. 7, 014) and *In re Frito-Lay North America, Inc. All Natural Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512 (E.D.N.Y. Aug 29, 2013), is wholly misplaced. *See* Dkt. 75-3 at 2. In *Bais Yaakov*, the plaintiff asserted a federal claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and a state law claim under the New York General Business Law, and, unlike here, the defendants "concede[d] that Plaintiff has Article III standing to sue Defendants in its own right." *Bais Yaakov*, 2014 WL 3907995, at *2-3 (emphasis added). *Bais Yaakov* did not involve an instance where the named plaintiff asserted claims under the laws of other States for which he did not possess Article III standing.

Similarly, in *Frito-Lay*, the plaintiffs asserted violations of the federal Magnuson-Moss Warranty Act, the New York General Business Law, the California Business & Professions Code, the California Consumers Legal Remedies Act, the Florida Deceptive And Unfair Trade Practices Act, and common-law causes of action under New York, California, and Florida law. *In re Frito-Lay*, 2013 WL 4647512, at *2. Because one named plaintiff resided in New York, two in California, and one in Florida, there were no claims asserted under the laws of states for which the plaintiffs did not possess Article III standing. *Id.* at *2, 11. Therefore, *Frito-Lay* also did not involve an instance where the named plaintiff asserted claims under the laws of other States for which he did not possess Article III standing.



March 5, 2015
Page 5

Thus, *Bais Yaakov* and *Frito Lay* are inapposite as to Plaintiff's ability to discover information relating to M&T's repossession practices in States where Plaintiff was not injured, does not reside and for which Plaintiff possesses no Article III standing to assert a claim.

In light of Plaintiff's admitted Article III standing deficiency, discovery concerning the "template" "Notice of Disposition" documents and/or the repossession practices of M&T in States other than South Carolina is not relevant to, nor reasonably calculated to lead to admissible evidence, regarding Plaintiff's claim under South Carolina Code § 36-9-613 and § 36-9-614.  *See* Fed. R. Civ. P. 26(b)(1).  Plaintiff does not dispute that M&T has provided Plaintiff with complete discovery with respect to Plaintiff's actual claim or the claims of any other South Carolina resident who could potentially assert the same statutory cause of action under South Carolina law, as set forth above.

Second, as explained to Plaintiff's counsel in a February 25, 2015 telephone conference, M&T does not maintain an archive of "template" Notices dating back to 2007.  Therefore, to fulfill Plaintiff's request with accuracy and certainty, M&T would be required to engage in a time-consuming, laborious process of examining numerous individual transactions across each of the States.  Plaintiff has not supplied this Court with any facts or evidence that M&T can replicate the supposed "templates" for the requested time period through another mechanism.

Finally, as set forth in M&T's Motion to Stay and/or Extend (Dkts. 76 and 77), Mr. Pinks' lack of Article III standing to assert claims under the laws of states other than South Carolina implicates whether this Court possesses subject matter jurisdiction.  As a result, the Court should decide M&T's Motion for Partial Judgment on the Pleadings – and determine whether this Court has jurisdiction – before the Court considers ordering such broad discovery.  A brief stay, as contemplated by M&T's Motion to Stay and/or Extend, will provide jurisdictional certainty, promote judicial economy and avoid the potentially unnecessary expenditures of judicial and party resources.  *See* Dkt. 77.[7]

**3.     Plaintiff's Request for Discovery Relating to States Other Than South Carolina Does Not Relate to Rule 23 Issues.**

Independent of his admitted lack of Article III standing, Plaintiff's request for information regarding the "template" "Notices of Disposition" used by M&T in States other than South Carolina and the number of M&T customers who received each type of "Notice of Disposition" per year on a state-

---

[7]     Plaintiff's reliance on *In re Zyprexa Products Liability Litigation*, 594 F.3d 113 (2d Cir. 2010), in opposition to M&T's Motion to Stay and/or Extend is misplaced.  As an initial matter, the *Zyprexa* court dismissed the appeal for a lack of jurisdiction – the *per curiam* opinion does not mention, let alone address, the trial court's subject matter jurisdiction.  *Id.* at 119.  Judge Kaplan authored a concurring opinion to address the narrow, discrete issue of "whether a district court may order that a percentage of settlement monies paid in pending multidistrict litigation ('MDL') cases be set aside to fund possible fee awards to counsel whose efforts confer a common benefit when motions to remand those cases remain undecided in district court."  *Id.*  Judge Kaplan noted that "[t]his question arises frequently in MDLs, often affecting hundreds or thousands of plaintiffs. It is important and, as it has not been addressed by any circuit, novel."  *Id.*  The issue addressed in *Zyprexa* has no relation to this case – this is not a MDL proceeding and the Court is not making any determination as to the appropriate method of awarding fees to a MDL plaintiffs' steering committee.  Moreover, *Zyprexa* did not involve an instance, like here, where a court's subject matter jurisdiction is dependent upon the outcome of a pending and fully briefing dispositive motion.  Therefore, *Zyprexa* is distinguishable and not controlling with respect to the subject matter jurisdiction issue here.

ReedSmith

March 5, 2015
Page 6

by-state basis should be rejected because Plaintiff has failed to meet his burden of establishing why the requested discovery is necessary to address the requirements of Rule 23.  Four months ago, when it served its discovery responses on December 3, 2014, M&T stated unequivocally that it did *not* intend to contest numerosity in response to *any* motion for class certification filed by Plaintiff.  Therefore, numerosity is not in dispute.

With respect to Plaintiff's claim that the information is related to "manageability issues" or "manageability and adequacy purposes" (Dkt. 75-3 at 5), approximately five months ago, M&T informed Plaintiff and the Court that it would have to review the transaction records of more than 51,000 repossession transaction that have occurred since January, 2007 to determine which customers received the Notice and that such an exercise would be enormously expensive, time consuming and unduly burdensome.  *See* Dkt. 46.  Accordingly, Plaintiff's Letter Motion and current request is nothing more than a back-door attempt to obtain information that is akin to the "initial disclosures" previously rejected by this Court.  Dkt. 51.

Plaintiff's requested information also does not relate to "commonality of liability issues" or "the requirements of Rule 23(b)(3)."  Dkt. 75-3 at 5.  Plaintiff's claim that "[w]ithout M&T telling us which states are in play, we cannot demonstrate that the state's UCC law is the same as South Carolina's" is inaccurate and simply false.  Dkt. 75-3 at 5.  Plaintiff does not need to know about M&T's repossession practices in States other than South Carolina in order to ascertain whether other States' laws are purportedly consistent with the laws of South Carolina.  Indeed, this is a legal research task that Plaintiff's counsel presumably can perform.  To the extent that Plaintiff intends to wastefully proceed with the filing a motion to certify a nationwide or multi-state class – notwithstanding M&T's pending Motion for Partial Judgment on the Pleadings (Dkts. 52-54) and the jurisdictional defects – Plaintiff does not need any information from M&T in order to ascertain which States laws are supposedly the same as South Carolina's and file a motion for class certification.

In sum, the information requested by Plaintiff is irrelevant to the Rule 23 factors and is an improper attempt to conduct a "fishing expedition" relating to M&T's nationwide repossession practices.  Moreover, this exercise demonstrates the reasons why M&T's Pending Motion is well-founded and due to be granted – otherwise Plaintiff seeks to pursue claims he admittedly does not possess personally and the proceedings will devolve into an abstract, academic debate under various State laws untethered to any actual claimant who possesses an actual claim under those other State laws.

**4.     Plaintiff's Request for Discovery Relating to States Other Than South Carolina is Overly Broad and Not Supported.**

Plaintiff's request for "template" "Notice of Disposition" documents used by M&T throughout the United States and dating back to early 2007 also is demonstrably overly broad and unsupportable.  Plaintiff's Complaint is explicit – and Plaintiff's counsel confirmed during the meet and confer process – that Plaintiff, individually and on behalf of a putative class, is only challenging the Notice received by Plaintiff.  Dkt. 1 ¶ 26.  Therefore, Plaintiff's request for all "template" "Notices of Disposition" used by M&T throughout the United States (Dkt. 75-1 at p. 5, ¶ 1) is overly broad and seeks information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.  *See* Fed. R. Civ. P. 26(b)(1).

Plaintiff also seeks the number of persons who received every "template" "Notice of Disposition" used by M&T each year on a state-by-state basis.  *See* Dkt. 75-1 at p. 5, ¶ 1.  However,



March 5, 2015
Page 7

Plaintiff's Interrogatories, which he failed to attach to his Letter Motion, did *not* request this information.  *See* Dkt. 75-1 to 75-3.  *Cf.* Dkt. 71-1 (Interrogatory Nos. 6 and 8).[8]  A proposed stipulation is not converted into a discovery request merely because M&T declined to agree to its terms.  And, in any event, the proposed stipulation was not sent to M&T's counsel until February 20, 2015.  Thus, Plaintiff is now seeking in his last-minute Letter Motion to compel M&T to provide him with information that he did not properly request during the discovery period.  Accordingly, his Letter Motion is contrary to Federal Rule of Civil Procedure 37(a)(3)(B).  Further, the requested numerical information – apart from the burden and expense of obtaining it – would merely be refinements of the aggregate data already supplied in October 2014 and could only go to sub-classing issues with regard to sub-classes for whom there is no named plaintiff and with regard to which there is no numerosity dispute.  Indeed, the mere fact that Plaintiff's counsel seeks the information broken down by individual State confirms that he lacks the ability to serve as a representative for an overarching nationwide class of customers from different States with potential claims under different State laws.

Furthermore, Plaintiff has provided no authority to support his request for the "template" "Notice of Disposition" documents used by M&T dating back 2007.  M&T has explained to Plaintiff's counsel on multiple occasions that South Carolina law provides that, whether or not the statutory damages potentially available under S.C. Code Ann. § 36-9-625(c)(2) are classified as a "penalty," Mr. Pinks' South Carolina Commercial Code claim is subject to at most a three-year statute of limitations.  *See* S.C. Code Ann. § 15-3-530(2); S.C. Code. Ann. § 15-3-540(2).  M&T has repeatedly requested authority supporting a longer applicable statute of limitations, but Plaintiff has failed to provide any justification for his overbroad request for a six year look-back period.  Because his request is overly broad and Plaintiff has failed to provide *any* basis for his request for information dating back to 2007 for every State, his Letter Motion should be denied.  M&T should not be required to provide information for a period of time unrelated to the statute of limitations governing Plaintiff's sole, actual claim.

For all of these reasons, M&T respectfully requests that Plaintiff's Letter Motion be denied.

Respectfully submitted,


*/s/ Roy W. Arnold*
Roy W. Arnold

---

[8]     When the schedule was extended in December, Plaintiff expressly agreed not to serve any additional written discovery, other than deposition notices.  Dkt. 60, ¶ 8.