

HERZFELD & RUBIN, P.C.
ATTORNEYS AT LAW
125 BROAD STREET, NEW YORK, NY 10004 TEL 212 471-8500 FAX 212 344-3333 WWW.HERZFELD-RUBIN.COM

March 20, 2015

**Daniel V. Gsovski**
Direct Dial 212: 471-8512
dgsovski@herzfeld-rubin.com

**BY ECF**
**Hon. Ronald L. Ellis**

**Re: Pinks v. M&T Bank Corp., 1:13-cv-1730 LEK-RWE (S.D.N.Y.)**

Dear Magistrate Judge Ellis:

This letter replies to Defendant M&T Bank Corp.'s ("M&T's) seven page response in opposition (Dkt. #80) to Plaintiff Jerry Pinks' Motion to Compel responses to two pared down, multi-state class discovery requests (Dkt. #75). We expect our Motion to Compel will be considered at the hearing on March 26, 2015, in tandem with M&T's application for a stay of discovery and class certification briefing. (Dkt. #76)

Two years after this case was filed – and after this Court's oral directive clarifying its long-standing Discovery Order (Dkt. #51) – M&T maintains its refusal to provide ***any*** requested information, data or documents, except with respect to Plaintiff's individual claim or to a putative South Carolina class.[1] M&T takes this position even as to Plaintiffs' two remaining requests, which seek to 1) identify form Notices of Disposition, including that sent to Plaintiff (the "Pinks Notice") and determine where and when each was sent, and, 2) as to the Pinks Notice itself, to determine where, when, and how many times it was sent. This Motion asks that M&T be compelled to answer these minimal and essential class discovery requests.

**<u>This Court has twice ordered pre-certification discovery on a multi-state basis.</u>**

M&T first justifies its stance based on Plaintiff's purported lack of standing which "forecloses his ability to obtain discovery relating to the States in which he suffered no injury [*i.e.,* on a multi-state basis for any state other than South Carolina.]" (Dkt. #80 at 3.) M&T has raised this very same objection to responding to multi-state discovery twice before, each time seeking to stay discovery. Neither prior application has been granted.

First, on October 1, 2014, M&T filed a letter (Dkt. #46) requesting that the certification schedule and discovery order stay all multi-state discovery pending resolution of its forthcoming "Article III standing" challenge.[2] Though that relief was not granted, or even addressed, in the resulting Discovery Order (Dkt. #51), M&T failed to move for reconsideration, or to request a timely stay pending decision of its Rule 12(c) Motion. (Dkt. #52) Instead, M&T simply treated the Order as if it had in fact stayed multi-state discovery.

---

[1] M&T concedes that its electronic data and paper documents relevant to Plaintiff's individual claim and a putative South Carolina class are "also available for M&T customers located in other states." Dkt. #75-2 at 3.

[2] "**Plaintiff's Proposed 'Class-wide' Production Is Improper Because Plaintiff Lacks Constitutional Standing to Represent or Assert Any Claim Under Any Other State's Law…** Thus, ***before*** this Court can, or should, consider directing purported multi-state, 'class-wide' discovery, Plaintiff must meet his burden of demonstrating his standing to assert claims on behalf of persons outside of South Carolina. He has not done so[.]" Dkt. #46 at 1-2. (emphasis added.)

HERZFELD & RUBIN, P.C.
1225 FRANKLIN AVE, SUITE 315
GARDEN CITY, NY 11530
TELEPHONE: 212-471-3231

CHASE KURSHAN HERZFELD & RUBIN, LLC
354 EISENHOWER PARKWAY, SUITE 1100
LIVINGSTON, NJ 07039-1022
TELEPHONE: 973-535-8840

HERZFELD & RUBIN, LLP
1925 CENTURY PARK EAST
LOS ANGELES, CA 90067
TELEPHONE: 310-553-0451

RUBIN MEYER DORU & TRANDAFIR
SOCIETATE CIVILA DE AVOCATI
7, STRADA PUTUL CU PLOPI
BUCHAREST 1, ROMANIA
TELEPHONE: (40) (21) 311-1460

At the Status Conference of February 17, 2015, the Court, responding to M&T's misreading of the Discovery Order, clearly stated that nothing in the Discovery Order was intended to limit appropriate pre-certification discovery relevant to Rule 23 to a putative South Carolina class. Rather than staying multi-state discovery, the Court orally informed the parties they must continue under the previously-ordered schedule. M&T's attempted third bite at this apple should be summarily rejected.

**<u>Plaintiff's two remaining multi-state discovery requests are minimal, appropriate and necessary under Rule 23, while M&T's objections are specious.</u>**

*A. Pinks' First Discovery request*:

> 1. On or before March 10, 2015, Defendant shall identify and provide ***exemplars of any form or template*** used to provide Notice of Disposition of private sale of consumer goods collateral to any consumer obligor in accordance with UCC § 9-613, 614, at any time from March 14, 2007, in any state other than South Carolina. ***For each such form or template identified and provided***: state (a) the ***applicable time period(s)*** and (b) the ***applicable state(s)*** in which such form or template was used by Defendant. (Dkt. #75-1 at 5, sent to M&T on 2/20/2015.) (emphasis added.)

This basic request has been outstanding since Plaintiff's First Interrogatories were served on October 31, 2014. It seeks to determine whether M&T sent any form Notices of Dispositions in other states, and if so, it requests exemplars or templates of all Notices, along with the applicable states (where) they were sent, and with dates of usage (when). In fact, M&T has provided exactly this information with respect to South Carolina, providing copies of two templates, including the Pinks Notice, and a declaration by Michael P. Ryan, an employee of M&T, establishing the dates of usage for both. Yet M&T refuses to provide any similar multi-state templates, objecting as follows:

> [A]s explained to Plaintiffs in a February 25, 2015 telephone conference, M&T does not maintain an archive of 'template' Notices dating back to 2007. Therefore, to fulfill Plaintiff's request ***with accuracy or certainty***, M&T would be required to engage in a time-consuming, laborious process of examining numerous individual transactions across each State. Plaintiff has not supplied this Court with any facts or evidence that M&T can replicate the supposed 'templates' for the requested time period through any other process. (Dkt. #80 at 5.) (emphasis added)

The emphasized language gives M&T's game away. M&T's invocation of its claimed inability to achieve perfect "accuracy or certainty" is a smokescreen to avoid doing anything. For purposes of class certification, as opposed to merits discovery, absolute "accuracy or certainty" is not the touchstone, and it can never be an excuse for withholding information which a party does have. Even if it is to be believed that it could not retrieve this information going back the full six years, M&T is not excused from answering as to the years available. This request encompasses the Pinks Notice and any other form Notices of Disposition, at least one of which, the Pinks Notice, was used as a form document in over a hundred South Carolina transactions. Someone at M&T drafted it (or had it drafted), authorized its use, instructed its employees when, where and how to use it, and decided to replace it on a certain date with another form Notice. It is not credible that M&T is unable to produce the Pinks Notice or any other templates of similar Notices, used in any other state at any time within the relevant period.

M&T also claims that:

Plaintiff's request for information regarding the 'template' 'Notices of Disposition' used by M&T in States other than South Carolina…should be rejected because Plaintiff has failed to meet his burden of establishing why the requested discovery is necessary to address the requirements of Rule 23. (Dkt. #80 at 5-6.)

This response is astounding. The heart of his class action allegation is that the Pinks Notice was a form Notice of Disposition, sent to consumers in other states as well as in South Carolina. Therefore, whether this is factually correct, and if so where and when, is essential to establish commonality of fact by way of a common document, and commonality of law in affected states, under Rule 23(a). Whether the Notice sent to him is typical of the any Notices sent to others is also centrally at issue on class certification.

To the extent this request asks for templates of *other* form Notices of Disposition, it seeks to determine if any other Notices should be considered the same as the Pinks Notice for this class action. For example, assume M&T sent a Notice of Disposition in Maryland and within the same relevant time period, but which it considers a different Notice because it contains a different return address or phone number for M&T. Assume that the Maryland Notice included the same UCC defects identified in Plaintiff's complaint with respect to the Pinks Notice. Plaintiff would join the Maryland Notice to his class certification motion, arguing that it was the same *notice* as the Pinks Notice for UCC purposes. The point is that it is Plaintiff's counsel, and not M&T, who may decide whether to allege that any other form Notice is the same as the Pinks Notice in this litigation. *E.g., Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt,* 2014 WL 3907995 *2, 5 (S.D.N.Y. Aug. 7, 2014) (Named Plaintiff sought to compel discovery "on *all* fax ads sent by Defendants that contain a notice substantially similar to the notice on the fax ad sent by Defendants…not just to provide discovery of the single fax ad that Defendants sent to Plaintiff, as Defendants urge." The court agreed, finding "such discovery would be relevant to Plaintiff's future motion for class certification[.]") (emphasis original.) M&T also objects that a six year time period is too long because Plaintiff's South Carolina claim is limited, according to M&T, to a three year period. Plaintiff notes this objection is irrelevant as long as M&T fails to provide any template notices for *any* time period. Plaintiff also disagrees as M&T has refused to identify the other affected states; therefore, no determination of statutes of limitations with respect to those states can be made or should be made as a matter of pre-certification discovery.

*B. Plaintiff's second request:*

> 2. On or before March 10, 2015, Defendant shall, with respect to every private sale or other disposition of consumer goods by Defendant or on Defendant's behalf, occurring at any time from March 14, 2007, which sale or other disposition was preceded by a Notice of Disposition in form of [the Pinks Notice]: (a) ***identify the state(s)*** in which said Notice of Disposition was sent to a consumer obligor; and (b) identify the ***total number of consumer obligors*** to whom the Notice of Disposition was sent (1) ***by state*** and (2) ***by each year***, beginning from March 14, 2007 through March 14, 2008, and running through the present date. (Dkt. #75-1 at 5, sent to M&T on 2/20/2015.)(emphasis added)

This request is limited solely to the Pinks Notice as a form document as it does not encompass any other potentially defective form Notices. Plaintiff has dropped his prior request for the identifying details of each sale and individual transactional data. Plaintiff merely seeks, for all sales preceded by the Pinks Notice, the states in which the Pinks Notice was sent (where); and, for

each such affected state, the aggregate number of obligors to whom the Pinks Notice was sent (how many) over a six year period (when).

M&T's objection is pure sophistry: "Plaintiff does not need to know about M&T's repossession practices in States other than South Carolina in order to ascertain whether other States laws are purportedly consistent with the laws of South Carolina. Indeed, this is a legal research task[.]" (Dkt. #80 at 6.)

Thus rather than certification briefing, M&T proposes that Plaintiff's counsel substitute a treatise on the UCC laws of 50 states, whether or not any state's law may apply. What Plaintiff seeks, however, is proof of a common fact – whether the Pinks Notice was sent to consumers in any other state and if so, what state(s), when and how many times. Any examination of a state's UCC law is irrelevant, unless M&T actually did something with respect to that state's law. Plaintiff also has the burden of establishing, in a multi-state class action, that the state laws at issue do not present manageability or predominance issues in that there are no "variations in state law [to] present 'insuperable obstacles' to determining liability based upon common proof[.]" *Johnson v. Nextel,* 2015 WL 897653 * 15 (2nd Cir. Mar. 5, 2015). Where there is no factual "common proof" relevant to other states, because M&T did not send any Pinks Notices there, neither Plaintiff nor the Court need consider that state's law.

M&T also objects that this is a new and untimely request. This is not correct. Plaintiff's Interrogatory 8, Plaintiff's First Interrogatories (Dkt #71-1 at 10-11, served October 31, 2014) was revised in direct response to M&T's objections and the Court's concerns at the Scheduling Conference to streamline pre-certification discovery. As originally propounded, Interrogatory No. 8 sought extensive information as to every consumer sale which was preceded by the Pinks Notice within a six year period, including names and addresses of obligors, dates of repossession and sale, amounts necessary to compute statutory damages, and the amounts of any deficiency balances still owed to M&T. The current request strips out all individualized information requests, leaving only the approximate aggregate number of obligors per state, over a six year period, who were sent the Pinks Notice prior to the sale of their collateral. Since M&T knows the other states, if any, in which it sent the Pinks Notice (where) and during what time periods (when), and it has admitted that customers' sales dates are subject to an electronic search (Dkt. #75-2 at 1), it may search its electronic data to compute the aggregate number of sales (how many) preceded by the Pinks Notice.

Finally, M&T objects that this request is overly broad in terms of the six years requested. Plaintiff disagrees as M&T has refused to identify the other affected states; therefore, no determination of statutes of limitations with respect to those states can be made or should be made as a limit to pre-certification discovery. To the extent that six years of information may exceed an applicable statutory period, M&T is not prejudiced as the Court has entered a stringent protective order, in exactly the form drafted by M&T, under which such "surplus" data could not be disseminated and would be subject to immediate return. M&T simply cannot be relieved of *all* compliance merely because it objects to a full six year period of compliance.

Respectfully,
/s/ *Daniel V. Gsovski*
Daniel V. Gsovski (dg4413)

/s/ *Kathy D. Lindsay*
Kathy D. Lindsay (pro hac vice)
Counsel for Plaintiff Jerry Pinks