UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-2-15

JERRY PINKS,
*individually and on behalf of others similarly situated,*

          Plaintiffs,

- against -

M&T BANK CORPORATION,

          Defendant.

REPORT AND RECOMMENDATION

13 Civ. 1730 (LAK) (RLE)

**To the HONORABLE LEWIS A. KAPLAN, U.S.D.J.:**

  Plaintiff Jerry Pinks ("Pinks") commenced this putative class action on March 14, 2013. He seeks mandatory, statutory damages for the alleged failure of Defendant M&T Bank Corporation ("M&T Bank") to comply with Sections 9-613 and 9-614 of the Uniform Commercial Code as adopted by the State of South Carolina ("the UCC") when it issued him a Notice of Repossession and Sale of Merchandise. Pinks alleges that M&T Bank failed to comply with the UCC because the notice: 1) did not state that he is entitled to an accounting of his unpaid indebtedness or state the charge, if any, for such an accounting; 2) did not include a description of any liability for a deficiency; and 3) included additional information that materially misstated his redemption rights under the UCC. The Honorable Lewis A. Kaplan referred this case to the undersigned on March 26, 2013, for general pretrial and dispositive motions. (Docket No. 4.)

  On October 30, 2014, M&T Bank filed a Motion for Partial Judgment on the Pleadings arguing that Pinks lacked Article III standing to represent a class beyond his state of residence, South Carolina. (Doc. No. 52) In a letter dated March 2, 2015, M&T informed the Court that while searching and producing documents for South Carolina debtors it discovered that its

motion "involves not only a threshold Article III issue but ... if the Court grants the pending motion, will require that this Court dismiss Plaintiff's Complaint for lack of jurisdiction due to an insufficient amount in controversy." (Doc. No. 73) The Court held a telephone conference with the Parties on March 26, 2015. During this conference, the Court directed M&T Bank to submit for review the data upon which its jurisdictional concerns were based. By letter dated April 1, 2015, Pinks informed the Court that it could not stipulate to the amount in controversy in South Carolina because it could not verify the accuracy or completeness of M&T Bank's spreadsheet. (Doc. No. 87) After reviewing the data collected by M&T Bank for South Carolina, the Court found evidence that a class limited to South Carolina would not meet the jurisdictional minimum and stayed discovery pending its decision on M&T's motion. (Doc. No. 88)

M&T Bank argues in its motion that Plaintiff's purported "class" claims should be dismissed insofar as he seeks to assert any claim under the laws of any state other than South Carolina because he lacks standing to pursue any claim under the laws of states in which he does not reside or in which he suffered no alleged injury. (Doc. No. 53)

I recommend that M&T Bank's motion be **GRANTED** not for the reasons articulated by M&T Bank but for the reasons discussed below.

### I. BACKGROUND

The facts herein were provided by Pinks in his Complaint, and are presumed true for the purposes of the motion. On August 6, 2008, Pinks entered into a Retail Installment Contract and Security Agreement ("RICSA") with Boat-N-RV Megastore in Ridgeland, South Carolina, to purchase a 2009 Big Country Fifth Wheel ("Big Country"), a consumer good. (Compl. ¶ 10.) The RICSA, attached to the Complaint as Exhibit 1, was then assigned to M&T Bank, which, under its terms, made M&T Bank the secured party. (*Id.* ¶ 11.) M&T Bank sent Pinks the

Notice, attached to the Complaint as Exhibit 2, on or around July 29, 2010. (*Id.* ¶ 12.) The Notice stated that Pinks was in default under the terms of the RICSA, and as a result, M&T Bank had repossessed the Big Country (*Id.* ¶ 13) The Notice also stated that the Big Country was "subject to a private sale" on or after August 7, 2010. (*Id.*) Under a section titled "Notice of Right to Redeem," the Notice stated the following:

> At any time before the sale, you have the right to redeem (get back) the collateral by paying certified funds to MTB at the address listed below, for the full amount of all past due installment payments under your contract (including all late charges) and the costs of repossession, preparing, holding, and advertising the collateral for sale. The amount due as of the date of this letter is as follows:
> Past Due Payments On Your Loan: 990.50
> Accrued Late Charges: 138.25
> Repossession Fees: 1,000
> Total Amount Due: 2,128.75
> This amount is subject to change as additional payments become due, or costs continue to accrue. Any additional amount must be paid in order to redeem the collateral. Once the sale of the collateral has taken place, MTB will deduct from the sales proceeds all amounts owed to it. If there is still money owing after this is done, you are responsible to pay MTB this deficiency. If there is money left over, MTB will pay you this surplus. Exh. 2.

On or around September 21, 2010, M&T Bank sent Pinks a letter stating that the Big Country had been sold at a private auction on September 15, 2010. (*Id.* ¶ 14.)

## II. DISCUSSION

### A. Applicable Standards for Judgment Under Rule 12(c)

The standard for determining whether to grant a motion for judgment on the pleadings under Rule 12(c) is the same as that governing a motion to dismiss made under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006). On a motion to dismiss a complaint under Rule 12(b) (6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S, Ct.1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) (quoting Twombly, 550 U.S. at 555). Where a party has moved under Rule 12(c), "[a] complaint will only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir.2002) (internal quotations omitted).

**B.     Standing**

M&T Bank argues that Plaintiff's purported "class" claims should be dismissed insofar as he seeks to assert any claim under the laws of any state other than South Carolina because he lacks Article III standing to pursue any claim under the laws of states in which he does not reside or in which he suffered no alleged injury. (Doc. No. 53)

**1.     Article III Standing**

Whether a Plaintiff has Article III standing is a threshold issue that "determine[s] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "To satisfy the irreducible constitutional minimum of [Article III] standing, a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir.2012) (citations and internal quotation marks omitted). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Id.* (citations and internal quotation marks omitted). "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been

injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* at 64 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citations, internal quotation marks, and alterations omitted)).

Although the Parties agree that Article III standing is a prerequisite to class certification, they disagree about the nature and scope of Article III standing analysis. Pinks argues that a named plaintiff must only have Article III standing to raise his or her individual claims. M&T Bank argues that a named plaintiff must have Article III standing to raise their individual claims as well as the claims of other putative class members. Of central importance to the Parties' positions on this issue are their respective interpretations of a recent Second Circuit decision: *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012).

2. **Class Standing Under *NECA***

In *NECA*, the Second Circuit reversed a district court that had dismissed for lack of standing Securities Act class claims by a purchaser of certificates from two trusts. *Id.* at 145. This purchaser sought to represent purchasers of all mortgage-backed certificates issued by all the trusts in multiple offerings pursuant to a common shelf registration statement. *Id.* The district court held that plaintiff NECA-IBEW Health and Welfare Fund ("NECA") lacked standing to bring claims on behalf of purchasers of certificates in the offerings it did not purchase, stating that NECA did not show that the injuries it alleged were the same as those suffered by purchasers of other certificates backed by different sets of loans. *Id.* at 154. The court further held that NECA could only represent the class of persons who purchased the same certificates that NECA purchased. *Id.* at 155.

The Second Circuit reversed these rulings and held that "the district court erred in concluding, based on the fact that NECA purchased just two particular certificates . . . from

5

particular trusts that it necessarily lacked standing to assert claims on behalf of purchasers of certificates from other trusts." *Id.* at 158. The court separated its standing analysis into three parts - Article III, statutory, and class standing. The court held that NECA had Article III standing "in its own right" because it sufficiently alleged an injury as a result of defendants' allegedly false statements and that injury was redressable under the Securities Act. *Id.* The court held that NECA had statutory standing "in its own right" because it had purchased certificates pursuant to allegedly false registration statements. *Id.* The court stated, however, that

> 'class standing'—that is, standing to assert claims on behalf of purchasers of Certificates from other Offerings, or from different tranches of the same Offering—does not turn on whether NECA would have statutory or Article III standing to seek recovery for misleading statements in those Certificates' Offering Documents. NECA clearly lacks standing to assert such claims on its behalf because it did not purchase those Certificates. Because the class standing analysis is different, the district court erred in concluding, based on the fact that NECA purchased just two "particular ... [C]ertificate[s] from ... particular tranche[s] from ... particular [T]rust[s]" that it necessarily lacked standing to assert claims on behalf of purchasers of Certificates from other Trusts and from other tranches within the 2007–10 and 2007–5 Trusts.

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012). It is this passage that seems to have caused the bulk of the contention between the Parties.

The court articulates four principles in *NECA*: 1) Article III standing, statutory standing, and class standing are three separate issues with separate standards; 2) Article III standing and statutory standing are prerequisites to class standing; 3) named plaintiffs need only have Article III and statutory standing "in their own right;"; and 4) class standing is a fact intensive determination dependent upon whether the plaintiff plausibly alleges "(1) that he "personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA*, 693 F.3d at 162.

M&T Bank argues that *NECA* is inapposite because: 1) the parties in that case did not dispute NECA's Article III standing to bring the other putative class members' claims; and 2) NECA and the other putative class members all intended to sue under the same federal statute. (Doc. No. 58 at 8-9.) In contrast, Pinks, a resident of South Carolina, seeks to represent a class including individuals who have claims arising under other states' Uniform Commercial Codes.

The Court agrees with M&T Bank that Article III standing is jurisdictional and cannot be merged with class certification analysis. (Doc. No. 53 at 11.) *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012). Nonetheless, *NECA* cannot be fairly read to support the idea that Article III standing analysis concerns a named plaintiff's ability to bring other class members' claims. The court in *NECA* explicitly analyzed NECA's Article III standing as it pertained to NECA "in its own right" and the specific certificates that NECA purchased; not the certificates that other putative class members purchased. *See NECA*, 693 F.3d at 158. Although the Court agrees that *NECA* is distinguishable from this case in that there was only one federal statute at issue in *NECA* and not numerous, distinct state statutes, this distinction goes to Pinks' class standing rather than his Article III standing. Because the Parties do not dispute that Pinks has Article III standing in his own right and, instead, dispute Pinks's ability to represent a multi-state class, the Court moves to a discussion of his class standing.

3. **Pinks Lacks Class Standing to Represent Individuals Outside of the State of South Carolina.**

Pinks has satisfied the first prong of the class standing test articulated in *NECA* in that he alleges he has "personally has suffered some actual ... injury as a result of the putatively illegal conduct" of M&T Bank. *NECA*, 693 F.3d at 162. (Doc. No. 1) However, Pinks has failed to satisfy the second "same set of concerns" prong.

Pinks asserts that because the Complaint alleges injury arising from the "same course of conduct that gives rise to the class members claims," which entails analysis under the "the same legal theory and uniform state statutory provisions of the UCC" and "gives rise to identically-computed, mandatory damages determined according to the same statutory formula," he has satisfied the class standing test. (Doc. No. 57 at 11.) He urges the Court to reach the same result as the Second Circuit in *NECA*, but the facts in that case are distinct from this action in several key regards.

First, the putative class in *NECA* had all suffered injury cognizable under the same two sections of the same federal statute: Sections 11 and 12 of the Securities Act. 15 U.S.C.A. § 77k. Here, although Pinks intends to limit the class to states with "versions of the UCC which are the same as South Carolina's UCC," (Doc. No. 57 at 11), these are nonetheless separate statutes with separate interpretive jurisprudence. Pinks lives in South Carolina, executed his agreement with M&T Bank in South Carolina, was sent the allegedly faulty notice in South Carolina, and seeks damages under South Carolina code. Pinks does not allege that he has any contacts with states other than South Carolina, that he incurred any injury or damage in any other state, or that he personally possesses any claim under any other state's laws. Although the language may be similar, Pinks's cause of action does not arise under the same body of law as the class he seeks to represent. *See Simington v. Lease Fin. Grp., LLC,* No. 10-CV-6052 (KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) ("Where plaintiffs themselves do not state a claim under their respective state's consumer statutes . . . they do not have standing to bring claims under other state statutes—even where they are named plaintiffs in a purported class action. Plaintiffs do not have an injury traceable to conduct that occurred in any other state than those in which they conduct business and thus, they cannot assert a claim under those states' consumer fraud

statutes.")

Second, it was undisputed in *NECA* that the putative class members had all purchased certificates affected by the same allegedly faulty registration statement. Here, Pinks has not established: 1) that the faulty notice he received was used in other states; 2) that this notice, if used, was violative of other state's Uniform Commercial Codes; 3) that other state's Uniform Commercial Codes have identical relevant provisions; and 4) that other states' jurisprudence interpret these relevant provisions in the same way as courts in South Carolina. Although Pinks argues that information about what notification M&T Bank sent is "uniquely within M&T's control," (Doc. No. 57 at 11 n. 3.), "discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *Tottenham v. Trans World Gaming Corp.*, No. 00-CV-7697 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002).

These factual determinations bear directly on whether there are common issues of law and fact uniting the putative class. In light of the numerous ways in which each state's UCC and jurisprudence can vary, it is likely that putative class members from different states will have individualized issues of law that will require individual determination. Pinks has not established that the adjudication of his claim under South Carolina's UCC would require the decision of any common question concerning the adequacy of M&T's notice under other state's Uniform Commercial Codes.

Because Pinks lacks class standing to represent individuals outside of the state of South Carolina, I recommend that M&T Bank's Motion for Partial Judgment on the Pleadings be granted on that basis.

4.  **Jurisdictional Minimum Concerns**

In a letter dated March 2, 2015, M&T informed the Court that while conducting discovery on South Carolina debtors it uncovered indications that, were the class limited to South Carolina, Pinks would not meet the "amount in controversy" jurisdictional minimum. (Doc. No. 73) Having reviewed the data collected by M&T Bank for South Carolina, the Court finds that M&T Bank's concerns have merit. However, because neither M&T Bank nor Pinks could stipulate to the accuracy or completeness of M&T Bank's spreadsheet at the time of its submission, and discovery on South Carolina has been ongoing, this issue requires the resolution of a factual dispute and is not appropriate for a motion for judgment on the pleadings.

## III. CONCLUSION

For the foregoing reasons, I recommend that M&T Bank's Motion for Partial Judgment on the Pleadings be **GRANTED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: September 2, 2015**
**New York, New York**

Respectfully Submitted,

*/s/ Ronald L. Ellis*

The Honorable Ronald L. Ellis
United States Magistrate Judge