# United States District Court
# Southern District of New York

JERRY PINKS,
      individually and on behalf of others
      similarly situated,
   *Plaintiffs,*

          *-against-*

M & T BANK CORP.,
*Defendant.*

No.: 1:13-cv-1370 – LAK-RLE

**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION OF**

**MAGISTRATE JUDGE (DI 89)**

**HERZFELD & RUBIN, P.C**.
Daniel V. Gsovski (dg4413)
125 Broad Street
New York, New York 10004-1300
Telephone: (212) 471-8512
E-mail: dgsovski@herzfeld-rubin.com
ATTORNEYS FOR PLAINTIFF
(additional counsel on signature page)

September 29, 2015

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    *A.*  *The Complaint* ................................................................................................ 2

    B.  *M&T's Rule 12(b)(6) Motion* ......................................................................... 3

    C.  *M&T's Answer and Class Discovery* ............................................................. 4

    D.  *M&T's Rule 12(c) Motion* ............................................................................ 5

    E.  *The R&R* ...................................................................................................... 5

ARGUMENT .................................................................................................................. 6

    I. THE R&R ERRS IN REQUIRING MR. PINKS TO "ESTABLISH" RATHER
        THAN "PLAUSIBLY PLEAD" CLASS STANDING .................................... 7

    II. MR. PINKS HAS MORE THAN PLAUSIBLY ALLEGED CLASS
        STANDING ................................................................................................. 11

        1.     Mr. Pinks has plausibly pled that "the faulty notice he received was used
                 in other states .................................................................................. 13

        2.     Mr. Pinks has plausibly pled "that other state's Uniform Commercial
                 Codes have identical relevant provisions" ........................................ 15

        3.     Mr. Pinks has plausibly pled "that this notice, if used was violative of
                 other state's Uniform Commercial Codes." ..................................... 18

        4.     Mr. Pinks has plausibly pled "that other states jurisprudence interpret
                 these relevant provisions in the same way as courts in South Carolina." .....18

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

### Cases

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,*
 463 F.3d 82 (2nd Cir. 2006) ...........................................................................9, 10

*Ashcroft v. Iqbal,*
 556 U.S. 662,
  129 S.Ct. 1937 (2009) .................................................................................7, 12

*Bell Atl. Co. v. Twombley,*
 550 U.S. 544
  127 S.Ct. 1955 (2007). ................................................................................7, 15

*Gates v. United Healthcare Ins. Co.,*
 2014 WL 580057 (S.D.N.Y. Nov. 7, 2014) .................................................11

*In re Buspirone Patent Litigation,*
 185 F. Supp. 2d 363 (S.D.N.Y. 2002) ..........................................................11

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
 693 F.3d 145 (2d Cir. 2012),
  *cert. denied,* 133 S. Ct. 1624 (2013) ...................................................... passim

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC.,*
 709 F.3d 109 (2nd Cir. 2013) ................................................................... passim

*Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago v. BNYM,*
 775 F.3d 154 (2d Cir. 2015) ................................................................... 5, 7, 8

*Tottenham v. Trans World Gaming Corp.,*
 2002 WL 19767023 (June 21, 2002, S.D.N.Y.) ..........................................15

### Statutes

Uniform Commercial Code § 1-102
 S.C. Code Ann.§ 36-1-102 ........................................................................18,19

Unform Commercial Code § 9-611
 SC Code Ann. § 36-9-611 ...............................................................................16

Uniform Commercial Code § 9-613
 SC Code Ann. 36-9-613 ................................................................................3, 16

Uniform Commercial Code 9-614
 SC Code Ann. 36-9-614 ................................................................................3, 16

ii

**Other Authorities**

Rule 12(d), Fed.R.Civ.P. ........................................................................................................................10

http://www.uniformlaws.org/Act.aspx?title=UCC%20Article%209,%20Secured%20Transactio
ns%20(1998), visited 9/28/2015 ........................................................................................................17

## INTRODUCTION

Plaintiff Jerry Pinks respectfully submits his Objections pursuant to Rule 72(b), Fed.R.Civ.P., to the Magistrate Judge's Report and Recommendation filed September 2, 2015. (DI 89) ("R&R")[1] These Objections seek *de novo* determination of Defendant M&T Bank Corp.'s ("M&T's") Motion for Partial Judgment on the Pleadings (DI 52) under Rule 12(c), Fed.R.Civ.P., with respect to matters on which the R&R is challenged in these Objections.

Mr. Pinks' Complaint seeks statutory damages for M&T's violation of South Carolina's Uniform Commercial Code ("UCC") with respect to its notification requirements to consumer debtors. He also seeks to represent a class residing in South Carolina and other states with the same UCC provisions to whom M&T allegedly sent the same defective form notice prior to the sale of their repossessed collateral that it sent to Mr. Pinks.

The R&R correctly rejects M&T's argument that a named plaintiff who has unchallenged Article III standing with respect to his individual claim must also establish Article III standing in connection with the putative class claims. The R&R correctly holds that under the Second Circuit's controlling decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 1624 (2013), the dispositive issue in such cases is "class standing," not Article III standing.

The R&R's determination that Mr. Pinks lacks class standing outside South Carolina, however, directly conflicts with *NECA-IBEW,* because his Complaint "plausibly pleads" class standing elements which the R&R purports to find lacking. Alternatively, the R&R erroneously places on Plaintiff an evidentiary burden "to establish" facts necessary to support the requisite

---

[1]    On stipulation of the parties this Court extended the Rule 72 deadline for submission of Mr. Pinks' Objections to September 29, 2015. (DI 94.)

"factual determinations" for class standing, while improperly failing to afford him the notice and opportunity to do so required under *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC.*, 709 F.3d 109, 128 (2nd Cir. 2013)  Lastly, the R&R improperly imports Rule 23 criteria into the justiciability analysis outlined in *NECA-IBEW*.

## BACKGROUND

### A.    *The Complaint*

Mr. Pinks, a South Carolina resident, alleges a single individual cause of action that the "Notice of Disposition of Repossession and Sale of Merchandize" ("the Pinks' Notice," attached to the Complaint as Exhibit 2), dated July 10, 2010, was statutorily required notice of disposition under South Carolina's UCC, sent to him by M&T as the secured party to his consumer installment loan. DI 1, ¶¶ 12, 15. He alleges that the Pinks' Notice was facially defective under those statutes' consumer notice requirements entitling him to statutory damages. *Id.*, ¶¶ 18, 21.

At the crux of his class Complaint are his factual allegations that the Pinks' Notice is a form notice, sent by M&T to "numerous" other consumer debtors residing in South Carolina and other states that have enacted the same relevant provisions of the UCC at issue in his individual claim under South Carolina law:

> On information and belief, the July 29, 2010 Notice (Exhibit 2) is a form notice of intended sale of repossessed collateral which was sent by or on behalf of Defendant as secured creditor to numerous other debtors residing in various states.

*Id.*, ¶ 24.  And,

The provisions of the UCC cited in paragraphs 15-20 herein above have been enacted *verbatim* in all, or almost all other states, including New York.[2]

*Id.,* ¶ 23.

### B.   M&T's Rule 12(b)(6) Motion

Immediately after filing his Complaint M&T filed its Rule 12(b)(6) Motion (DI 7) seeking to dismiss his individual claim. In denying that Motion the Court has established as a matter of law that the Pinks' Complaint "states a claim regarding the [Pinks'] Notice's failure to provide language that informed him of his entitlement to an accounting of his unpaid indebtedness" under §§ 36-9-613(1) and 9-614(1), *SC Code Ann*. DI 22 at 4.

In considering that Motion neither side relied on South Carolina decisional law for the precise allegations of error at issue. In support of its Motion M&T noted the lack of controlling South Carolina authority and the applicability of other states' rulings with respect to the uniform text at issue.[3]   The Court ruled against M&T in its Rule 12(b)(6) Motion in reliance upon

---

[2]  In fact, as discussed below, the relevant statutory text is substantial identical in virtually all jurisdictions.  Exhibit 1 sets forth the Official Text of all provisions of the 1998 revision to Article 9, Part 6 of the UCC, cited in the Complaint.  Exhibit 2 is a chart which flags any departure from the official text which has been identified.

[3]   M&T stated as follows:

> M&T has not located any published South Carolina authority relating to the purported notice defects at issue here. Accordingly, and because the UCC is a uniform law, this Court can and should rely on decisions from other courts in resolving these questions [of whether Pinks has stated a valid claim under South Carolina law]. *See, Worldcom, Inc. v. Gen. Elec. Global Asset Mgmt. Servs.,* 339 B.R. 56, 63-64 (Bankr. S.D.N.Y. 2006) ("As the UCC is intended as a uniform law, the Court will consider decisions from other states and federal courts interpreting [the relevant provision]."); *Wells Fargo Bank Minn.v. Brooksamerica Mortg. Corp.,* No. 02 Civ. 4467(HB), 2004 WL 2072358, at *5 n.11 (S.D.N.Y. Sept. 1, 2004) (explaining the parties' "'extensive[]' reliance on cases from other jurisdictions is "appropriate[]" given that "the UCC's purpose was to aid uniformity" (citation omitted)); *In re Parker,* 363 B.R. 769, 774 (Bankr. D.S.C. 2006) ("Since South Carolina has adopted a uniform law, the Court is guided by decisions in other jurisdictions that have interpreted this provision of the UCC.")

appellate and trial court decisions from four states other than South Carolina, construing and applying identical dispositive UCC language enacted in each state. DI 22 at 7-12.  That ruling is now law of the case.  (DI 22 at 10; DI 34)

### C.     M&T's Answer and Class Discovery

After its Rule 12(b)(6) Motion was denied and on June 18, 2014, M&T filed its Answer (DI 38, ¶¶ 23-24), generally denying paragraphs 23 and 24 of the Complaint, and thus disputing material allegations of fact concerning Mr. Pinks' class claims.  In resisting multistate discovery under a claim of undue burden, M&T disclosed that approximately 51,000 potentially relevant repossession transactions had occurred since January 2007, all but 500 outside South Carolina. (DI 46 at 2)  On October 20, 2015, the Magistrate Judge ordered discovery on "Pinks' individual claim and . . . issues relevant to the propriety of a class action." (DI 51 at 2.)   In light of M&T's denials referenced above, Mr. Pinks began his class discovery to confirm that the Pinks' Notice was a form notice as alleged, that it was sent by M&T to numerous persons outside of South Carolina (as M&T had effectively confirmed), and where it was sent.

Ten days after the discovery Order was issued, M&T filed its Motion for Partial Judgment pursuant to Rule 12(c).  (DI 52, DI 53) While M&T's Rule 12(c) Motion was pending but before M&T had provided any discovery concerning its use of the Pinks' Notice outside of South Carolina, the Magistrate Judge issued an Order on April 15, 2015, (DI 88), granting M&T's Motion to stay class discovery pending resolution of M&T's Rule 12(c) Motion.[4]

---

DI 8 at 8 n.4.

[4]  The only discovery outstanding at the time of the stay consisted of two summary interrogatories asking where, when and approximately how many times the Pinks Notice was used. (DI 75-1 at 5) M&T no longer claimed burden, but maintained, as it had for months, that the mere pendency of

### D.     M&T's Rule 12(c) Motion

M&T argued that: (1) a named plaintiff is required to establish Article III standing not merely for his own claim, but also for any claims asserted on behalf of the absent class members (R&R at 4); and, (2) that Pinks failed to establish the requisite Article III standing with respect to any non-South Carolina class claims, therefore they must be dismissed. (R&R at 2.) As the R&R correctly notes, M&T did not challenge Pinks' Article III standing to bring his own claim. (R&R at 7.)

M&T steadfastly maintained that "class standing" under *NECA-IBEW* was not at issue in its Motion. Indeed, M&T did not mention *NECA-IBEW* even once in its supporting Memorandum. (DI 53, *passim.*) When Plaintiff noted that *NECA-IBEW* had expressly rejected the same Article III objection that M&T was raising, and that the type of standing at issue was "class standing" not Article III standing, M&T argued that *"NECA* is inapplicable, not controlling, and clearly distinguishable from this case.") (DI 53 at 5.) When *Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago v. BNYM,* 775 F.3d 154 (2d Cir. 2015), was submitted to the Magistrate Judge as supplemental class standing authority, M&T rejected that decision's relevance to its Motion as well. ("Those cases [*NECA-IBEW* and *Retirement Board*] did not address the issue raised by M&T's Motion.") (R&R at 3.)

### E.     The R&R

 On September 2, 2015, the Magistrate Judge issued the R&R that is the subject of these Objections, first ruling consistent with Mr. Pinks' position and relying upon *NECA-IBEW* that a named plaintiff is not required to establish Article III standing with respect to any claims other than his individual claim. *Id.* at 7. The R&R also correctly decided that it is the named plaintiff's

---

this motion allowed it to refuse to provide such information outside South Carolina.  (See, e.g., DI 75 at 1-2, and cited docket entries)

class standing that must be established here. *Id.*  In reaching these decisions the R&R correctly notes that it was applying "different reasons" from those raised in M&T"s Motion (*Id.* at 2), and that the matter of class standing is a "separate issue" requiring a "separate analysis" from that put forward by M&T.  *Id.* at 6.  Mr. Pinks makes no objection to this aspect of the R&R.

The R&R ruled, at p. 6, that Mr. Pinks had adequately established the first prong of the *NECA-IBEW* two-part test for class standing:

> [A] plaintiff has class standing if he plausibly alleges (1) that he "personally has suffered some actual… injury as a result of the putative illegal conduct of the defendant."… and, (2) that such conduct implicates "the same set of concerns" as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

*NECA-IBEW,* 693 F.3d at 162. (internal citations omitted.)

However, the R&R held that Mr. Pinks had failed to satisfy *NECA-IBEW's* second prong – that M&T"s "conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to the putative class by the same defendants – because he "failed to establish" certain "factual determinations" in his favor. (R&R at 9, citing *NECA-IBEW,* 693 F.3d at 162.)

## ARGUMENT

Because the R&R is not clear as to what procedure and standard was applied in finding he "lacked class standing," Pinks argues his opposition in the alternative. Any determination that Mr. Pinks had failed to "establish," as opposed to "plausibly plead," the underlying factual predicate for class standing  was not ripe, was not properly before the Court on M&T"s Motion, and, under governing Second Circuit law, could not be decided without first conducting evidentiary proceedings and discovery to resolve the factual determinations upon which class standing rests.  On the other hand, if the R&R has ruled that Mr. Pinks "lacks class standing"

because he has failed to plausibly allege sufficient facts, such determination, which on its face fails to draw all available inferences in plaintiff's favor, is legal error, pure and simple.

## I.     THE R&R ERRS IN REQUIRING MR. PINKS TO "ESTABLISH" RATHER THAN "PLAUSIBLY PLEAD" CLASS STANDING.

At the heart of any class standing determination is the inquiry whether the named plaintiff's individual claim "implicates the same set of concerns" as those of the absent class members – whether his litigation incentives are sufficiently aligned with that of the absent class members such that he may appropriately assert claims on their behalf. *Retirement Bd. v. BNYM*, 775 F.3d at 161. This will be established where he shows that the "proof contemplated for all the claims [of the named plaintiff and the absent class members] would be sufficiently similar." *Id.* Here, where a form document is alleged to have been sent by M&T to provide statutorily-required notice in other states under the same uniform law, and the accuracy or truth of these allegations is disputed, class standing may not be determined on the Complaint. The Second Circuit has recognized that a challenge to the named plaintiff's class standing under *NECA-IBEW* will be resolved under one of two different procedures and standards, depending upon whether the underlying facts upon which class standing rests are controverted.

Where the challenge to his class standing is by way of a Rule 12(b)(6) or Rule 12(c)motion, or by Rule 12(b)(1) for lack of standing where the challenge is limited to the sufficiency of the complaint's factual allegations, the court is to apply the *Iqbal/Twombley* standard to determine if class standing has been "plausibly pled":

> We review *de novo* a district court's dismissal *for lack of standing* and *for failure to state a claim*….In doing so, we accept as true all non-conclusory factual  allegations in the complaint and draw all favorable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-679, 129 S.Ct. 1937, 173 L.E.2d 868 (2009); *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d* 100, 106(2n Cir. 2008.)

*NECA-IBEW*, 693 F.3d at 156. (internal citations omitted.) (emphasis added.); *Retirement Bd.,* 775 F.3d at 159. (same).

In the R&R, however, the Magistrate Judge appears to treat underlying factual allegations essential to Pinks' class standing as disputed.[5] Where a named plaintiff has "plausibly pled" class standing, but the underlying facts are in dispute, a court must first resolve the disputed facts upon evidentiary proceedings before ruling on class standing. *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC.*, 709 F.3d 109, 128 (2nd Cir. 2013.)

In *New Jersey Carpenters* the district court dismissed the named plaintiff's individual claims under the Security Act of 1933 for failure to state a claim, and "also held that, even as the representative for a putative class, the Fund [named plaintiff] lacked standing to pursue claims based upon securities which it had not purchased." *Id.* at 113. After dismissal the Second Circuit decided *NECA-IBEW. Id.* at 114. On appeal the Second Circuit reversed the Rule 12(b)(6) dismissal that the Fund had failed to state its individual claim, and vacated "the district court's holding that the Fund, as the representative of a proposed class, lacked standing to assert claims based on securities in which it had not invested," instructing the district court to apply *NECA-IBEW* in order "to reconsider the issue of standing" upon remand. *Id.*

As far as the procedure and standard that the district court must follow on remand, the decision is instructive here, as Second Circuit ruled that the question of class standing would first require the district court to determine *whether* the underlying facts necessary to resolve class

---

[5] R&R at 9 ("[I]t was undisputed in *NECA* that the putative class members had all purchased certificates affected by the same allegedly faulty registration statement. Here, Pinks has not established: 1) that the faulty notice [the Pinks' Notice] was used in any other states[.] (emphasis added)

.

8

standing under *NECA-IBEW* were in dispute, and if that is the case, it would be in the better

position "to resolve the factual issues" by way of "evidentiary proceedings" within the sound

discretion of the court before ruling on class standing:

> Here, we vacate the district court's decision and remand for reconsideration
> under the standard set forth in *NECA-IBEW*. Because the district court may, in
> its sound discretion, conduct evidentiary proceedings on the issue of standing,
> *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 463 F.3d 82, 87-88 (2nd Cir.
> 2006), we think it is in a better position *to resolve the factual issues that pertain to the
> analysis required by NECA-IBEW.* Such *factual issues* may include *whether* the relevant
> prospectuses contained "similar if not identical" descriptions of the underwriting
> standards, *whether* the loans "were backed by loans originated by [common]
> originators," and *whether* any differences among the originators of the mortgages
> in each trust prevent the Fund's claims based on the different securities from
> raising "the same set of concerns."

*New Jersey Carpenters,* 709 F.3d at 128, citing *NECA-IBEW,* 693 F.3d at 162-164. (emphasis

added.)

The Second Circuit's reliance upon the *Alliance for Envtl. Renewal* decision as setting the

proper procedures is key. That case involved a challenge to the court's subject matter

jurisdiction with respect to the plaintiff's claims under the Clean Water Act "where subject

matter jurisdiction is adequately pled, but the underlying jurisdictional facts are in question."

*Alliance for Envtl. Renewal,* 436 F.3d at 83. The *Alliance* Court held as follows:

> The Court may resolve the factual issues concerning jurisdiction either on
> summary judgment motion, if appropriate, or if not, after an evidentiary hearing.
> Because Article III jurisdiction facts have not yet been determined, we vacate and
> remand.

*Id.* at 83-84. In the *Alliance* passage cited in *New Jersey Carpenters, Alliance* explicitly allows a court

confronted with jurisdictional fact disputes to defer their resolution even until trial on the

merits:

> As in any case requiring determination of the Article III standing, once the
> Defendants' motion to dismiss for lack of jurisdiction under Fed.R.Civ.P.
> 12(b)(1) put the Plaintiff's Article III standing in issue, the District Court has

9

leeway as to the procedure it wishes to follow…After limited discovery on the jurisdictional issue,…the matter might be appropriate for resolution of motion supported by affidavits, …or if a genuine dispute of material fact exists, the Court may conduct a hearing limited to Article III standing…Or, where the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional determination at the close of the evidence[.]

*Alliance For Environmental Renewal, Inc.,* 436 F.3d 82, 87-88. (internal citations omitted.)

*New Jersey Carpenters* admittedly involved a challenge to the named plaintiff's class standing, not his Article III standing. Nevertheless, by its reliance upon *Alliance,* the *New Jersey Carpenters'* Court has determined that where the challenge to the named plaintiff's class standing is based upon underlying disputed facts, as opposed to the sufficiency of the factual allegations in the complaint, the court is to proceed in the same way that the Article III standing challenge in *Alliance* was to be handled – the court must first resolve the factual dispute using such evidentiary methods as listed above such that it is error to decide the existence of class standing without a resolution of the underlying factual disputes first.

Common to all of the permissible procedures listed in *New Jersey Carpenters* and in *Alliance* – such as summary judgment or evidentiary hearings following limited jurisdictional discovery – is that they inherently embody adequate notice to the challenged party that matters beyond the pleadings will be considered, an opportunity to be heard and to submit evidentiary matters. This in turn embodies the right to whatever discovery may be appropriate to such matters, and reflect the fundamental notions of fairness explicitly codified in Rule 12(d), Fed.R.Civ.P., which requires that when matter outside the pleadings is at issue on motion under Rule 12, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." None of these safeguards was afforded to Mr. Pinks in the procedure adopted in the R&R. The Court has several options as to the timing and form of such proceedings, including

10

deciding whether it would be appropriate to hear the issue at the time of class certification when all class discovery is available.

> The R&R also erroneously conflates Rule 23 requirements with class standing:

> > These factual determinations bear directly on whether there are *common issues of law and fact* uniting the putative class. In light of the numerous ways in which each state's UCC and jurisprudence can vary, it is likely that putative class members from different states will have *individualized issues of law that will require individualized determination.* Pinks has not established that the adjudication of his claim under South Carolina's UCC would require the decision of any *common questions concerning the adequacy of M&T's notice under other state's Uniform Commercial Codes.*

R&R at 9. (emphasis added) *NECA-IBEW's* class standing test is not about Rule 23. *Gates v. United Healthcare Ins. Co.*, 2014 WL 580057, at *13 (S.D.N.Y. Nov. 7, 2014) ("Once a plaintiff has established justiciability, the question as to whether he 'can' represent a class turns on the analysis of Rule 23 factors; in *NECA-IBEW,* as here, class certification was a question for another day.")  Accord, *In re Buspirone Patent Litigation,* 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002). As *NECA-IBEW* itself acknowledges, a pleading may meet the test for class standing, but still fail under the more rigorous Rule 23 review:

> We emphasize that it is by no means a foregone conclusion that, because plaintiff has [class] standing to assert [the class claims], a putative class comprised of such Certificates should be certified. The district court, after reviewing all of the Rule 23 factors, retains broad discretion to make that determination.

*NECA-IBEW,* 693 F.3d at 164.  The R&R's conclusion that Pinks "lacked class standing" because he had not already met his Rule 23 burden at this stage of the proceedings was plain error.

## II.    MR. PINKS HAS MORE THAN PLAUSIBLY ALLEGED CLASS STANDING.

Insofar as the R&R means to rule that Pinks did not "plausibly allege" the four elements determinative of his class standing under *NECA-IBEW*, it is simply wrong.  A determination of

11

whether a claim is "plausibly pled" involves a two-step process: the court first reviews the complaint, distinguishing all factual allegations in a complaint from legal conclusions, since only the former need to be accepted as true. Then, it decides on the basis of the factual allegations and their "judicial experience and common sense" whether a plausible claim for relief has been shown. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-679, 129 S.Ct. 1937, 1950 (2009).

Here, the R&R duly identifies the relevant allegations in the Complaint with respect to Mr. Pinks' individual claim. (*E.g.,* R&R at 2-3.) However, it fails to conduct a similar exercise with respect to Pinks' Complaint and his class allegations. In fact, the R&R never identifies which paragraphs of the Complaint, if any, are factually defective in this respect. Therefore, it is impossible to tell from the R&R what paragraphs would have to be repled and how, or even if they could be repled.

Second, the R&R errs when it strays into considerations of factual matters beyond the pleadings and contra to the holdings of *NECA-IBEW* and *Retirement Board* cited above.  Finally, the Magistrate Court appears to have impermissibly assumed that well pled facts were *not* true, rather than assuming their truth and applying all reasonable inferences in Pinks' favor. For example, the R&R does not appear to credit as true Mr. Pinks' allegation that the Pinks' Notice is a form notice used by M&T outside of South Carolina, *i.e.,* DI 1, ¶ 24. ("Pinks has not established: 1) that the faulty notice he received was used in other states.") (R&R at 9).

The R&R does *not* rule as a matter of law that a named plaintiff would invariably fail to "plausibly plead" class standing when the class claims arise under the laws of other states, nor does it decide that named plaintiff would invariably lack "class standing" where he alleges a common document was sent by a defendant into different states. Instead, the Magistrate Judge recognizes that those factual situations were not in play in *NECA-IBEW*, but they are factual

12

differences that must be duly considered because they "go to Pinks' class standing rather than his Article III standing." *Id.* at 7.   In so ruling, the R&R identifies four areas of ostensible deficiency to support granting M&T's Motion:

> …Pinks has not established: 1) that the faulty notice he received was used in other states; 2) that this notice, if used, was violative of other state's Uniform Commercial Codes; 3) that other state's Uniform Commercial Codes have identical relevant provisions; and 4) that other states' jurisprudence interpret these relevant provisions in the same way as courts in South Carolina.

*Id.*   We submit that, when all non-conclusory factual allegations are taken as true and all favorable inferences are drawn in Plaintiff's favor, as required by *NECA-IBEW*, 693 F.3d at 156, the Complaint's allegations amply satisfy *NECA-IBEW's* "plausible pleading" standard as to each of the four enumerated deficiencies:

**1.   Mr. Pinks has plausibly pled that "the faulty notice he received was used in other states."**

Mr. Pinks alleges:

> On information and belief, *the July 29, 2010* [Pinks' Notice] *is a form notice* of intended sale of repossessed collateral which was sent by or on behalf of Defendant as secured creditor *to numerous consumer debtors residing in various states.*

DI 1, ¶ 24. (emphasis added.)

The Complaint plausibly alleges this matter by way of straightforward factual allegations in paragraph 24. In considering "plausibility" a court is to assume the facts are true, including drawing all "reasonable inferences" from the factual allegation in Mr. Pinks' favor. The inherent plausibility of this allegation – that a bank used a standard form legal document in transactions governed in multiple states by a "uniform" law – is, we submit, self-evident.

Here, M&T answered paragraph 24 of the Complaint on June 18, 2014 (after a year of litigation in this case) as follows:

> Paragraph 24 of the Complaint contains conclusions of law to which no response is required. To the extent a response may be required, M&T denies the allegation contained in paragraph 24.

DI 38, ¶ 24. M&T now acknowledges that, contrary to its general denial, the Pinks' Notice is indeed a form notice, used well over 100 times in South Carolina. *See, e.g.,* DI 85-2, Ex. 2 "Affidavit of Michael P. Ryan," (identifying the Pinks' Notice as a form notice "that M&T generally sent to customers in South Carolina after the customer defaulted."); DI 85 at 3-5 (identifying 176 M&T South Carolina accounts that potentially meet the class definition.)

The Court may also reasonably infer that because the Pinks' Notice is a form notice, M&T is seeking to limit its exposure outside of South Carolina by way of its Rule 12(c) Motion because it sent that notice into other UCC states. ("In the interest of cooperation and to clarify M&T's position for Plaintiff…M&T does not intend to contest whether more than $5,000,000 *would potentially be at issue if the Court were to certify a nationwide or a multi-state class.*") (DI 77-1 at 6.)(emphasis added)   There would be no need to contemplate the effect of adding additional states to increase the CAFA jurisdictional amount on "a nationwide or multi-state basis" unless it is "plausible" that M&T sent the Pinks' Notice into other UCC states as alleged in the class Complaint and class definition. M&T admits that it is in the business of providing consumer installment sales contracts "in various states including South Carolina," (DI at 4), and it represents that 51,000 potentially relevant repossession transactions that have occurred since January 2007, the vast majority of which have occurred outside of South Carolina. DI 46 at 2.

Because this paragraph passes the "plausibility" test, the fact that relevant discovery is outstanding is immaterial.  A complaint based upon "plausibility" does not require a probability showing; it merely is required to allege "enough facts to raise a reasonable inference that discovery will reveal evidence of illeg[ity.]" *Bell Atl. Co. v. Twombley,* 550 U.S. 544, 556, 127 S.Ct.

1955, 1965 (2007).  As the Second Circuit has said in considering the role of discovery within the context of a Rule 12(b)(6) motion:

> Discovery may reveal that the actual facts support the inferences drawn by the Defendants-Appellees, rather than those drawn by [the plaintiff.] But that has no bearing on the question before us. As the Supreme Court explained in [*Bell Atl. Corp. v.*] *Twombley,*...a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.

*New Jersey Carpenters,* 709 F.3d at 125. (internal citations omitted.)

 For this reason it was error for the Magistrate Judge to rule that Mr. Pinks has not "plausibly pled" this allegation, or to rule that the relevant discovery is a "fishing expedition." The case upon which the R&R relies for its "fishing expedition" position, *Tottenham v. Trans World Gaming Corp.,* 2002 WL 19767023, at *2 (June 21, 2002, S.D.N.Y.) (R&R at 9), is not a Rule 12(b)(6) or Rule 12(c) case. In *Tottenham* the question of the proper scope of discovery was before the court by way of a motion based upon Rule 26(b)(1), a request for protection that was not included in M&T's Rule 12(c) Motion.  Plaintiff further notes that discovery addressing whether the Pinks' Notice was sent outside of South Carolina as alleged is not a "fishing expedition" since the Magistrate Judge had already issued an Order (DI 51 at 2) permitting such discovery "relevant to the propriety of a class action" without geographic limitation – an Order that has not been rescinded or modified but was merely stayed.  In fact, the only pending discovery stayed by the Magistrate Judge (DI 75-1 at 5) directly addressed: a) whether the Pinks Notice was a form document and b) where and how often it was sent – two of the four dispositive factors which the R&R would find Pinks "has not established."  (R&R at 9)

## 2.     *Mr. Pinks has plausibly pled "that other state's Uniform Commercial Codes have identical relevant provisions"*

The Complaint alleges in reference to Pinks' individual claim:

15

15.    The [Pinks' Notice] *is subject to Article 9 ("Secured Transactions") of the UCC, specifically UCC § 9-601-through 9-625* as enacted in South Carolina at § 36-9-601, *et. seq.*, S.C. Code Ann., which provides that following a debtor's default under the terms of his/her retail installment sales contact and repossession by the secured creditor of the collateral, the secured party may sell the collateral to protect its interests therein.

16.    *UCC § 9-611* provides that the secured creditor must send authenticated post-repossession, written notice of the intended sale of the collateral to the debtor and to any other obligors a reasonable time before the sale of the collateral.

17.    *UCC § 9-613 and 9-614* set forth the information that must be included in the contents of the secured party's notice of intended sale in consumer goods transactions. As explained in the Official Comments to UCC § 9-614, a written notice of intended sale to a consumer debtor or obligor which lacks such required information is insufficient as a matter of law.

18.    The [Pinks' Notice] *fails to comply with UCC § 9-613 and 9-614* in one or more of the following particulars:

   A.    It does not state that the debtor is entitled to an accounting of his unpaid indebtedness or state the charge, if any, for the accounting *as required by UCC §§9-613(1)(D) and 9-614(1)(A),* enacted in South Carolina at § 36-9-613(1)(D) and § 36-9-614(1)(A), S.C. Code. Ann.

   B.    It lacks a "description of any liability for a deficiency" *as required by UCC § 9-614(1)(B)* as enacted in South Carolina at § 36-9-614(1)(B), S.C. Code Ann.

DI 1, ¶¶ 15-18. (emphasis added.)

In these paragraphs he thus alleges that each of the South Carolina sections of the UCC at issue in his individual claim is the same as the official version of that section. (For example: "UCC §§ 9-613(1)(D) and 9-614(1)(A) as enacted in South Carolina at § 36-9-613(1)(D) and § 36-9-614(1)(A)".)

Mr. Pinks also alleges:

23.    The provisions of the UCC cited in paragraphs 15-20 herein above have been enacted verbatim in all, or almost all, other states, including New York.

* * * *

16

26.     The class is defined as:

Consumer obligors residing in states which had adopted UCC § 9-601-611, 613-614, and 9-623-625, when M&T Bank Corp., M&T Credit Services, LLC, or persons or entities acting on their behalf, sent them a Notice of intended sale of repossessed collateral in the form of [the Pinks' Notice] prior to the disposition of the consumer obligor's collateral.

DI 1, ¶¶ 23, 26.

Therefore, he has plausibly alleged that South Carolina's version of the UCC is the same as the official version, and he alleges that this version has been enacted almost uniformly in other jurisdictions in connection with the statutes that are implicated in his cause of action. These are "plausible" allegations because in 1998 the Uniform Law Commissioners of the National Conference of Commissioners on Uniform State Laws, in conjunction with the American Law Institute (ALI), began drafting a major revision of Article 9, "a statutory framework that governs secured transactions," which was completed in 1999 and therefore resulted in an final draft or official versions that was adopted in most states in 2001. *See, e.g.,* http://www.uniformlaws.org/Act.aspx?title=UCC%20Article%209,%20Secured%20Transactions%20(1998)  The relevant sections of the official version of the 1998/1999 revisions as cited in Mr. Pinks' Complaint are attached to this brief as Exhibit 1.[6]

Also attached to this brief as Exhibit 2 is a chart that lists all states which have adopted the 1998/1999 revisions of the official version of the UCC without any material variation in the sections listed in Mr. Pinks' class definition, for a total of 46 jurisdictions including the District of Columbia. The chart breaks those 46 jurisdictions down into a list of those states' statutes

---

[6]     The website also refers to certain "2010 revisions" to sections of Article 9 concerning the perfection of security interests, which have now been adopted by approximately twenty states. The 2010 revisions of Article 9 did not affect any of the consumer default sections in Part 6 ("Default"), which are involved in this case.

that have no changes at all in their text when compared with the official version, for a total of 29 jurisdictions including South Carolina. It also includes a list of those states' statutes that have some change or variation in the wording deviating from the official text, but which does not impact any parts of the applicable sections affecting liability or damages at issue in this case, for another 17 jurisdictions. Mr. Pinks has therefore "plausibly alleged" that "other states' Uniform Commercial Codes have identical provisions."

### 3. Mr. Pinks has plausibly pled "that this notice, if used was violative of other state's Uniform Commercial Codes."

This Court has already determined that Mr. Pinks "plausibly pleads" a valid claim under South Carolina's UCC. *E.g.,* DI 22, 34. Because he has also "plausibly pled" that South Carolina's version of the UCC is the same a as the official version, and that other states have also adopted the official version of this uniform act, he has plausibly pled that "this notice, if used was violative of other state's Uniform Commercial Codes."

### 4. Mr. Pinks has plausibly pled "that other states jurisprudence interpret these relevant provisions in the same way as courts in South Carolina."

This allegation may more appropriately fall under the category of a "reasonable inference." Mr. Pinks has pled with specificity which sections of the UCC are uniform for the purposes of his case.

The UCC is a commercial code of uniformity to benefit secured parties such as M&T benefit by prescribing a standard, "bright line," statutory roadmap for the repossession, notice, sale, and post-sale determination of deficiency balances due in various jurisdictions – avoiding conflict of law problems and without requiring judicial involvement in the foreclosure sale process. Therefore, a "reasonable inference" of decisional uniformity is built into the UCC's very DNA, and indeed expressly commanded by the Code itself:

(1) This act shall be *liberally construed and applied* to promote its underlying purposes and policies:

(2) Underlying purposes and policies of this act are:

(c) *to make uniform the various law among the various jurisdictions.*

UCC § 1-102, enacted in South Carolina at § 36-1-102, *S.C. Code Ann.* (emphasis added.)

M&T itself acknowledged decisional uniformity when, in the absence of pertinent South Carolina authority, it argued that "because *the UCC is a uniform law,* this Court can and should rely on decisions from other courts in resolving these questions [whether Pinks has stated a valid claim under South Carolina UCC law as alleged.]" DI 8 at 8 n. 4. (emphasis added.)   The parties' memoranda of law and the initial R&R (now this Court's decision) on M&T's Rule 12(b)(6) motion thus freely cite authority from all available state sources.   None emanate from South Carolina, all of which are treated as components of a single uniform nationwide body of relevant decisional law.   (DI 8, 12, 14, passim)   The legal uniformity in the applicable provisions of Article 9 of the UCC is not merely plausibly asserted by Mr. Pinks, but has been applied by this Court in a ruling which is now law of the case.   (DI 22 at 10; DI 34)

## CONCLUSION

For the reasons stated, the R&R should be rejected, insofar as objected to, allowing class discovery to be completed forthwith, and this case to proceed expeditiously to class certification.

Dated: September 29, 2015                    Respectfully Submitted,

HERZFELD & RUBIN, P.C.

By: _____

Daniel V. Gsovski  (dg4413)
A Member of the Firm
125 Broad Street
New York, New York 10004-1300
Telephone: (212) 471-8512

19

E-mail: dgsovski@herzfeld-rubin.com

PHILIP FAIRBANKS, ESQ., P.C.
Philip Fairbanks, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580
E-mail philip@lowcountrybankruptcy.com
ADMITTED PRO HAC VICI

LAW OFFICE OF FREDERICK CORLEY
Frederick M. Corley, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 524-3232
E-mail: rcorley@islc.net
*admitted pro hac vice*

KATHY D. LINDSAY, P.A.
Kathy D. Lindsay, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1581
E-mail klindsay@islc.net
*admitted pro hac vice*


Counsel for Plaintiff