UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERRY PINKS, individually and on behalf of others similarly situated,

        Plaintiff,

vs.

M & T BANK CORP.,

        Defendant.

Index No. 13-cv-1730—LAK—RLE

**DEFENDANT M&T BANK CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CERTIFICATION OF SEPTEMBER 30, 2015 ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................................1

II.  THE COURT SHOULD GRANT CERTIFICATION OF AN IMMEDIATE
     INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)............................................2

     A.   A definitive precedent from the Second Circuit is needed on what it means
          for a named plaintiff to satisfy the Article III standing requirement for
          each putative class claim....................................................................................2

     B.   This Court's September 30 Order satisfies all the prerequisites for
          certification under 28 U.S.C. § 1292(b), and an immediate appeal can
          supply the needed precedent. .................................................................................8

          1.   The September 30 Order indisputably involves a controlling
               question of law—that is, whether a named plaintiff satisfies the
               Article III standing requirement for all putative class claims by
               alleging Article III standing just for his or her own claim..........................9

          2.   There is a substantial ground for difference of opinion as to
               whether a named plaintiff satisfies the Article III standing
               requirement for all putative class claims by alleging Article III
               standing just for his or her own claim........................................................10

          3.   An immediate appeal of this Court's September 30 Order will
               materially advance the termination of this litigation. ................................11

III. CONCLUSION...................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aggrenox Antitrust Litig.*,
    94 F. Supp. 3d 224 (D. Conn. 2015) ....................................................................................... 7

*Matter of Appointment of Indep. Counsel*,
    766 F.2d 70 (2d Cir. 1985) .................................................................................................... 11

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332, 126 S.Ct. 1854 (2006) ...................................................................................... 2

*Duplan Corp. v. Slaner*,
    591 F.2d 139 (2d Cir. 1978) .................................................................................................. 11

*Edwards v. North American Power and Gas, LLC*,
    No. 3:14-cv-1714 (VAB), 2015 WL 4644597 (D. Conn. Aug. 4, 2015) ................................. 7

*Glatt v. Fox Searchlight Pictures, Inc.*,
    No. 11 Civ. 6784, 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) ........................................... 9

*Gunther v. Capital One, N.A.*,
    703 F. Supp. 2d 264 (E.D.N.Y. 2010) .................................................................................... 4

*Horne v. Flores*,
    557 U.S. 433, 129 S.Ct. 2579 (2009) .................................................................................... 11

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) ................................................................................. 6, 7, 12

*Jurgensen v. Felix Storch, Inc.*,
    No. 12 CIV. 1201 KBF, 2012 WL 2354247 (S.D.N.Y. June 14, 2012) .................................. 4

*Lewis v. Casey*,
    518 U.S. 343, 116 S.Ct. 2174 (1996) ...................................................................................... 2

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012) ...................................................................................................... 3

*NECA-IBEW Health & Wealth Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ............................................................................................ *passim*

*Oklahoma Police Pension & Retirement System v. U.S. Bank Nat'l Ass'n*,
    986 F. Supp. 2d 418 (S.D.N.Y. 2013) ..................................................................................... 6

*Parks v. Dick's Sporting Goods, Inc.*,
    No. 05-CV-6590 (CJS), 2006 WL 1704477 (W.D.N.Y. June 15, 2006)...................................3

*Richards v. Direct Energy Services, LLC*,
    No. 3:14-cv-1724 (VAB), 2015 WL 4644609 (D. Conn. Aug. 4, 2015)..................................7

*Romea v. Heiberger & Associates*,
    988 F. Supp. 715 (S.D.N.Y. 1998)....................................................................................8, 11

*S.E.C. v. Credit Bancorp, Ltd.*,
    103 F. Supp. 2d 233 (S.D.N.Y. 2000)...............................................................................9, 11

*Simington v. Lease Fin. Grp., LLC*,
    No. 10 CIV. 6052 KBF, 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012) ......................................4

*Temple v. Circuit City Stores, Inc.*,
    No. 06 CV 5303 (JG), 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007).......................................3

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009)............................................................................................12

*Zakrzewska v. The New Sch.*,
    598 F. Supp. 2d 426 (S.D.N.Y. 2009)..................................................................................8, 11

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................................ *passim*

28 U.S.C. § 1332(d)(2)(A)............................................................................................................9

I.    **INTRODUCTION**

In its Order of September 30, 2015, this Court denied the Motion for Partial Judgment on the Pleadings. Dkt. 98. In doing so, the Court implicitly resolved a controlling question of law on Article III standing that has now generated diverse results in this Circuit. Courts in this Circuit are uniform in requiring Article III standing for a named plaintiff on his or her own claim. They are divided, however, on what it takes for a named plaintiff to acquire Article III standing for different and independent claims held by the putative class. The Second Circuit's opinion in *NECA-IBEW Health & Wealth Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA*")—which did not directly address the Article III standing question posed here— has contributed to this diversity of opinion by its resolution of the analytically separate issue of class standing. Because Article III standing is a threshold requirement that determines whether the courthouse doors can be opened, this is not an issue where a diversity of results is systemically tolerable. This Court's Order, however, provides a distinct opportunity to settle the issue and bring uniformity.

Specifically, this Court's Order meets the requirements for certification under 28 U.S.C. § 1292(b), and an immediate interlocutory certification of that Order will provide a path to the needed appellate resolution. By any measure, the September 30 Order meets each requirement of the statute:

**First**, the Article III standing issue presents a controlling question of law. Indeed, it is dispositive of whether this Court has jurisdiction over this controversy. Plaintiff's South Carolina claims do not meet CAFA's jurisdictional threshold. Dismissal of the added nationwide putative class claims therefore supports dismissal of the action.

**Second**, there plainly is a difference of opinion on whether Plaintiff has Article III standing for the non-South Carolina claims. Plaintiff concedes a lack of Article III standing on

those claims, but argues that does not matter under *NECA*.  Plaintiff and other plaintiffs are likely to construe the Court's Order as implicitly reflecting such a view.  But other district courts, post-*NECA*, have held to the contrary.  Each view likewise is grounded in existing case law, thereby evidencing the reasonable grounds for difference of opinion.

**Third**, an immediate appeal will materially advance the resolution of this action.  If M&T is correct about Plaintiff's lack of standing, it will be a significant waste of public and private resources to find that out later in an appeal after trial.  Article III standing is not a non-prejudicial error concept.  All subsequent case activities occurring after the September 30 Order—including all expenditures of the Court's and parties' time and resources—relating to additional discovery, class certification proceedings, and trial will be a nullity if M&T is correct.  Resolution of the Article III standing issue in M&T's favor will limit the case to South Carolina law and the Court will lack the required amount in controversy.  This case accordingly presents the paradigm circumstance where an immediate interlocutory appeal is warranted.

## II. THE COURT SHOULD GRANT CERTIFICATION OF AN IMMEDIATE INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).

### A. A definitive precedent from the Second Circuit is needed on what it means for a named plaintiff to satisfy the Article III standing requirement for each putative class claim.

The general principles of Article III standing are well-established.  To start with, a plaintiff "must demonstrate [Article III] standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S.Ct. 1854, 1867 (2006).  The fact that a suit is a putative class action does not change this calculus. *Lewis v. Casey*, 518 U.S. 343, 357, 116 S.Ct. 2174, 2183 (1996).  "[Rule 23] cannot alter a constitutional requirement.  It is well established that a plaintiff must demonstrate standing for each claim she seeks to press.  Thus, with respect to each asserted claim, a plaintiff must always have suffered a distinct and palpable

injury to herself." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (internal citations and quotation marks omitted).

Prior to *NECA*, courts within the Second Circuit applied these Article III principles to hold that a named plaintiff could not maintain a putative class action past the pleading stage on claims for which he or she personally lacked Article III standing.

For example, in *Parks v. Dick's Sporting Goods, Inc.*, a named plaintiff who was a New York resident brought a putative class action under the labor laws of *all states* in which the defendant conducted business.  No. 05-CV-6590 (CJS), 2006 WL 1704477, at *1 (W.D.N.Y. June 15, 2006).  The defendant asserted that the named plaintiff lacked Article III standing to sue for violations of the laws of states other than New York, and the court agreed, specifically explaining why dismissal was proper at the pleading stage:  "[W]hen considering standing, the Court must look at the named plaintiff or plaintiffs, not the unnamed class members, and since here, there is just one named plaintiff, who lacks either statutory or Article III standing to sue for violations of state laws other than those of New York, the Court fails to see what impact a motion for class certification would have on the pending motion."  *Id.* at *3.

*Temple v. Circuit City Stores, Inc.* is to the same effect.  There, the named plaintiffs (Tennessee consumers) brought a putative class action under the laws of Tennessee and 23 other states.  No. 06 CV 5303 (JG), 2007 WL 2790154, at *1 (E.D.N.Y. Sept. 25, 2007).  The court held that plaintiffs had "no standing to bring claims for injuries under the laws of the non-Tennessee states," and dismissed those claims "for lack of subject matter jurisdiction." *Id.* at *8. The plaintiffs argued that the pleading stage was an inappropriate juncture for dismissal, but the court expressly disagreed:  "The Supreme Court has made clear that because Article III standing goes to a federal court's jurisdiction, the court should consider standing as a threshold issue." *Id.*

*Gunther v. Capital One, N.A.* applies the same standing principle to reach a similar result. In that case, a named plaintiff asserted that a defendant's actions violated many laws, including a Connecticut trade practices law. 703 F. Supp. 2d 264, 274 (E.D.N.Y. 2010). The defendant moved to dismiss on the ground that the plaintiff lacked Article III standing to bring the Connecticut claim because he neither lived in Connecticut nor claimed that he was damaged there. The court concurred with the defendant and dismissed the claim: "[T]he Court agrees with the prevailing interpretation by courts in this Circuit . . . and holds that the plaintiff does not have standing to assert claims against [the defendant] under [Connecticut law]." *Id.* at 275.

And, the court in *Jurgensen v. Felix Storch, Inc.* took the same tack. The named plaintiff there brought a putative class action, alleging that a defendant violated all 50 states' consumer fraud statutes. No. 12 CIV. 1201 KBF, 2012 WL 2354247, at *10 (S.D.N.Y. June 14, 2012). On a motion to dismiss, the court acknowledged that "[i]t is well settled that plaintiff does not have standing to bring claims for violations of consumer fraud statutes of states other than Washington—*i.e.*, the state where she resides" and dismissed all of the non-Washington claims. *Id.* at *10. The court went on to dismiss the entire action because the amount in controversy for the Washington claim was insufficient to confer jurisdiction under the CAFA. *Id.* at *10-11.

Finally, *Simington v. Lease Fin. Grp., LLC* provides one more example. In *Simington*, the named plaintiffs brought putative class action claims under 46 state consumer fraud statutes. No. 10 CIV. 6052 KBF, 2012 WL 651130, at *1 (S.D.N.Y. Feb. 28, 2012). The court acknowledged that Article III standing was a "threshold question" and dismissed the plaintiffs' non-Connecticut claims: "Where plaintiffs themselves do not state a claim under their respective state's consumer statutes, . . . they do not have standing to bring claims under other state statutes—even where they are named plaintiffs in a purported class action." *Id.* at *9.

In 2012, however, the Second Circuit decided *NECA*, a case that involved putative class action claims under the Securities Act of 1933. The putative class consisted of all persons who acquired certain mortgage-backed certificates that were sold in 17 separate offerings. The plaintiff—NECA—bought certificates issued from only 2 of the 17 offerings. In addressing the question of standing, the court observed that a named plaintiff must have "Article III standing," "statutory standing," and "class standing." *NECA*, 693 F.3d at 158. After finding that the plaintiff had properly alleged Article III and statutory standing "in its own right" to bring the federal securities claims against the defendant, the court addressed the class standing question and clarified that in order for a plaintiff to have class standing, he must plausibly allege "(1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Id.* at 162.

After *NECA*, courts have grappled with whether the plaintiff in *NECA* satisfied Article III with respect to all putative class claims because it possessed Article III standing for each asserted cause of action—all of which involved the Securities Act—or whether the plaintiff satisfied Article III with respect to all putative class claims merely because it had standing to assert at least one claim against the defendant—an interpretation that would abrogate all of the cases analyzed above.

But *NECA* did not purport to overrule this line of cases, and a number of courts since have held that *NECA* does not hold that a named plaintiff satisfies Article III with respect to all putative class claims merely by having standing to assert one claim against the defendant.

- 5 -

For example, in *Oklahoma Police Pension & Retirement System v. U.S. Bank Nat'l Ass'n*, the named plaintiff sought to bring class claims for violations of the Trust Indenture Act ("TIA") and for breach of contract. 986 F. Supp. 2d at 418 (S.D.N.Y. 2013). The court dismissed the breach of contract claim, but despite the dismissal, the plaintiff, relying on *NECA*, argued that it could still assert the breach of contract claim on behalf of the class because its alleged injuries for the TIA claim (for which it had Article III standing) were "similar" to the breach of contract claim. The court rejected this argument and explained that "[n]one of the authorities cited by the plaintiff support its proposition that a 'similar injury' suffered by potential members of a class is sufficient to rescue a claim from dismissal when the only plaintiff in the case has no such claim." *Id.* The court further explained:

> [T]he sole plaintiff itself has no contract claim and thus cannot bring a contract claim on behalf of anyone else. The fact that the plaintiff still has a TIA claim is of no consequence: ***there is no case law supporting the plaintiff's theory that a plaintiff can pursue a claim that it does not have on behalf of a class simply because the plaintiff suffered a "similar injury" for a different claim.***

*Id.* at 419 (emphasis added).

Equally notable is *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, where the plaintiffs asserted nationwide class claims under various state law causes of action. 1 F. Supp. 3d 34, 41-42 (E.D.N.Y. 2014). Because the named plaintiffs lacked Article III standing to bring claims under state laws to which they had not been subjected, the court dismissed the claims under those states' laws. *Id.* at 49-50. The plaintiffs argued that their lack of Article III standing to assert claims under other state laws should be disregarded because they allegedly had class standing under *NECA*, *see In re HSBC Bank*, No. 2:13-MD-02451 (E.D.N.Y.), Pls. Memo of Law in Opp. Mot. To Dismiss at p. 20 (citing *NECA*), but the court rejected this argument because the relevant issue was one of Article III standing—whether the named plaintiff had

Article III standing for each individual cause of action—and not class standing. *In re HSBC*, 1 F. Supp. 3d at 49.

In *In re Aggrenox Antitrust Litig.*, the court reached the same result following the same path. Plaintiffs there asserted class claims under the law of nearly every state. 94 F. Supp. 3d 224, 249-50 (D. Conn. 2015). Citing *NECA*, the plaintiffs argued that the claims should not be dismissed because, although they lacked Article III standing, they possessed class standing. *Id.* The court rejected this argument because "Article III standing, as a fundamental constitutional requisite of federal judicial power, presents a threshold question in every federal case." *Id.* at 250.

Finally, in *Edwards v. North American Power and Gas, LLC*, the plaintiff, a Connecticut resident, alleged that the defendant engaged in unfair and deceptive practices (under Connecticut, Maine, New Hampshire, and Rhode Island unfair practices acts) when selling electricity to residential customers. No. 3:14-cv-1714 (VAB), 2015 WL 4644597, at *1 (D. Conn. Aug. 4, 2015). The plaintiff "ha[d] not alleged that he suffered an injury-in-fact in New Hampshire, Maine and Rhode Island" and thus the court dismissed the plaintiff's claims due to a lack of Article III standing. *Id.* at *5. *See also Richards v. Direct Energy Services, LLC*, No. 3:14-cv-1724 (VAB), 2015 WL 4644609, at *3-5 (D. Conn. Aug. 4, 2015) (dismissing putative class claims brought under Massachusetts law due to a lack of standing).

Plaintiff will argue that this Court, however, adopted a different view in the wake of *NECA* and departed from these other judicial decisions. In this case, a plaintiff once again argued that *NECA* stands for the proposition that a named plaintiff satisfies Article III as long as he or she properly alleges Article III standing to assert his or her own claim against the defendant, irrespective of a lack of standing to pursue other independent claims. *See* Plaintiff's

Memo of Points and Authorities in Opposition to Defendant's Motion for Partial Judgment on the Pleadings, Dkt. 53 at 1-2 ("Under *NECA-IBEW* the relevant inquiry is whether: (1) the named plaintiff has Article III standing to assert his own claim(s) against the defendant, and (2) whether he has 'class standing' to assert the class claims. Moreover, the Second Circuit in *NECA-IBEW* gutted the standing argument M&T makes in support of its motion[.]"). The Court declined to dismiss Plaintiff's non-South Carolina claims as requested by M&T, implicitly endorsing Plaintiff's view. Dkt. 98 (denying M&T's Motion for Partial Judgment on the Pleadings despite the fact that Plaintiff had acknowledged his lack of Article III standing to bring claims under the laws of states other than South Carolina).

Thus, courts within the Second Circuit have taken contradictory positions on what it means for a named plaintiff to satisfy the Article III standing requirement for putative class action claims. Those rulings likewise purport to construe the same precedents to reach their conflicting results, with *NECA*'s reasoning and impact at the heart of the difference of opinion. These differing results provide the bases for an immediate appeal under 28 U.S.C. § 1292(b).

> **B.  This Court's September 30 Order satisfies all the prerequisites for certification under 28 U.S.C. § 1292(b), and an immediate appeal can supply the needed precedent.**

Section 1292(b) authorizes a district court to certify an interlocutory order for immediate appeal whenever the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion" and [3] "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). When these circumstances are present, a district court acts within its discretion in granting a motion to certify an interlocutory order for immediate appeal. *See Zakrzewska v. The New Sch.*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009); *Romea v. Heiberger & Associates*, 988 F. Supp. 715, 716-18

(S.D.N.Y. 1998). Here, this Court's September 30 Order satisfies the prerequisites of § 1292(b), and certification is warranted.

> **1. The September 30 Order indisputably involves a controlling question of law—that is, whether a named plaintiff satisfies the Article III standing requirement for all putative claims by alleging Article III standing just for his or her own claim.**

In determining whether a controlling question of law exists, a district court considers whether: "[1] reversal of the district court's opinion could result in dismissal of the action; [2] reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; *or* [3] the certified issue has precedential value for a large number of cases." *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 233, 227 (S.D.N.Y. 2000) (emphasis added) (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gasetione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24-25 (2d Cir. 1990)); *see also Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013).

This controlling question requirement plainly is met in this case. A reversal of the district court's September 30 Order would not only affect the action in the sense that it would require the dismissal of Plaintiff's non-South Carolina claims, it would also necessarily result in dismissal of the entire action.

Plaintiff has asserted that this Court has jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2)(A) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant."). On February 26, 2015, after months of investigation and research, M&T supplied Plaintiff's counsel with data demonstrating that there is substantially less than $5

- 9 -

million potentially at issue with respect to the state law claim of the putative South Carolina class. Dkt. 77-1.  As a result, Magistrate Judge Ellis granted M&T's motion to stay discovery pending the Court's decision on M&T's Motion for Judgment on the Pleadings.  Dkt. 88 ("Having reviewed the data collected by M&T for South Carolina, the Court finds there is evidence that a class limited to South Carolina would not meet the jurisdictional minimum.").  Thus, a reversal of this Court's September 30 Order denying M&T's Motion for Judgment on the Pleadings would result in dismissal of Plaintiff's entire action because a class limited to South Carolina would not meet the $5 million jurisdictional minimum required under CAFA.

Apart from its direct effect on this class proceeding, the Article III standing issue has precedential value for a large number of cases.  The value of a controlling precedent from the Second Circuit on the Article III standing issue addressed by this Court's Order is evident from the fact that no less than six cases from district courts within the Second Circuit have addressed this very question since *NECA* was decided in 2012 (*see supra*, pages 6-7)—with non-uniform results.  Accordingly, the first prerequisite for interlocutory review is satisfied for this reason also.

> **2. There is a substantial ground for difference of opinion as to whether a named plaintiff satisfies the Article III standing requirement for all putative claims by alleging Article III standing just for his or her own claim.**

The difference of opinion over resolution of the Article III standing issue is apparent and real.  As noted above, prior to *NECA*, courts routinely dismissed, on standing grounds, attempts by consumers to bring multi-state class actions where they did not have standing personally to bring out-of-state claims under different statutes.  *NECA* addressed the issue of class standing where all claims are brought under the identical statute but its reasoning has confounded the decisions on a named plaintiff's Article III standing in its wake.  Those cases are divided on what

it means for a named plaintiff to have standing on each claim asserted. The second § 1292(b) requirement thus is met here also.

### 3. An immediate appeal of this Court's September 30 Order will materially advance the termination of this litigation.

Although the question of whether certification would materially advance the ultimate termination of the litigation is distinct from the question of whether there is a controlling issue of law, "in practice the two questions are closely connected." *Credit Bancorp, Ltd.*, 103 F. Supp. 2d at 227 (citing *Duplan Corp. v. Slaner*, 591 F.2d 139, 148 n.11 (2d Cir. 1978)); *see, e.g.*, *Zakrzewska*, 598 F. Supp. 2d at 437. "[T]he critical requirement is that it (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation[.]" *Duplan Corp.*, 591 F.2d at 148 n.11. For the reasons discussed *supra*, pages 9-10, an interlocutory appeal has the potential to substantially accelerate disposition of this action—a reversal of the Court's September 30 Order would not only require the dismissal of Plaintiff's non-South Carolina claims, it would necessarily result in dismissal of the *entire action*.

Another "significant" factor in this determination, as recognized by this Court in *Romea*, is that "plaintiff seeks to maintain this case as a class action, the propriety of which is hotly disputed by the defendant." 988 F. Supp. at 717. As in *Romea*, "the proceedings with respect to these issues could be time consuming," and the Court can safely conclude "that an immediate appeal could advance the conclusion of this litigation materially." *Id.* So it is here.

It is well-established that Article III standing is a threshold requirement in any case. *See Horne v. Flores*, 557 U.S. 433, 445, 129 S.Ct. 2579, 2592 (2009) ("Before addressing the merits . . . , we consider the threshold issue of standing—an essential and unchanging part of the case-or-controversy requirement of Article III."); *Matter of Appointment of Indep. Counsel*, 766 F.2d 70, 73 (2d Cir. 1985) ("Since the standing requirement is derived from Article III limitations on

the federal courts' powers, it is the threshold issue in every case."). If this action proceeds without prompt appellate resolution, and the Second Circuit later agrees with M&T's position, then the costs of class discovery, class certification, motions for summary judgment, and trial will be a material waste of public and private resources. As one district court aptly put it, deferring resolution on standing:

> would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union. At the conclusion of that discovery, the plaintiffs would apply for class certification, proposing to represent the claims of parties whose injuries and modes of redress they would not share. That would present the precise problem that the limitations of standing seek to avoid.

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009); *see also In re HSBC*, 1 F. Supp. 3d at 50. For these reasons, the third requirement under § 1292(b) is met, too.

## III. CONCLUSION

All of the statutory requirements for certification are satisfied here. M&T therefore respectfully requests that this Court certify the September 30, 2015 Order denying M&T's Motion for Partial Judgment on the Pleadings for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated:  November 17, 2015

          **REED SMITH LLP**

          By:/s/ *Roy W. Arnold*
             Steven Cooper (SC4394)
             599 Lexington Avenue
             New York, New York 10022
             Telephone: (212) 521-5400
             Facsimile: (212)-521-5450
             Email: scooper@reedsmith.com

             Roy W. Arnold (admitted pro hac vice)
             Andrew J. Soven (admitted pro hac vice)
             2500 One Liberty Place
             1650 Market Street
             Philadelphia, PA 19103-7301
             (215) 851-8100

             *Counsel for Defendant M&T Bank Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

*/s/ Roy W. Arnold*
*Counsel for Defendant M&T Bank Corp.*
