Dear Judge Ellis:

This Joint Letter presents the parties' positions with respect to interrogatories served by Plaintiff Jerry Pinks ("Pinks") on December 22, 2015 (Plaintiff's "Supplemental Interrogatories," Ex. 1) and on January 11, 2016 (Plaintiffs' "Second Supplemental Interrogatory," Ex. 2.).[1]

## PLAINTIFFS' POSITION:

### BACKGROUND

On December 9, 2015, Defendant M&T Bank Corp ("M&T") responded to Pinks' Motion to Compel in connection with Pinks' initial interrogatories of November 2, 2014, and the parties' settlement agreement reached in connection with that Motion, by serving its supplemental responses and related documents. On December 22, 2015, Pinks served four additional interrogatories. (Plaintiff's Supplemental Interrogatories, Ex. 1)

On January 5, 2016, M&T provided additional documents (exemplars of Notices of Disposition other than the Pinks' Notice) consistent with the parties' settlement agreement. On January 6, 2016, Pinks' counsel, addressing only *one* of the newly-provided exemplars (M&T0001093-94), sent M&T an email asking if it would provide without formal discovery the number of times that exemplar notice was sent by M&T. (Ex. 4) As M&T did not agree to provide the information on an informal basis, on January 11, 2016, Pinks served another interrogatory requesting the same information as sought in the email. (Plaintiff's Second Supplemental Interrogatory, Ex. 2)

### PINKS' SUPPLEMENTAL INTERROGATORIES OF 12/22/15 AND SECOND SUPPLEMENTAL INTERROGATORY OF 1/11/16 ARE RELEVANT, PROPER AND TIMELY.

#### A. *This Court, Which Alone Has The Final Word, Has Not Closed Class Discovery.*

M&T's statement of position, despite its vastly greater length, is substantively equivalent to its submission to this Court of January 8, 2016 (DI 118) arguing that *any* new or additional interrogatories are generally untimely: "Further, the time for serving new, additional written discovery requests lapsed long ago." (DI 118 at 2) Pinks disagrees.

When M&T attempted to invoke prior "binding" discovery agreements at the parties' telephone conference of December 1, 2015, this Court made clear that class discovery will not close *until the Court is satisfied that class discovery should be closed.* Appropriate class discovery may therefore continue to be propounded until discovery is ordered closed.

The propriety and relevance of any discovery is accordingly measured, not against lapsed or stayed orders, or the "agreements" underlying them, but against Rule 26(b)(1), Fed.R.Civ.P., as applied to issues of class certification under Rule 23, Fed.R.Civ.P., and as reflected in this Court's authorization of discovery concerning "issues relevant to the propriety of a class action." (DI 51 at 2) Prior orders of the Court setting discovery cutoffs have been stayed or superseded by

---

[1]  Defendant M&T sought to assist the Court by delineating at the outset relevant undisputed facts. Although Plaintiff did not dispute any of the facts identified, Plaintiff objected to the listing of these facts at the outset of this "Joint Letter."  M&T believes doing so would have clearly aided the Court.  Accordingly, M&T has set forth the undisputed facts at pages 8-9 below and refers the Court to them in order to provide the context of the dispute created by Plaintiff.  Plaintiff chose not to identify any undisputed facts.

events, as reflected this Court's December 1, 2015, statement and directive concerning the closure of discovery.

### B. Pinks' Supplemental Interrogatories Are Proper under the Rules of Civil Procedure and Pertain to "Issues Relevant to the Propriety of a Class Action."

*Pinks' 12/22/15 Supplemental Interrogatories (Ex. 1)*:

In his Supplemental Interrogatories, Ex. 1, Pinks asks certain questions about M&T's sales of its potential deficiency claims against members of the putative class to third parties. Because the class is composed of members who have had their collateral repossessed and sold by M&T, their accounts may show a deficiency balance remaining after the sale, as was Mr. Pinks' case.

Superiority and predominance in a class action require the Court to consider asserted affirmative defenses as well as the named plaintiff's claims. M&T has pled in its Answer under "Affirmative Defenses" that "Plaintiff's complaint is barred, in whole or part, by the affirmative defense of set off." (DI 38 ¶14) To the extent M&T is asserting the deficiency accounts against the absent class members as the "affirmative defense of set off" against their individual statutory damages, Pinks is entitled to manageability discovery. If those accounts have *not* been sold or assigned by M&T to third party debt collectors, Pinks anticipates that M&T may attempt 1) to assert the deficiencies against the individual class members, in effect asserting a "defendant/counterclaim class" and 2) to argue that this impacts manageability, predominance and superiority.

Pinks is not conceding that the mere existence of unsold, potential deficiency accounts owed to M&T could preclude certification on grounds of manageability. Indeed, he will argue that they may not be properly adjudicated in this action.[2] However, given the position Pinks' expects M&T to take, discovery about those deficiency accounts directly pertains "to issues relevant to the propriety of a class action." (DI 51 at 2)

M&T could simply moot this entire controversy by committing not to assert the deficiency claims in opposition to certification. It nowhere does so, thus confirming that it will do so. Therefore, as a simple matter of housekeeping, this matter should be minimally explored, so that class certification may be briefed without interruption or ambush.

In its supplemental responses of December 9, 2015, M&T has identified 11,778 accounts from 45 states fitting the class definition. (Ex 3 at 12) Pinks' first Supplemental Interrogatory asks, as a "yes" or "no" question, if M&T has sold (or transferred, assigned or repurchased) to third parties any deficiency accounts from this potential universe of the "relevant transactions." (Ex. 1 at 2-3) M&T cannot and does not contend that either of the only two possible answers to this Interrogatory answers – "yes" or "no" – inflicts an undue burden on it.

In fact, if the correct answer is "no," the three remaining Supplemental Interrogatories are moot by their terms. Yet in its position statement M&T nowhere claims that it has not sold (or transferred, assigned or repurchased) any deficiency accounts out of the "relevant transactions."

---

[2] *See, e.g., In re Bank of New York Mellon. Forex Transactions Litig.*, 42 F.Supp.3d 520, 527 (2014) (Kaplan J.), agreeing with decisions holding that "non-party putative class members are not properly considered 'opposing parties' under Rule 13" and accordingly dismissing defendant's "conditional counterclaims."

If M&T has sold any deficiency accounts, Pinks asks three follow up interrogatories on a state-by-state basis: 1) the total number of accounts sold; 2) the total number repurchased; and 3) the total number of remaining accounts where M&T claims a deficiency account is currently owed to it.  (Ex. 1 at 2-3)

Implicitly conceding that it has sold some or all of the relevant accounts M&T argues against complying with the three supplemental interrogatories under a claim of undue burden:

> Even more fundamentally and most importantly, the parties agreed that M&T was not required to conduct the enormously costly and burdensome file-by-file review or analysis regarding the existence of any customer [putative class member] bankruptcy filings or bankruptcy discharges… The existence of bankruptcy filings and/or discharges [by the putative class members] potentially affects whether... M&T can assert a deficiency claim.

M&T's Position Statement at …

As no responses would be required unless it sold deficiency accounts, M&T appears to be implying that is has sold relevant deficiency accounts.  If this is true, the Court will certainly want to know at certification as it will entirely or substantially moot a potential dispute. M&T nowhere denies that it can easily provide the requested information from a search of its electronic records (as it did to provide the 11,778 "relevant transactions"). M&T's caveat (which Pinks would accept) that the resulting number is overly inclusive because it includes those debtor/class members whose accounts were discharged in bankruptcy, is a strawman argument, in that reasonable approximations of class size are all that is needed in the context of certification.

*Pinks' 1/11/16 Second Supplemental Interrogatory (Ex. 2):*

At Pinks' request, on January 5, 2016, M&T provided seven new exemplars of notices of disposition (other than the Pinks' Notice), with appropriate dates and jurisdictions where used. Pinks Second Supplemental Interrogatory of January 11, 2016, (Ex. 2) contains a single request about a single one of these newly-provided exemplars. It asks M&T to provide the total number of times that the notice was sent.

This request, which is self-evidently and centrally relevant to a plaintiff's determination as to the scope of the class he will seek, imposes no undue burden, a point which M&T effectively concedes by silence.  M&T has already provided information about when it used the new exemplar notice (after June 24, 2012, Ex. 5 at 1), and where (Pennsylvania, *id.*). Because M&T admits that it can electronically search the dates of sales of class members' collateral, it can readily determine the total number of accounts in which collateral was sold.

In opposing this request M&T improperly argues the merits:

> In this case, however, Plaintiff expressly alleges that he is only challenging the notice attached to his complaint as Ex. 2. Dkt. 1, ¶26. He claims the notice attached as Exhibit 2 omitted certain language advising the customer of "the right to an accounting" and the amount of any associated charge. The notice that Plaintiff is purportedly asking about [in his Second Supplemental Interrogatory] is a notice he never personally received because it was not used in South Carolina, and that expressly contains the language "You are entitled to an accounting" and informs the customer of the fact that there is no associated fee. In other words, the

> [new] notice *expressly contains the language Plaintiff alleges was omitted from his South Carolina notice* regarding the "right to an accounting."

M&T's Position at … (emphasis original)

This overlooks the fact that Pinks alleges that the Notice he received (the Pinks' Notice) violated either or both of *two different subsections* of UCC § 9-614, as enacted in South Carolina. (DI 1, ¶¶ 18(A), 18(B))[3] In denying M&T's Motion to Dismiss Pinks' individual claim, this Court upheld one of these charges as a matter of law concerning UCC § 9-614(A)(1) and the Notice's statement of entitlement to an accounting of the unpaid indebtedness. Accordingly, the Court never reached Pinks' other allegation under § 9-614(1)(B) concerning "a description of any liability for a deficiency":

> . . . Pinks has stated a claim regarding the Notice's failure to provide language that informed him of his entitlement to an accounting of his unpaid indebtedness. ***The Court does not reach Pinks' other bases for challenging the Notice***, but does note that when the Notice states that once a sale has taken place, "MTB will deduct from the sales proceeds all amounts owed to it," (*id.*), ***it is not clear what the phrase "all amounts owed to it" means.***

(DI 22 at 10) (emphasis added.)

Accordingly, Pinks is entitled to discovery concerning a matter expressly left for later resolution – *i.e.*, whether a virtually identical phrase in the new notice (*e.g.*, "the amount you owe [to M&T]") violates § 9-614(1)(B). M&T now argues that Pinks' is not entitled to any discovery about a second form notice that is susceptible to the same legal error contained within the Pinks' Notice, that is controlled by the same subsection of the same statute as in the Pinks' Notice, and that contains a virtually identical phrase to the one in the Pinks' Notice that this Court has described as "not clear." M&T's further assertion that he is precluded from doing so because his Complaint does not address a second form notice (not produced until January 5, 2016) is frivolous. Indeed, Plaintiff has consistently maintained that "Pinks is entitled to discovery to determine…whether any *other* form Notices contain the *same purportedly defective language* as Mr. Pinks' Notice." (DI 71 at 3)

> C.   Pinks' Supplemental and Second Supplemental Interrogatories Do Not Exceed the Scope of the Parties' Agreement to Settle Pinks' Motion to Compel.

Pinks' initial interrogatory #8 of November 2, 2014, requests:

> With respect to *every private sale or consumer goods collateral* by defendant or on defendant's behalf, occurring at any time on or after March 14, 2007, which was preceded by [the Pinks' Notice], list in tablular format the following information available by querying defendant's database(s) or other electronic data resources:... *the amount of any deficiency balance claimed by defendant immediately after the sale of the collateral, the date of any assignment or sale of*

---

[3] In DI 1, ¶18(A) Pinks alleges that the Notice he received (the Pinks' Notice) failed to include a statement that the debtor is "entitled to an accounting of his unpaid indebtedness" as required by UCC §9-614(1)(A). Paragraph 18(B) alleges the Notice fails to include "a description of any liability for a deficiency" as required by UCC § 9-614(1)(B). Either violation will independently support an award of statutory damages under UCC § 9-625(c)(2).

> *the deficiency account, and amount of any deficiency balance currently claimed by you, if any.*

(Ex. 3 at 9) (emphasis added.)

The parties ultimately agreed in connection with the Motion to Compel that M&T would not provide the account information per each putative class account (*e.g.,* "for every private sale,"), but that M&T would stipulate for manageability purposes certain matters about the existence of M&T's business records from which such information may be determined on an account-by-account basis. The resulting stipulations in M&T's supplemental responses (Ex 3 at 14-15) are directly relevant to Pinks' burden to show to the Court at certification that business records do exist from which the putative class member's individual account information may be identified, including the status and amount of any deficiency account as related to that putative class member.

As argued herein above, this is different information from that which Pinks now requests in his three Supplemental Interrogatory (Ex. 1) concerning the total number of deficiency accounts sold in each of the 45 disclosed jurisdictions (assuming M&T responds that it has sold *any* deficiencies from the "relevant transactions.") None of these three Supplemental Interrogatories asks M&T to identify any individual, total or average *deficiency amounts or any deficiency amounts per account,* as was at issue in Pinks' initial Interrogatory #8 and Pinks' Motion to Compel. None ask M&T to match the deficiency accounts to any individual class member's accounts, or to any class member's statutory damages for a net difference, as was requested in his initial Interrogatory #8 and addressed in the settlement of his Motion to Compel. *Id*. None ask for the date of sale or assignment of a class member's deficiency account as previously asked.

The Supplemental Interrogatories are appropriate *now* because *prior to receiving M&T's responses in connection with his Motion to Compel on December 9, 2015, Pinks had no way to confirm whether the total universe of "relevant transactions" (e.g., the 11,778 putative class accounts) was spread between a few or 45 jurisdictions*. Now that M&T has responded that the "relevant transactions" arise in 45 identified states, Pinks is asking about total number of deficiency accounts, on a state-by-state basis, where they were sold, and if sold, the total number remaining. For example, if there are only three states where all deficiency accounts remain *unsold* (and depending on which states), Pinks will have very different state law manageability issues than if there are 45 states with unsold deficiency accounts.

M&T first argues that Pinks is precluded by the parties' settlement agreement in connection with Pinks' Motion to Compel from asking any follow up discovery "*on a topic* resolved by that agreement." (DI 118 at 2). (emphasis added.) Note that M&T does not say "on a dispute" actually covered and resolved in the agreement concerning Pinks' Motion to Compel, but "on a topic." Again, this is not consistent with the Court's oral directives of December 1, 2015, as follow up discovery is common in complex cases such as this.

In support of this position M&T attaches its letter of November 27, 2015, to Pinks' counsel in which M&T writes:

> We are writing as a follow up to our prior discussions, including our call on November 24, 2015 and your email of the same date, *to resolve all remaining discovery issues.* ... [S]ubject to and without waiver of its objections to Plaintiff's

>First Requests for Production and First Set of Interrogatories, and subject to the Protective Order entered by the Court, Defendant M&T Bank Corporation ("M&T") is willing to provide the following supplementation ***in the interest of cooperation in discovery and to fully resolve the pending motion to compel and any other discovery issues purportedly related to class certification.***

(DI 118-1 at 2 of 11)(emphasis added.)

Since the information asked in Pinks' Supplemental Interrogatories (Ex. 1) was not a "*remaining* discovery issue," and in fact, had not yet even arisen as a "discovery issue," the limitation would not bar Pinks' Supplemental Interrogatories. Similarly, the information requested concerning the number of times M&T sent the new notice in Plaintiff's Second Supplemental Interrogatory (Ex 2) was not a "remaining discovery issue," as Pinks was unaware of the exemplar's existence until disclosed to him on January 5, 2016.

M&T's position therefore turns upon its phrase "any other discovery issues purportedly related to class certification," which M&T asserts would modify its previous phrase "all remaining discovery issues" to add a separate class discovery limitation. According to M&T, the phrase at issue means that the parties' agreement in connection with settlement of Pinks' Motion to Compel resolved not only the "remaining discovery issues" or the issues raised in Pinks' "pending motion to compel," but also all future or new "issues" or "disputes" concerning class discovery of any sort whatsoever. It would include any class discovery which had not yet been propounded, or which was not fairly encompassed within "resolution of the pending motion to compel," or which related to a newly disclosed document that was unknown to Pinks until January 5, 2016.

M&T's bootstrap invocation of its own letter as shutting down any additional discovery, even as to to a newly disclosed document, directly contravenes: 1) this Court's oral directives of December 1, 2015, concerning the close of class discovery; 2) the actual language of M&T's letter of November 27, 2015 concerning "remaining", *i.e.,* outstanding, discovery disputes; and, 3) Pink's counsel's response of December 1, 2015, acknowledging only "that the parties have resolved all discovery disputes ***raised in our Motion to Compel*** (DI 118-1 at 6 of 11) (emphasis added)***,"*** but, as would be expected, saying nothing about future disputes (*e.g*., the present one).

### D.    ***There is No 2014 Agreement in Effect Closing the Time for Written Class Discovery.***

Alternatively, M&T argues that written class discovery was closed by way of a 2014 agreement of the parties. According to M&T, the parties' joint motion of December 17, 2014, (DI 60), requires that this Court to find that the time for any new or additional written class discovery "has long since lapsed" by agreement. (DI 118 at 2) Pinks disagrees.

On October 20, 2014, and consistent with Pinks' Complaint pleading a multi-state class action, this Court issued a discovery Order ordering discovery to go forward on "issues relevant to the propriety of a class action." (DI 51 at 2) The Order included a schedule closing individual and class discovery on January 9, 2015. *Id.* This Order followed M&T's stated objections that "before this Court can or should consider directing purported multi-state 'class-wide' discovery," it should resolve the question of Pinks' standing to represent the class as pled. (DI 46)

On October 31, 2014, M&T filed its Rule 12(c) Motion (DI 52, 53), seeking to dismiss any putative class claims arising out of any state's UCC law other than South Carolina's on

grounds of Pinks' purported Article III deficiencies. On November 2, 2014, Pinks served his initial interrogatories asking for individualized, putative class information on a multi-state basis, as well as information about exemplars of other form notices of disposition used by M&T. (Ex. 3 at 4, 9) On December 3, 2014, M&T objected, *inter alia,* to any discovery about issues outside of South Carolina on grounds of Pinks' lack of standing, but providing some limited information relevant to a South Carolina class.[4] (Ex 3 at 5, 10)

On December 17, 2014, the parties entered into a Joint Motion for Extension of Deadlines (DI 60), followed by a docket entry (DI 61) "Order granting 60 motion for extensions." The Joint Motion at 2 provides:

> 6. On December 16, 2014, the bankruptcy court granted [Pinks'] Motion for Continuance, and scheduled a hearing on M&T's Motion to Reopen [Pinks' Chapter 7 bankruptcy case.][5]
>
> 7. **In connection with the disposition of [Pinks'] Motion for Continuance** [in the bankruptcy proceeding,] **the Parties have agreed to extend the January 9, 2015,** close of discovery and **the January 30, 2015 deadline for Plaintiff to move for class certification** by sixty (60) days.
>
> 8. The Parties have **further agreed** that no additional written discovery, **other than notices of deposition**, will be served by either party.

(emphasis added.)

M&T's argument that an agreement limiting "additional written discovery" was ***not*** tied to the now lapsed extension, and survives in perpetuity after December 16, 2014, is meritless. In connection with the extension both parties agreed to give up their rights to "additional" written discovery – but not deposition discovery or responses to Pinks' pending discovery requests to which M&T had already objected – to reach the closure dates. Therefore, in order to comply with the extensions, M&T would have had to respond on a multi-state basis (by March 10, 2015) when the Court overruled its objections to any multi-state discovery. Pinks would have been able to move for certification last year and would not have been delayed by M&T's actions in having his Motion heard.

On February 17, 2015, at a status conference the Court indeed overruled M&T's objection, orally ruling that that its Order permitting class discovery "on issues relevant to the propriety of a class action" was not limited to issues in any jurisdiction or geographic area such as South Carolina. (DI 51) The parties were also orally directed to close discovery by March 10, 2015, as per the extensions, and for Pinks to direct his timely motion for class certification to Judge Kaplan.

Instead of discovery closing and Pinks being able to move for class certification as contemplated in the Joint Motion, on March 3, 2015, M&T filed a Motion to Stay any multi-state

---

[4] "M&T objects to this Interrogatory [#6] to the extent that it seeks discovery relating to transactions in states other than South Carolina because Plaintiff does not have standing to assert a claim under the laws of any state other than South Carolina.  *See,* Dkt. 52 [M&T's Rule 12(c) Motion]." (Ex 3 at 5, 10 (same))

[5] During this action M&T moved to reopen Pinks' Chapter 7 bankruptcy case in the South Carolina bankruptcy court, a motion which was denied by the bankruptcy court and affirmed on appeal by the district court, in an order which is now final beyond further appeal..

class discovery. (DI 76, 77) M&T argued that if its Rule 12(c) Motion were to be granted, a remaining South Carolina class would not support the $5 million amount in controversy necessary for CAFA jurisdiction. *Id.* Discovery was then stayed by Order of the Court on April 14, 2015 over Pinks' objection. (DI 88)

M&T's argument that a limitation on *any* "additional written discovery" would survive beyond the lapsed scheduling extensions set forth in the resulting Order, (DI 61), fails, for the simplest of reasons. Discovery did not close per the parties' agreement (and Pinks did not receive agreed multi-state discovery responses on the agreed schedule) due to M&T's, motion to stay multistate discovery, which was granted. M&T's argument here, indeed the entire premise of its position, is also inconsistent with the Court's oral directives of December 1, 2015, that discovery will only close when the Court so orders.

Further, M&T's argument also overlooks the fact that the superseded discovery limitation in the Joint Motion only applies to "additional written discovery, **other than notices of depositions**[.]" [emphasis added] Thus, even under M&T's own theory, Pinks remains free to seek the information requested in the Supplemental and Second Supplemental Interrogatories by deposition. Indeed, nowhere in its position statement does M&T claim that Pinks is barred from seeking this information by way of deposition. However, as this Court indicated at the December 1, 2015, telephone conference, it looks for the most "efficient" means of discovery, whether by deposition or interrogatory, depending upon the circumstances. Here, M&T has provided no basis in its position statement for the Court to consider whether conducting Rule 30(b)(6) depositions on M&T's written and electronic records would be more efficient.

### DEFENDANT'S POSITION:

The following facts are undisputed:

1. Plaintiff asserts a claim for an alleged violation of the South Carolina Commercial Code (Dkt. 1, 18-21, 35);

2. Plaintiff purports to represent the following putative class:

> Consumer obligors residing in states which had adopted UCC §§ 9-601-611, 9-613-614, and 9-623-625, when M&T Bank, Corp, M&T Credit Services, LLC, or persons or entities acting on their behalf, sent them a Notice of intended sale of repossessed collateral in the form of Exhibit 2 prior to disposition of the consumer obligors' collateral.

(Dkt. 1 at ¶ 26);

3. Defendant answered Plaintiff's Complaint on June 18, 2014, asserting, among other things, the defense of "set off." (Dkt. 38 at ¶ 14);

4. On October 31, 2014, Plaintiff served his First Set of Interrogatories, which included Interrogatory No. 8:

> 8. With respect to every private sale of consumer goods collateral by defendant or on defendant's behalf, occurring at any time on or after March 14, 2007, which was preceded by a Notice of Disposition to a consumer obligor providing the

information set forth in Exhibit B, attached hereto, list in tabular format the following information available by querying defendant's database(s) or other electronic data resource(s): the loan or account number; the identity of each obligor, the number of obligors, the date of sale of the collateral; the state in which the initial loan documents were executed and, if different, the state to which the "Notification of Disposition" of collateral was addressed; the "Cash Price" and "Finance Charge" as set forth on the face of the applicable loan agreement; the amount of any deficiency balance claimed by defendant immediately after the sale of the collateral; the date of any assignment or sale of the deficiency account and amount of any deficiency balance currently claimed by you, if any.

Excluded from this Interrogatory are: a) any sale which resulted in a deficiency balance with respect to which a consumer obligor filed a petition in bankruptcy and the obligor was subsequently discharged from bankruptcy, and b) any sale resulting in a deficiency claim that has been reduced to judgment in defendant's favor, or for which an action for such judgment by defendant is presently pending.

5. Plaintiff's First Set of Interrogatories also included Interrogatory No. 11, which provided as follows:

The Answer dated June 18, 2014, Affirmative Defense ¶ 14, asserts as follows: "Plaintiff's Complaint is barred, in whole or in part, by the doctrine of set off." Identify each set-off that defendant maintains has "barred in whole or in part" plaintiff's Complaint.

6. On December 17, 2014, the parties stipulated and agreed as follows:

The Parties have further agreed that no additional written discovery, other than notices of deposition, will be served by either party.

(Dkt. 60 at ¶ 8).

7. Plaintiff served "Supplemental Interrogatories" and "Second Supplemental Interrogatory" on December 22, 2015 and January 11, 2016, respectively. Plaintiff has never served any deposition notice in this case.

8. All issues pertaining to the sufficiency of Defendant's answers to Plaintiff's First Set of Interrogatories raised in Plaintiff's Motion to Compel, including Interrogatory No. 8, were completely resolved between the parties' by an agreement among counsel, and Plaintiff withdrew hisprior Motion to Compel.

9. Defendant fully performed its obligations under the agreement resolving Plaintiff's Motion to Compel and Plaintiff does not allege any non-compliance by Defendant with regard to the parties' discovery agreement.

10. The notice marked for identification as M&T0001093-94, which was not received by Plaintiff, includes the following language: "You are entitled to an accounting. . . If you want us

to explain to you in writing how we figured the amount that you owe us, you may call us at …. or write us at … and request a written explanation. We will not charge you for the explanation."

We write on behalf of Defendant M&T Bank Corp. ("M&T") in response to Plaintiff's position. The threshold issue here is whether the new written discovery is permissible. The discovery dispute manufactured by Plaintiff specifically relates to the permissibility of his service of new written discovery, two sets of interrogatories and one set of document requests. Plaintiff seeks to renege on the discovery agreements, which Plaintiff admits the parties entered into and which he admits M&T fully performed. No claim is made by Plaintiff that M&T did not comply with the discovery agreements. No other alleged discovery issue exists. No other discovery has been served.[6] M&T did what it said it would do. Plaintiff is bound by these agreements and should not now be permitted to take discovery that he waived.

Plaintiff attempts to confuse and obfuscate the issues with a lengthy mischaracterization of events. Plaintiff improperly misstates M&T's positions and misconstrues this Court's December 1, 2015 statements by taking them entirely out of context. In the interest of efficiency and brevity, M&T will not attempt to correct or respond to Plaintiff's numerous misstatements and mischaracterizations set forth above. In doing so, M&T does not concede in any way the accuracy of Plaintiff's statements.[7]

### The Parties Entered Into Binding Discovery Agreements.

The lack of candor and integrity by Plaintiff's counsel is truly remarkable and telling. Among these lawyers for the Plaintiff, their word is not their bond and they do not adhere to plain, unambiguous agreements between counsel. Plaintiff's new discovery requests are plainly written discovery served in contravention of the parties' December 2014 agreement. While there are multiple grounds to reject Plaintiff's manufactured discovery dispute, the Court need not go any further than to examine the December 17, 2014 stipulation entered into between the parties. Plaintiff's counsel's assertion that M&T "invoked prior 'binding' discovery agreements" (Pl. Position at p.1), including the December 2014 agreement, at the December 1, 2015 status conference is demonstrably false, illogical and nonsensical. There was no need to raise these prior agreements at that time because Plaintiff had not served any additional written discovery

---

[6]   Plaintiff's logic is particularly flawed when he argues that the Court should allow him to violate his prior agreements because he has not served any deposition notice but he allegedly could do so at some point. (Pl. Position at 9). This manufactured discovery dispute involves written discovery requests served in blatant disregard of the parties' agreements. Plaintiff has made no showing that he served any deposition notice or that any such hypothetical deposition notice satisfies the requirements of Rule 30(b)(6).

[7]   Plaintiff's counsel's most egregious untruth is their assertion that in connection with the December 2014 Joint Motion "M&T would have had to respond on a multi-state basis (by March 10, 2015) when the Court overruled its objections to any multi-state discovery." Pl. Statement at p. 8. As this Court is aware, M&T consistently and vigorously preserved its objection to multi-state discovery beyond South Carolina. If M&T had agreed to respond on a multi-state basis as a part of the December 2014 agreement, this purported agreement would have surely been set forth in the Joint Motion and Plaintiff's counsel would have surely cited any such purported agreement to the Court in connection with Plaintiff's Motion to Compel. Plaintiff's counsel did not do so and their representation and/or suggestion that M&T agreed to do so in exchange for the December 2014 agreement is pure fiction and a blatant falsity. The December 2014 agreement was reached because Plaintiff was seeking a continuance of a hearing in the South Carolina bankruptcy court and the time for serving written discovery had lapsed. Moreover, Plaintiff and his counsel previously ***acted in conformity*** with the December 2014 agreement as written. Plaintiff complied with the December 2014 agreement from December 17, 2014 until December 22, 2015. During this more than one year period of time, Plaintiff's counsel ***never*** expressed this new view that Plaintiff was entitled to serve additional written discovery.

requests.  Nor did Plaintiff's counsel indicate that they would be forthcoming so as to trigger a discussion of the effect of these prior agreements.

**A. The December 2014 Agreement Precluding Additional Written Discovery.** On December 17, 2014, Plaintiff expressly stipulated: "The Parties have further agreed that no additional written discovery, other than notices of deposition, will be served by either party." Dkt. 60 at ¶ 8 (the "December 2014 agreement").  Plaintiff served written interrogatories and document requests on M&T via email on December 22, 2015 and January 11, 2016, respectively ("Plaintiff's New Discovery Requests").  *See* Pl. Ex. 1 and 2.[8]  Plaintiff's New Discovery Requests are clearly written discovery requests precluded by the December 2014 agreement. Plaintiff has served and now seeks to compel answers to written discovery requests that are directly contrary to the December 2014 agreement.  Dkt. 60.

M&T consented to a continuance of a South Carolina bankruptcy court proceeding requested by Plaintiff and, in exchange, Plaintiff agreed that there would be no further written discovery.  At the time of the December 2014 agreement, discovery was scheduled to close on January 9, 2015 and, by December 17, 2014, the time for written discovery had already lapsed because any responses would not be due within the discovery period.  The December 2014 agreement was set forth in writing and filed with the Court. Dkt. 60.  There was no contingency or precondition.  The December 2014 agreement was tied only to the continuance of the South Carolina bankruptcy court proceeding.  The agreement did not lapse and was not an agreement "underlying" any subsequent scheduling or stay order.  Plaintiff admits, as he must, that the parties entered into the December 2014 agreement.  This agreement foreclosed any claimed "right" by Plaintiff to serve additional written discovery.  While the agreement did not foreclose negotiations concerning Plaintiff's previously served written discovery, any motion to compel or any further agreement resolving any discovery issues concerning the previously served discovery – all of which have occurred and have been resolved, the December 2014 agreement did serve to truncate any further written discovery requests, by agreement of the parties.  Such agreements among counsel are fully enforceable and consistent with, if not encouraged by, the Federal Rules of Civil Procedure.  Plaintiff is bound by his unambiguous December 2014 agreement. Plaintiff's counsel's disingenuous attempt to argue that there was no agreement precluding additional, written discovery cannot be reconciled with the actual record.  *See* Dkt. 60.  His purported service of New Discovery Requests in violation of the December 2014 agreement should be found to be a nullity and no responses should be required.

Instead of honoring the agreement that they admittedly entered into, Plaintiff's counsel pretend that the agreement does not say what it clearly says.  Most tellingly, Plaintiff's counsel can point to no contemporaneous or subsequent communication between the parties that delineated the view they are now falsely spouting.  In fact, for more than one year, Plaintiff's counsel acted entirely consistent with the December 2014 agreement: no additional written discovery was served.  Plaintiff seeks to evade the clear agreement by misconstruing the Court's comments during the December 1, 2015 status conference – made nearly a year after Plaintiff entered into the agreement.  The Court did not void the parties' December 1, 2014 agreement or make any statement in any way suggesting that the parties' prior agreement was not appropriate

---

[8]    Pursuant to the Federal Rules of Civil Procedure, M&T is not required to serve written responses to Plaintiff's New Discovery Requests, if at all, until January 25, 2016 and February 15, 2016, respectively.  *See* Fed. R. Civ. P. 6, 33, 34.

and enforceable. The Court's comment was made with respect to the need for the Plaintiff and the Court to potentially evaluate the sufficiency of M&T's Supplemental Responses.

Plaintiff fails to cite any authority for the notion that the Court's comment relieves him and his counsel of their prior agreements. Most troubling is the fact that these experienced lawyers would even suggest such a position to this Court in an effort to disavow an agreement they admittedly entered into. And, now Plaintiff's counsel are trying to suggest that this Court should approve of their flagrant disregard of their agreement when the December 2014 agreement was not before the Court at that time and the Court was obviously focused on the resolution of the previously-pending motion to compel. Indeed, Plaintiff's counsel's attempt to game the system by misconstruing the Court's statements only serves to highlight Plaintiff's flawed position. This Court holds lawyers to their word and agreements. M&T and its counsel have fulfilled their agreements. Plaintiff and his counsel must be held to theirs.

**B. The Parties Extensively Negotiated and Entered Into An Agreement Resolving Plaintiff's Motion to Compel and Any Other Discovery Issues Purportedly Related to Class Certification.** As explained at the December 1, 2015 status conference and again at the January 11, 2016 status conference, the parties entered into an agreement that "fully resolve[d] the [prior] motion to compel [Dkt. 75; Dkt. 114]]" and "any other discovery issues purportedly related to class certification." *See* Ex. 6, p. 1. The discovery agreement resolving any issues pertaining to class certification discovery was the product of numerous and extensive negotiations between counsel and is reflected in the correspondence attached as Ex. 6. M&T complied in good faith with the discovery agreement between the parties by serving its Supplemental Responses to Plaintiff's First Set of Interrogatories Nos. 6 and 8 on December 9, 2015. In fact, with respect to the agreed-upon information pertaining to deficiency balances/claims, Plaintiff's counsel has had the information since November 27, 2015. *See* Ex. 6, p. 3. **Most notably, Plaintiff admits that M&T complied with the discovery agreement, and he makes no claim that M&T did not fully comply with the parties' agreement**. As M&T acknowledged at the December 1 status conference, Plaintiff's counsel were entitled to review the sufficiency of M&T's Supplemental Responses to confirm that M&T satisfied the parties' agreement. They have done so and they have raised no issue with regard to M&T's compliance with the parties' discovery agreement.

Plaintiff also now seeks to renege on the parties' discovery agreement after M&T fully performed by making a disingenuous argument that the parties did not intend to complete class certification discovery when they entered into the discovery agreement. Plaintiff admits that, through his counsel, he entered into the discovery agreement that he now characterizes as the "settlement agreement." Further, Plaintiff concedes that when M&T delineated the proposed agreement it expressly stated that the agreement "fully resolve[d] the [prior] motion to compel [Dkt. 75; Dkt. 114]]" and "any other discovery issues purportedly related to class certification." Ex. 6, p. 1. In attempting to avoid the parties' agreement, Plaintiff seeks to rely on: (i) alleged subsequent "oral directives" of the Court; (ii) M&T's November 27, 2015 letter; and (iii) Plaintiff's counsel's December 1, 2015 email. *See* Plaintiff's Position at p. 7. Plaintiff's position does not withstand scrutiny.

Neither M&T's November 27, 2015 letter nor the Court's "oral directives" are in any way contrary to the parties' discovery agreement or M&T's objectively expressed intent when entering into the discovery agreement. At the December 1 status conference, the open issue was M&T's performance of the discovery agreement, *i.e.*, the sufficiency of M&T's Supplemental Responses to the discovery at issue in the motion to compel. M&T acknowledged that the

sufficiency of its Supplemental Responses was fair game if it did not comply with the parties' agreement. M&T did, in fact, comply with the parties' agreement and Plaintiff makes no allegation or argument otherwise. During the December 1 status conference, the Court made it clear, however, that Plaintiff did not have a license to conduct new discovery at odds with the parties' discovery agreement. For Plaintiff to suggest that he has a license to conduct additional discovery that is contrary to the parties' discovery agreement does not comport with the Federal Rules of Civil Procedure or accepted practice. Nor could the Court's subsequent statements about the fulfillment of the parties' agreement alter the parties' actual agreements. The parties' agreements had already been entered into prior to the December 1 status conference.

In an attempt to justify their violation of the parties' agreements, Plaintiff's counsel argue that they should not be bound by the agreements because Ms. Lindsay's December 1, 2015 email stated that the agreement "resolved all discovery disputes in our Motion to Compel." Ms. Lindsay's email was a true statement because the agreement did resolve all of the pending discovery disputes. Plaintiff, however, overlooks Ms. Lindsay's own November 30, 2015 email in which she agreed: "We are prepared to accept your proposal for resolving our discovery dispute *as per your letter of November 27, 2015*, with the following additions/clarifications that we discussed by phone today." Ex. 7 (emphasis added). The correspondence evidencing the parties' discovery agreement confirms unequivocally that M&T made a good faith proposal to compromise and Plaintiff accepted the proposal "as per [M&T's counsel's] letter of November 27, 2015" with certain specific clarifications. None of those clarifications involved the service of additional, new discovery requests on the very topics being compromised and contrary to the December 2014 agreement. The record further shows that Plaintiff stood silent in the face of M&T's clearly stated intent that the agreement "fully resolve[d] the [prior] motion to compel [Dkt. 75; Dkt. 114]]" and "any other discovery issues purportedly related to class certification."[9]

Plaintiff had multiple opportunities before the parties announced their discovery agreement to say that he wanted to preserve the ability to serve additional, new discovery requests, and the parties could have then determined whether to enter into the agreement. Plaintiff failed to do so. Instead, in the face of M&T's objectively stated proposal, *Plaintiff accepted it with certain clarifications and remained "silent" otherwise*. Indeed, by seeking "clarification," Plaintiff's counsel made clear that they were capable of clarifying any aspects on which they objected or were unclear.

Put simply, it was incumbent on Plaintiff's counsel to objectively and expressly state that Plaintiff reserved the right to serve additional written discovery and that he intended to serve new interrogatories on the very topics that the parties were compromising and which the parties had already agreed would not be served. Of course, Plaintiff did not do so, and Plaintiff does not claim that he did, because doing so would have been obviously antithetical to the discovery agreement being entered into by the parties and the December 2014 stipulation. Plaintiff does not, and cannot, point to any communication between the parties in which Plaintiff's counsel preserved any right to serve these new interrogatories and document requests.

---

[9]  As of March 2, 2015, Plaintiff's counsel themselves acknowledged that the sole "remaining 'bone of contention' between the parties" related to whether certain M&T's interrogatory answers should extend beyond South Carolina. *See* Dkt. 75 at p. 1. Moreover, the entry of a stay pertaining to the disposition of the Plaintiff's motion to compel and the class certification briefing schedule did not affect the permissibility of additional written discovery when Plaintiff had already agreed that they were not permitted to serve any additional interrogatories or document requests.

**C. Plaintiff's New Discovery Requests Are Contrary to the Parties' Discovery Agreements And Improper.** As a threshold matter and as detailed above, Plaintiff's service of these New Discovery Requests was contrary to the parties' agreements precluding such written discovery and resolving all discovery issues pertaining to any class certification issues. By these agreements, Plaintiff therefore was affirmatively precluded from serving these written discovery requests.

Plaintiff's New Discovery Requests also are improper because they are contrary to the discovery compromise that was reached. Plaintiff admits that:

- He has known about the deficiency issue regarding putative class members since M&T answered his complaint in June 2014. *See* Dkt. 38.
- He previously sought information in Plaintiff's Interrogatory No. 8 regarding the "**amount of any deficiency balance claimed by defendant immediately after the sale of the collateral; the date of any assignment or sale of the deficiency account and amount of any deficiency balance currently claimed by you, if any**." *See* Pl. Position at pp. 5-6 (emphasis added).
- After M&T served its written responses and objections and as a part of the discovery dispute resolution process, the parties engaged in extensive negotiations relating specifically to Plaintiff's Interrogatory No. 8 and ultimately reached an agreement pursuant to which the parties agreed that M&T would only need to provide certain statements acknowledging the existence of certain deficiency-related information in M&T's records. *See* Ex. 6 (Nov. 27, 2015 letter) at p. 3, ¶¶ 4, 5 and 7.
- Plaintiff agreed that M&T was not required to provide a complete answer to Plaintiff's Interrogatory No. 8 itself.

Plaintiff's December 22, 2015 interrogatories (*see* Pl. Ex. 1) are obvious variations on Plaintiff's prior Interrogatory No. 8 that can only be answered by gathering the type of underlying information Plaintiff agreed was not necessary pursuant to the parties' agreement. In short, Plaintiff compromised regarding the information he sought with respect to deficiency balances or claims when he resolved the prior motion to compel.

Even more fundamentally and most importantly, the parties specifically agreed that M&T was ***not*** required to conduct the enormously costly and burdensome file-by-file review or analysis regarding the existence of any customer bankruptcy filings or bankruptcy discharges. In entering into the agreement, the parties understood that the numerical information being supplied on a multi-state basis did not, and would not, exclude transactions impacted by bankruptcy filings.[10] And, Plaintiff's counsel themselves understood and conceded in Plaintiff's own First Set of Interrogatories, such bankruptcies would need to be subsequently excluded. *See* Dkt. 75-1 (Plaintiff's Interrogatory No. 8 excluding "any sale which resulted in a deficiency balance with

---

[10] In both entering into the agreement and in supplying the agreed-upon information, M&T made it clear that "Other than the South Carolina customer information that M&T has already provided to Plaintiff, M&T has not conducted a review of the customer files for each of the thousands of repossession transactions of consumer goods collateral that occurred." Ex. 6, p. 2. In providing its Supplemental Response to Interrogatory No. 8, M&T expressly noted that the numbers being supplied did not exclude bankruptcies because of the burden and expense of conducting this time-consuming, manual review.

respect to which a consumer obligor filed a petition in bankruptcy and the obligor was subsequently discharged from bankruptcy").

The existence of bankruptcy filings and/or discharges potentially affects whether the customer-debtor possesses standing to pursue any alleged pre-petition cause of action as well as whether M&T can assert a deficiency claim.  Therefore, on the one hand, Plaintiff agreed and acknowledges that the bankruptcy review and analysis is not necessary or appropriate given the burden and expense involved, yet on the other hand he purports to demand discovery that cannot be accurately answered without conducting the very bankruptcy review and analysis that he has already agreed does not need to be completed.  Plaintiff is asking M&T to provide verified numerical information regarding deficiency claims that cannot be accurately supplied without first conducting the manual bankruptcy review and analysis that Plaintiff agreed was not necessary.  Stated differently, if M&T were to verify general numerical information regarding the number of deficiency claims without conducting the detailed bankruptcy review, then it will, at a minimum, be potentially criticized for improperly overstating the claims or, alternatively, be attacked as violating bankruptcy discharge orders.  This type of gamesmanship and game playing by Plaintiff's counsel is contrary not only the prior agreement but also to Fed.R.Civ.P. 1.

Further, Plaintiff's "Supplemental Interrogatories" (Ex. 1) are additional discovery requests seeking aggregate numbers based on information that Plaintiff previously sought and ***affirmatively decided not to pursue*** in the golden rule discovery resolution process.  Plaintiff's suggestion that he could not have requested this information as a part of the parties' resolution discussions is illogical and nonsensical.  His counsel was aware of the issue since June 2014, had asked for similar information in Interrogatory No. 8 and, in fact, proposed and negotiated the "record information" acknowledgements that they obtained.  Likewise, Plaintiff's arguments attempting to infer what the information "must show" are entirely improper and illegitimate.[11]  Plaintiff's counsel knows that there will be some members of virtually any, as yet undetermined, putative class that owe deficiency balances on their motor vehicle loans.[12]  As a part of the discovery dispute resolution process, M&T supplied Plaintiff's counsel with information about the members of the putative South Carolina class that included deficiency balance information.  In the extensive negotiations and agreement relating to this extensive data collection effort, Plaintiff's counsel did not voice any need for any further information.  Likewise, they know that there will be some members who filed for bankruptcy.  This is not a "strawman argument."  Plaintiff's own Interrogatory No. 8 excluded bankruptcies.  Plaintiff cannot dispute that the existence of bankruptcies potentially affects whether any deficiency may exist.  In light of these clear and incontrovertible facts, it is nonsense for Plaintiff to suggest that M&T has ever attempted to "ambush" him here.

---

[11]   Likewise, Plaintiff's arguments that M&T should have voluntarily given Plaintiff's any additional information or should "moot" their requests are entirely improper and do not warrant any substantive response.

[12]   Plaintiff's citation to *In re Bank of New York Mellon Forex Transactions Litig.*, 42 F. Supp.3d 520, 527 (S.D.N.Y. 2014) completely misses the mark.  M&T has not asserted any "defendant/ counterclaim class" in this case nor has it ever expressed an intent to do so.

**D. Plaintiff's Newest Interrogatory Does Not Seek Information Relevant to Plaintiff's Claim Or The Putative Class He Allegedly Seeks to Represent.** Rule 26(b)(1) limits discovery to matters that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiff Pinks has not asserted any claim with respect to the M&T notice that is the purported subject of his January 11, 2016 interrogatory. His complaint makes no claim with respect to this M&T notice. His claim relates specifically to the noticed attached to his Complaint. And, he does not seek to represent any purported class with respect to this notice. Plaintiff and his counsel framed his Complaint and, without any claim with regard to this notice, Plaintiff has no right to discovery pertaining to it under the Federal Rules of Civil Procedure.

With his January 11, 2016 interrogatory, Plaintiff also goes even farther afield in violation of the parties' agreements. In serving this improper interrogatory, Plaintiff asks for the number of transactions "which were preceded by" a particular M&T notice "at any time until the present date." Plaintiff asserts that this interrogatory is "self-evidently and centrally relevant to a plaintiff's determination as to the scope of the class he will seek." Pl. Position at 3. Plaintiff's argument that "M&T improperly argues the merits" (Pl. Position at 3) is a complete *nonsequitur*. M&T's argument is not a "merits" argument. M&T's argument is based on Plaintiff's own Complaint and the class he himself alleged. In this case, Plaintiff expressly alleges that he is only challenging the notice attached to his complaint as Exhibit 2. Dkt. 1, ¶ 26. He claims that the notice attached as Exhibit 2 omitted certain language advising the customer of the "right to an accounting" and the amount of any associated charge. The notice that Plaintiff is purportedly asking about now is a notice that he never personally received because it was not used in South Carolina and that expressly contains the language "You are entitled to an accounting" and informs the customer of the fact that there is no associated fee. In other words, the notice ***expressly contains the language Plaintiff alleges was omitted from his South Carolina notice*** regarding the "right to an accounting." The existence of this language is not a "merits" issue. It is an indisputable fact. The notice was provided to Plaintiff's counsel pursuant to the parties' discovery agreement to enable them to verify the existence of this particular language. Because this language exists in this notice, it is obviously ***not*** the Notice attached to Plaintiff's Complaint as Exhibit 2. Plaintiff does not contend that it is the same notice. More fundamentally, the persons who received the Exhibit 2 notice are different persons than those who received the different notice Plaintiff is now asking about. In essence, Plaintiff is now asking about a hypothetical, unpled putative class of different individuals.

No claim has been asserted in Plaintiff's complaint pertaining to this different notice and Plaintiff does not even purport to represent any putative class asserting any claim based upon this different notice. Before any person could assert any such claim, he or she would need to allege a plausible claim in a complaint and M&T would be entitled to challenge the sufficiency of any such claim under the applicable state law. Neither Plaintiff nor anyone else has asserted any such claim and there is no basis for Plaintiff to compel numerical transaction information about the use of a notice that does not meet Plaintiff's own alleged class definition. *See* Dkt. 1, ¶ 26. Accordingly, the information Plaintiff now seeks about this other notice clearly does not bear in any way upon Plaintiff's claim, his complaint or any putative class that he has sought to represent. Simply put, the numerical information sought pertaining to this different notice is irrelevant to Plaintiff's claim as well as whether his claim may be maintained as a putative class action. M&T has not "overlooked" Plaintiff's allegations or his complaint. To the contrary, M&T's argument is based upon Plaintiff's own complaint, his actual claim and his actual alleged class. These are not "merits" issues. This separate notice does not prove Plaintiff's claim in any

way and it is wholly irrelevant to Plaintiff's actual alleged, putative class.  Plaintiff concedes this fact and makes no argument that the notice he is now asking about is relevant to the class alleged in his Complaint.  Plaintiff is improperly seeking discovery about a hypothetical, unpled case that he has not filed and has alleged no facts to support.

In summary, M&T believes the actual record and actual events demonstrate that Plaintiff's new discovery requests are entirely improper.  M&T should not be required to provide any written responses to these improper requests.  M&T respectfully submits that Plaintiff is using this manufactured discovery dispute to delay the date for filing any motion for class certification.  Plaintiff has had the agreed-upon information since December 9 and other information since November 27.  Plaintiff's discovery position should be rejected.  He should be ordered to file his motion for class certification, brief in support and supporting evidence by January 29, 2016, with M&T's opposition brief and evidence in opposition due thirty (30) days thereafter, and any reply brief to be filed within two weeks of service of M&T's opposition.  In responding to Plaintiff's mischaracterizations and baseless arguments, M&T does not waive any rights.

Date:  January 21, 2016

| | |
|---|---|
| **HERZFELD & RUBIN, P.C.** | **REED SMITH LLP** |
| By:    *Daniel V. Gsovski*      <br>       Daniel V. Gsovski (DG4413)<br>       125 Broad Street<br>       New York, NY  10004-1300<br>       Telephone:  212-471-8512<br>       Email:  dgsovski@herzfeld-rubin.com<br><br>       PHILIP FAIRBANKS, ESQ., P.C.<br>       (admitted *pro-hac vice)*<br>       1214 King Street<br>       Beaufort, SC  29902<br>       Telephone:  843-521-1580<br>       Email:  Philip@lowcountrybankruptcy.com<br><br>       LAW OFFICE OF FREDERIK CORLEY<br>       (admitted *pro-hac vice)*<br>       1214 King Street<br>       Beaufort, SC  29902<br>       Telephone:  843-524-3232<br>       Email:  rcorley@islc.net<br><br><br>       KATHY D. LINDSAY, P.A.<br>       (admitted *pro-hac vice)*<br>       1214 King Street<br>       Beaufort, SC  29902<br>       Telephone:  843-521-1581<br>       Email:  klindsay@islc.net<br><br>       *Attorneys for Plaintiff* | By: */s/  Roy W. Arnold*        <br>       Roy W. Arnold (admitted *pro-hac vice)*<br>       Andrew J. Soven (admitted *pro-hac vice*)<br>       2500 One Liberty Place<br>       1650 Market Street<br>       Philadelphia, PA 19103-7301<br>       (215) 851-8100<br><br>       Steven Cooper  (SC4394)<br>       599 Lexington Avenue<br>       New York, New York 10022<br>       Telephone: (212) 521-5400<br>       Facsimile: (212)-521-5450<br>       Email: scooper@reedsmith.com<br><br>*Attorneys for Defendant M & T Bank Corp.* |