# EXHIBIT 6

# ReedSmith

Roy W. Arnold
Direct Phone: +1 412 288 3916
Email: rarnold@reedsmith.com

Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Tel +1 412 288 3131
Fax +1 412 288 3063
reedsmith.com

November 27, 2015

**Letter Dictated and Sent Via Email**

Kathy Lindsay, Esquire
Kathy D. Lindsay, P.C.
1214 King Street
Beaufort, SC 29902

**Re: Pinks v. M & T Bank Corporation
Index No. 13-cv-1730-LAK-RLE**

Dear Kathy:

We are writing as a follow up to our prior discussions, including our call on November 24, 2015 and your email of the same date, to resolve all remaining discovery issues. Without conceding that the information requested by Plaintiff is relevant to the requirements of Rule 23 of the Federal Rules of Civil Procedure, without waiver of any of its rights or objections, including, but not limited to, any arguments relating to Plaintiff's lack of standing to assert non-South Carolina claims or to represent any member of any putative class asserting any non-South Carolina claim or any arguments relating to the applicable statute of limitations for any claim asserted by Plaintiff or any member of any putative class asserting any non-South Carolina claim, subject to and without waiver of its objections to Plaintiff's First Requests for Production of Documents and First Set of Interrogatories, and subject to the Protective Order entered by the Court, Defendant M&T Bank Corporation ("M&T") is willing to provide the following supplementation in the interest of cooperation in discovery and to fully resolve the pending motion to compel and any other discovery issues purportedly related to class certification.

First, M&T will agree to provide supplemental responses to Nos. 6 and 8 of Plaintiff's First Set of Interrogatories on or before December 11, 2015.

M&T will supplement its response to Interrogatory No. 6 to identify the exemplar notice(s) of repossession that was used by M&T in the 45 states requested by Plaintiff during the period from March 14, 2010 until June 25, 2012, when M&T revised any notice of repossession that it utilized to contain additional language stating that "you are entitled to an accounting of the unpaid indebtedness . . . . You may request an accounting by calling . . . ." *See* Declaration of Michael P. Ryan dated February 12, 2015 ("Ryan Declaration"). Per Plaintiff's request, M&T's supplemental response to Interrogatory No. 6 will not include information relating to the following states: California; Illinois; Louisiana; Michigan; North Dakota; and Oregon.

M&T will supplement its response to Interrogatory No. 8 to identify the number of items of consumer goods collateral repossessed by M&T following a customer default in the 45 states requested by Plaintiff during the period from March 14, 2010 until June 25, 2012. *See* Ryan Declaration.

ABU DHABI ♦ ATHENS ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MUNICH ♦
NEW YORK ♦ NORTHERN VIRGINIA PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦
WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-124599663.1-JJKONYUL 11/27/2015 2:36 PM

Kathy Lindsay, Esquire
November 27, 2015
Page 2

**ReedSmith**

Electronic information regarding the date of sale of repossessed collateral is not consistently available and cannot be confirmed without a manual examination of individual transaction files. Per Plaintiff's request, M&T's supplemental response to Interrogatory No. 8 will not include information relating to the following states: California; Illinois; Louisiana; Michigan; North Dakota; and Oregon. To the extent that Plaintiff later requests a breakdown of any of the 45 states' aggregate number of repossessions on a year-by-year basis, M&T agrees to provide that information to Plaintiff as soon as is reasonably practicable.

Second, with respect to the so-called "stipulations" 1 through 7 requested by Plaintiff in Docket No. 75-1 (pp. 2-7), M&T is unable to agree to the proposed language because it does not accurately reflect the availability and/or nature of data presently available, or available as of the date of the filing of Plaintiff's Complaint, to M&T. Other than the South Carolina customer information that M&T has already provided to Plaintiff, M&T has not conducted a review of the customer files for each of the thousands of repossession transactions of consumer goods collateral that occurred during the period from March 14, 2010 until June 25, 2012 because it would be unduly burdensome and enormously costly and would be disproportionate to the needs of this case prior to a determination by the Court on any motion for class certification. *See* Fed. R. Civ. P. 26(b)(1) (effective December 1, 2015); *see also* Dkt. 46 at 2-3 and Dkt. 77 at 2. However, in the interest of cooperation in discovery, M&T acknowledges the following:

1. With respect to each repossession transaction of consumer goods collateral by M&T following a customer default, as to which a sale or other disposition of consumer goods collateral occurred after March 14, 2010, inclusive, M&T has maintained a copy of the purchase money security agreement (*e.g.*, the Retail Installment Credit and Security Agreement, Dkt. # 9-1, Exh. B) that was generated, received and/or retained by M&T within the ordinary course of business, to the extent that such a copy existed in M&T's files as of the date of the filing of Plaintiff's Complaint on March 14, 2013. As demonstrated with respect to the South Carolina information provided by M&T to Plaintiff, there can be no assurance that all information is legible or available for any particular transaction.

2. With respect to each repossession transaction of consumer goods collateral by M&T following a customer default, as to which a sale or other disposition of consumer goods collateral occurred after March 14, 2010, inclusive, M&T has maintained, a copy of the Notice of Disposition (*e.g.*, Ex. A to Michael P. Ryan's Declaration of Feb. 12, 2015) that was generated, received and/or retained by M&T within the ordinary course of business, to the extent that such a copy existed in M&T's files as of the date of the filing of Plaintiff's Complaint on March 14, 2013. As demonstrated with respect to the South Carolina information provided by M&T to Plaintiff, there can be no assurance that all information is legible or available for any particular transaction.

3. With respect to each repossession transaction of consumer goods collateral by M&T following a customer default, as to which a sale or other disposition of consumer goods collateral occurred after March 14, 2010, inclusive, M&T has maintained, a copy of the post-disposition Notice of Deficiency or Surplus (*e.g.*, Dkt. # 13, Ex. 1) that was

Kathy Lindsay, Esquire
November 27, 2015
Page 3

**ReedSmith**

generated, received and/or retained by M&T within the ordinary course of business, to the extent that such a copy existed in M&T's files as of the date of the filing of Plaintiff's Complaint on March 14, 2013. As demonstrated with respect to the South Carolina information provided by M&T to Plaintiff, there can be no assurance that all information is legible or available for any particular transaction.

4. With respect to each repossession transaction of consumer goods collateral by M&T following a customer default, as to which a sale or other disposition of consumer goods collateral occurred after March 14, 2010, inclusive, M&T has maintained any documents or information that were generated, received and/or retained by it within the ordinary course of business and that show the date and price of any assignment, sale, purchase or other transfer by M&T Bank of any deficiency account related to a repossession transaction, to the extent that such documents or information existed in M&T's files as of the date of the filing of Plaintiff's Complaint on March 14, 2013 or came into existence thereafter.

5. With respect to each repossession transaction of consumer goods collateral by M&T following a customer default, as to which a sale or other disposition of consumer goods collateral occurred after March 14, 2010, inclusive, M&T has maintained information generated, received and/or retained by it within the ordinary course of business from which one can calculate the amount of any deficiency account (including principal and interest) related to a repossession transaction that is currently owed to M&T.

6. With respect to each repossession transaction of consumer goods collateral by M&T following a customer default, as to which a sale or other disposition of consumer goods collateral occurred after March 14, 2010, inclusive, Defendant maintains documents or information relating to whether a consumer obligor connected to a repossession transaction filed for bankruptcy and received a discharge to the extent that M&T Bank received notice of the bankruptcy filing and discharge. If M&T was not provided notice of the bankruptcy or discharge, in order to obtain such information, M&T would need to: (a) conduct an individual bankruptcy filing search for each customer; and (b) analyze the docket and filings of each bankruptcy case to determine whether or not the claim was raised and/or abandoned during bankruptcy proceeding.

7. With respect to each repossession transaction of consumer goods collateral by M&T Bank following a customer default, as to which a sale or other disposition of consumer goods collateral occurred after March 14, 2010, inclusive, Defendant has within its possession, custody or control, documents or information from which one can determine whether M&T filed a lawsuit against the consumer obligor connected to a repossession transaction in connection with a deficiency account.

Third, after M&T has provided supplemental responses to Interrogatory Nos. 6 and 8, we do not believe that there will be any need for Plaintiff to request any "exemplar notices." However, to the

Kathy Lindsay, Esquire
November 27, 2015
Page 4

**ReedSmith**

extent that such a request is made, M&T will provide any such "exemplar notices" to the extent available.

Without prejudice to renewal in the event that M&T fails to provide the agreed information, M&T will agree to the foregoing subject to Plaintiff's withdrawal of his motion to compel and the cancellation of the December 1, 2015 conference with Magistrate Judge Ellis.

Please let us know promptly whether this satisfactorily resolves these issues and whether counsel can jointly inform the Court of the withdrawal of Plaintiff's motion to compel.

Very truly yours,

REED SMITH LLP

By: /s/ Roy W. Arnold
    Roy W. Arnold

RWA:pm

cc:   Daniel V. Gsovski, Esquire
      Philip Fairbanks, Esquire
      Frederik Corley, Esquire

## Kontul, Justin J

| | |
|---|---|
| **From:** | klindsay <klindsay@islc.net> |
| **Sent:** | Tuesday, December 01, 2015 1:19 PM |
| **To:** | Kontul, Justin J; 'Daniel V. Gsovski'; rick@1214law.com; philip.fairbanks@gmail.com |
| **Subject:** | RE: Discovery dispute |

Justin,
We agree with the proposal as now finalized; that the parties have resolved all discovery disputes raised in our Motion to Compel; and we will inform Judge Ellis that the Motion to Compel has now been "mooted" by this agreement. Thanks again, Kathy

Kathy D. Lindsay, P.A.
*Attorney at Law*
1214 King Street
Beaufort, South Carolina 29902
(843) 521-1581

### CONFIDENTIALITY NOTICE

**The information contained in this email is legally privileged and confidential. It is intended only for the use of the addressee(s). If you are not the intended recipient, please be aware that any dissemination, distribution or copy of this email is prohibited. If you have received this email in error, please immediately notify us by reply email and delete this message and any attachments. Please also advise us immediately if you or your employer does not consent to receipt of internet email for confidential messages of this kind.**

**From:** Kontul, Justin J [mailto:JKontul@ReedSmith.com]
**Sent:** Tuesday, December 01, 2015 12:46 PM
**To:** 'klindsay'; 'Daniel V. Gsovski'; rick@1214law.com; philip.fairbanks@gmail.com
**Subject:** RE: Discovery dispute

Kathy,
We do not agree with your interpretation of the statute of limitations, and M&T reserves all rights regarding the applicable statute of limitations. However, in the interest of cooperation in discovery, M&T will agree that its supplemental response to Interrogatory No. 8 will identify the number of items of consumer good collateral repossessed by M&T following a customer default prior to June 25, 2012 and then sold on or after March 14, 2010 in the 45 states requested by Plaintiff, on a state-by-state basis. As previously stated, Plaintiff will be able to determine from M&T's supplemental responses to Interrogatory Nos. 6 and 8 which exemplar notice(s) was used for these transactions.

With your confirmation that this is acceptable, the parties have now resolved all remaining discovery issues.

Regards,
Justin

**Justin J. Kontul**
jkontul@reedsmith.com
+1 412 288 3098

1

**Reed Smith LLP**
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
T: +1 412 288 3131
F: +1 412 288 3063
reedsmith.com

**From:** klindsay [mailto:klindsay@islc.net]
**Sent:** Tuesday, December 01, 2015 11:43 AM
**To:** Kontul, Justin J; 'Daniel V. Gsovski'; rick@1214law.com; philip.fairbanks@gmail.com
**Subject:** RE: Discovery dispute

Justin,

Please advise if we can talk immediately re your proposal. We agreed to a sweep of the below dates as to Interrogatory 8 *because* M&T told us it could not do an electronic search of the dates of sale. As we have always maintained, any statute of limitations runs from the date of sale.

Now that you have told us for the first time that you *can* do a reliable electronic sweep of the date of sale on a multi-state basis, then we would want the sweep to include *all sales within the 3 year "look back period" (from March 14, 2010) that were preceded by the Pinks Notice* on a state by state basis. In other words, if the Pinks notice was sent on June 25, 2012, and the sale occurred much later, it would still be counted. By the same token, a sale occurring on March 10, 2010 would also be included, as you included in the SC data, *if* it was preceded by the Pinks Notice at an earlier date. Moreover, if the Pinks Notice was exclusively used during certain time periods, this should be easy for M&T to do. Am I missing something here?

Thanks, Kathy

Kathy D. Lindsay, P.A.
*Attorney at Law*
1214 King Street
Beaufort, South Carolina 29902
(843) 521-1581

### CONFIDENTIALITY NOTICE

**The information contained in this email is legally privileged and confidential. It is intended only for the use of the addressee(s). If you are not the intended recipient, please be aware that any dissemination, distribution or copy of this email is prohibited. If you have received this email in error, please immediately notify us by reply email and delete this message and any attachments. Please also advise us immediately if you or your employer does not consent to receipt of internet email for confidential messages of this kind.**

**From:** Kontul, Justin J [mailto:JKontul@ReedSmith.com]
**Sent:** Tuesday, December 01, 2015 11:05 AM
**To:** 'klindsay'; Arnold, Roy W.
**Cc:** Rick Corley; philip.fairbanks@gmail.com; 'Gsovski Dan'
**Subject:** RE: Discovery dispute

Kathy,

2

Upon further review, we have determined that information relating to the date of sale is electronically available. As a result, M&T's supplemental response to Interrogatory No. 8 will identify the number of items of consumer good collateral repossessed by M&T following a customer default and sold in the 45 states requested by Plaintiff during the period from March 14, 2010 until June 25, 2012, on a state-by-state basis.

As far as scheduling, my understanding is that, on the November 23, 2015 telephone conference, Roy requested that Plaintiff submit any proposed scheduling proposal for M&T's review. We have not received any such proposal from Plaintiff and believe that a call would likely not be fruitful until one is provided.

Thanks,
Justin

**Justin J. Kontul**
jkontul@reedsmith.com
+1 412 288 3098

**Reed Smith LLP**
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
T: +1 412 288 3131
F: +1 412 288 3063
reedsmith.com

**From:** klindsay [mailto:klindsay@islc.net]
**Sent:** Monday, November 30, 2015 5:42 PM
**To:** Kontul, Justin J; Arnold, Roy W.
**Cc:** Rick Corley; philip.fairbanks@gmail.com; 'Gsovski Dan'
**Subject:** RE: Discovery dispute

Thanks Justin,

Please see below my one comment in red. Other than that, we are in agreement.

Did you also see Dan's email advising that he had called Judge Ellis notifying him of the parties' intent to reach an agreement, and therefore of our intent to withdraw our Motion to Compel upon agreement? Per Dan, we are to advise Judge Ellis tomorrow that we have an agreement which "moots" our Motion to Compel. However, chambers informed Dan that Judge Ellis still wants to use the hearing time tomorrow to discuss status and scheduling.

Do you think it would be fruitful for the parties to discuss scheduling tomorrow before the hearing at 2:30, in case we are able to make a joint proposal? Thanks, Kathy

Kathy D. Lindsay, P.A.
*Attorney at Law*
1214 King Street
Beaufort, South Carolina 29902
(843) 521-1581

**CONFIDENTIALITY NOTICE**

**The information contained in this email is legally privileged and confidential. It is intended only for the use of the addressee(s). If you are not the intended recipient, please be aware that any dissemination, distribution or copy of this email is prohibited. If you have received this email in error, please immediately notify us by reply email and**

3

delete this message and any attachments. Please also advise us immediately if you or your employer does not consent to receipt of internet email for confidential messages of this kind.

**From:** Kontul, Justin J [mailto:JKontul@ReedSmith.com]
**Sent:** Monday, November 30, 2015 4:18 PM
**To:** 'klindsay'; Arnold, Roy W.; 'Daniel V. Gsovski'; philip.fairbanks@gmail.com
**Cc:** 'Rick Corley'
**Subject:** RE: Discovery dispute

Kathy,

Thank you for your email. I believe we have reached a resolution on the discovery issues, but to ensure that everyone is on the same page and reserving all rights as set forth in Roy Arnold's November 27, 2015 letter, I make the following clarifications to your below email.

First, with respect to the supplemental response to Interrogatory No. 6, M&T agrees to provide available information on the exemplar notice(s) of repossession used during the period from March 14, 2010 until June 25, 2012 in the 45 states requested by Plaintiff. M&T's supplemental response will include information regarding the time period during which each notice(s) was used in each state.

Second, with respect to the supplemental response to Interrogatory No. 8, M&T agrees to provide information regarding the number of repossessions of customer goods collateral on a state-by-state basis for each of the 45 states requested by Plaintiff during the period from March 14, 2010 until June 25, 2012. Further, as I stated, Plaintiff will be able to determine from M&T's supplemental responses to Interrogatory Nos. 6 and 8 which exemplar notice(s) was used for these transactions.

Finally, this confirms that M&T's supplemental response to Interrogatory No. 8 will identify the number of items of consumer good collateral repossessed by M&T following a customer default *and sold* in the 45 states requested by Plaintiff during the period from March 14, 2010 until June 25, 2012, on a state-by-state basis.

[Change this last sentence to read: "Finally, this confirms that M&T's supplemental response to Interrogatory No. 8 will identify the number of items of consumer good collateral repossessed by M&T following a customer default in the 45 states requested by Plaintiff during the period from March 14, 2010 until June 25, 2012, *and sold sometime after repossession,* on a state-by-state basis." As you have written it, it requires *both* the repo *and* the sale to have occurred w/in the applicable time period. Since M&T represents that it cannot electronically and reliably query the dates of sale, this sentence as re-written confirms that a sale did in fact occur sometime after the respossession, but the sale is not required to have occurred within the March 14, 2010 – June 25, 2012 time period.]

Could you please confirm that you agree that the parties have resolved the discovery issues and that Plaintiff will be withdrawing his motion to compel?

Regards,
Justin


**Justin J. Kontul**
jkontul@reedsmith.com
+1 412 288 3098

4

**Reed Smith LLP**
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
T: +1 412 288 3131
F: +1 412 288 3063
reedsmith.com

**From:** klindsay [mailto:klindsay@islc.net]
**Sent:** Monday, November 30, 2015 1:57 PM
**To:** Kontul, Justin J; Arnold, Roy W.; 'Daniel V. Gsovski'; philip.fairbanks@gmail.com
**Cc:** 'Rick Corley'
**Subject:** Discovery dispute

Justin,

Thanks for speaking with us. We are prepared to accept your proposal for resolving our discovery dispute as per your letter of November 27, 2015, with the following additions/clarifications that we discussed by phone today:

In responding to Interrogatory 6, (at p.1 of your letter), you confirmed that M&T's identification of its exemplar Notices of Repossession sent during the applicable time period (March 1, 2014 until June 25, 2012) would include verified interrogatory responses for each exemplar that was used in each of the relevant 45 states, and which identified each identified exemplar's dates of usage by M&T.

In responding to Interrogatory 8 (at p.1-2 of your letter), you confirmed that M&T would provide the requested information on a per state basis for each of the 45 relevant states, rather than in an aggregate form for all of the 45 relevant states. You also confirmed that M&T's verified responses would make clear whether the applicable repossessions followed a Notice of Repossession that was in the form of a Pinks' Notice versus some other form of notice.

Finally, you proposed in your letter that M&T limit its responses in Interrogatory 8 to the number of *repossessions* that occurred within the applicable time periods (March 14, 2010 until June 25, 2012) due to the lack of a reliable means to electronically search the *dates of sale* as we previously requested. However, I proposed that M&T also query its data to confirm the fact of a sale – that even if the date of sale was not easily electronically available, if M&T would query for confirmation that a sale actually occurred, we could at least cull out any transactions in which the putative class members redeemed their repossessed collateral prior to sale. I mentioned that I saw several entries in Mr. Pinks' electronic data affirmatively indicating that a sale had occurred (but which did not include the sale date.) Our phone agreement is that you would check with your data contact person at M&T, and if this information could be queried, M&T would include it in its electronic search at the same time that it queried the number of repossessions.

If this is correct, please advise and we will notify Judge Ellis that we are withdrawing our Motion to Compel and thus will not need tomorrow's telephone hearing.

Thanks, Kathy

Kathy D. Lindsay, P.A.
*Attorney at Law*
1214 King Street
Beaufort, South Carolina 29902
(843) 521-1581

## CONFIDENTIALITY NOTICE

The information contained in this email is legally privileged and confidential. It is intended only for the use of the addressee(s). If you are not the intended recipient, please be aware that any dissemination, distribution or copy of this email is prohibited. If you have received this email in error, please immediately notify us by reply email and delete this message and any attachments. Please also advise us immediately if you or your employer does not consent to receipt of internet email for confidential messages of this kind.

\* \* \*

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01