UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERRY PINKS,

                Plaintiff,

- against -

M&T BANK CORP.,

                Defendant.

**OPINION AND ORDER**

**13-CV-1730 (LAK)(RLE)**

**RONALD L. ELLIS, U.S.M.J.:**

## I. INTRODUCTION

Plaintiff Jerry Pinks ("Pinks") commenced this putative class action against Defendant M&T Bank Corporation ("M&T") on March 14, 2013. (Doc. No. 1.) On March 26, 2013, the Honorable Lewis A. Kaplan referred this case to the undersigned for general pretrial and dispositive motion requiring a Report and Recommendation. (Doc. No. 4.) Before the Court is Pinks's motion to compel M&T to respond to interrogatories Pinks served on December 22, 2015, and January 11, 2016. Pinks argues that because class discovery has not closed, M&T should be required to respond to the interrogatories that seek relevant, non-burdensome information. M&T argues that Pinks's interrogatories were served contrary to the Parties' discovery agreement, and it should therefore not be required to respond.

The Court **DENIES** Pinks's motion to compel because Parties should be encouraged to agree in discovery, the information Pinks seeks is contrary to the Parties' discovery agreement, and Pinks has not shown good cause to override the agreement.

## II. BACKGROUND

In late October or early November 2014, Pinks served his initial interrogatories. (Doc. No. 121 at 1, 8.) Discovery was initially set to close on January 9, 2015, and Pinks was to move

for class certification by January 30, 2015. (Doc. No. 60.) On December 17, 2014, the Parties jointly moved to extend the close of discovery, and the deadline for Pinks to move for class certification. They also agreed that "no additional written discovery, other than notices of deposition, will be served by either [P]arty." (*Id.*) The discovery deadline was changed to March 10, 2015. (Doc. No. 61.)

On March 2, 2015, Pinks sought an order compelling M&T to provide information relating to states other than South Carolina for multistate class discovery. (Doc. No. 75.) For example, he asked M&T to identify and provide:

> [E]xemplars of any form or template used to provide Notice of Disposition of private sale of consumer goods collateral to any consumer obligor in accordance with UCC § 9-613, 614, at any time from March 14, 2007, in any state other than South Carolina.

(Doc. No. 75-1 at 5, ¶ 1.) That same day, M&T moved for an order staying the action pending resolution of its motion for partial judgment on the pleadings. (Doc. No. 76.) The Court granted the motion and stayed discovery on April 14, 2015. (Doc. No. 88.)

Following the denial of M&T's motion for partial judgment on the pleadings, Pinks requested a conference regarding the March 2015 motion to compel. (Doc. No. 109.) The Parties appeared before the Court by telephone on December 1, 2015, and informed the Court that they had resolved the issues underlying the motion to compel, and reached an agreement to provide all written discovery before December 11, 2015. Pinks subsequently withdrew his motion. (Doc. No. 114.) Pinks indicated at the conference that he still had two supplemental interrogatories to serve, but that they were related to the same issues previously requested. The Parties were ordered to evaluate the remaining interrogatories to determine how much time was needed to complete class discovery.

2

On December 9, 2015, M&T responded to Pinks's initial interrogatories, and "identified 11,778 accounts from 45 states fitting the class definition." (Doc. No 121 at 1-2.) Pinks served two sets of supplemental interrogatories – on December 22, 2015, and on January 11, 2016. (Doc. No. 121 at 1.) The Parties appeared before the Court on January 11, 2016, and M&T objected to the interrogatories as being served contrary to the discovery agreement. M&T further argued that it had fully complied with the discovery agreement, and had nothing more to turn over. The Court ordered the Parties to submit a joint letter outlining their positions.

The December 22 interrogatories ask M&T if it has "sold, transferred, assigned, or repurchased any deficiency account … with respect to any repossession and sale transactions concerning which you provided information in your Supplemental Response to Interrogatory No. 8, dated December 9, 2015 …" The remaining questions are follow-up questions, asking M&T to state the total number of relevant transactions in which a deficiency account was sold, assigned, transferred, or repurchased by M&T, or in which a deficiency balance was currently owed to M&T, on a state-by-state basis. (Doc. No. 121-1.) The January 11 interrogatory asks M&T to "state the total number of private sales of consumer goods collateral by defendant or on defendant's behalf which were preceded by a Notice of Disposition to a consumer obligor … at any time until the present date." (Doc. No. 121-2.)

### III.  DISCUSSION

Pinks argues that the Court has not closed class discovery, and therefore the supplemental interrogatories are timely. He points out that class discovery is not closed until the Court is satisfied that class discovery issues are resolved. (Doc. No. 121 at 1-2.) He further argues that the relevance of class discovery is measured under Rule 26(b)(1) "as applied to the issues of

3

class certification under Rule 23," not according to "lapsed or stayed orders, or the 'agreements' underlying them." (*Id.* at 2.) The putative class is comprised of members who have had their collateral repossessed or sold by M&T in states that have adopted UCC §§ 9-601-611, 613-614, and 9-623-625, and whose accounts may have had a deficiency balance following any sales. (Doc. No. 1.)

Pinks is correct that the class discovery phase of this case will not be closed until the Court is satisfied that the case is ready to proceed into the next stages of litigation. In addition, the Court is not bound by any limitations agreed to by the Parties, even if entered in good faith. The Court has broad discretion in managing discovery. *See Willis v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004); *see also In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).

At the December 2015 conference, the Parties represented to the Court that the issues underlying Pinks's motion to compel had been resolved, and that all written discovery would be provided before December 11, 2015. The Court informed the Parties that any remaining discovery would allow cleanup of what had already been produced, but would not encompass any new topics. Moreover, the Parties had agreed in December 2014 not to serve any additional written discovery, but Pinks served his supplemental interrogatories approximately a year later.

Pinks argues that the supplemental interrogatories fall within the definition of cleanup, and do not constitute new material. He maintains therefore that the interrogatories do not violate either the Parties' December 2014 agreement or the Court's directive at the December 2015 conference. The Court disagrees. While the supplemental interrogatories may touch upon the same subjects as Pinks's previously served requests, they seek new information, which, in turn, requires M&T to engage in new calculations and methods of production.

4

In his initial interrogatories served approximately November 2014, Pinks requested "the amount of any deficiency balance claimed by defendant immediately after the sale of the collateral; [or] the date of any assignment or sale of the deficiency account and amount of any deficiency balance currently claimed by [M&T], if any." (Doc. No. 121 at 14.) In its response, M&T identified 11,778 accounts from forty-five states that fit Pinks's putative class definition. (Doc. No. 121 at 1-2.) The December 22 interrogatories seek information relating to the disposition of deficiency accounts on a state-by-state basis, based on the information provided in M&T's initial interrogatory response. Pinks specifically asks whether any deficiency accounts were sold, transferred, assigned or repurchased, and if so, how many per state. (Doc. No 121-1.) While the Parties agreed to stipulate to matters regarding the existence of deficiency-related information in M&T's business records, M&T argues that gathering the number of deficiency accounts sold or otherwise on a state-by-state basis would require "enormously costly and burdensome file-by-file-review." (Doc. No. 121 at 14.) M&T contends that deficiency claims cannot be supplied without first conducting a bankruptcy review and analysis, a process that Pinks agreed was unnecessary because of the burden or expense involved. (*Id.* at 15.) In fact, Pinks excluded from the initial interrogatory "any sale which resulted in a deficiency balance with respect to which a consumer obligator filed a petition in bankruptcy and the obligor was subsequently discharged from bankruptcy." (*Id* at 9.)

Pinks claims to need the information in the December 22 interrogatories because M&T raised an affirmative defense of set off for the deficiency accounts of class members, and therefore he is entitled to "manageability discovery." (*Id.* at 2.) He concedes, however, that as late as November 2015 the information requested in his December 22 interrogatories was not a

5

"remaining discovery issue," and "had not yet arisen as a discovery issue." (Doc. No. 121 at 6.) He also anticipates that M&T will assert a counterclaim class with the deficiencies owed against individual class members. M&T denies such intent. (*Id.* At 8, 15 n. 12.) To the extent that M&T maintains its affirmative defense of set off, it has already identified the number of accounts and the number of states in which deficiency accounts exist. To go beyond that and identify the disposition of every account in every state is burdensome and disproportionate to the needs of this case.

The January 11 interrogatory seeks the number of sales of consumer goods collateral in which M&T issued a Notice of Disposition prior to the sale. On January 5, 2016, and at Pinks's request, M&T provided seven examples of notices of disposition with "appropriate dates and jurisdictions where used." (*Id.* at 3.) Now Pinks asks for the total number of times the notices were sent from March 2007 to the present. (*Id.*) He argues that this information is "self-evidently and centrally relevant" to determine the scope of the putative class, and would pose no undue burden on M&T because M&T "can electronically search the dates of sales of class members' collateral." (*Id.*) According to Pinks, he is entitled to determine whether any other notices sent contain the language "you are entitled to an accounting," because he is challenging that his notice failed to provide such language. (Doc. No. 121 at 3-4.) ("Plaintiff has consistently maintained that Pinks is entitled to discovery to determine … whether any *other* form Notices contain the *same purportedly defective language* as Mr. Pinks' Notice") (internal citations omitted). He concedes that the information sought in the January 11 interrogatory was also not a "remaining discovery issue," because he was unaware of the existence of the notices until M&T disclosed them on January 5, 2016. (*Id.* at 6.)

M&T argues that the notices Pinks requests in the January 11 interrogatory are not relevant to his claim, because his claim specifically relates to the notice attached to his Complaint, and he does not seek to represent a class with respect to that notice. (*Id.* at 16.) According to M&T, Pinks never personally received a notice that contains the language "[y]ou are entitled to an accounting," and informs the customer that there is no fee, because that notice was never sent to South Carolina. (*Id.*) The Court rejects M&T's argument as regarding the relevance of the notices. In his Complaint, Pinks seeks to represent a class who are citizens of various states, and is suing M&T for its failure to send written proper written notice under UCC §§ 9-613 and 9-614. (Doc. No. 1 at 1, 3.) Pinks alleges that M&T's is liable for sending insufficient form notice documents to putative class members. (*Id.* at 5.) As an example of how his particular notice was defective, Pinks points out that his notice did not contain language that he was entitled to an accounting of his unpaid indebtedness. (*Id.*)

Pinks, however, should be able to discern whether other notices contained the "purportedly defective language," through the example notices M&T has provided. (*Id.* at 4.) M&T provided example notices sent to customers in forty-five states from March 14, 2010, to June 24, 2012. (Doc. No. 121-2, Ex. B at 7.) M&T also provided examples of what was sent out beginning June 25, 2012, for the same states, excluding Maryland. (*Id.*) It argued, however, that it does not maintain an archive of template notices used, and an individual review of customer files would be required to determine which notice was sent to a particular customer. (*Id.* at 6.) According to M&T, such a review would have been unduly burdensome and costly. (*Id.*) To determine the number of times a Notice of Disposition was sent over a period of an unspecified number of years would require a similar review. M&T would have to engage in new production

7

by counting individual customer files to determine how many times notices were sent. This search is disproportionate to Pinks's need to compare the language that different notices contained. Pinks has not demonstrated a compelling reason to override the Parties' agreement to not engage in new written discovery.

The Parties are best situated to understand the discovery needs of the case. In the absence of any evidence of bad faith by either Party, the Court upholds the discovery agreement, and the Parties representations that no additional written discovery would be served after December 2014, and that all discovery would be provided by December 11, 2015. Requiring M&T to engage in new searches and production in order to respond to the supplemental interrogatories frustrates the Parties' intent to enter into a discovery agreement, and carry out discovery according to their mutually understood needs. To the extent that Parties enter into agreements on the best way to conduct discovery, courts should uphold and honor such agreements.

## IV.  CONCLUSION

For the foregoing reasons, Pinks's motion to compel discovery related to its supplemental interrogatories is **DENIED**.

SO ORDERED this 25th day of March 2016.
New York, New York

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**