# United States District Court
# Southern District of New York

| | |
|---|---|
| JERRY PINKS,<br>　　　individually and on behalf of others<br>　　　similarly situated,<br>*Plaintiffs,*<br>　　　　　　-against-<br><br>M & T BANK CORP.,<br>*Defendant.* | No.: 1:13-cv-1730 – LAK-RLE |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

**HERZFELD & RUBIN, P.C**.
Daniel V. Gsovski (dg4413)
125 Broad Street
New York, New York 10004-1300
Telephone: (212) 471-8512
E-mail: dgsovski@herzfeld-rubin.com
ATTORNEYS FOR PLAINTIFF
(additional counsel on signature page)

May 17, 2016

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

SUMMARY ................................................................................................................... 1

FACTUAL AND  PROCEDURAL BACKGROUND ........................................................ 2

    I.    *The Complaint* ................................................................................. 2

    II.   *This Court's Denials of M&T's Motions to Dismiss* ......................... 4

    III.  *Class Discovery* .............................................................................. 4

PLAINTIFF'S MOTION ................................................................................................ 6

    I.    *The Proposed Class Definition* ...................................................... 6

    II.   *The Class Period* ............................................................................ 7

ARGUMENT ................................................................................................................. 9

    I.    *Legal Standards* ............................................................................. 9

    II.   *Rule 23(a) Requirements* ............................................................... 9

        *Rule 23(a)(1) – Numerosity* ........................................................... 9

        *Rule 23(a)(2),Rule 23(a)(3) – Commonality, Typicality* ............... 10

        *Rule 23(a)(4) – Adequacy of Representation* ................................ 14

    III.  *Rule 23(b)(3) Requirements* .......................................................... 15

        *Predominance of Class-wide Issues* .............................................. 15

        *Superiority of Class Litigation* ...................................................... 18

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*In re Marsh & McLennan Cos. Inc. Sec. Litig.,* No. 04 Civ 8144
   2009 U.S. Dist. LEXIS 120953, 2009 WL 5178546 (S.D.N.Y., Dec. 23, 2009) ..................... 18

*Allapattah Services, Inc. v. Exxon Corp.*
   157 F.Supp.2d 1291 (S.D. Fla. 2001) .................................................................. 19

*Allapattah Services, Inc. v. Exxon Corp.*
   188 F.R.D. 667 (S.D. Fl. 1999)........................................................................... 19

*Banca Commerciale Italiana v. N. Trust Int.'l Banking Corp.*
   160 F.3d 90 (2nd Cir. 1998)................................................................................ 8

*Consol. Rail Corp. v. Hyde Park*
   47 F.3d 473 (2d Cir. 1995).................................................................................. 10

*Coxall v. Clover Commercial Corp.,*
   4 Misc. 3d 654 (Kings Cty. Civ. Ct. 2004) ............................................................ 13

*Dura-Bilt v. Chase Manhattan Corp.*
   89 F.R.D. 87 (S.D.N.Y. 1981) ............................................................................ 10

*General Tel. Co. of Southwest v. Falcon*
   457 U.S. 147, 102 S.Ct. 2364 (1982)..................................................................... 10

*Guaranty Trust Co. v. York*
   326 U.S. 99, 61 S.Ct. 1464 (1945) ......................................................................... 7

*Hales v. HSBC Bank U.S.A., N.A.*
   347 Fed.Appx. 698 (2nd Cir. 2009) ......................................................................... 8

*In re Flag Telecom Holdings Ltd. Sec. Litig.*
   574 F.3d 29 (2d Cir. 2009)................................................................................... 10

*In Re IndyMac Mortgage-backed Securities Litigation*
   286 F.R.D. 226 (S.D.N.Y. 2012) ........................................................................... 14

*In re Initial Public Offerings Sec. Lit.*
   471 F.2d 24 (2d Cir. 2006).................................................................................... 9

*In re NASDAQ Market-Makers Antitrust Litig.*
   172 F.R.D. 119 (S.D.N.Y. 1997) ........................................................................... 10

*In re Parmalat Sec. Lit.,* No. 04, MD 1653
   2008 U.S. Dist. Lexis 64296, 2008 WL 3895529 (S.D.N.Y., Aug. 21, 2008) ........................... 9

*In re Schwalb*
   347 B.R. 726 (S.D. Nev. 2006)............................................................................ 13

*In re U.S, Foodservice Inc. Pricing Litig.*
   729 F.3d 108 (2nd Cir. 2013), *cert. denied,* 134 S. Ct. 1938 (2014) ........................ 17

*Klaxon Co. v. Stentor Electric Manufacturing Co.*
   313 U.S. 487, 61 S. Ct. 1020 (1941)...................................................................... 14

*Kruse v. Voyager Ins. Co.*
   648 N.E.2d 814 (Oh. 1995)................................................................................... 3

*Moore v. PaineWebber, Inc.*
   306 F.3d 1247 (2d Cir. 2002)................................................................................ 15

*Muro v. Hermanos Auto Wholesalers, Inc.*
   514 F.Supp.2d 1343 (S.D. Fla. 2007) .................................................................... 13

*Myers v. Hertz Corp.*
   624 F.3d 537 (2d Cir. 2010).................................................................................. 16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*
   693 F.3d 145 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1624 (2013)................... 2, 4, 9

*Parks v. CNAC Joiliet, Inc.*
   381 Ill.App.3d 586 (Ill.App. 2008) ....................................................................... 13

*Soward v Deutsche Bank AG*
   814 Supp. 272 (S.D.N.Y. 2011)............................................................................ 7

*Stuart v. American Cyanamid Co.*
   158 F.3d 622 (2d Cir. 1998) ................................................................................. 7

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*
   546 F.3d 196 (2d Cir. 2008).................................................................................. 9

*UFCW Local 1776 v. Eli Lilly & Co.*
   620 F.3d 121(2d Cir. 2010).................................................................................. 15

*United States v. Funds Held ex rel. Wetterer*
   210 F.3d 96 (2d Cir. N.Y. 2000)........................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338, 131 S. Ct. 2541 (2011)................................................................... 10

*Wilmington Trust Co. v. Conner*
   415 A.2d 773 (Del. 1980) .................................................................................... 12

*Younis v. Am. Univ.*
   30 F. Supp. 2d 390 (S.D.N.Y. 1998)..................................................................... 7

**Statutes**

CPLR § 202 .................................................................................................... 7, 8

CPLR § 214(2) ................................................................................................. 8

UCC § 9-602(7) ............................................................................................... 16

UCC § 9-611(b) ............................................................................................... 2, 12

UCC § 9-614(1)(A) .......................................................................................... 3, 15

UCC § 9-614(1)(B) .......................................................................................... 3

UCC § 9-616(b)(1) ........................................................................................... 15

UCC § 9-624(a) ............................................................................................... 16

UCC § 9-625(c)(2) ........................................................................................... 3, 8, 16

Uniform Commercial Code (UCC) ................................................................. passim

**Rules**

Fed.R.Civ.P. 23(a) ........................................................................................... 9

Fed.R.Civ.P. 23(a)(2) ....................................................................................... 10

Fed.R.Civ.P. 23(a)(1) ....................................................................................... 9

Fed.R.Civ.P. 23(a)(3) ....................................................................................... 10

Fed.R.Civ.P. 23(a)(4) ....................................................................................... 10, 14

Fed.R.Civ.P. 23(b)(3) ....................................................................................... passim

**Other Authorities**

Hawkland, Lord & Lewis, UCC Series (1991) ................................................ 3

Official Comment, UCC §9-614 ..................................................................... 3, 12

UCC § 9-504(3)(superceded) ........................................................................... 11, 12

## INTRODUCTION

Plaintiff Jerry Pinks ("Pinks") moves for certification pursuant to Fed.R.Civ.P. 23(b)(3) on behalf of a class of approximately 11,500 consumer obligors from twenty states and the District of Columbia. Defendant M&T Bank Corp. ("M&T") violated Part 6 ("Default") of Article 9 ("Secured Transactions") of the Uniform Commercial Code ("UCC") by selling their repossessed collateral in violation of the Code. It did so by selling their collateral without providing compliant notification of disposition first. This lawsuit seeks identically-computed, minimum statutory damages on behalf of the class members in connection with each such non-compliant sale.

## SUMMARY

It would be difficult to imagine litigation more clearly suited for certification. M&T addressed the same deficient form notice to each member of the class.  The governing provisions of the UCC in this case are uniform in text and interpretation. The governing text is so clear and unambiguous as to its requirements for compliant consumer-goods notifications when collateral is sold, that very few courts have even been called upon to construe them since the current revision of Article 9 ("Secured Transactions") of the UCC took effect in 2001.  Because none of the governing UCC provisions are in conflict, New York law will apply to all claims in this case.

M&T's records, including the notification at issue, identify each class member by name and address. Each class member's minimum statutory damages can be calculated by mathematical formula applied to the express, financial terms of their contracts made with or assigned to M&T. The date of accrual of the class members' claims (and applicable pre-judgment interest) can also be ascertained from those same records. Each class member can thus

be paid in full, less costs and reasonable attorney fees, without even having to submit a claim form.

This Court has already determined that the Complaint adequately pleads a violation of the applicable law, expressly considering and rejecting in its Report and Recommendation M&T's "claim that the [Pinks] Notice complied with the UCC." (DI 22 at 7, 8) This Court has also determined that the Complaint has plausibly pled that Pinks' individual claim and that of the other class members raise the "same set of concerns" to confer class standing under *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1624 (2013). (DI 98) These rulings have greatly simplified any class liability determination, as to which both sides have waived a jury trial. Class-wide issues are not merely predominant, they are for all practical purposes exclusive.

## FACTUAL AND  PROCEDURAL BACKGROUND

### I.    *The Complaint*

In 2008, Pinks, a resident of South Carolina, entered into an installment loan with a third party retailer to purchase consumer goods, a recreational camper trailer, under the terms of a Retail Installment Contract and Security Agreement ("RICSA"). (DI 1-1, DI 9-2 at 2)  Two years later, the loan went into default, and M&T, the secured party by assignment, repossessed and sold his collateral.  Before selling it, on or about July 29, 2010, M&T sent him a document required by UCC § 9-611(b) (§ 36-9-611(b), SC Code Ann.)*,* a "notification of disposition," which M&T styled a "Notice of Repossession and Sale of Merchandise," (the "Pinks Notice".) (DI 1, Ex. 2) The Pinks Notice and approximately 11,500 others like it are the subject matter of this Action.

Upon the obligor's default and to protect its interests in the obligor's collateral, the secured party may sell the collateral in a "commercially reasonable sale." UCC § 9-610(a)(b); enacted at § 36-9-610(a)(b), S.C. Code Ann. (DI 1 § 15)  Under UCC § 9-611(b) (§ 36-9-611(b), SC Code Ann.)*,* a secured party "that disposes of collateral" in a § 9-610 sale "shall send" the obligor "reasonable…notification of disposition" first. (DI 1, ¶ 17)   The Complaint alleges that the Pinks' Notice was not "reasonable notification" because it lacks some of the contents listed in UCC § 9-614(1), which such notice "must provide," thus rendering "insufficient as a matter of law."  Cmt 2, Official Comment to §9-614.  (DI 1, ¶ 17)  Specifically, the Complaint alleges that (1) the Pinks Notice lacks a statement "that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting" as required by UCC § 9-614(1)(A) (DI 18(A)); and, 2) it lacks a  "description of any liability for a deficiency of the person to which the notification is sent," as required by UCC § 9-614(1)(B).  (DI 1, ¶18)

Either violation in connection with the Pinks Notice and following sale requires an award of minimum statutory damages under UCC § 9-625(c)(2) (§ 36-9-625(c)(2), S.C. Code Ann.):

> If the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time the secured party failed to comply with this part may recover for that failure in any event an amount not less than . . . the time-price differential plus 10 percent of the cash price.[1]

Following the statutory formula, the Complaint calculates Mr. Pinks' statutory damages to the penny, based on the financial terms of his RICSA, attached to the Complaint as Exhibit 2. (DI 1 ¶ 21, 35)  (DI 9-2)

---

[1] "The 'time price differential' is the difference between the time, or credit, price which the buyer would pay for an item if he borrowed the money and paid it over time, and the cash price which is the same the buyer would pay if he borrowed no money and paid the full price for the item." *Kruse v. Voyager Ins. Co.,* 648 N.E.2d 814, 819 (Oh. 1995) citing, 9 Hawkland, Lord & Lewis, UCC Series (1991), 901-902, construing identical pre-2001 revision section. The largest component of the "time price differential" is the "finance charge" appearing within the Truth in Lending disclosure of Pinks' RICSA. (DI 9-2 at 2) Any other components of the "time-price" differential (credit life insurance, loan origination fees, etc.) will be itemized on the RICSA.

-3-

Of direct relevance to this Motion, the Complaint alleges that M&T sent a "Pinks Notice" to a class of consumer obligors in jurisdictions outside of South Carolina with the same UCC provisions prior to the sale of their collateral. (DI 1, ¶¶ 23, 24)   This makes the case appropriate for certification under Rule 23(b)(3) because Pinks' claim: "(1)… arises from the same course of conduct that gives rise to the class members' claims; (2)… arises out of the same form [Pinks] Notice language; (3)… arises out of the same legal theory and uniform state statutory provisions of the UCC; and, (4)… gives rise to identically-computed, minimum statutory damages determined according to [the same statutory formula.]" (DI 1, ¶27(c))

## II.    *This Court's Denials of M&T's Motions to Dismiss*

M&T moved to dismiss Pinks' individual claim under Rule 12(b)(6).  (DI 7)   This Court denied the motion, finding that Pinks "has stated a claim regarding the Notice's failure to provide language that informed him of his entitlement to an accounting of his unpaid indebtedness." (DI 22 at 10; DI 34 at 2 (ordering motion denied)) Undeterred, M&T followed up with a second Rule 12 motion, seeking "partial judgment on the pleadings" under Rule 12(c). (DI 51, 52) This application sought to preemptively reject any putative class claims with respect to events occurring outside of South Carolina for purported jurisdictional defects. (DI 52)  In denying it, this Court upheld the Complaint's class allegations (*e.g.,* including DI 1, ¶ 27(c), quoted above) as adequately alleging multistate "class standing" under *NECA-IBEW, supra.* (DI 98 at 1) This ruling cleared the way for the instant Motion, which puts Pinks to his proof as to Rule 23 requirements, chief among them the uniformity of relevant UCC statutory and decisional law in the jurisdictions included in his proposed class.  (*Id*., n. 1)

## III.    *Class Discovery*

In responding to Pinks' interrogatories, M&T stated that:

-4-

> M&T believes that the letter…that was sent by M&T to Jerry Pinks on or about July 29, 2010 [the Pinks Notice] is exemplary of the notice of repossession that M&T generally sent to a customer with a mailing address, according to M&T's records, in [states including the twenty-one class jurisdictions] after the customer defaulted and M&T repossessed his/her consumer goods collateral between March 14, 2010 and June 24, 2012 inclusive[.]

Defendant's Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories, 12/9/2015, filed under seal (DI 125 at 11).  M&T represents that its records indicate that a total of 11,442 sales of repossessed consumer goods collateral occurred following M&T's sending the Pinks Notice to the obligors in the twenty-one jurisdictions within the relevant time period. (DI 125 at 12-13; Declaration of Daniel V. Gsovski, Esq., ¶ 3, Exhibit 1)

In addition to interrogatory responses, M&T has produced its records as to putative South Carolina class members. These include their RICSA's, which provide the class members' name and address and the financial terms of the loan to compute statutory damages; their notifications of disposition, *i.e.* the "Pinks Notices," which confirms that they were sent the Pinks Notice; and, a second UCC form notice, M&T's post-sale explanation of surplus or deficiency to the debtor (*e.g.,* DI 13 at Ex. 1), which confirms the date of each disposition for statute of limitations purposes. These are the only transactional documentation needed to establish liability and damages for the class.

A review of these South Carolina documents indicates that the two UCC notices are form notices, which M&T already admits as to the Pinks Notice. (DI 125 at 11)  The RICSAs likewise are standard purchase money security agreements for consumer goods. M&T has represented that its policy is to retain these documents on a multi-state basis to the extent they existed in its files at the time of the filing the Complaint. (DI 125 at 14-15)

## PLAINTIFF'S MOTION

### I.      *The Proposed Class Definition*

Pinks moves to certify a class defined as:

**Consumer obligors with mailing addresses in the "Class Jurisdictions" (Connecticut, Delaware, District of Columbia, Florida, Georgia, Kentucky, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, Virginia, West Virginia) when M&T Bank Corp., M&T Credit Services, LLC, or persons or entities acting on their behalf (collectively, "Defendants"), sent them a Notification of Disposition in the form of Exhibit 2 to the Complaint (the "Pinks Notice"), prior to the disposition of collateral, where the disposition occurred during the "Class Period," which shall be from March 14, 2011 in the State of Virginia, and from March 14, 2010 in all other Class Jurisdictions (except persons expressly excluded from the Class as set forth below).**

Excluded from the Class are:

1.      All persons who, prior to certification of this class, retained counsel and filed suit against Defendants in connection with its failure to comply with the UCC's notification of disposition provisions, but only as to that failure.

2.      Defendants, any partner, subsidiary, affiliate, or controlled person of Defendants, its officers, directors, agents, servants or employees and the immediate families of such persons.

3.      All persons who, with respect to a claim, have given Defendants a valid release of any claim which is at issue in this action.

4.      All persons who, after default, have signed a statement in conformity with UCC § 9-602 and 9-624(c) renouncing or modifying the right to be sent notification of disposition of their collateral in compliance with UCC § 9-613 and 9-614, but only as to notification of that disposition.

5.      All persons who, after the disposition of their collateral, filed for bankruptcy and were thereafter discharged in bankruptcy but did not schedule their UCC claim that is the subject of this action as an asset of the bankruptcy estate.

6.      All persons against whom Defendants filed suit prior to March 14, 2013, seeking to collect a deficiency balance in connection with an account giving rise to a notification of disposition claim that is the subject of this Action, and where such collection action has been reduced to judgment or is ongoing, but only as to that account.

## II.      *The Class Period*

The "Class Period" is determined by the applicable statutes of limitation.  Attached as Appendix 1is a compendium of applicable statutes of limitation in the Class Jurisdictions, and, where needed, applicable decisional law in each.  In all but Virginia the applicable Class Period is three years. In Virginia the applicable Class Period is two years.

Both situations call for the application of CPLR § 202, New York's "borrowing statute." "When diversity of citizenship is the basis of jurisdiction, a federal court must look to the statute of limitations of the state in which it sits." *Soward v Deutsche Bank AG*, 814 Supp. 272, 277 (S.D.N.Y. 2011); *Guaranty Trust Co. v. York*, 326 U.S. 99, 108-109, 61 S.Ct. 1464, 1469-70 (1945.)  While New York courts generally apply New York's statute of limitations – even when the events giving rise to the cause of action accrued outside of New York – this general rule is subject to New York's statutory exception found in its "borrowing statute" set forth in CPLR § 202.  *Stuart v. American Cyanamid Co.,* 158 F.3d 622, 626-27 (2d Cir. 1998) (citations omitted). Under CPLR § 202, a claim accruing outside New York in favor of a non-New York resident "is barred unless it is timely under both the law of New York and the law of 'the place without the state where the cause of action accrued . . .'" *Younis v. Am. Univ.,* 30 F. Supp. 2d 390, 395 (S.D.N.Y. 1998**)** (Kaplan, J.), citing CPLR § 202.

-7-

Unlike Article 2 of the UCC, neither Article 9 nor any of the Class Jurisdictions' statutory-damages provisions includes a limitations period within the applicable text. CPLR § 214(2) provides for a three-year limitations period in New York for "an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215."[2]   In *Hales v. HSBC Bank U.S.A., N.A.,* 347 Fed.Appx. 698, 699 (2nd Cir. 2009) (unpublished), the Court of Appeals affirmed that CPLR § 214(2) applies to damages claims under Article 9. "For a liability to be created by statute, the statute 'must impose a liability for wrongs not recognized in the common or decisional law.'" *Id.,* citing, *Banca Commerciale Italiana v. N. Trust Int.'l Banking Corp.,* 160 F.3d 90, 93-94 (2nd Cir. 1998). Therefore, "[a]s [plaintiff's] claim for breach of Article 9 of the U.C.C. seeks to recover damages not available at common law, it is time barred" under CPLR § 214(2) for claims filed more than three years after accrual. *Id.*

Accordingly, as to New York and all other Class Jurisdictions which have three year or longer statutes of limitation, CPLR § 202 and CPLR § 214(2) combine to impose New York's three year Class Period, while as to Virginia class members, that state's two year Class Period applies. Therefore, in most of the Class Jurisdictions this Court need not decide which statute of limitations applies to this cause of action; it need merely exclude any potential candidates for less than three years.

---

[2]   Neither of the two exceptions listed in CPLR § 214(2) applies here.  CPLR § 213, the six year "catchall" provision, is inapplicable, and the one year limitations period in CPLR § 215(4) applies when a purported "statutory penalty" is available to "any person who will prosecute it," rather than being limited to an aggrieved party as under UCC § 9-625(c)(2).

## ARGUMENT

### I.    *Legal Standards*

Before certifying a class, a district court must conduct a "rigorous analysis" to determine whether the plaintiff has satisfied all of the Rule 23(a) and Rule 23(b)(3) requirements. *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 41 (2d Cir. 2006) ("*In re IPO I*"); *In re Parmalat Sec. Litig.,* No. 04 MD 1653 (LAK), 2008 U.S. Dist. LEXIS 64296, 2008 WL 3895539, at *2 (S.D.N.Y. Aug. 21, 2008).   The moving party must demonstrated by a preponderance of the evidence that these requirements have been met. *See, Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* 546 F.3d 196, 201-03 (2d Cir. 2008).   That burden is readily met in this case.

### II.    *Rule 23(a) Requirements*

Fed.R.Civ.P. 23(a) lists the prerequisites to any class certification:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Those prerequisites, as with the rest of Rule 23, boil down to "whether defendant's alleged conduct 'implicates the same set of concerns' as the conduct alleged to have caused injury to the plaintiff." (DI 98, quoting *NECA-IBEW*, 693 F.3d at162.)   On every level, that is self-evidently the case here.

#### *Rule 23(a)(1) – Numerosity*

M&T has repeatedly stated that it is "not contesting numerosity with respect to *any* motion for class certification filed by Plaintiff."  (DI 80 at 3) (emphasis original)  The facts fully support this concession. M&T's admits that it sent the Pinks Notice in connection with approximately 11,500 potential class accounts to consumer obligors with addresses in the Class

Jurisdictions, where the consumer goods collateral was thereafter sold during the relevant Class Period.  (DI 125 at 11) Class Exclusions will be eliminate some accounts, but the number of class *members* will be more than the number of class accounts as some accounts include more than one obligor. Under any analysis, Pinks has established requisite numerosity under Rule 23(a), which generally is presumed "at a level of 40 members." *Consol. Rail Corp. v. Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995*)*

*Rule 23(a)(2), Rule 23(a)(3) – Commonality, Typicality*

The commonality and typicality requirements of Rule 23(a) "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 158 n.13, 102 S.Ct. 2364, 2371 n. 13 (1982); s*ee also, Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 n.5, 131 S. Ct. 2541, 2553 n.5 (2011) ("The commonality and typicality requirements of Rule 23(a) tend to merge." (internal citations omitted)); *Dura-Bilt v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y. 1981) ("The typicality prerequisite overlaps with the common question requirement of Rule 23(a)(2) and the adequate representation requirement of Rule 23(a)(4.").

Commonality and typicality are satisfied if no more than a single issue of law or fact is common to the class. *Wal-Mart,* 564 U.S. at 359, 131 S. Ct. at 2556 ("[F]or purposes of Rule 23(a)(2) even a single common question will do." (internal quotations omitted)).  These requirements are *a fortiori* established where virtually all issues in the case are common. *See, e.g., In re Flag Telecom Holdings Ltd. Sec. Litig.,* 574 F.3d 29, 35 (2d Cir. 2009); *see also, In re NASDAQ Market-Makers Antitrust Litig.,* 172 F.R.D. 119, 126 (S.D.N.Y. 1997) (finding

-10-

typicality is met where plaintiffs "have the incentive to prove all of the elements of the causes of action which would be presented by the individual members of the class were they initiating individual actions" (citations omitted)).

In this case, both statutory liability and damages are common under a uniform law and do not involve disputed issues of fact. They will be decided and computed as a matter of law on a class-wide basis by examination of common, form documents reflecting a common course of conduct by M&T. As to common questions of law, the allegations of Paragraph 23 of the Complaint lie at the heart of the present Motion and all applicable Rule 23 considerations: "The provisions of the [South Carolina] UCC cited in paragraphs 15-20 hereinabove have been enacted *verbatim* in all, or almost all other states, including New York." [3] (DI 1, ¶ 23) Appendix 2 sets for the Official Text of all relevant sections of Article 9 of the UCC, with Official Comments. Appendix 3 flags any departure from the UCC Official Text in the relevant sections which counsel have identified in each Class Jurisdiction and cites to the text of each such variation. None are in any way material to the liability or damages issues in this case.

This uniformity can be traced to 1998, when the Uniform Law Commissioners of the National Conference on Uniform State Laws, in conjunction with the American Law Institute, began drafting a major revision of Article 9, completed as an Official Text ("revised Article 9") in 1999 and adopted in all of the Class Jurisdictions, usually in 2001.[4] Revised Article 9 substantially changed the prior statutory scheme concerning notification-of-disposition contents to avoid non-uniform results and to provide ease and certainty of creditor compliance. Prior to the revision, superseded UCC § 9-504(3) had required the secured party only to send the obligor

---

[3] The relevant sections are: UCC § 9-601-614, 9-623-625. (DI 1 at ¶ 15-20)

[4] The revisions generally took effect in most states on July 1, 2001, to maximize uniformity. http://www.uniformlaws.org/Narrative.aspx?title=Why%20States%20Should%20Adopt%20UCC%20Article%209, visited 5/13/2016.

"reasonable notification of the time and place of any public sale, or reasonable notification of the time after which any private sale or other intended disposition is to be made." As might be expected, instead of uniformity, this "reasonable notification" standard led to a hodge-podge of state-specific and case-specific outcomes. *See, Wilmington Trust Co. v. Conner,* 415 A.2d 773, 776 (Del. 1980) ("The Uniform Commercial Code, however, relegates the exact definition of 'reasonable notification' to the individual states and, ultimately as a general rule to their courts.")

As revised, Article 9 retained the "reasonable notification" requirement of superseded UCC § 9-504(3) within UCC § 9-611(b).  However, the drafters did away with § 9-504(3)'s case-by-case contents approach in consumer notifications by adding § 9-614 which itemizes the precise information that "must [be] provide[d]" in notifications of dispositions in consumer-goods transactions. Section 9-614 accomplishes these ends by providing: (1) a list of uniform, mandatory contents that the notification "must provide" to consumers by way of UCC § 9-614(1); (2) a "bright line" uniform standard for compliance, providing that a notification that "lacks any of the information" required in the statute "is "insufficient as a matter of law," Cmt. 2, Official Comment 2 to § 9-614, and; (3) a "safe harbor" notification form by which secured parties could easily and completely protect themselves from liability as a matter of law.  UCC § 9-614(3)

Prior proceedings in this case confirm that the drafters achieved their goal of interstate uniformity with respect to the UCC provisions at issue in this case. That uniformity distinguishes these provisions not only from their predecessor versions, but also from other portions of the UCC which, as this Court has noted, can and do vary significantly from state to state (*e.g.*, implied warranty, statute of limitations and indemnity under Article 2). (DI 98 n.1)

Indeed, in briefing M&T's unsuccessful motion to dismiss, neither side could locate South Carolina decisional authority on the information missing from the Pinks Notice. Accordingly, both relied exclusively and interchangeably on non-South Carolina decisions in advancing their positions as to the applicable statutory provisions. (DI 8, 12, 14)   M&T itself argued that "because the UCC is a uniform law, this Court can and should rely on decisions from other courts in resolving these questions. [citations omitted]."  (DI 8 at 8 n. 4)

In rejecting M&T's arguments that the Pinks Notice's contents complied with South Carolina's UCC, the Court directly relied solely on a decision from a lower New York City trial court.  (DI 22 at 9, citing *Coxall v. Clover Commercial Corp.,* 4 Misc. 3d 654, 659-60 (Kings Cty. Civ. Ct. 2004))  In rejecting M&T's arguments concerning its claimed compliance with the statute by providing alternative information, this Court relied upon a single appellate decision from Illinois. (DI 22 at 7-8, citing, *Parks v. CNAC Joiliet, Inc.,* 381 Ill.App.3d 586 (Ill.App. 2008)). Pinks' research has found very few other reported decisions directly construing UCC § 9-614(1) anywhere in the nation, none of which hint at any differences in approach to the central liability issue in this case.[5] He has found no reported decision construing the statutory damages provision contra to its plain meaning.

In short, the UCC and its decisional law are indeed uniform with respect to the issues involved in this case, so much so that there is no substantive or outcome determinative "conflict

---

[5]    *See, Muro v. Hermanos Auto Wholesalers, Inc.,* 514 F.Supp.2d 1343, 1351-52 (S.D. Fla. 2007) (construing a notification of disposition under Florida law that failed to provide, *inter alia,* a statement "that the debtor is entitled to an accounting of the unpaid indebtedness and state the charge, if any, for an accounting" in a consumer goods transaction, holding: "Since Defendant's notification lacks some of the required elements of that section, it fails as a matter of law and Plaintiff is entitled to statutory damages.") *In re Schwalb,* 347 B.R. 726, 751 (S.D. Nev. 2006) the secured party failed to comply with Nevada's UCC "which requires that any notice contain a statement that 'the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any for an accounting.'" Accordingly, the court awarded minimum statutory damages as "[t]here is no doubt that [secured party] failed to comply with Part 6 of Article 9." *Id.* at 755.

of laws." Thus this Court, which must apply New York choice of law principles, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S. Ct. 1020 (1941), will simply apply the New York UCC to all claims in this "false conflicts" setting.  *See, e.g., United States v. Funds Held ex rel. Wetterer*, 210 F.3d 96, 106 (2d Cir. N.Y. 2000) ("The district perceived a false conflict between Texas and New York law, and applied New York law to all of the relevant questions.")

    *Rule 23(a)(4) – Adequacy of Representation*

    To establish adequacy of representation, it must be shown that "(1) plaintiff's interests are [not] antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." It generally requires "strong evidence" that the class representative's "interests are not antagonistic to those of the class."  *In Re: IndyMac Mortgage-backed Securities Litigation,* 286 F.R.D. 226 (S.D.N.Y. 2012) (Kaplan, J.) Here, Pinks' claim is in all material respects identical to the claim of each member of the putative class, provable by the same documentary evidence as to each claim.  His interests and those of the class are completely aligned.  Moreover, he is fully aware of his responsibilities as a class representative and has been kept closely apprised of developments in this case by counsel. (Declaration of Jerry Pinks, *passim*.)

    He has retained qualified, experienced and capable counsel.  The record to date shows that they have advanced this litigation to its present state against tenacious, determined and "creative" opposition, both in this Court and in an attempted flanking maneuver in the Bankruptcy Court for the District of South Carolina, which has been successfully thwarted.  (*See*, DI 86)  Detailed biographical information is set forth in Declarations of Daniel V. Gsovski, Kathy D. Lindsay, Frederick Corley and Philip Fairbanks, submitted herewith.  As the attached declarations demonstrate, Pinks' South Carolina counsel are seasoned practitioners representing

-14-

consumer debtors in UCC class actions. Pinks' local counsel, Mr. Gsovski, has decades of complex litigation and class action experience, and has previously been before this Court as trial counsel in *Star Holdings, Inc. v. Aegis Consumer Funding,* 96-cv-3041-LAK, a case tried before Judge Kaplan in May 1997. Nothing further will be offered on this topic unless the adequacy of counsel is disputed.

## II.      *Rule 23(b)(3) Requirements*

As an action for money damages, this case must also meet the standards set forth in Fed.R.Civ.P. 23(b)(3). Once again, those standards are clearly met.

### *Predominance of Class-wide Issues*

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly & Co.,* 620 F.3d 121, 131 (2d Cir. 2010); *see also*, *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002).

The elements of the UCC claim in this case are: (1) that the claimant was an obligor to a consumer-goods transaction to which M&T was the secured party; (2) that M&T sent the claimant a notification of disposition of his collateral that lacks one or more items of mandatory information required by § 9-614(1); and, (3) that M&T thereafter "disposed" of his collateral. Liability will be determined, as a matter of law, most likely at summary judgment, by an examination within the four corners of the three documents: the RICSA, and the two statutorily-required UCC notices, namely, the Pinks' Notice pursuant to § 9-614(1) and a post-sale explanation of calculation of surplus or deficiency pursuant to § 9-616(b)(1) and (c). (*e.g.*, DI 13, Ex. 1) Upon a finding of liability, the amount of his minimum statutory damages will be

computed by mathematical formula as a ministerial function of this Court, applied to the express terms of his RICSA. None of this will entail any fact finding beyond the face of documents whose authenticity cannot be questioned.

A brief mention of what is *not* involved in this case is also warranted. As this Court determined, Pinks is not required to prove any other lack or reasonableness with respect to M&T's conduct: "Pinks was not required to allege an element of reasonableness. He need only allege noncompliance." (DI 22 at 11) Therefore, nothing about the status of his or the class members' accounts at the time of repossession and sale, or their conduct or knowledge leading up to the repossession and sale is relevant; the fact that M&T sold their collateral after failing to give statutorily-sufficient notification is completely determinative.   As each class member is entitled to minimum statutory damages "in any event" upon proof of M&T's non-compliance, no other subject is relevant to damages. UCC § 9-625(c)(2)

Lastly, in considering predominance, "courts must consider potential defenses." *See, e.g., Myers v. Hertz Corp.,* 624 F.3d 537, 549 (2d Cir. 2010).  Here, class members who may have signed a post-default waiver of notification of disposition are already removed from the Class Definition under Exclusion 4. Under the UCC, waiver cannot be imposed prior to default, and post-default waiver cannot be imposed by implication from the class member's conduct or orally. The UCC provides that "the debtor or other obligor may *not* waive or vary the rules state in …Sections 9-611…and 9-614." UCC § 9-602(7) (emphasis added.) UCC § 9-624(a) applies the single exception to this rule in requiring the debtor to enter into a written, signed agreement after default, specifically agreeing to waive his right to notification of disposition, in order for a waiver to apply. Therefore, any other evidence of what the class member may have done or not

-16-

done prior to or after default, or upon receipt of the Pinks Notice, is irrelevant to any purported waiver defense.

Any class member who has been sued by M&T in connection with a deficiency account prior to this Action, and thus either litigated or could have litigated this UCC claim as a counterclaim against M&T, has also been removed from the class under Exclusion 6, eliminating any possible individual defenses of *res judicata* or collateral estoppel. Any class member who filed bankruptcy after notification and disposition, was discharged in bankruptcy, and who did not schedule his UCC claim as an asset of the bankruptcy estate is removed from the class under to Exclusion 5, thus eliminating any potential individualized defenses of judicial estoppel. These exclusions will be ascertained and applied from M&T's own records and/or public documents.

The applicable statute of limitations period in each state will already have been decided by way of the Court's determination of the appropriate Class Period at the time of certification. In *In re U.S, Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 127 n. 10 (2nd Cir. 2013), *cert. denied,* 134 S. Ct. 1938 (2014), the Court of Appeals affirmed certification, finding that a nationwide class action based upon state law breach of contracts claims with different class periods based upon each state's statute of limitations did not create predominance problems:

> With regard to variations in the statute of limitations themselves, the district court found that such variations did not pose an insuperable obstacle to class certification because only one state imposes a statute of limitations period less than four years and subclasses may be created as needed to manage statute of limitations issues.

Here, there will be no individualized statute of limitations issues such as reliance or discovery-rule tolling. The accrual event for the limitations period will be determined by the date of disposition appearing on the face of M&T's explanation of surplus or deficiency. (*e.g.,* DI 13, Ex. 1)

*Superiority of Class Litigation*

Finally, Pinks must show that a class action would be superior to other means of resolving this dispute.  Fed.R.Civ.P. 23(b)(3) focuses on "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  This case amply satisfies all tests.

The first three listed Rule 23(b)(3) factors (A, B, and C) are mooted by the fact that there is no other litigation, class or individual, against M&T concerning the subject matter of this case.  Allowing this matter to proceed as a class action would avoid even a hypothetical "risk of inconsistent adjudication" and encourage "the fair and efficient use of the judicial system." *In re Marsh & McLennan Cos. Inc. Sec. Litig.,* No. 04 Civ. 8144, 2009 U.S. Dist. LEXIS 120953, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009) (internal citations omitted).

As to the last Rule 23(b)(3) factor (D), the "likely difficulties" in managing this action, there are none.  Every item of undisputed information needed to send class notice, to adjudicate liability, to determine statutory damages as a ministerial function of this Court, and to distribute payouts to every class member without even a claims process appears on the face of the underlying RICSA and common, statutorily-required notification documents.[6]

In addition to UCC statutory damages, the Complaint seeks pre-judgment interest where available under state law. (DI 1 at 12-13) The class members' entitlement to pre-judgment interest will be decided during the damages phase as a matter of state law, computed upon each class member's statutory damages award. *Allapattah Services, Inc. v. Exxon Corp.,* 188 F.R.D.

---

[6] In the event an individual file may be missing a document or a document is illegible, M&T has admitted under oath that it also maintains certain electronic records (see DI 85-1, ¶¶ 3-5) and class members, like Mr. Pinks, may have their own copies of these items.

667 (S.D. Fl. 1999), a case in which this process occurred both before and after trial, with respect to a situation far more complex than the one at bar, is illustrative.  Before trial, the court, without even mentioning management challenges, established entitlement and accrual dates for prejudgment interest under 28 states' laws. 188 F.R.D. at 685-89.   After trial, the court revisited and refined its analysis.  *Allapattah Services, Inc. v. Exxon Corp.,* 157 F.Supp.2d 1291, 1317-21 (S.D. Fla. 2001).  There is nothing to suggest that a similar exercise would be beyond this Court's capability, where neither side has demanded a jury trial and significantly fewer jurisdictions are involved.

## CONCLUSION

Having met all requirements for Rule 23 for the reasons set forth more fully herein, Plaintiff Jerry Pinks' submits that his Motion for Certification pursuant to Fed.R.Civ.P. 23(b)(3) should be granted; the Class Definition, Class Jurisdictions, and Class Period as proposed herein be adopted; Mr. Pinks appointed as Class Representative, and the undersigned counsel appointed as Class Counsel.


Dated: New York, New York
May 17, 2016

Respectfully Submitted,

HERZFELD & RUBIN, P.C.

By: _____
     Daniel V. Gsovski  (dg4413)
A Member of the Firm
125 Broad Street
New York, New York 10004-1300
Telephone: (212) 471-8512
E-mail: dgsovski@herzfeld-rubin.com

PHILIP FAIRBANKS, ESQ., P.C.

-19-

Philip Fairbanks, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580
E-mail philip@lowcountrybankruptcy.com
ADMITTED PRO HAC VICI

LAW OFFICE OF FREDERICK CORLEY
Frederick M. Corley, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 524-3232
E-mail: rcorley@islc.net
*admitted pro hac vice*

KATHY D. LINDSAY, P.A.
Kathy D. Lindsay, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1581
E-mail klindsay@islc.net
*admitted pro hac vice*

Counsel for Plaintiff