# APPENDIX 2

(previously filed as DI 100-1)

# PLAINTIFF'S EXHIBIT 1

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-601* (2014)

§ 9-601. RIGHTS AFTER DEFAULT; JUDICIAL ENFORCEMENT; CONSIGNOR OR BUYER OF ACCOUNTS, CHATTEL PAPER, PAYMENT INTANGIBLES, OR PROMISSORY NOTES

(a) **[Rights of secured party after default.]** After default, a secured party has the rights provided in this part and, except as otherwise provided in *Section 9-602*, those provided by agreement of the parties. A secured party:

(1) may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure; and

(2) if the collateral is documents, may proceed either as to the documents or as to the goods they cover.

(b) **[Rights and duties of secured party in possession or control.]** A secured party in possession of collateral or control of collateral under *Section 7-106*, *9-104*, *9-105*, *9-106*, or *9-107* has the rights and duties provided in *Section 9-207*.

(c) **[Rights cumulative; simultaneous exercise.]** The rights under subsections (a) and (b) are cumulative and may be exercised simultaneously.

(d) **[Rights of debtor and obligor.]** Except as otherwise provided in subsection (g) and *Section 9-605*, after default, a debtor and an obligor have the rights provided in this part and by agreement of the parties.

(e) **[Lien of levy after judgment.]** If a secured party has reduced its claim to judgment, the lien of any levy that may be made upon the collateral by virtue of an execution based upon the judgment relates back to the earliest of:

(1) the date of perfection of the security interest or agricultural lien in the collateral;

(2) the date of filing a financing statement covering the collateral; or

(3) any date specified in a statute under which the agricultural lien was created.

U.C.C. § 9-601

(f) **[Execution sale.]** A sale pursuant to an execution is a foreclosure of the security interest or agricultural lien by judicial procedure within the meaning of this section. A secured party may purchase at the sale and thereafter hold the collateral free of any other requirements of this article.

(g) **[Consignor or buyer of certain rights to payment.]** Except as otherwise provided in *Section 9-607(c)*, this part imposes no duties upon a secured party that is a consignor or is a buyer of accounts, chattel paper, payment intangibles, or promissory notes.

**NOTES:**

**OFFICIAL COMMENT**

1. **Source.** Former Section 9-501(1), (2), (5).

2. **Enforcement: In General.** The rights of a secured party to enforce its security interest in collateral after the debtor's default are an important feature of a secured transaction. (Note that the term "rights," as defined in Section 1-201, includes "remedies.") This Part provides those rights as well as certain limitations on their exercise for the protection of the defaulting debtor, other creditors, and other affected persons. However, subsections (a) and (d) make clear that the rights provided in this Part do not exclude other rights provided by agreement.

3. **When Remedies Arise.** Under subsection (a) the secured party's rights arise "after default." As did former Section 9-501, this Article leaves to the agreement of the parties the circumstances giving rise to a default. This Article does not determine whether a secured party's post-default conduct can constitute a waiver of default in the face of an agreement stating that such conduct shall not constitute a waiver. Rather, it continues to leave to the parties' agreement, as supplemented by law other than this Article, the determination whether a default has occurred or has been waived. See Section 1-103.

4. **Possession of Collateral; Section 9-207.** After a secured party takes possession of collateral following a default, there is no longer any distinction between a security interest that before default was nonpossessory and a security interest that was possessory before default, as under a common-law pledge. This Part generally does not distinguish between the rights of a secured party with a nonpossessory security interest and those of a secured party with a possessory security interest. However, Section 9-207 addresses rights and duties with respect to collateral in a secured party's possession. Under subsection (b) of this section, Section 9-207 applies not only to possession before default but also to possession after default. Subsection (b) also has been conformed to Section 9-207, which, unlike former Section 9-207, applies to secured parties having control of collateral.

5. **Cumulative Remedies.** Former Section 9-501(1) provided that the secured party's remedies were cumulative, but it did not explicitly provide whether the remedies could be exercised simultaneously. Subsection (c) permits the simultaneous exercise of remedies if the secured party acts in good faith. The liability scheme of Subpart 2 affords redress to an aggrieved debtor or obligor. Moreover, permitting the simultaneous exercise of remedies under subsection (c) does not override any non-UCC law, including the law of tort and stat-

U.C.C. § 9-601

utes regulating collection of debts, under which the simultaneous exercise of remedies in a particular case constitutes abusive behavior or harassment giving rise to liability.

6. **Judicial Enforcement.** Under subsection (a) a secured party may reduce its claim to judgment or foreclose its interest by any available procedure outside this Article under applicable law. Subsection (e) generally follows former Section 9-501(5). It makes clear that any judicial lien that the secured party may acquire against the collateral effectively is a continuation of the original security interest (if perfected) and not the acquisition of a new interest or a transfer of property on account of a preexisting obligation. Under former Section 9-501(5), the judicial lien was stated to relate back to the date of perfection of the security interest. Subsection (e), however, provides that the lien relates back to the earlier of the date of filing or the date of perfection. This provides a secured party who enforces a security interest by judicial process with the benefit of the "first-to-file-or-perfect" priority rule of Section 9-322(a)(1).

7. **Agricultural Liens.** Part 6 provides parallel treatment for the enforcement of agricultural liens and security interests. Because agricultural liens are statutory rather than consensual, this Article does draw a few distinctions between these liens and security interests. Under subsection (e), the statute creating an agricultural lien would govern whether and the date to which an execution lien relates back. Section 9-606 explains when a "default" occurs in the agricultural lien context.

8. **Execution Sales.** Subsection (f) also follows former Section 9-501(5). It makes clear that an execution sale is an appropriate method of foreclosure contemplated by this Part. However, the sale is governed by other law and not by this Article, and the limitations under Section 9-610 on the right of a secured party to purchase collateral do not apply.

9. **Sales of Receivables; Consignments.** Subsection (g) provides that, except as provided in Section 9-607(c), the duties imposed on secured parties do not apply to buyers of accounts, chattel paper, payment intangibles, or promissory notes. Although denominated "secured parties," these buyers own the entire interest in the property sold and so may enforce their rights without regard to the seller ("debtor") or the seller's creditors. Likewise, a true consignor may enforce its ownership interest under other law without regard to the duties that this Part imposes on secured parties. Note, however, that Section 9-615 governs cases in which a consignee's secured party (other than a consignor) is enforcing a security interest that is senior to the security interest (i.e., ownership interest) of a true consignor.

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-602* (2014)

## § 9-602. WAIVER AND VARIANCE OF RIGHTS AND DUTIES

Except as otherwise provided in *Section 9-624*, to the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in the following listed sections:

(1) *Section 9-207(b)(4)(C)*, which deals with use and operation of the collateral by the secured party;

(2) *Section 9-210*, which deals with requests for an accounting and requests concerning a list of collateral and statement of account;

(3) *Section 9-607(c)*, which deals with collection and enforcement of collateral;

(4) *Sections 9-608(a)* and *9-615(c)* to the extent that they deal with application or payment of noncash proceeds of collection, enforcement, or disposition;

(5) *Sections 9-608(a)* and *9-615(d)* to the extent that they require accounting for or payment of surplus proceeds of collateral;

(6) *Section 9-609* to the extent that it imposes upon a secured party that takes possession of collateral without judicial process the duty to do so without breach of the peace;

(7) *Sections 9-610(b)*, *9-611*, *9-613*, and *9-614*, which deal with disposition of collateral;

(8) *Section 9-615(f)*, which deals with calculation of a deficiency or surplus when a disposition is made to the secured party, a person related to the secured party, or a secondary obligor;

(9) *Section 9-616*, which deals with explanation of the calculation of a surplus or deficiency;

(10) *Sections 9-620*, *9-621*, and *9-622*, which deal with acceptance of collateral in satisfaction of obligation;

(11) *Section 9-623*, which deals with redemption of collateral;

(12) *Section 9-624*, which deals with permissible waivers; and

(13) *Sections 9-625* and *9-626*, which deal with the secured party's liability for failure to comply with this article.

**NOTES:**
**OFFICIAL COMMENT**
   1. **Source.** Former Section 9-501(3).
   2. **Waiver: In General.** Section 1-102(3) addresses which provisions of the UCC are mandatory and which may be varied by agreement. With exceptions relating to good faith, diligence, reasonableness, and care, immediate parties, as between themselves, may vary its provisions by agreement. However, in the context of rights and duties after default, our legal system traditionally has looked with suspicion on agreements that limit the debtor's rights and free the secured party of its duties. As stated in former Section 9-501, Comment 4, "no mortgage clause has ever been allowed to clog the equity of redemption." The context of default offers great opportunity for overreaching. The suspicious attitudes of the courts have been grounded in common sense. This section, like former Section 9-501(3), codifies this long-standing and deeply rooted attitude. The specified rights of the debtor and duties of the secured party may not be waived or varied except as stated. Provisions that are not specified in this section are subject to the general rules in Section 1-102(3).
   3. **Nonwaivable Rights and Duties.** This section revises former Section 9-501(3) by re-stricting the ability to waive or modify additional specified rights and duties: (i) duties under Section 9-207(b)(4)(C), which deals with the use and operation of consumer goods, (ii) the right to a response to a request for an accounting, concerning a list of collateral, or concern-ing a statement of account (Section 9-210), (iii) the duty to collect collateral in a commer-cially reasonable manner (Section 9-607), (iv) the implicit duty to refrain from a breach of the peace in taking possession of collateral under Section 9-609, (v) the duty to apply non-cash proceeds of collection or disposition in a commercially reasonable manner (Sections 9-608 and 9-615), (vi) the right to a special method of calculating a surplus or deficiency in certain dispositions to a secured party, a person related to secured party, or a secondary ob-ligor (Section 9-615), (vii) the duty to give an explanation of the calculation of a surplus or deficiency (Section 9-616), (viii) the right to limitations on the effectiveness of certain waivers (Section 9-624), and (ix) the right to hold a secured party liable for failure to com-ply with this Article (Sections 9-625 and 9-626). For clarity and consistency, this Article uses the term "waive or vary" instead of "renounc[e] or modify[]," which appeared in former Section 9-504(3).

   This section provides generally that the specified rights and duties "may not be waived or varied." However, it does not restrict the ability of parties to agree to settle, compromise, or renounce claims for past conduct that may have constituted a violation or breach of those rights and duties, even if the settlement involves an express "waiver."

   Section 9-610(c) limits the circumstances under which a secured party may purchase at its own private disposition. Transactions of this kind are equivalent to "strict foreclosures" and are governed by Sections 9-620, 9-621, and 9-622. The provisions of these sections can be waived only to the extent provided in Section 9-624(b). See Section 9-602.

U.C.C. § 9-602

4. **Waiver by Debtors and Obligors.** The restrictions on waiver contained in this section apply to obligors as well as debtors. This resolves a question under former Article 9 as to whether secondary obligors, assuming that they were "debtors" for purposes of former Part 5, were permitted to waive, under the law of suretyship, rights and duties under that Part.

5. **Certain Post-Default Waivers.** Section 9-624 permits post-default waivers in limited circumstances. These waivers must be made in agreements that are authenticated. Under Section 1-201, an "'agreement' means the bargain of the parties in fact." In considering waivers under Section 9-624 and analogous agreements in other contexts, courts should carefully scrutinize putative agreements that appear in records that also address many additional or unrelated matters.

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-603* (2014)

§ 9-603. AGREEMENT ON STANDARDS CONCERNING RIGHTS AND DUTIES

(a) **[Agreed standards.]** The parties may determine by agreement the standards measuring the fulfillment of the rights of a debtor or obligor and the duties of a secured party under a rule stated in *Section 9-602* if the standards are not manifestly unreasonable.

(b) **[Agreed standards inapplicable to breach of peace.]** Subsection (a) does not apply to the duty under *Section 9-609* to refrain from breaching the peace.

**NOTES:**
**OFFICIAL COMMENT**
1. **Source.** Former Section 9-501(3).
2. **Limitation on Ability to Set Standards.** Subsection (a), like former Section 9-501(3), permits the parties to set standards for compliance with the rights and duties under this Part if the standards are not "manifestly unreasonable." Under subsection (b), the parties are not permitted to set standards measuring fulfillment of the secured party's duty to take collateral without breaching the peace.

**Emerging Issues Analysis**

*Professor Margit Livingston on Commercially Reasonable Dispositions of Collateral Under U.C.C. Article 9*

The Code has two requirements for foreclosure sales: (1) The secured party must give reasonable notification of the impending sale and (2) the secured party must engage in a commercially reasonable disposition of the collateral. In a recent decision by the 5th Cir. Ct. of Appeals, the court focused on the second requirement, finding that a foreclosure sale passed muster under both the "procedures" and "proceeds" tests.+

U.C.C. § 9-604

# UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-604* (2014)

## § 9-604. PROCEDURE IF SECURITY AGREEMENT COVERS REAL PROPERTY OR FIXTURES

(a) **[Enforcement: personal and real property.]** If a security agreement covers both personal and real property, a secured party may proceed:

(1) under this part as to the personal property without prejudicing any rights with respect to the real property; or

(2) as to both the personal property and the real property in accordance with the rights with respect to the real property, in which case the other provisions of this part do not apply.

(b) **[Enforcement: fixtures.]** Subject to subsection (c), if a security agreement covers goods that are or become fixtures, a secured party may proceed:

(1) under this part; or

(2) in accordance with the rights with respect to real property, in which case the other provisions of this part do not apply.

(c) **[Removal of fixtures.]** Subject to the other provisions of this part, if a secured party holding a security interest in fixtures has priority over all owners and encumbrancers of the real property, the secured party, after default, may remove the collateral from the real property.

(d) **[Injury caused by removal.]** A secured party that removes collateral shall promptly reimburse any encumbrancer or owner of the real property, other than the debtor, for the cost of repair of any physical injury caused by the removal. The secured party need not reimburse the encumbrancer or owner for any diminution in value of the real property caused by the absence of the goods removed or by any necessity of replacing them. A person entitled to reimbursement may refuse permission to remove until the secured party gives adequate assurance for the performance of the obligation to reimburse.

**NOTES:**
**OFFICIAL COMMENT**
1. **Source.** Former Sections 9-501(4), 9-313(8).

2. **Real-Property-Related Collateral.** The collateral in many transactions consists of both real and personal property. In the interest of simplicity, speed, and economy, subsection (a), like former Section 9-501(4), permits (but does not require) the secured party to proceed as to both real and personal property in accordance with its rights and remedies with respect to the real property. Subsection (a) also makes clear that a secured party who exercises rights under Part 6 with respect to personal property does not prejudice any rights under real-property law.

This Article does not address certain other real-property-related problems. In a number of States, the exercise of remedies by a creditor who is secured by both real property and non-real property collateral is governed by special legal rules. For example, under some anti-deficiency laws, creditors risk loss of rights against personal property collateral if they err in enforcing their rights against the real property. Under a "one-form-of-action" rule (or rule against splitting a cause of action), a creditor who judicially enforces a real property mortgage and does not proceed in the same action to enforce a security interest in personalty may (among other consequences) lose the right to proceed against the personalty. Although statutes of this kind create impediments to enforcement of security interests, this Article does not override these limitations under other law.

3. **Fixtures.** Subsection (b) is new. It makes clear that a security interest in fixtures may be enforced either under real-property law or under any of the applicable provisions of Part 6, including sale or other disposition either before or after removal of the fixtures (see subsection (c)). Subsection (b) also serves to overrule cases holding that a secured party's only remedy after default is the removal of the fixtures from the real property. See, e.g., *Maplewood Bank & Trust v. Sears, Roebuck & Co., 625 A.2d 537 (N.J. Super. Ct. App. Div. 1993).*

Subsection (c) generally follows former Section 9-313(8). It gives the secured party the right to remove fixtures under certain circumstances. A secured party whose security interest in fixtures has priority over owners and encumbrancers of the real property may remove the collateral from the real property. However, subsection (d) requires the secured party to reimburse any owner (other than the debtor) or encumbrancer for the cost of repairing any physical injury caused by the removal. This right to reimbursement is implemented by the last sentence of subsection (d), which gives the owner or encumbrancer a right to security or indemnity as a condition for giving permission to remove.

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-605* (2014)

§ 9-605. UNKNOWN DEBTOR OR SECONDARY OBLIGOR

A secured party does not owe a duty based on its status as secured party:

(1) to a person that is a debtor or obligor, unless the secured party knows:

(A) that the person is a debtor or obligor;

(B) the identity of the person; and

(C) how to communicate with the person; or

(2) to a secured party or lienholder that has filed a financing statement against a person, unless the secured party knows:

(A) that the person is a debtor; and

(B) the identity of the person.

**NOTES:**
**OFFICIAL COMMENT**
   1. **Source.** New.
   2. **Duties to Unknown Persons.** This section relieves a secured party from duties owed to a debtor or obligor, if the secured party does not know about the debtor or obligor. Similarly, it relieves a secured party from duties owed to a secured party or lienholder who has filed a financing statement against the debtor, if the secured party does not know about the debtor. For example, a secured party may be unaware that the original debtor has sold the collateral subject to the security interest and that the new owner has become the debtor. If so, the secured party owes no duty to the new owner (debtor) or to a secured party who has filed a financing statement against the new owner. This section should be read in conjunction with the exculpatory provisions in Section 9-628. Note that it relieves a secured party not only from duties arising under this Article but also from duties arising under other law by virtue of the secured party's status as such under this Article, unless the other law otherwise provides.

U.C.C. § 9-606

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-606* (2014)

§ 9-606. TIME OF DEFAULT FOR AGRICULTURAL LIEN

For purposes of this part, a default occurs in connection with an agricultural lien at the time the secured party becomes entitled to enforce the lien in accordance with the statute under which it was created.

**NOTES:**
**OFFICIAL COMMENT**
1. **Source.** New.
2. **Time of Default.** Remedies under this Part become available upon the debtor's "default." See Section 9-601. This section explains when "default" occurs in the agricultural-lien context. It requires one to consult the enabling statute to determine when the lienholder is entitled to enforce the lien.

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-607* (2014)

## § 9-607. COLLECTION AND ENFORCEMENT BY SECURED PARTY

(a) **[Collection and enforcement generally.]** If so agreed, and in any event after default, a secured party:

(1) may notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party;

(2) may take any proceeds to which the secured party is entitled under *Section 9-315*;

(3) may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral;

(4) if it holds a security interest in a deposit account perfected by control under *Section 9-104(a)(1)*, may apply the balance of the deposit account to the obligation secured by the deposit account; and

(5) if it holds a security interest in a deposit account perfected by control under *Section 9-104(a)(2)* or (3), may instruct the bank to pay the balance of the deposit account to or for the benefit of the secured party.

(b) **[Nonjudicial enforcement of mortgage.]** If necessary to enable a secured party to exercise under subsection (a)(3) the right of a debtor to enforce a mortgage nonjudicially, the secured party may record in the office in which a record of the mortgage is recorded:

(1) a copy of the security agreement that creates or provides for a security interest in the obligation secured by the mortgage; and

(2) the secured party's sworn affidavit in recordable form stating that:

(A) a default has occurred with respect to the obligation secured by the mortgage; and

(B) the secured party is entitled to enforce the mortgage nonjudicially.

U.C.C. § 9-607

(c) **[Commercially reasonable collection and enforcement.]** A secured party shall proceed in a commercially reasonable manner if the secured party:

(1) undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral; and

(2) is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or a secondary obligor.

(d) **[Expenses of collection and enforcement.]** A secured party may deduct from the collections made pursuant to subsection (c) reasonable expenses of collection and enforcement, including reasonable attorney's fees and legal expenses incurred by the secured party.

(e) **[Duties to secured party not affected.]** This section does not determine whether an account debtor, bank, or other person obligated on collateral owes a duty to a secured party.

**NOTES:**
**OFFICIAL COMMENT**

1. **Source.** Former Section 9-502; subsections (b), (d), and (e) are new.

2. **Collections: In General.** Collateral consisting of rights to payment is not only the most liquid asset of a typical debtor's business but also is property that may be collected without any interruption of the debtor's business This situation is far different from that in which collateral is inventory or equipment, whose removal may bring the business to a halt. Furthermore, problems of valuation and identification, present with collateral that is tangible personal property, frequently are not as serious in the case of rights to payment and other intangible collateral. Consequently, this section, like former Section 9-502, recognizes that financing through assignments of intangibles lacks many of the complexities that arise after default in other types of financing. This section allows the assignee to liquidate collateral by collecting whatever may become due on the collateral, whether or not the method of collection contemplated by the security arrangement before default was direct (i.e., payment by the account debtor to the assignee, "notification" financing) or indirect (i.e., payment by the account debtor to the assignor, "nonnotification" financing).

3. **Scope.** The scope of this section is broader than that of former Section 9-502. It applies not only to collections from account debtors and obligors on instruments but also to enforcement more generally against all persons obligated on collateral. It explicitly provides for the secured party's enforcement of the debtor's rights in respect of the account debtor's (and other third parties') obligations and for the secured party's enforcement of supporting obligations with respect to those obligations. (Supporting obligations are components of the collateral under Section 9-203(f).) The rights of a secured party under subsection (a) include the right to enforce claims that the debtor may enjoy against others. For example, the claims might include a breach- of-warranty claim arising out of a defect in equipment that is collateral or a secured party's action for an injunction against infringement of a patent that is collateral. Those claims typically would be proceeds of original collateral under Section 9-315.

4. **Collection and Enforcement Before Default.** Like Part 6 generally, this section deals with the rights and duties of secured parties following default. However, as did former Sec-

U.C.C. § 9-607

tion 9-502 with respect to collection rights, this section also applies to the collection and enforcement rights of secured parties even if a default has not occurred, as long as the debtor has so agreed. It is not unusual for debtors to agree that secured parties are entitled to collect and enforce rights against account debtors prior to default.

5. **Collections by Junior Secured Party.** A secured party who holds a security interest in a right to payment may exercise the right to collect and enforce under this section, even if the security interest is subordinate to a conflicting security interest in the same right to payment. Whether the junior secured party has priority in the collected proceeds depends on whether the junior secured party qualifies for priority as a purchaser of an instrument (e.g., the account debtor's check) under Section 9-330(d), as a holder in due course of an instrument under Sections 3-305 and 9-331(a), or as a transferee of money under Section 9-332(a). See Sections 9-330, Comment 7; 9-331, Comment 5; and 9-332.

6. **Relationship to Rights and Duties of Persons Obligated on Collateral.** This section permits a secured party to collect and enforce obligations included in collateral in its capacity as a secured party. It is not necessary for a secured party first to become the owner of the collateral pursuant to a disposition or acceptance. However, the secured party's rights, as between it and the debtor, to collect from and enforce collateral against account debtors and others obligated on collateral under subsection (a) are subject to Section 9-341, Part 4, and other applicable law. *Neither this section nor former Section 9-502 should be understood to regulate the duties of an account debtor or other person obligated on collateral.* Subsection (e) makes this explicit. For example, the secured party may be unable to exercise the debtor's rights under an instrument if the debtor is in possession of the instrument, or under a non-transferable letter of credit if the debtor is the beneficiary. Unless a secured party has control over a letter-of-credit right and is entitled to receive payment or performance from the issuer or a nominated person under Article 5, its remedies with respect to the letter-of-credit right may be limited to the recovery of any identifiable proceeds from the debtor. This section establishes only the baseline rights of the secured party *vis-a-vis the debtor*--the secured party is entitled to enforce and collect after default or earlier if so agreed.

7. **Deposit Account Collateral.** Subsections (a)(4) and (5) set forth the self-help remedy for a secured party whose collateral is a deposit account. Subsection (a)(4) addresses the rights of a secured party that is the bank with which the deposit account is maintained. That secured party automatically has control of the deposit account under Section 9-104(a)(1). After default, and otherwise if so agreed, the bank/secured party may apply the funds on deposit to the secured obligation.

If a security interest of a third party is perfected by control (Section 9-104(a)(2) or (a)(3)), then after default, and otherwise if so agreed, the secured party may instruct the bank to pay out the funds in the account. If the third party has control under Section 9-104(a)(3), the depositary institution is obliged to obey the instruction because the secured party is its customer. See Section 4-401. If the third party has control under Section 9-104(a)(2), the control agreement determines the depositary institution's obligation to obey.

If a security interest in a deposit account is unperfected, or is perfected by filing by virtue of the proceeds rules of Section 9-315, the depositary institution ordinarily owes no obliga-

U.C.C. § 9-607

tion to obey the secured party's instructions. See Section 9-341. To reach the funds without the debtor's cooperation, the secured party must use an available judicial procedure.

8. **Rights Against Mortgagor of Real Property.** Subsection (b) addresses the situation in which the collateral consists of a mortgage note (or other obligation secured by a mortgage on real property). After the debtor's (mortgagee's) default, the secured party (assignee) may wish to proceed with a nonjudicial foreclosure of the mortgage securing the note but may be unable to do so because it has not become the assignee of record. The assignee/secured party may not have taken a recordable assignment at the commencement of the transaction (perhaps the mortgage note in question was one of hundreds assigned to the secured party as collateral). Having defaulted, the mortgagee may be unwilling to sign a recordable assignment. This section enables the secured party (assignee) to become the assignee of record by recording in the applicable real-property records the security agreement and an affidavit certifying default. Of course, the secured party's rights derive from those of its debtor. Subsection (b) would not entitle the secured party to proceed with a foreclosure unless the mortgagor also were in default or the debtor (mortgagee) otherwise enjoyed the right to foreclose.

9. **Commercial Reasonableness.** Subsection (c) provides that the secured party's collection and enforcement rights under subsection (a) must be exercised in a commercially reasonable manner. These rights include the right to settle and compromise claims against the account debtor. The secured party's failure to observe the standard of commercial reasonableness could render it liable to an aggrieved person under Section 9-625, and the secured party's recovery of a deficiency would be subject to Section 9-626. Subsection (c) does not apply if, as is characteristic of most sales of accounts, chattel paper, payment intangibles, and promissory notes, the secured party (buyer) has no right of recourse against the debtor (seller) or a secondary obligor. However, if the secured party does have a right of recourse, the commercial-reasonableness standard applies to collection and enforcement even though the assignment to the secured party was a "true" sale. The obligation to proceed in a commercially reasonable manner arises because the collection process affects the extent of the seller's recourse liability, not because the seller retains an interest in the sold collateral (the seller does not). Concerning classification of a transaction, see Section 9-109, Comment 4.

10. **Attorney's Fees and Legal Expenses.** The phrase "reasonable attorney's fees and legal expenses," which appears in subsection (d), includes only those fees and expenses incurred in proceeding against account debtors or other third parties. The secured party's right to recover these expenses from the collections arises automatically under this section. The secured party also may incur other attorney's fees and legal expenses in proceeding against the debtor or obligor. Whether the secured party has a right to recover those fees and expenses depends on whether the debtor or obligor has agreed to pay them, as is the case with respect to attorney's fees and legal expenses under Sections 9-608(a)(1)(A) and 9-615(a)(1). The parties also may agree to allocate a portion of the secured party's overhead to collection and enforcement under subsection (d) or Section 9-608(a).

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-608* (2014)

§ 9-608. APPLICATION OF PROCEEDS OF COLLECTION OR ENFORCEMENT; LIABILITY FOR DEFICIENCY AND RIGHT TO SURPLUS

(a) **[Application of proceeds, surplus, and deficiency if obligation secured.]** If a security interest or agricultural lien secures payment or performance of an obligation, the following rules apply:

(1) A secured party shall apply or pay over for application the cash proceeds of collection or enforcement under *Section 9-607* in the following order to:

(A) the reasonable expenses of collection and enforcement and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party;

(B) the satisfaction of obligations secured by the security interest or agricultural lien under which the collection or enforcement is made; and

(C) the satisfaction of obligations secured by any subordinate security interest in or other lien on the collateral subject to the security interest or agricultural lien under which the collection or enforcement is made if the secured party receives an authenticated demand for proceeds before distribution of the proceeds is completed.

(2) If requested by a secured party, a holder of a subordinate security interest or other lien shall furnish reasonable proof of the interest or lien within a reasonable time. Unless the holder complies, the secured party need not comply with the holder's demand under paragraph (1)(C).

(3) A secured party need not apply or pay over for application noncash proceeds of collection and enforcement under *Section 9-607* unless the failure to do so would be commercially unreasonable. A secured party that applies or pays over for application noncash proceeds shall do so in a commercially reasonable manner.

(4) A secured party shall account to and pay a debtor for any surplus, and the obligor is liable for any deficiency.

U.C.C. § 9-608

(b) **[No surplus or deficiency in sales of certain rights to payment.]** If the underlying transaction is a sale of accounts, chattel paper, payment intangibles, or promissory notes, the debtor is not entitled to any surplus, and the obligor is not liable for any deficiency.

**NOTES:**
**OFFICIAL COMMENT**
1. **Source.** Subsection (a) is new; subsection (b) derives from former Section 9-502(2).

2. **Modifications of Prior Law.** Subsections (a) and (b) modify former Section 9-502(2) by explicitly providing for the application of proceeds recovered by the secured party in substantially the same manner as provided in Section 9-615(a) and (e) for dispositions of collateral.

3. **Surplus and Deficiency.** Subsections (a)(4) and (b) omit, as unnecessary, the references contained in former Section 9-502(2) to agreements varying the baseline rules on surplus and deficiency. The parties are always free to agree that an obligor will not be liable for a deficiency, even if the collateral secures an obligation, and that an obligor is liable for a deficiency, even if the transaction is a sale of receivables. For parallel provisions, see Section 9-615(d) and (e).

4. **Noncash Proceeds.** Subsection (a)(3) addresses the situation in which an enforcing secured party receives noncash proceeds.

**Example:** An enforcing secured party receives a promissory note from an account debtor who is unable to pay an account when it is due. The secured party accepts the note in exchange for extending the date on which the account debtor's obligation is due. The secured party may wish to credit its debtor (the assignor) with the principal amount of the note upon receipt of the note, but probably will prefer to credit the debtor only as and when the note is paid.

Under subsection (a)(3), the secured party is under no duty to apply the note or its value to the outstanding obligation unless its failure to do so would be commercially unreasonable. If the secured party does apply the note to the outstanding obligation, however, it must do so in a commercially reasonable manner. The parties may provide for the method of application of noncash proceeds by agreement, if the method is not manifestly unreasonable. See Section 9-603. This section does not explain when the failure to apply noncash proceeds would be commercially unreasonable; it leaves that determination to case-by-case adjudication. In the example, the secured party appears to have accepted the account debtor's note in order to increase the likelihood of payment and decrease the likelihood that the account debtor would dispute its obligation. Under these circumstances, it may well be commercially reasonable for the secured party to credit its debtor's obligations only as and when cash proceeds are collected from the account debtor, especially given the uncertainty that attends the account debtor's eventual payment. For an example of a secured party's receipt of noncash proceeds in which it may well be commercially unreasonable for the secured party to delay crediting its debtor's obligations with the value of noncash proceeds, see Section 9-615, Comment 3.

U.C.C. § 9-608

    When the secured party is not required to "apply or pay over for application noncash proceeds," the proceeds nonetheless remain collateral subject to this Article. If the secured party were to dispose of them, for example, appropriate notification would be required (see Section 9-611), and the disposition would be subject to the standards provided in this Part (see Section 9-610). Moreover, a secured party in possession of the noncash proceeds would have the duties specified in Section 9-207.

    5. **No Effect on Priority of Senior Security Interest.** The application of proceeds required by subsection (a) does not affect the priority of a security interest in collateral which is senior to the interest of the secured party who is collecting or enforcing collateral under Section 9-607. Although subsection (a) imposes a duty to apply proceeds to the enforcing secured party's expenses and to the satisfaction of the secured obligations owed to it and to subordinate secured parties, that duty applies only among the enforcing secured party and those persons. Concerning the priority of a junior secured party who collects and enforces collateral, see Section 9-607, Comment 5.

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-609* (2014)

§ 9-609. SECURED PARTY'S RIGHT TO TAKE POSSESSION AFTER DEFAULT

(a) **[Possession; rendering equipment unusable; disposition on debtor's premises.]** After default, a secured party:

(1) may take possession of the collateral; and

(2) without removal, may render equipment unusable and dispose of collateral on a debtor's premises under *Section 9-610*.

(b) **[Judicial and nonjudicial process.]** A secured party may proceed under subsection (a):

(1) pursuant to judicial process; or

(2) without judicial process, if it proceeds without breach of the peace.

(c) **[Assembly of collateral.]** If so agreed, and in any event after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties.

**NOTES:**
**OFFICIAL COMMENT**

1. **Source.** Former Section 9-503.

2. **Secured Party's Right to Possession.** This section follows former Section 9-503 and earlier uniform legislation. It provides that the secured party is entitled to take possession of collateral after default.

3. **Judicial Process; Breach of Peace.** Subsection (b) permits a secured party to proceed under this section without judicial process if it does so "without breach of the peace." Although former Section 9-503 placed the same condition on a secured party's right to take possession of collateral, subsection (b) extends the condition to the right provided in subsection (a)(2) as well. Like former Section 9-503, this section does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts. In considering whether a secured party has engaged in a breach of the peace, however, courts should hold the secured party responsible for the actions of others

U.C.C. § 9-609

taken on the secured party's behalf, including independent contractors engaged by the secured party to take possession of collateral.

This section does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law-enforcement officer. A number of cases have held that a repossessing secured party's use of a law-enforcement officer without benefit of judicial process constituted a failure to comply with former Section 9-503.

4. **Damages for Breach of Peace.** Concerning damages that may be recovered based on a secured party's breach of the peace in connection with taking possession of collateral, see Section 9-625, Comment 3.

5. **Multiple Secured Parties.** More than one secured party may be entitled to take possession of collateral under this section. Conflicting rights to possession among secured parties are resolved by the priority rules of this Article. Thus, a senior secured party is entitled to possession as against a junior claimant. Non-UCC law governs whether a junior secured party in possession of collateral is liable to the senior in conversion. Normally, a junior who refuses to relinquish possession of collateral upon the demand of a secured party having a superior possessory right to the collateral would be liable in conversion.

6. **Secured Party's Right to Disable and Dispose of Equipment on Debtor's Premises.** In the case of some collateral, such as heavy equipment, the physical removal from the debtor's plant and the storage of the collateral pending disposition may be impractical or unduly expensive. This section follows former Section 9-503 by providing that, in lieu of removal, the secured party may render equipment unusable or may dispose of collateral on the debtor's premises. Unlike former Section 9-503, however, this section explicitly conditions these rights on the debtor's default. Of course, this section does not validate unreasonable action by a secured party. Under Section 9-610, all aspects of a disposition must be commercially reasonable.

7. **Debtor's Agreement to Assemble Collateral.** This section follows former Section 9-503 also by validating a debtor's agreement to assemble collateral and make it available to a secured party at a place that the secured party designates. Similar to the treatment of agreements to permit collection prior to default under Section 9-607 and former 9-502, however, this section validates these agreements whether or not they are conditioned on the debtor's default. For example, a debtor might agree to make available to a secured party, from time to time, any instruments or negotiable documents that the debtor receives on account of collateral. A court should not infer from this section's validation that a debtor's agreement to assemble and make available collateral would not be enforceable under other applicable law.

8. **Agreed Standards.** Subject to the limitation imposed by Section 9-603(b), this section's provisions concerning agreements to assemble and make available collateral and a secured party's right to disable equipment and dispose of collateral on a debtor's premises are likely topics for agreement on standards as contemplated by Section 9-603.

**Emerging Issues Analysis**

U.C.C. § 9-609

*Professor Margit Livingston on Breach of the Peace in Self-Help Repossession under U.C.C. Article 9*

The recent financial crisis has caused a number of debtors to default on their loan obligations, and as a result, more and more secured creditors are repossessing the collateral securing their loans.   The UCC permits self-help repossession if the creditor can seize the collateral without breaching the peace.   Because Article 9 itself does not define breach of the peace, it has been left to the courts to craft a workable definition.+

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-610* (2014)

§ 9-610. DISPOSITION OF COLLATERAL AFTER DEFAULT

(a) **[Disposition after default.]** After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.

(b) **[Commercially reasonable disposition.]** Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

(c) **[Purchase by secured party.]** A secured party may purchase collateral:

(1) at a public disposition; or

(2) at a private disposition only if the collateral is of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations.

(d) **[Warranties on disposition.]** A contract for sale, lease, license, or other disposition includes the warranties relating to title, possession, quiet enjoyment, and the like which by operation of law accompany a voluntary disposition of property of the kind subject to the contract.

(e) **[Disclaimer of warranties.]** A secured party may disclaim or modify warranties under subsection (d):

(1) in a manner that would be effective to disclaim or modify the warranties in a voluntary disposition of property of the kind subject to the contract of disposition; or

(2) by communicating to the purchaser a record evidencing the contract for disposition and including an express disclaimer or modification of the warranties.

(f) **[Record sufficient to disclaim warranties.]** A record is sufficient to disclaim warranties under subsection (e) if it indicates "There is no warranty relating to title, possession, quiet enjoyment, or the like in this disposition" or uses words of similar import.

**NOTES:**

U.C.C. § 9-610

## OFFICIAL COMMENT

1. **Source.** Former Section 9-504(1), (3)

2. **Commercially Reasonable Dispositions.** Subsection (a) follows former Section 9-504 by permitting a secured party to dispose of collateral in a commercially reasonable manner following a default. Although subsection (b) permits both public and private dispositions, including public and private dispositions conducted over the Internet, "every aspect of a disposition . . . must be commercially reasonable." This section encourages private dispositions on the assumption that they frequently will result in higher realization on collateral for the benefit of all concerned. Subsection (a) does not restrict dispositions to sales; collateral may be sold, leased, licensed, or otherwise disposed. Section 9-627 provides guidance for determining the circumstances under which a disposition is "commercially reasonable."

3. **Time of Disposition.** This Article does not specify a period within which a secured party must dispose of collateral. This is consistent with this Article's policy to encourage private dispositions through regular commercial channels. It may, for example, be prudent not to dispose of goods when the market has collapsed. Or, it might be more appropriate to sell a large inventory in parcels over a period of time instead of in bulk. Of course, under subsection (b) every aspect of a disposition of collateral must be commercially reasonable. This requirement explicitly includes the "method, manner, time, place and other terms." For example, if a secured party does not proceed under Section 9-620 and holds collateral for a long period of time without disposing of it, and if there is no good reason for not making a prompt disposition, the secured party may be determined not to have acted in a "commercially reasonable" manner. See also Section 1-203 (general obligation of good faith).

4. **Pre-Disposition Preparation and Processing.** Former Section 9-504(1) appeared to give the secured party the choice of disposing of collateral either "in its then condition or following any commercially reasonable preparation or processing." Some courts held that the "commercially reasonable" standard of former Section 9-504(3) nevertheless could impose an affirmative duty on the secured party to process or prepare the collateral prior to disposition. Subsection (a) retains the substance of the quoted language. Although courts should not be quick to impose a duty of preparation or processing on the secured party, subsection (a) does not grant the secured party the right to dispose of the collateral "in its then condition" under *all* circumstances. A secured party may not dispose of collateral "in its then condition" when, taking into account the costs and probable benefits of preparation or processing and the fact that the secured party would be advancing the costs at its risk, it would be commercially unreasonable to dispose of the collateral in that condition.

5. **Disposition by Junior Secured Party.** Disposition rights under subsection (a) are not limited to first-priority security interests. Rather, any secured party as to whom there has been a default enjoys the right to dispose of collateral under this subsection. The exercise of this right by a secured party whose security interest is subordinate to that of another secured party does not of itself constitute a conversion or otherwise give rise to liability in favor of the holder of the senior security interest. Section 9-615 addresses application of the proceeds of a disposition by a junior secured party. Under Section 9-615(a), a junior secured party owes no obligation to apply the proceeds of disposition to the satisfaction of obligations se-

U.C.C. § 9-610

cured by a senior security interest. Section 9-615(g) builds on this general rule by protecting certain juniors from claims of a senior concerning cash proceeds of the disposition. Even if a senior were to have a non-Article 9 claim to proceeds of a junior's disposition, Section 9-615(g) would protect a junior that acts in good faith and without knowledge that its actions violate the rights of a senior party. Because the disposition by a junior would not cut off a senior's security interest or other lien (see Section 9-617), in many (probably most) cases the junior's receipt of the cash proceeds would not violate the rights of the senior.

The holder of a senior security interest is entitled, by virtue of its priority, to take possession of collateral from the junior secured party and conduct its own disposition, provided that the senior enjoys the right to take possession of the collateral from the debtor. See Section 9-609. The holder of a junior security interest normally must notify the senior secured party of an impending disposition. See Section 9-611. Regardless of whether the senior receives a notification from the junior, the junior's disposition does not of itself discharge the senior's security interest. See Section 9-617. Unless the senior secured party has authorized the disposition free and clear of its security interest, the senior's security interest ordinarily will survive the disposition by the junior and continue under Section 9-315(a). If the senior enjoys the right to repossess the collateral from the debtor, the senior likewise may recover the collateral from the transferee.

When a secured party's collateral is encumbered by another security interest or other lien, one of the claimants may seek to invoke the equitable doctrine of marshaling. As explained by the Supreme Court, that doctrine "rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Meyer v. United States, 375 U.S. 233, 236 (1963),* quoting *Sowell v. Federal Reserve Bank, 268 U.S. 449, 456-57 (1925).* The purpose of the doctrine is "to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security." Id. at 237. Because it is an equitable doctrine, marshaling "is applied only when it can be equitably fashioned as to all of the parties" having an interest in the property. Id. This Article leaves courts free to determine whether marshaling is appropriate in any given case. See Section 1-103.

6. **Security Interests of Equal Rank.** Sometimes two security interests enjoy the same priority. This situation may arise by contract, e.g., pursuant to "equal and ratable" provisions in indentures, or by operation of law. See Section 9-328(6). This Article treats a security interest having equal priority like a senior security interest in many respects. Assume, for example, that SP-X and SP-Y enjoy equal priority, SP-W is senior to them, and SP-Z is junior. If SP-X disposes of the collateral under this section, then (i) SP-W's and SP-Y's security interests survive the disposition but SP-Z's does not, see Section 9-617, and (ii) neither SP-W nor SP-Y is entitled to receive a distribution of proceeds, but SP-Z is. See Section 9-615(a)(3).

When one considers the ability to obtain possession of the collateral, a secured party with equal priority is unlike a senior secured party. As the senior secured party, SP-W should enjoy the right to possession as against SP-X. See Section 9-609, Comment 5. If SP-W takes possession and disposes of the collateral under this section, it is entitled to apply the pro-

ceeds to satisfy its secured claim. SP-Y, however, should not have such a right to take possession from SP-X; otherwise, once SP-Y took possession from SP-X, SP-X would have the right to get possession from SP-Y, which would be obligated to redeliver possession to SP-X, and so on. Resolution of this problem is left to the parties and, if necessary, the courts.

7. **Public vs. Private Dispositions.** This Part maintains two distinctions between "public" and other dispositions: (i) the secured party may buy at the former, but normally not at the latter (Section 9-610(c)), and (ii) the debtor is entitled to notification of "the time and place of a public disposition" and notification of "the time after which" a private disposition or other intended disposition is to be made (Section 9-613(1)(E)). It does not retain the distinction under former Section 9-504(4), under which transferees in a noncomplying public disposition could lose protection more easily than transferees in other noncomplying dispositions. Instead, Section 9-617(b) adopts a unitary standard. Although the term is not defined, as used in this Article, a "public disposition" is one at which the price is determined after the public has had a meaningful opportunity for competitive bidding. "Meaningful opportunity" is meant to imply that some form of advertisement or public notice must precede the sale (or other disposition) and that the public must have access to the sale (disposition).

A secured party's purchase of collateral at its own private disposition is equivalent to a "strict foreclosure" and is governed by Sections 9-620, 9-621, and 9-622. The provisions of these sections can be waived only to the extent provided in Section 9-624(b). See Section 9-602.

8. **Investment Property.** Dispositions of investment property may be regulated by the federal securities laws. Although a "public" disposition of securities under this Article may implicate the registration requirements of the Securities Act of 1933, it need not do so. A disposition that qualifies for a "private placement" exemption under the Securities Act of 1933 nevertheless may constitute a "public" disposition within the meaning of this section. Moreover, the "commercially reasonable" requirements of subsection (b) need not prevent a secured party from conducting a foreclosure sale without the issuer's compliance with federal registration requirements.

9. **"Recognized Market."** A "recognized market," as used in subsection (c) and Section 9-611(d), is one in which the items sold are fungible and prices are not subject to individual negotiation. For example, the New York Stock Exchange is a recognized market. A market in which prices are individually negotiated or the items are not fungible is not a recognized market, even if the items are the subject of widely disseminated price guides or are disposed of through dealer auctions.

10. **Relevance of Price.** While not itself sufficient to establish a violation of this Part, a low price suggests that a court should scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially reasonable. Note also that even if the disposition is commercially reasonable, Section 9-615(f) provides a special method for calculating a deficiency or surplus if (i) the transferee in the disposition is the secured party, a person related to the secured party, or a secondary obligor, and (ii) the amount of proceeds of the disposition is significantly below the range of proceeds that a complying disposition to a person

U.C.C. § 9-610

other than the secured party, a person related to the secured party, or a secondary obligor would have brought.

11. **Warranties.** Subsection (d) affords the transferee in a disposition under this section the benefit of any title, possession, quiet enjoyment, and similar warranties that would have accompanied the disposition by operation of non-Article 9 law had the disposition been conducted under other circumstances. For example, the Article 2 warranty of title would apply to a sale of goods, the analogous warranties of Article 2A would apply to a lease of goods, and any common-law warranties of title would apply to dispositions of other types of collateral. See, e.g., Restatement (2d), Contracts § 333 (warranties of assignor).

Subsection (e) explicitly provides that these warranties can be disclaimed either under other applicable law or by communicating a record containing an express disclaimer. The record need not be written, but an oral communication would not be sufficient. See Section 9-102 (definition of "record"). Subsection (f) provides a sample of wording that will effectively exclude the warranties in a disposition under this section, whether or not the exclusion would be effective under non-Article 9 law.

The warranties incorporated by subsection (d) are those relating to "title, possession, quiet enjoyment, and the like." Depending on the circumstances, a disposition under this section also may give rise to other statutory or implied warranties, e.g., warranties of quality or fitness for purpose. Law other than this Article determines whether such other warranties apply to a disposition under this section. Other law also determines issues relating to disclaimer of such warranties. For example, a foreclosure sale of a car by a car dealer could give rise to an implied warranty of merchantability (Section 2-314) unless effectively disclaimed or modified (Section 2-316).

This section's approach to these warranties conflicts with the former Comment to Section 2-312. This Article rejects the baseline assumption that commercially reasonable dispositions under this section are out of the ordinary commercial course or peculiar. The Comment to Section 2-312 has been revised accordingly.

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-611* (2014)

## § 9-611. NOTIFICATION BEFORE DISPOSITION OF COLLATERAL

(a) **["Notification date."]** In this section, "notification date" means the earlier of the date on which:

(1) a secured party sends to the debtor and any secondary obligor an authenticated notification of disposition; or

(2) the debtor and any secondary obligor waive the right to notification.

(b) **[Notification of disposition required.]** Except as otherwise provided in subsection (d), a secured party that disposes of collateral under *Section 9-610* shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition.

(c) **[Persons to be notified.]** To comply with subsection (b), the secured party shall send an authenticated notification of disposition to:

(1) the debtor;

(2) any secondary obligor; and

(3) if the collateral is other than consumer goods:

(A) any other person from which the secured party has received, before the notification date, an authenticated notification of a claim of an interest in the collateral;

(B) any other secured party or lienholder that, 10 days before the notification date, held a security interest in or other lien on the collateral perfected by the filing of a financing statement that:

(i) identified the collateral;

(ii) was indexed under the debtor's name as of that date; and

(iii) was filed in the office in which to file a financing statement against the debtor covering the collateral as of that date; and

(C) any other secured party that, 10 days before the notification date, held a security interest in the collateral perfected by compliance with a statute, regulation, or treaty described in *Section 9-311(a)*.

(d) **[Subsection (b) inapplicable: perishable collateral; recognized market.]** Subsection (b) does not apply if the collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market.

(e) **[Compliance with subsection (c)(3)(B).]** A secured party complies with the requirement for notification prescribed by subsection (c)(3)(B) if:

(1) not later than 20 days or earlier than 30 days before the notification date, the secured party requests, in a commercially reasonable manner, information concerning financing statements indexed under the debtor's name in the office indicated in subsection (c)(3)(B); and

(2) before the notification date, the secured party:

(A) did not receive a response to the request for information; or

(B) received a response to the request for information and sent an authenticated notification of disposition to each secured party or other lienholder named in that response whose financing statement covered the collateral.

**NOTES:**
**OFFICIAL COMMENT**
   1. **Source.** Former Section 9-504(3).
   2. **Reasonable Notification.** This section requires a secured party who wishes to dispose of collateral under Section 9-610 to send "a reasonable authenticated notification of disposition" to specified interested persons, subject to certain exceptions. The notification must be reasonable as to the manner in which it is sent, its timeliness (i.e., a reasonable time before the disposition is to take place), and its content. See Sections 9-612 (timeliness of notification), 9-613 (contents of notification generally), 9-614 (contents of notification in consumer-goods transactions).
   3. **Notification to Debtors and Secondary Obligors.** This section imposes a duty to send notification of a disposition not only to the debtor but also to any secondary obligor. Subsections (b) and (c) resolve an uncertainty under former Article 9 by providing that secondary obligors (sureties) are entitled to receive notification of an intended disposition of collateral, regardless of who created the security interest in the collateral. If the surety created the security interest, it would be the debtor. If it did not, it would be a secondary obligor. (This Article also resolves the question of the secondary obligor's ability to waive, pre-default, the right to notification-waiver generally is not permitted. See Section 9-602.) Section 9-605 relieves a secured party from any duty to send notification to a debtor or secondary obligor unknown to the secured party.
   Under subsection (b), the principal obligor (borrower) is not always entitled to notification of disposition.
   **Example:** Behnfeldt borrows on an unsecured basis, and Bruno grants a security interest in her car to secure the debt. Behnfeldt is a primary obligor, not a secondary obligor. As such, she is not entitled to notification of disposition under this section.

4. **Notification to Other Secured Parties.** Prior to the 1972 amendments to Article 9, former Section 9-504(3) required the enforcing secured party to send reasonable notification of the disposition:

except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this State or who is known by the secured party to have a security interest in the collateral.

The 1972 amendments eliminated the duty to give notice to secured parties other than those from whom the foreclosing secured party had received written notice of a claim of an interest in the collateral.

Many of the problems arising from dispositions of collateral encumbered by multiple security interests can be ameliorated or solved by informing all secured parties of an intended disposition and affording them the opportunity to work with one another. To this end, subsection (c)(3)(B) expands the duties of the foreclosing secured party to include the duty to notify (and the corresponding burden of searching the files to discover) certain competing secured parties. The subsection imposes a search burden that in some cases may be greater than the pre-1972 burden on foreclosing secured parties but certainly is more modest than that faced by a new secured lender.

To determine who is entitled to notification, the foreclosing secured party must determine the proper office for filing a financing statement as of a particular date, measured by reference to the "notification date," as defined in subsection (a). This determination requires reference to the choice-of-law provisions of Part 3. The secured party must ascertain whether any financing statements covering the collateral and indexed under the debtor's name, as the name existed as of that date, in fact were filed in that office. The foreclosing secured party generally need not notify secured parties whose effective financing statements have become more difficult to locate because of changes in the location of the debtor, proceeds rules, or changes in the name that is sufficient as the name of the debtor under Section 9-503(a).

Under subsection (c)(3)(C), the secured party also must notify a secured party who has perfected a security interest by complying with a statute or treaty described in Section 9-311(a), such as a certificate-of-title statute.

Subsection (e) provides a "safe harbor" that takes into account the delays that may be attendant to receiving information from the public filing offices. It provides, generally, that the secured party will be deemed to have satisfied its notification duty under subsection (c)(3)(B) if it requests a search from the proper office at least 20 but not more than 30 days before sending notification to the debtor and if it also sends a notification to all secured parties (and other lienholders) reflected on the search report. The secured party's duty under subsection (c)(3)(B) also will be satisfied if the secured party requests but does not receive a search report before the notification is sent to the debtor. Thus, if subsection (e) applies, a secured party who is entitled to notification under subsection (c)(3)(B) has no remedy against a foreclosing secured party who does not send the notification. The foreclosing secured party has complied with the notification requirement. Subsection (e) has no effect on

U.C.C. § 9-611

the requirements of the other paragraphs of subsection (c). For example, if the foreclosing secured party received a notification from the holder of a conflicting security interest in accordance with subsection (c)(3)(A) but failed to send to the holder a notification of the disposition, the holder of the conflicting security interest would have the right to recover any loss under Section 9-625(b).

5. **Authentication Requirement.** Subsections (b) and (c) explicitly provide that a notification of disposition must be "authenticated." Some cases read former Section 9-504(3) as validating oral notification.

6. **Second Try.** This Article leaves to judicial resolution, based upon the facts of each case, the question whether the requirement of "reasonable not ification" requires a "second try," i.e., whether a secured party who sends notification and learns that the debtor did not receive it must attempt to locate the debtor and send another notification.

7. **Recognized Market; Perishable Collateral.** New subsection (d) makes it clear that there is no obligation to give notification of a disposition in the case of perishable collateral or collateral customarily sold on a recognized market (e.g., marketable securities). Former Section 9-504(3) might be read (incorrectly) to relieve the secured party from its duty to notify a debtor but not from its duty to notify other secured parties in connection with dispositions of such collateral.

8. **Failure to Conduct Notified Disposition.** Nothing in this Article prevents a secured party from electing not to conduct a disposition after sending a notification. Nor does this Article prevent a secured party from electing to send a revised notification if its plans for disposition change. This assumes, however, that the secured party acts in good faith, the revised notification is reasonable, and the revised plan for disposition and any attendant delay are commercially reasonable.

9. **Waiver.** A debtor or secondary obligor may waive the right to notification under this section only by a post-default authenticated agreement. See Section 9-624(a).

10. **Other Law.** Other State or federal law may contain requirements concerning notification of a disposition of property by a secured party. For example, federal law imposes notification requirements with respect to the enforcement of mortgages on federally documented vessels. Principles of statutory interpretation and, in the context of federal law, supremacy and preemption determine whether and to what extent law other than this Article supplements, displaces, or is displaced by this Article. See Sections 1-103, 1-104, 9-109(c)(1).

## Emerging Issues Analysis

*Professor Margit Livingston on Punishing Creditor Misbehavior in U.C.C. Article 9 Foreclosure Sales*

In the current recessionary climate, more and more secured creditors are faced with the prospect of defaults by their debtors and the need to proceed with foreclosure of their security interests.   Article 9 of the Uniform Commercial Code requires secured parties undertaking foreclosure sales to follow certain procedures or risk losing their ability to receive a deficiency judgment against the debtor.+

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-613* (2014)

§ 9-613. CONTENTS AND FORM OF NOTIFICATION BEFORE DISPOSITION OF COLLATERAL: GENERAL

Except in a consumer-goods transaction, the following rules apply:

(1) The contents of a notification of disposition are sufficient if the notification:

(A) describes the debtor and the secured party;

(B) describes the collateral that is the subject of the intended disposition;

(C) states the method of intended disposition;

(D) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

(E) states the time and place of a public disposition or the time after which any other disposition is to be made.

(2) Whether the contents of a notification that lacks any of the information specified in paragraph (1) are nevertheless sufficient is a question of fact.

(3) The contents of a notification providing substantially the information specified in paragraph (1) are sufficient, even if the notification includes:

(A) information not specified by that paragraph; or

(B) minor errors that are not seriously misleading.

(4) A particular phrasing of the notification is not required.

(5) The following form of notification and the form appearing in *Section 9-614(3)*, when completed, each provides sufficient information:

**NOTIFICATION OF DISPOSITION OF COLLATERAL**

To: ___ [*Name of debtor, obligor, or other person to which the notification is sent*]

From: ___ [*Name, address, and telephone number of secured party*]

Name of Debtor(s): ___ [*Include only if debtor(s) are not an addressee*]

[*For a public disposition:*]

U.C.C. § 9-613

We will sell [or lease or license, *as applicable*] the ___ [*describe collateral*] [to the highest qualified bidder] in public as follows:

Day and Date: ___

Time: ___

Place: ___

[*For a private disposition:*]

We will sell [or lease or license, *as applicable*] the ___ [*describe collateral*] privately sometime after ___ [*day and date*].

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell [or lease or license, *as applicable*] [for a charge of $ ___]. You may request an accounting by calling us at ___ [*telephone number*]

**[End of Form]**

NOTES:
OFFICIAL COMMENT
   1. **Source.** New.
   2. **Contents of Notification.** To comply with the "reasonable authenticated notification" requirement of Section 9-611(b), the contents of a notification must be reasonable. Except in a consumer-goods transaction, the contents of a notification that includes the information set forth in paragraph (1) are sufficient as a matter of law, unless the parties agree otherwise. (The reference to "time" of disposition means here, as it did in former Section 9-504(3), not only the hour of the day but also the date.) Although a secured party may choose to include additional information concerning the transaction or the debtor's rights and obligations, no additional information is required unless the parties agree otherwise. A notification that lacks some of the information set forth in paragraph (1) nevertheless may be sufficient if found to be reasonable by the trier of fact, under paragraph (2). A properly completed sample form of notification in paragraph (5) or in Section 9-614(a)(3) is an example of a notification that would contain the information set forth in paragraph (1). Under paragraph (4), however, no particular phrasing of the notification is required.
   This section applies to a notification of a public disposition conducted electronically. A notification of an electronic disposition satisfies paragraph (1)(E) if it states the time when the disposition is scheduled to begin and states the electronic location. For example, under the technology current in 2010, the Uniform Resource Locator (URL) or other Internet address where the site of the public disposition can be accessed suffices as an electronic location.

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-614* (2014)

§ 9-614. CONTENTS AND FORM OF NOTIFICATION BEFORE DISPOSITION OF COLLATERAL: CONSUMER-GOODS TRANSACTION

In a consumer-goods transaction, the following rules apply:

(1) A notification of disposition must provide the following information:

(A) the information specified in *Section 9-613(1)*;

(B) a description of any liability for a deficiency of the person to which the notification is sent;

(C) a telephone number from which the amount that must be paid to the secured party to redeem the collateral under *Section 9-623* is available; and

(D) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

(2) A particular phrasing of the notification is not required.

(3) The following form of notification, when completed, provides sufficient information:

___ [*Name and address of secured party*]

___ [*Date*]

**NOTICE OF OUR PLAN TO SELL PROPERTY**

___ [*Name and address of any obligor who is also a debtor*]

Subject: ___ [*Identification of Transaction*]

We have your ___ [*describe collateral*], because you broke promises in our agreement.

[*For a public disposition:*]

We will sell ___ [*describe collateral*] at public sale. A sale could include a lease or license. The sale will be held as follows:

Date: ___

U.C.C. § 9-614

Time: ___

Place: ___

You may attend the sale and bring bidders if you want.

[*For a private disposition:*]

We will sell ___ [*describe collateral*] at private sale sometime after ___ [*date*]. A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you ___ [*will or will not, as applicable*] still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at ___ [*telephone number*].

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at ___ [*telephone number*] [or write us at ___ [*secured party's address*]] and request a written explanation. [We will charge you $ ___ for the explanation if we sent you another written explanation of the amount you owe us within the last six months.]

If you need more information about the sale call us at ___ [*telephone number*]] [or write us at ___ [*secured party's address*]].

We are sending this notice to the following other people who have an interest in ___ [*describe collateral*] or who owe money under your agreement:

___ [*Names of all other debtors and obligors, if any*]

**[End of Form]**

(4) A notification in the form of paragraph (3) is sufficient, even if additional information appears at the end of the form.

(5) A notification in the form of paragraph (3) is sufficient, even if it includes errors in information not required by paragraph (1), unless the error is misleading with respect to rights arising under this article.

(6) If a notification under this section is not in the form of paragraph (3), law other than this article determines the effect of including information not required by paragraph (1).

**NOTES:**
**OFFICIAL COMMENT**
1. **Source.** New.

U.C.C. § 9-614

2. **Notification in Consumer-Goods Transactions.** Paragraph (1) sets forth the information required for a reasonable notification in a consumer-goods transaction. A notification that lacks any of the information set forth in paragraph (1) is insufficient as a matter of law. Compare Section 9-613(2), under which the trier of fact may find a notification to be sufficient even if it lacks some information listed in paragraph (1) of that section.

3. **Safe-Harbor Form of Notification; Errors in Information.** Although paragraph (2) provides that a particular phrasing of a notification is not required, paragraph (3) specifies a safe-harbor form that, when properly completed, satisfies paragraph (1). Paragraphs (4), (5), and (6) contain special rules applicable to erroneous and additional information. Under paragraph (4), a notification in the safe-harbor form specified in paragraph (3) is not rendered insufficient if it contains additional information at the end of the form. Paragraph (5) provides that non-misleading errors in information contained in a notification are permitted if the safe-harbor form is used *and if the errors are in information not required by paragraph (1).* Finally, if a notification is in a form other than the paragraph (3) safe-harbor form, other law determines the effect of including in the notification information other than that required by paragraph (1).

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-623* (2014)

§ 9-623. RIGHT TO REDEEM COLLATERAL

(a) **[Persons that may redeem.]** A debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral.

(b) **[Requirements for redemption.]** To redeem collateral, a person shall tender:

(1) fulfillment of all obligations secured by the collateral; and

(2) the reasonable expenses and attorney's fees described in *Section 9-615(a)(1)*.

(c) **[When redemption may occur.]** A redemption may occur at any time before a secured party:

(1) has collected collateral under *Section 9-607*;

(2) has disposed of collateral or entered into a contract for its disposition under *Section 9-610*; or

(3) has accepted collateral in full or partial satisfaction of the obligation it secures under *Section 9-622*.

NOTES:
OFFICIAL COMMENT

1. **Source.** Former Section 9-506.

2. **Redemption Right.** Under this section, as under former Section 9-506, the debtor or another secured party may redeem collateral as long as the secured party has not collected (Section 9-607), disposed of or contracted for the disposition of (Section 9-610), or accepted (Section 9-620) the collateral. Although this section generally follows former Section 9-506, it extends the right of redemption to holders of nonconsensual liens. To redeem the collateral a person must tender fulfillment of all obligations secured, plus certain expenses. If the entire balance of a secured obligation has been accelerated, it would be necessary to tender the entire balance. A tender of fulfillment obviously means more than a new promise to perform an existing promise. It requires payment in full of all monetary obligations then due and performance in full of all other obligations then matured. If unmatured secured obligations remain, the security interest continues to secure them (i.e., as if there had been no default).

U.C.C. § 9-623

3. **Redemption of Remaining Collateral Following Partial Enforcement.** Under Section 9-610 a secured party may make successive dispositions of portions of its collateral. These dispositions would not affect the debtor's, another secured party's, or a lienholder's right to redeem the remaining collateral.

4. **Effect of "Repledging."** Section 9-207 generally permits a secured party having possession or control of collateral to create a security interest in the collateral. As explained in the Comments to that section, the debtor's right (as opposed to its practical ability) to redeem collateral is not affected by, and does not affect, the priority of a security interest created by the debtor's secured party.

## UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 1. DEFAULT AND ENFORCEMENT OF SECURITY INTEREST

*U.C.C. § 9-624* (2014)

§ 9-624. WAIVER

(a) **[Waiver of disposition notification.]** A debtor or secondary obligor may waive the right to notification of disposition of collateral under *Section 9-611* only by an agreement to that effect entered into and authenticated after default.

(b) **[Waiver of mandatory disposition.]** A debtor may waive the right to require disposition of collateral under *Section 9-620(e)* only by an agreement to that effect entered into and authenticated after default.

(c) **[Waiver of redemption right.]** Except in a consumer-goods transaction, a debtor or secondary obligor may waive the right to redeem collateral under *Section 9-623* only by an agreement to that effect entered into and authenticated after default.

**NOTES:**
**OFFICIAL COMMENT**
1. **Source.** Former Sections 9-504(3), 9-505, 9-506.
2. **Waiver.** This section is a limited exception to Section 9-602, which generally prohibits waiver by debtors and obligors. It makes no provision for waiver of the rule prohibiting a secured party from buying at its own private disposition. Transactions of this kind are equivalent to "strict foreclosures" and are governed by Sections 9-620, 9-621, and 9-622.

UNIFORM COMMERCIAL CODE
Copyright 2014, by The American Law Institute and
National Conference of Commissioners on Uniform State Laws

ARTICLE 9. SECURED TRANSACTIONS
PART 6. DEFAULT
SUBPART 2. NONCOMPLIANCE WITH ARTICLE

*U.C.C. § 9-625* (2014)

§ 9-625. REMEDIES FOR SECURED PARTY'S FAILURE TO COMPLY WITH ARTI-CLE

(a) **[Judicial orders concerning noncompliance.]** If it is established that a secured party is not proceeding in accordance with this article, a court may order or restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions.

(b) **[Damages for noncompliance.]** Subject to subsections (c), (d), and (f), a person is liable for damages in the amount of any loss caused by a failure to comply with this article. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing.

(c) **[Persons entitled to recover damages; statutory damages if collateral is consum-er goods.]** Except as otherwise provided in *Section 9-628*:

(1) a person that, at the time of the failure, was a debtor, was an obligor, or held a se-curity interest in or other lien on the collateral may recover damages under subsection (b) for its loss; and

(2) if the collateral is consumer goods, a person that was a debtor or a secondary obli-gor at the time a secured party failed to comply with this part may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time-price differential plus 10 percent of the cash price.

(d) **[Recovery when deficiency eliminated or reduced.]** A debtor whose deficiency is eliminated under *Section 9-626* may recover damages for the loss of any surplus. However, a debtor or secondary obligor whose deficiency is eliminated or reduced under *Section 9-626* may not otherwise recover under subsection (b) for noncompliance with the provi-sions of this part relating to collection, enforcement, disposition, or acceptance.

(e) **[Statutory damages: noncompliance with specified provisions.]** In addition to any damages recoverable under subsection (b), the debtor, consumer obligor, or person named as a debtor in a filed record, as applicable, may recover $ 500 in each case from a person that:

(1) fails to comply with *Section 9-208*;

U.C.C. § 9-625

(2) fails to comply with *Section 9-209*;

(3) files a record that the person is not entitled to file under *Section 9-509(a)*;

(4) fails to cause the secured party of record to file or send a termination statement as required by *Section 9-513(a)* or (c);

(5) fails to comply with *Section 9-616(b)(1)* and whose failure is part of a pattern, or consistent with a practice, of noncompliance; or

(6) fails to comply with *Section 9-616(b)(2)*.

(f) [**Statutory damages: noncompliance with *Section 9-210*.**] A debtor or consumer obligor may recover damages under subsection (b) and, in addition, $ 500 in each case from a person that, without reasonable cause, fails to comply with a request under *Section 9-210*. A recipient of a request under *Section 9-210* which never claimed an interest in the collateral or obligations that are the subject of a request under that section has a reasonable excuse for failure to comply with the request within the meaning of this subsection.

(g) [**Limitation of security interest: noncompliance with *Section 9-210*.**] If a secured party fails to comply with a request regarding a list of collateral or a statement of account under *Section 9-210*, the secured party may claim a security interest only as shown in the list or statement included in the request as against a person that is reasonably misled by the failure.

**NOTES:**
**OFFICIAL COMMENT**

1. **Source.** Former Section 9-507.

2. **Remedies for Noncompliance; Scope.** Subsections (a) and (b) provide the basic remedies afforded to those aggrieved by a secured party's failure to comply with this Article. Like all provisions that create liability, they are subject to Section 9-628, which should be read in conjunction with Section 9-605. The principal limitations under this Part on a secured party's right to enforce its security interest against collateral are the requirements that it proceed in good faith (Section 1-203), in a commercially reasonable manner (Sections 9-607 and 9-610), and, in most cases, with reasonable notification (Sections 9-611 through 9-614). Following former Section 9-507, under subsection (a) an aggrieved person may seek injunctive relief, and under subsection (b) the person may recover damages for losses caused by noncompliance. Unlike former Section 9-507, however, subsections (a) and (b) are not limited to noncompliance with provisions of this Part of Article 9. Rather, they apply to noncompliance with any provision of this Article. The change makes this section applicable to noncompliance with Sections 9-207 (duties of secured party in possession of collateral), 9-208 (duties of secured party having control over deposit account), 9-209 (duties of secured party if account debtor has been notified of an assignment), 9-210 (duty to comply with request for accounting, etc.), 9-509(a) (duty to refrain from filing unauthorized financing statement), and 9-513(a) or (c) (duty to provide termination statement). Subsection (a) also modifies the first sentence of former Section 9-507(1) by adding the references to "collec-

U.C.C. § 9-625

tion" and "enforcement." Subsection (c)(2), which gives a minimum damage recovery in consumer-goods transactions, applies only to noncompliance with the provisions of this Part.

3. **Damages for Noncompliance with This Article.** Subsection (b) sets forth the basic remedy for failure to comply with the requirements of this Article: a damage recovery in the amount of loss caused by the noncompliance. Subsection (c) identifies who may recover under subsection (b). It affords a remedy to any aggrieved person who is a debtor or obligor. However, a principal obligor who is not a debtor may recover damages only for noncompliance with Section 9-616, inasmuch as none of the other rights and duties in this Article run in favor of such a principal obligor. Such a principal obligor could not suffer any loss or damage on account of noncompliance with rights or duties of which it is not a beneficiary. Subsection (c) also affords a remedy to an aggrieved person who holds a competing security interest or other lien, regardless of whether the aggrieved person is entitled to notification under Part 6. The remedy is available even to holders of senior security interests and other liens. The exercise of this remedy is subject to the normal rules of pleading and proof. A person who has delegated the duties of a secured party but who remains obligated to perform them is liable under this subsection. The last sentence of subsection (d) eliminates the possibility of double recovery or other over-compensation arising out of a reduction or elimination of a deficiency under Section 9-626, based on noncompliance with the provisions of this Part relating to collection, enforcement, disposition, or acceptance. Assuming no double recovery, a debtor whose deficiency is eliminated under Section 9-626 may pursue a claim for a surplus. Because Section 9-626 does not apply to consumer transactions, the statute is silent as to whether a double recovery or other over-compensation is possible in a consumer transaction.

Damages for violation of the requirements of this Article, including Section 9-609, are those reasonably calculated to put an eligible claimant in the position that it would have occupied had no violation occurred. See Section 1-106. Subsection (b) supports the recovery of actual damages for committing a breach of the peace in violation of Section 9-609, and principles of tort law supplement this subsection. See Section 1-103. However, to the extent that damages in tort compensate the debtor for the same loss dealt with by this Article, the debtor should be entitled to only one recovery.

4. **Minimum Damages in Consumer-Goods Transactions.** Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9-507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted. Subsection (c)(2) leaves the treatment of statutory damages as it was under former Article 9. A secured party is not liable for statutory damages under this subsection more than once with respect to any one secured obligation (see Section 9-628(e)), nor is a secured party liable under this subsection for failure to comply with Section 9-616 (see Section 9-628(d)).

Following former Section 9-507(1), this Article does not include a definition or explanation of the terms "credit service charge," "principal amount," "time-price differential," or

U.C.C. § 9-625

"cash price," as used in subsection (c)(2). It leaves their construction and application to the court, taking into account the subsection's purpose of providing a minimum recovery in consumer-goods transactions.

5. **Supplemental Damages.** Subsections (e) and (f) provide damages that supplement the recovery, if any, under subsection (b). Subsection (e) imposes an additional $ 500 liability upon a person who fails to comply with the provisions specified in that subsection, and subsection (f) imposes like damages on a person who, without reasonable excuse, fails to comply with a request for an accounting or a request regarding a list of collateral or statement of account under Section 9-210. However, under subsection (f), a person has a reasonable excuse for the failure if the person never claimed an interest in the collateral or obligations that were the subject of the request.

6. **Estoppel.** Subsection (g) limits the extent to which a secured party who fails to comply with a request regarding a list of collateral or statement of account may claim a security interest.