**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JERRY PINKS, individually and on behalf of others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>M & T BANK CORP.,<br><br>　　　　　　　　Defendant. | Civil Action No. 13-cv-1730—LAK—RLE<br><br>**DECLARATION OF MICHAEL P. RYAN** |

　　　　I, Michael P. Ryan, hereby depose and say:

　　　　1.　　I am over the age of twenty-one (21) years and am competent to testify to the facts stated in this Declaration. The facts and statements contained in this Declaration are based on my personal knowledge and review of M&T business records.

　　　　2.　　I am currently employed at M&T Bank ("M&T") as Group Vice President, Customer Asset Management.

　　　　3.　　Attached as Exhibit 1 is a true and correct copy of the Notice of Repossession and Sale of Merchandise that M&T sent to Plaintiff Jerry Pinks on or around July 29, 2010 after the repossession of the 2009 Big Country trailer (the "Notice").

　　　　4.　　The Notice accurately stated the past due payments on the loan ($990.50), accrued late charges ($138.25), repossession fees ($1,000.00), and total amount due ($2,128.75) as of July 29, 2010.

　　　　5.　　The amounts listed in the Notice were the actual unpaid amounts due and owing under Plaintiff's retail installment contract and security agreement relating to the Big Country trailer as of July 29, 2010.

6. Under the terms of Plaintiff's retail installment contract and security agreement relating to the Big Country trailer, which is attached as Exhibit 2, the total debt under the contract was not automatically accelerated upon default. *See* Ex. 2 at 2. Instead, M&T had the option to accelerate the debt. *Id.*

7. M&T did not immediately accelerate Plaintiff's debt after the repossession and as of July 29, 2010 in order to provide Plaintiff with a better opportunity to cure his default and redeem the Big Country trailer.

8. M&T accelerated Plaintiff's total debt in connection with the September 15, 2010 auction of the trailer.

9. M&T provided an actual accounting free of charge in the Notice because, based on its experience, the actual accounting provides a customer with the necessary information to allow him or her to promptly redeem the repossessed vehicle, if he or she so desires.

10. After the Big Country trailer was sold at auction on September 15, 2010, M&T sent Plaintiff a Notice of Sale, which is attached as Exhibit 3.

11. The Notice of Sale accurately informed Plaintiff of the total amount that he still owed M&T. This amount is indicated on the Notice of Sale as the "Total Amount Due/Deficiency."

12. After M&T repossessed the 2008 Yellowstone motor home and sold it at auction on July 16, 2009, M&T sent Plaintiff a Notice of Sale, which is attached as Exhibit 4.

13. The Notice of Sale accurately informed Plaintiff of the total amount that he still owed M&T. This amount is indicated on the Notice of Sale as the "Total Amount Due/Deficiency."

14. Attached as Exhibit 5 is a true and correct copy of the letter that M&T's counsel, Roy W. Arnold, sent to Plaintiff's counsel on February 26, 2015 (excluding the spreadsheet of "Confidential" South Carolina transaction information) (the "February 26, 2015 Letter").

15. As explained in the February 26, 2015 Letter, the data collected in the spreadsheet regarding repossession and sale transactions of consumer goods collateral in South Carolina from March 14, 2010 until June 24, 2012 demonstrates that the potential amount in controversy regarding the putative South Carolina class is substantially less than $5,000,000.

16. The information relating to the amount in controversy regarding the putative South Carolina class contained in the spreadsheet attached to the February 26, 2015 Letter was obtained from M&T's electronic customer information system and manual examination of individual customer transaction records.

17. The South Carolina transaction information was provided after months of investigation and review of individual customer transaction files.

18. Per Plaintiff's request, the South Carolina transaction information excluded customers who were discharged in bankruptcy or against whom a judgment has been obtained or was pending. *See* Ex. 5.

19. Attached hereto as Exhibit 6 is a true and correct copy of the letter that M&T's counsel, Roy W. Arnold, sent to Plaintiff's counsel on November 16, 2015 (excluding the spreadsheet of "Confidential" South Carolina transaction information) (the "November 16, 2015 Letter").

20. As set forth in the November 16, 2015 letter, M&T produced an updated spreadsheet of the "Confidential" South Carolina transaction information that was previously

provided to Plaintiff's counsel on February 26, 2015. *See* Ex. 6. A copy of the spreadsheet, which is attached as Exhibit 7, has been submitted under seal for the Court's review.

21. As set forth in the November 16, 2015 letter, M&T also produced the transaction documents underlying certain of the information set forth in the spreadsheet, to the extent available, in redacted form. *See* Ex. 6.

22. The South Carolina transaction information spreadsheet demonstrates that 172 of the 176 repossession transactions (97.72%) still owe M&T a deficiency balance as to which M&T can file a claim or counterclaim. *See* Ex. 7.

23. Certain debtors in the nineteen other states and the District of Columbia for which Plaintiff seeks class certification would likewise still owe M&T a deficiency balance following the repossession and sale of the consumer goods collateral as to which M&T can file a claim or counterclaim.

24. Per the parties' agreement, the information provided by M&T in its Supplemental Response to Plaintiff's Interrogatory No. 8 did not exclude customers who filed for and were discharged from bankruptcy following the repossession and sale of the consumer goods collateral.

25. In order to determine whether a particular customer who filed for bankruptcy and received a discharge scheduled a claim against M&T relating to the sufficiency of the notice of repossession sent by M&T, M&T would need to: (a) conduct an individual bankruptcy filing search for each customer; and (b) analyze the docket and filings of each bankruptcy case to determine whether a claim against M&T was scheduled and, if so, whether that claim was abandoned by the bankruptcy estate.

26. Any such review of individual bankruptcy dockets and filings would be enormously time consuming and expensive.

27. The information provided by M&T in its Supplemental Response to Plaintiff's Interrogatory No. 8 did not exclude persons from whom M&T obtained a release or a signed statement renouncing the right to be sent a notification of disposition pursuant to applicable state law.

28. A review of individual customer files underlying the transactions would be necessary in order to determine with certainty whether M&T obtained a release or a signed statement renouncing the right to be sent a notification of disposition pursuant to applicable state law from a particular customer.

29. Throughout the period from March 14, 2010 to the present, M&T operates banking branches in the State of Maryland, and M&T makes consumer goods financing loans directly to consumers and also purchases consumer goods' installment sale financing contracts in Maryland. These loans are made pursuant to the Maryland Credit Grantor Closed End Credit Law, Md. Code Ann., Com. Law §§ 12-1001, *et seq.*"

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 20, 2016

Michael P. Ryan