# United States District Court
# Southern District of New York

_____

| | |
|---|---|
| **JERRY PINKS,** individually and on behalf of others similarly situated, | ) |
| | ) |
| | ) |
| _Plaintiffs,_ | ) |
| v. | ) |
| | ) |
| **M&T BANK CORP.,** | ) |
| | ) |
| | ) |
| _Defendant._ | ) |

**No.: 1:13-cv-1730-LAK-RLE**

_____)

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
CLASS CERTIFICATION
(corrected copy, filed 03/06/2017)**

**HERZFELD & RUBIN, P.C.**
Daniel V. Gsovski (dg4413)
125 Broad Street
New York, New York 1004-1300
Telephone: (212) 471-8512
E-mail: dgsovski@herzfeld-rubin.com
ATTORNEYS FOR PLAINTIFFS
(other counsel listed on signature pages)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................iii

INTRODUCTION ..........................................................................................................1

ARGUMENT .................................................................................................................2

I.   MR. PINKS' INDIVIDUAL CLAIM RAISES NO ISSUES THAT AFFECT CERTIFICATION. .................................................................................................2

    A.   Mr. Pinks Has Article III Standing to Assert his Individual Claim. .....................2

    B.   Mr. Pinks Is Not Required to Establish Article III Standing for Class Claims. .................4

    C.   Mr. Pinks' Satisfaction of all Applicable Rule 23 Requirements Confirms His "Class Standing" to Bring This Case. ...............................................5

    D.   Mr. Pinks Is Not Required to Establish "Statutory Standing." .............................6

    E.   Mr. Pinks' Claim Is Not Time-Barred. .................................................................7

    F.   Mr. Pinks Is an Adequate and Typical Class Representative. ................................8

II.   M&T RAISES NO CLASSWIDE ISSUES WHICH PRECLUDE CERTIFICATION. ...............................................................................................14

    A.   "Substantial Compliance" Does Not Apply to Consumer-Goods Notifications Governed by UCC § 9-614. ...........................................................14

    B.   M&T's Unasserted Purported Counterclaims Against Absent Class Members Cannot Defeat Certification in This Action. ...................................16

    C.   The Burden of Identifying Eligible Class Members and Applying Exclusions Based on M&T's Records Falls on the Plaintiff, Not M&T. .......................18

    D.   There Are No Non-uniform Accrual Events for Statute of Limitations  Purposes which Defeat Certification. .................................................................19

    E.   There Are No Tolling Issues in This Case. .........................................................22

III.   M&T RAISES NO ISSUES THAT ADVERSELY IMPACT CLASS SIZE AND SCOPE. ............................................................................................................22

    A.   There Are No Actual or Potential "Conflicts" Between UCC § 9-614's Notice Provisions and the Notice Provisions under Connecticut's, Ohio's, D.C.'s or New York's Retail Installment Sales Acts. .......................................22

    B.   M&T Does Not Dispute Mr. Pinks' Showing That a Three-year Statute of Limitations Applies in New York, Pennsylvania, Florida, Kentucky, New

i

Hampshire, Rhode Island, Texas and Vermont and That a Two-year Period Applies in Virginia. ...........................................................................................28

C.      In the Remaining Jurisdictions, Controlling Appellate Authority Eliminates Any Potentially-Applicable Limitations Periods of Less Than Three Years.  ............30

D.      M&T's Affirmative Defenses of Set-off Are Manageable and Do Not Defeat Certification. ....................................................................................................32

E.      There Are No Manageability Issues in Calculating Ohio Statutory Damages.............33

CONCLUSION ..............................................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Allapattah Services v. Exxon Corp.,*
  333 F.3d 1248 (11th Cir. 2003) ................................................................................18

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591, 117 S. Ct. 2231 (1997) ..........................................................................8

*American Psychiatric Ass'n. v. Anthem Health,*
  821 F.3d 352 (2d Cir. 2016) ..................................................................................... 3, 7

*Atlanta & West Point R. Co. v. Coleman,*
  84 S.E. 499 (Ga. 1914) ..............................................................................................31

*Baffa v. Donaldson,*
  222 F.3d 52 (2d Cir. 2000). ................................................................................... 9, 10

*Cotchett v. Avis Rent A Car System,*
  56 F.R.D. 549 (S.D.N.Y. 1979) .......................................................................... 17, 18

*Coxall v. Clover Commercial Corp.,*
  4 Misc. 3d 654, 781 N.Y.S.2d 567 (N.Y. City Civ. Ct. 2004) ...................................15

*Cubler v. Trumark Fin. Credit Union,*
  83 A.3d 235 (Pa. Ct. App. 2013) ...............................................................................29

*Delphic Automotive Systems, LLC. v. Capital Community Economic/Industrial Development Corp., Inc.,*
  434 S.W. 481 (Ky. 2014) ............................................................................................16

*Denny v. Deutsche Bank, AG,*
  443 F.3d 253 (2d Cir. 2006) ........................................................................................4

*Desiano v. Er-Lambert & Co.,*
  467 F.3d 85 (2d Cir. 2006) ..........................................................................................8

*Doll v. Chicago Title Ins. Co.,*
  246 F.R.D. 683 (D. Kan. 2007) .................................................................................10

*Donoghue v. Bulldog Investors Gen. P'ship,*
  696 F.3d 170 (2d Cir. 2012) ........................................................................................4

*E.S. Parks Shellac Co. v. Harris,*
  129 N.E. 617 (Mass 1921) .........................................................................................31

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ...................................................................................................19

*Ennis Management, LLC. v. Ennis Property Management, Inc.,*
  2009 WL 468952559 (Conn. Sup. Ct., Nov. 17, 2009) ........................................................25

*Factors, Etc. v. Pro Arts, Inc.,*
  652 F.2d 278 (2d Cir. 1981) ........................................................................................................8

*Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.,*
  254 F.R.D. 68 (E.D.N.C. 2008) ...............................................................................................17

*Federal Election Commission v. Akins,*
  524 U.S. 11 (1998) ........................................................................................................................3

*Gen. Elec. Capital Corp. v. NET Transportation, Inc.,*
  2006 WL 3741828 *1-2 (D.Conn. Dec. 10, 2006) ................................................................16

*Green v. Brennan,*
  136 S.Ct. 1769 (2016) ................................................................................................................20

*Hales v. HSBC U.S.A., NA,*
  347 Fed. Appx. 698 (2d Cir. 2009) ........................................................................................29

*Hall v. Hall,*
  91 A. 949 (Me. 1914) ................................................................................................................31

*Hallmark v. Cohen & Slamowitz, LLP.,*
  203 F.R.D. 410 (W.D.N.Y. 2016) ...........................................................................................19

*Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettier,*
  2001 WL 1543516 (N.D. Ill. 2001) ........................................................................................11

*Heaven v. Trust Co. Bank,*
  118 F.3d 385 (11th Cir. 1997) ........................................................................................17, 18

*Holley v. Coggin Pontiac,*
  43 N.C. App. 229, 259 S.E.2d 1 (1979) .................................................................................31

*In re Bank of New York Mellon Corp. Forex Transactions Litig.,*
  42 F.Supp.3d 520 (S.D.N.Y. 2014) ........................................................................................17

*In re Parmalat Securities Litig.,*
  477 F.Supp.2d 602 (S.D.N.Y. 2007) ........................................................................................3

*In re Visa Check/Mastermoney Antitrust Litig.,*
  280 F.3d 124 (2d Cir. 2001) .....................................................................................................12

*Intellivision v. Microsoft Corp.,*
  784 F.Supp.2d 356 (S.D.N.Y. 2011) ......................................................................................13

*Intellivision v. Microsoft Corp.*,
    484 Fed.Appx. 616 (2d Cir. 2012)............................................................................13

*Jacobs v. Healey Ford-Suburu, Inc.*,
    652 A.2d 496 (Conn. 1995)..........................................................................24, 25, 26

*Jenkins v. Hyundai Motor Financing Co.*,
    2008 WL 781862 (E.D. Ohio, Mar. 24 2008)..........................................................28

*Kindle v. Dejana*,
    2016 WL 16242648 (E.D.N.Y. Apr. 25, 2016) ........................................................10

*Lexmark Int.'l v. State Control Components, Inc.*,
    134 S.Ct. 1377 (2014)..................................................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................2, 3, 4

*N.W Airlines, Inc. v. County of Kent*,
    510 U.S. 355, 365, 114 S.Ct. 855 (1994)..................................................................7

*Nat'l. Super Spuds, Inc. v. New York Mercantile Exch.*,
    75 F.R.D. 40 (S.D.N.Y. 1977) ..................................................................................17

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012),
       *cert. denied*, 133 S. Ct. 1624 (2013) ................................................................5, 6

*Omnicom Group, Inc. Sec. Litig.*,
    2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007) .........................................................11

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340, 98 S.Ct. 2380 (1978) .........................................................................19

*Parker v. George Thompson Ford, Inc.*,
    83 F.R.D. 378 (N.D.Ga. 1979)..................................................................................17

*Pavarini & Wyne, Inc. v. Title Guar. & Sur. Co.*,
    36 App. D.C. 348 (D.C. App. 1911).........................................................................31

*Plumb v. Griffin*,
    50 A.1 (Conn. 1901).................................................................................................31

*Pressley v. Tupperware Long Term Disability Plan*,
    553 F.3d 334 (4th Cir. 2009)....................................................................................8

*Public Citizen v. U.S. Department of Justice*,
    491 U.S. 440 (1989)....................................................................................................3

*Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.,*
   659 F.3d 234 (2d Cir. 2011) ...................................................................................12

*Sheridan Suzuki, Inc. v. Caruso Auto Sales, Inc.,*
   442 N.Y.S.2d 957 (Sup. Ct. 1981) ..........................................................................27

*Spokeo, Inc. v. Robins,*
   136 S.Ct. 1540 (2016) ........................................................................................ 3, 4

*State Dept. of Environmental Protection v. Larchmont Farms,*
   628 A.2d 761 (N.J. App. 1993) ...............................................................................31

*State v. Rositto,*
   331 A.2d 385 (Del. 1974) .......................................................................................32

*States Res. Corp. v. Gregory,*
   339 SW3d *591* (Mo.Ct. App. 2011) .......................................................................16

*StreetEasy, Inc., v. Chertock,*
   651 Fed. Appx. 37 (2d Cir. 2016).............................................................................5

*Surowitz v. Hilton Hotels Corp.,*
   383 U.S. 363, 86 S. Ct. 845 (1966) ...........................................................................9

*Thomas v. Branch Banking &Trust,*
   443 F.Supp.2d 806 (N.D. W.Va. 2006) ..................................................................32

*Vasquez v. Karjanis & Sons Motors, Inc., LLC.,*
   2012 WL 6965392 (Conn. Sup. Ct. Dec. 21, 2012) ...............................................21

Veleron Holding, B.V. v. Stanley,
   117 F. Supp. 3d 404 (S.D.N.Y. 2015).......................................................................3

*Waithe v. Citigroup, Inc.,*
   983 N.Y.S.2d 207 (N.Y. Sup. Ct. 2013) .................................................................16

*Wissman v. Pittsburgh Nat. Bank,*
   942 F.2d 867 (4th Cir. 1991) ..................................................................................13

*Woodburn v. Western Union Telegraph Co.,*
   23 S.E. 116 (Ga. 1895)...........................................................................................31

**Statutes**

10 Del.C. § 8115...............................................................................................................32

14 M.R.S. § 858 ...............................................................................................................31

28 U.S.C. § 1292 ................................................................................................................4

C.G.S. § 36a-785 ..........................................................................................................24, 25

C.G.S. § 52-585 ..............................................................................................................31

D.C. Mun. Regs § 346.3 ..................................................................................................27

D.C. Mun. Regs. tit. 16 § 341.4 ......................................................................................26

D.C. Mun. Regs. tit. 16 § 346.1 ......................................................................................27

Ga. Code Ann. § 9-3-28 ..................................................................................................31

KRS § 355.1-103(3) ........................................................................................................16

M.G.L.A.  260 § 5 ..........................................................................................................31

N.C.G.S.C. § 1-54 ..........................................................................................................31

N.J.S.A. § 2A:14-10 ........................................................................................................31

N.Y. Pers. Prop. Law § 307 ............................................................................................28

N.Y. Pers. Prop. Law § 316 ............................................................................................27

O.R.C. § 1309.611 ..........................................................................................................26

O.R.C. § 1309.614 ..........................................................................................................26.

O.R.C. § 1309.625 ..........................................................................................................34

O.R.C. § 1317.12 ........................................................................................................25, 26

O.R.C. § 1317.16 ........................................................................................................25, 26

S.C. Code Ann. § 15-3-570 ..............................................................................................7

UCC § 9-102(26) ............................................................................................................12

UCC §-9-201 ..............................................................................................................passim

UCC § 9-611 ..............................................................................................................passim

UCC § 9-613 ..............................................................................................................15, 16

UCC § 9-614 ..............................................................................................................passim

UCC §-9-625 ..............................................................................................................passim

**Other Authorities**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002) ..........................................18

White & Summers, *Uniform Commercial Code* (6th ed.) ........................................................... .15, 21

William B. Rubenstein, *Newberg on Class Actions* (5th ed.) ........................................................17

## INTRODUCTION

Two points advanced by M&T in opposition are correct. Maryland, by statute, has effectively eliminated the class claim in this case (see, Argument II A, *infra),* and Mr. Pinks has filed herewith his Amended Motion for Class Certification which removes that state. DI 169.  Ohio merely adds one more step to the automatic, statutory-damage calculation. Argument III E, *infra.*   Neither of these points thus poses any barrier to certification.

As to M&T's remaining contentions, Argument I (*infra* at 2–14) deals with "threshold" issues ostensibly related to Mr. Pinks – his individual, class or "statutory" standing, and his adequacy and typicality as a class representative plaintiff.  Argument II (*infra* at 14–22) rebuts M&T's "across the board" positions addressing certification of any multi-state class. These include: a purported non-uniform standard for secured party compliance under UCC § 9-614(1)'s notice provisions (*i.e.,* "strict compliance" in some jurisdictions versus "substantial compliance" in others); an allegedly non-ascertainable class; the presence of potential deficiency claims which M&T maintains are compulsory counterclaims defeating predominance; and non-uniform statute of limitations accrual and tolling issues.  Argument III (*infra* at 22–34) discusses certain points which, even if they had merit, would not bar certification, but could impact the scope of the class. They are: potential conflicts between Retail Installment Sales Acts (RISAs) in Connecticut, Ohio, D.C. and New York and those jurisdictions' UCC notice provisions; statute of limitations issues affecting ten of the twenty included jurisdictions; the inclusion of some class members against whom M&T may hold a deficiency judgment and who may be subject to individualized *res judicata* defenses under different state laws; and the calculation of statutory damages in Ohio.

As will be apparent, the only features truly "common" to all aspects of M&T's argument are their lack of merit and the absence of any recognized impediment to certification.

## ARGUMENT

I.  **MR. PINKS' INDIVIDUAL CLAIM RAISES NO ISSUES THAT AFFECT CERTIFICATION.**
    A.  **Mr. Pinks Has Article III Standing to Assert His Individual Claim.**

After three years of litigation devoted largely to failed dismissal efforts, M&T only now contends that Mr. Pinks lacks Article III standing to bring even his individual claim "because he has no concrete injury-in-fact." DI 153 at 22, 22-24. This new argument runs directly counter to M&T's prior concessions that Mr. Pinks has standing to bring his individual claim (*e.g.,* DI 51 at 1, DI 58 at 4), leading this Court to note that "the Parties do not dispute that Mr. Pinks has Article III standing in his own right[.]" DI 89 at 7.

Mr. Pinks asserts that "Defendant M&T…violated…the Uniform Commercial Code ('UCC') by selling [Mr. Pinks'] repossessed collateral…without providing compliant notification of disposition first." DI 158 at 1. He alleges a violation of UCC § 9-611(b), requiring: "a secured party that disposes of collateral…shall send to [the debtor] reasonable…notification of disposition." DI 1 ¶¶ 15, 16.  The sale at issue was preceded by a notification of disposition, the "Pinks Notice," which this Court has ruled "insufficient as a matter of law." DI 22 at 5.  M&T admits that as a result of the sale M&T asserted a deficiency liability of $41,963.82 against him. DI 13 at 3.

The sale of a specific item of a plaintiff's property in violation of the law satisfies all traditional indicia of standing.  It is "an invasion of a legally protected interest," Mr. Pinks' property rights.   The invasion was "(a) concrete and particularized," specific to his property, and particularized as to him as the owner and debtor.  The "invasion" was "(b) actual or imminent, not conjectural or hypothetical" – it actually happened. It was "linked by a causal connection between the injury and the conduct" of which the plaintiff complains, *i.e.,* M&T sent the Notice and sold Mr. Pinks' property. And, the "invasion" is of a type that "will be redressed by a favorable decision," by statutory damages under UCC §-9-625(c)(2).  See, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

(1992).  Accord, *American Psychiatric Ass'n. v. Anthem Health*, 821 F.3d 352, 359 (2d Cir. 2016) (plaintiffs' "personal financial stakes in the suit . . . meet the constitutional requirements of injury in fact, causation, and redressability," citing *Lujan, supra*, even where plaintiffs ultimately found to have no cause of action or right to recover under the statute at issue.) See also, *In re Parmalat Securities Litig.*, 477 F. Supp. 2d 602, 608 (S.D.N.Y. 2007) (Kaplan, J.) (Article III standing based solely on the "injury of incurring a legal obligation [to repay a debt] [plaintiffs] are unable to meet"); *Veleron Holding, B.V. v. Stanley*, 117 F. Supp. 3d 404, 426-27 (S.D.N.Y. 2015) (same).  M&T does not cite even one decision in which a plaintiff with a "personal financial stake" in his own property allegedly sold in violation of law failed to satisfy Article III's requirements of a "case or controversy."

Instead, M&T focuses exclusively on the Pinks Notice itself, which is belittled as a "bare procedural violation, divorced from any concrete harm." DI 153 at 23. The sole basis for M&T's complete about face on the issue of Mr. Pinks' Article III standing would appear to be the notion that *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) somehow changed the existing law on Article III standing's "injury-in-fact" component. DI 153 at 21-22.  In fact, not a word in *Spokeo* addressed, let alone altered, any of the doctrines which clearly establish Mr. Pinks' standing with respect to the sale of his own collateral and his resulting deficiency liability. In any event, even if standing here were predicated on the Pinks Notice and nothing more, well-settled doctrines which *Spokeo* reaffirmed establish his individual standing, exactly in accord with M&T's prior concessions on the point. *Spokeo* cited *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989), which held that the inability to obtain information required by statute "constitutes a sufficiently distinct injury to provide standing to sue," and *Federal Election Commission v. Akins*, 524 U.S. 11, 20–25 (1998), "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1550.  These doctrines apply equally to M&T's failure to make statutorily-required information available in the Pinks Notice.

More broadly, all Justices in *Spokeo* explicitly recognized that, in the words of the Second Circuit, "a legally protected interest may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 175 (2d Cir. 2012). The *Spokeo* majority reaffirmed that "'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" 136 S. Ct. at 1549 (quoting *Lujan,* 504 U. S. at 580 (Kennedy, J., concurring)). The concurrence and dissent were in accord. *Spokeo*, 136 S.Ct. at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights."); *id.*, 136 S.Ct. at 1554 (Ginsburg, J., dissenting) ("Congress has the authority to confer rights and delineate claims for relief where none existed before.") Thus the non-compliant Notice alone confers standing on Mr. Pinks to seek redress through statutory damages.

Accordingly, the underpinnings of Mr. Pinks' individual standing remain undisturbed and in most instances were reaffirmed by *Spokeo*. The class he seeks to certify is also "defined in such a way that anyone within it would have standing," as his Class Definition requires a sale of each class member's collateral following M&T's sending of the Pinks Notice to each of them. *Denny v. Deutsche Bank, AG*, 443 F.3d 253, 264 (2d Cir. 2006).

**B.    Mr. Pinks Is Not Required to Establish Article III Standing for Class Claims.**

For the fourth time in this case, M&T asserts that "Plaintiff lacks Article III standing with respect to claims under the laws of states other than South Carolina[.]") (DI 153 at 20.). On three prior occasions, this Court has rejected this notion – in denying M&T's Rule 12(c) Motion for "Partial Judgment on the Pleadings" (DI 98), in denying reconsideration of that ruling (DI 104), and finally, in denying leave to appeal under 28 U.S.C. § 1292. DI 113. Apart from the fact that they are

sound rulings of law, these rulings are now the "law of the case." *StreetEasy, Inc. v. Chertock,* 651 Fed. Appx. 37, 40 (2d Cir. 2016).

M&T's Rule 12(c) Motion asserted the exact same claim – "Mr. Pinks' purported class should be dismissed insofar as he seeks to assert a claim under the [UCC] laws of any state other than South Carolina, because he lacks [Article III] standing to pursue any claim under the laws of states in which he does not reside or in which he suffered no injury." DI 53 at 1; DI 69 at 2.  This Court squarely rejected it, holding that "*NECA*[*-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 1624 (2013)] cannot be fairly read to support the idea that Article III standing analysis concerns a named plaintiff's ability to bring other class members' claims." DI 89 at 7.  Judge Kaplan fully endorsed this finding, but determined that "class standing" had been adequately pled and denied the Motion. DI 98 at 1-2.  After reconsideration was denied, M&T unsuccessfully sought leave to appeal, arguing *inter alia* that these rulings had "resolved a controlling question of law on Article III standing[.]" DI 113 at 4.

"The law of the case doctrine requires that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case,' unless 'cogent' and 'compelling' reasons militate otherwise." *StreetEasy, Inc. v. Chertock,* 651 Fed. Appx. at 40.  M&T invokes no recognized "'compelling' and 'cogent' reasons" to jettison the law of the case doctrine, and its claim should be rejected for that reason alone.

C.   **Mr. Pinks' Satisfaction of all Applicable Rule 23 Requirements Confirms His "Class Standing" to Bring This Case.**

M&T argues that Mr. Pinks has not met his evidentiary burden with respect to his "class standing." DI 153 at 29.  Judge Kaplan ruled that evidence and arguments on this issue would be considered by way of Mr. Pinks' Rule 23 submissions in this briefing. DI 98 at 1-2.

M&T alleges that because Mr. Pinks lacks "statutory standing," he also necessarily lacks "class standing." DI 153 at 30. See, Argument I D, *infra,* addressing "statutory standing." M&T

argues that Mr. Pinks cannot meet the first prong of the *NECA-IBEW,* class standing test because he has no "actual injury." DI 153 at 29. In *NECA-IBEW,* the Second Circuit ruled that this prong is met when the plaintiff "personally has suffered some actual…injury as a result of the putatively illegal conduct of the defendant, *Blum* [*v. Yaretsky*], 457 U.S. [991,] 999 [(1982)]. . . ." *NECA-IBEW,* 693 F.3d at 162. In the *Blum* section *NECA* quoted, the Supreme Court articulated the standard for Article III standing, which Mr. Pinks has established. See, Argument I A, *infra*.

M&T also argues that Mr. Pinks fails to meet the second *NECA* prong, *i.e.,* that "such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the class." *NECA-IBEW, id.* But M&T's attacks and generalized cases concerning a lack of uniformity of laws with respect to the UCC do not hold up here. Stripped of rhetoric, M&T does not articulate one challenge to anything in Mr. Pinks' position and submissions, which demonstrate – state by state – that there are no textual variations in the relevant sections of Article 9 of the UCC with the exception of Maryland. See, Argument II A, *infra*. M&T cites no variations in the decisional standard for creditor compliance in any of the included jurisdictions. *Id.* There is no conflict with or displacement of the UCC by any RISA notice provisions. See, Argument III A, *infra*. Any variations in the law, UCC or otherwise, with respect to deficiency actions are irrelevant. See, Argument II B, *infra*. Finally, M&T does not dispute that every claim in this case, whether Mr. Pinks' or any class member's, rests upon common documents. He has fully met his burden of proving up the "same set of concerns" which this Court found were adequately alleged in his Complaint. DI 98.

### D.    Mr. Pinks Is Not Required to Establish "Statutory Standing."

Finally, M&T argues that Mr. Pinks "lacks statutory standing with respect to claims under the law of states other than South Carolina." DI 153 at 27, 27-28. This argument, aside from its fundamental unsoundness, is unavailable to M&T because 1) this Court has denied M&T's Rule

12(b)(6) Motion to Dismiss, (DI 7), in which it maintained Mr. Pinks had no claim for relief under South Carolina's UCC, (DI 22, 34); and, 2) M&T has conceded on the present Motion that Mr. Pinks has stated a claim for relief under the statute upon which he seeks to recover statutory damages. DI 153 at 28.

"Statutory standing" has recently been disavowed as a jurisdictional requirement in this Circuit. In *American Psychiatric Ass'n. v. Anthem Health,* 821 F.3d at 359, the Court of Appeals expressly discarded the "requirement formerly known as 'statutory standing'" as "'misleading' and 'a misnomer,'" which the court "will avoid . . . going forward," because "'the absence of a cause of action does not implicate subject matter jurisdiction,'" relying upon *Lexmark Int'l, Inc. v Static Control Components, Inc.,* 134 S.Ct. 1377, 1387 (2014). Thus, "'whether a…statute creates a claim for relief is not jurisdictional.'" 821 F.3d at 359, quoting, *N.W Airlines, Inc. v. County of Kent,* 510 U.S. 355, 365 (1994). The sole question is whether the plaintiff seeking to recover is "not among those expressly authorized to sue" such that he "lacks a cause of action." *Id.* at 361. Here, M&T's "jurisdictional challenge" is no more than attempted re-litigation of its denied Rule 12(b)(6) Motion.

## E.    Mr. Pinks' Claim Is Not Time-Barred.

M&T argues, for the first time, that the applicable statute in South Carolina for Mr. Pinks' claim is one year under  S.C. Code Ann. § 15-3-570, which would time-bar his claim.[1]  Though no South Carolina appellate court decision has considered which statute of limitation applies to UCC § 9-625 damages claims, (see, DI 148-1 at 23), the Fourth Circuit has construed the one-year statute that M&T favors, § 15-3-570, so as to preclude its application to this case in a decision to which "conclusive deference" is owed in this Circuit.

South Carolina's one-year limitation in § 15-3-570 applies to "an action upon a statute for a penalty or forfeiture when the action is given in whole or in part, *to any person who will prosecute for it.*"

---

[1]  M&T does not explain why it did not join this challenge to its previous Rule 12(b)(6) Motion to Dismiss filed in May 2013. DI 8.

(emphasis added.)  In *Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 339 (4th Cir. 2009), the Fourth Circuit considered § 15-3-570 in connection with an ERISA penalty. The *Pressley* court compared § 15-3-570 to a three year statute, S.C. Code Ann. § 15-3-540(2), which applies to penalties recoverable by "the party aggrieved." *Id.*  Since recovery of the ERISA penalty was limited to "the party aggrieved," the court found the more specific provision of §15-4-540(2) controls over the more general "any person who will prosecute for it" language of § 15-3-570, which "was clearly intended to encompass more persons than only 'the party aggrieved[.]'" *Id.*  Recovery in this case – even if viewed (incorrectly) as a "statutory penalty" rather than "statutory damages" or a "statutory liability" – is permitted only by "the party aggrieved," *i.e.,* "the debtor" under UCC § 9-625.  It is thus controlled by § 15-3-540(2) under *Pressley.* The Second Circuit has made clear that "conclusive deference should be given to a federal court of appeals' interpretation of the law of a state within its circuit." *Desiano v. Er-Lambert &Co.,* 467 F.3d 85, 89 (2d Cir. 2006); *Factors Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278, 279, 283 (2d Cir. 1981)(same).  *Pressley* accordingly settles the matter, and the shortest potentially available South Carolina limitations period is three years.

## F.     Mr. Pinks Is an Adequate and Typical Class Representative.

A plaintiff's adequacy to act as a class representative focuses "on uncovering conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 2251 (1997)  M&T nowhere forthrightly disputes that the liability claim of every member of the class rests ultimately on two facts – 1) the claimant was a "debtor" under UCC § 9-611, as to whom M&T was a "secured party that disposes of collateral", and 2) M&T sent the class member a Pinks Notice (*e.g.,* a § 9-611 "Notification Before Sale or Disposition of Collateral") prior to sale or disposition of the class member's collateral. As to each absent class member, these facts are established by the same two M&T documents as with Mr. Pinks. DI 154-1, 154-3.  No factual issues can arise as to the existence and contents of these documents, and nothing

else about the life of any class member is relevant to any issue in this case or could possibly generate

a conflict of interest on any relevant matter. Yet, M&T maintains that Mr. Pinks' claim is somehow

"atypical" or "not representative" of other consumer obligors in the exact same position.

As to adequacy, the charge that Mr. Pinks is overly reliant on his attorneys (DI 153 at 57 n.

30) does not readily square with M&T's failure to challenge counsel's qualifications to conduct the

litigation. It also overlooks the fact that this case, in which counsel can only seek a fee from a

common fund, does not create divergent financial interests between the named plaintiff, the class

and his counsel, all of whom have the same interest in maximizing the class recovery.   M&T's

personal attacks on Mr. Pinks are also, to put the matter kindly, disfavored:

> The Supreme Court in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-374, 15 L. Ed.
> 2d 807, 86 S. Ct. 845 (1966) expressly disapproved of attacks on the adequacy of a
> class representative based on the representative's ignorance.
> *****
> The acknowledgment of advice and support from both his father and his attorneys
> cannot support a conclusion that [plaintiff] is unable to pursue the litigation on
> behalf of the class. Far from showing [plaintiff's] ignorance of the litigation or his
> inability to serve as class representative, it demonstrates [his] ability to appreciate the
> limits of his knowledge and rely on those with the relevant expertise.

*Baffa v. Donaldson*, 222 F.3d 52, 61-62 (2d Cir. 2000). M&T's attacks on Mr. Pinks' understanding of

his obligations as limited to his deposition testimony that matters be "fair, legal and honest" (DI 153

at 8) glosses over his Declaration, which confirms his understanding that this case concerns legal

deficiencies in the Pinks Notice and seeks monetary damages for that violation.  DI 140, ¶¶ 4, 5.

Lastly, paragraph 6 ("I understand that I cannot accept a settlement that does not compensate other

members of the class, and still seek to serve as a class representative,") is confirmed by Mr. Pinks'

own conduct when tested "under fire" in this case. In August 2014, concurrent with its attempt to

reopen his bankruptcy, M&T offered him $30,000 to settle this case on an individual basis, which as

this continued litigation establishes, was rejected. DI 155-16 at 3.

As to his involvement in the lawsuit, Ms. Lindsay's Declaration details numerous phone calls and over 40 e-mails with Mr. Pinks concerning the case, which clearly demonstrate active and continuing concern with the case. DI 146, ¶ 7; see, *e.g., Baffa, supra* (two meetings with counsel sufficient); *Kindle v. Dejana*, 2016 WL 16242648, *3 (E.D.N.Y. Apr. 25, 2016) (representative adequacy established by affidavit). Mr. Pinks comes to Court a fully adequate representative of the class, with no antagonistic interests, in a case in which no testimony from anyone will be offered in a non-jury trial – if there are any factual issues to try.

M&T's "non-ad hominem" attacks on his adequacy fare no better. M&T argues that Mr. Pinks' application of New York's borrowing statute to limit the Class Period to no more than three years (two in Virginia) would "sacrifice" the claims of "putative class members that would be timely under their own state's applicable statute of limitations in order to comply with [New York's] shorter statute." DI 153 at 50, 56-57. M&T relies upon *Doll v. Chicago Title Ins. Co.,* 246 F.R.D. 683 (D. Kan. 2007) as authority for this argument. This contention totally misapprehends *Doll.*

In *Doll,* the Kansas named plaintiff's own claims (state law conversion, breach of fiduciary duty) were filed after the two-year limitations period for such claims in Kansas had run, but might individually be salvaged at trial under Kansas' discovery rule. 246 F.R.D. at 687. To keep the door open on her own claim, plaintiff proposed a five-year class period for everyone in her multi-state class. *Id.* at 689. This scheme would have fatally prejudiced non-Kansas class members whose claims were still timely under their own state by roping them into Kansas and then applying that state's two year limitation to dismiss their claims on the merits – absent discovery rule tolling facts. *Id.* at 688. Here, there is no attempt to create a Class Period longer than the statute of limitations governing the representative's claim: "The 'Class Period' is determined by the statute of limitations." DI 158 at 7. No potential class claims that arose prior to the Class Period can be affected in any manner, much less extinguished or "sacrificed," as they are not within the Class Definition.

-10-

M&T also, under the banner of lack of typicality, points to three defenses "unique" to Mr. Pinks that "threaten to become the focus of [this] litigation": 1) his claim is barred by a South Carolina one-year statute of limitations; 2) he "engaged in a straw man purchase" of his collateral; and, 3) he is subject to "judicial estoppel due to prior representations to the bankruptcy court" concerning the worth of his UCC claim. DI 153 at 52-54. None affects his ability to fairly and adequately represent the class or defeats typicality under Rule 23(a). None, in any event, has merit.

In considering whether a purported unique defense to the named plaintiff will unacceptably detract from the focus of the litigation, courts in this circuit "need not resolve the merits of the defense," but will refuse certification "only when confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff." *Omnicom Group, Inc. Sec. Litig.,* 2007 WL 1280640, *4 (S.D.N.Y. Apr. 30, 2007). None here comes close to meeting this standard.

The applicable limitations period under South Carolina law is a pure question of law, whether a one-year or a three-year statute, requiring no individualized or factual inquiry. See, Argument I D, *infra.* See also, *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri,* 2001 WL 1543516, at *5 (N.D. Ill. 2001) (Claim of a "unique defense" was rejected, even where applicable statute of limitations to the named plaintiff was different from that of the rest of the class, because "the issue of which statute of limitations applies in this case can easily be resolved at trial.") The question is also hardly "unique" to Mr. Pinks, as M&T's own discovery indicates that of the 174 potential class accounts in South Carolina, all but 36 were filed more than one year after notice and sale. DI 86, filed under seal. Thus by definition any attack on the statute of limitations raises a "common question of law" with respect to the putative South Carolina class members.

M&T's "straw man defense," based on Mr. Pinks having bought the collateral for his daughter's use, is so "unique" that its elements and application are apparently known only to M&T.

M&T cites no authority for it and fails even to articulate its elements beyond the "straw man" epithet.

M&T can provide no authority for the specious argument that a debtor who permits a household or family member to use his collateral, or who relies upon a family member's funds to repay his debt, is barred from the remedies extended by the UCC. A family member's use of the debtor's collateral is expressly anticipated within the UCC's definition of a "consumer transaction," and in no way affects Mr. Pinks' right to recovery in this litigation.[2] Mr. Pinks alone was the owner and the "debtor." His, and his alone, was the secured debt which M&T freely elected to purchase from the dealer/seller/assignor.[3]  Mr. Pinks, and no one else, is the person from whom M&T repossessed the "Big Country" vehicle on default, and to whom it addressed the Pinks Notice prior to selling his collateral and asserting a deficiency claim.

As to "judicial estoppel," M&T nowhere explains how the defense could have any effect on the merits of Mr. Pinks' claim or class liability.  This is because this estoppel could never do more than cap Mr. Pinks' own recovery at $5,000.  This, on its face, is irrelevant to certification. See, *e.g., Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 253 (2d Cir. 2011); *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) (individual damage issues are no barrier to certification).  Further, M&T does not attempt an explanation of how the amount of Mr. Pinks' damages – the only matter on which M&T claims he is somehow "estopped" – could possibly

---

[2] "'Consumer transaction' means a transaction in which (i) an individual incurs an obligation primarily for personal, family or household purposes,…and (iii) the collateral is held or acquired primarily for personal, family or household purposes." UCC § 9-102(26).

[3]  The "straw man" aspect of his purchase was fully known to the dealer/seller of the collateral, who was also the assignor of the loan contract to M&T and thus the source of imputed knowledge to M&T.  It was in fact the dealer that suggested this accommodation to deal with Mr. Pinks' daughter's poor creditworthiness. DI 155-1 at 24, Tr. at 26, l.l. 19-23.

become "the focus of this litigation" when all underlying facts are matters of record, legal issues are *res judicata* with respect to his prior Chapter 7 bankruptcy proceeding, and application of this defense is a pure question of law for this Court.

M&T's claim, beyond its irrelevance, is both meritless and foreclosed by M&T's own unsuccessful efforts to raise these exact complaints in the bankruptcy court. Judicial estoppel in a diversity case is controlled by federal law. *Intellivision v. Microsoft Corp.,* 784 F.Supp.2d 356, 363 (S.D.N.Y. 2011). All of the following elements must be present:

> (1) that a party's new position is "clearly inconsistent" with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party seeking to assert this new position "would derive and unfair advantage or impose an unfair detriment on the opposing party if not estopped." …Our courts have "further limit[ed] judicial estoppels to situations where the risk of inconsistent results with its impact on judicial integrity is certain."

*Intellivision v. Microsoft Corp.,* 484 Fed.Appx. 616, *2 (2d Cir. 2012) (internal citations omitted.)

M&T's claim meets none of the required elements of a judicial estoppel.  In denying M&T's Motion to Reopen, the bankruptcy court – which was "wary of the timing of M&T Bank's motion on the heels of [this Court's] denial of its motion to dismiss" (DI 155-17 at 8) – held that Mr. Pinks' valuation of his UCC claim in bankruptcy was "necessarily uncertain," rendering his counsel's representations to the court about the UCC claim's value appropriate.[4]   M&T does not explain how a representation that is "necessarily uncertain" can constitute a "clear" and "consistent" position.

---

[4]    In contrast to a debtor's valuation of her real property – a value which is perhaps more readily ascertainable and verifiable – the debtor's valuation of her litigation claim is necessarily uncertain. *Wissman v. Pittsburgh Nat. Bank*, 942 F.2d 867, 871 (4th Cir. 1991) (holding that valuing litigation as "unknown" is appropriate in the context of placing a value on an exemption.) A debtor's disclosure of the litigation asset as "speculative" with an unknown, uncertain, or even ultimately incorrect value is therefore consistent with the debtor's duty to disclose.

DI 155-17 at 6 (other internal citations omitted).

-13-

M&T also complains about an out-of-court statement Mr. Pinks' counsel made to the trustee at the 11 U.S.C. § 341 First Meeting of Creditors. DI 153 at 53. The bankruptcy court found this statement to be a non-binding "estimate." DI 155-17 at 6.  The estimate was not made "to the bankruptcy court" as M&T maintains, but to an adversary (the trustee) in an out of court setting. The bankruptcy court itself was never aware of it, much less "persuaded" to "accept" the estimate. As to the final element, "unfair detriment" to M&T or "unfair advantage" over it, the bankruptcy court found that M&T "was listed as a creditor and was notified of the bankruptcy filing but was not present at the § 341 meeting or otherwise participate in the bankruptcy." DI 155-17 at 20.  M&T cannot be heard to claim that the estimate misled or thwarted the trustee in her investigation, as this position was fully litigated and expressly rejected by the bankruptcy court's order. *Id.*

## II.   M&T RAISES NO CLASSWIDE ISSUES WHICH PRECLUDE CERTIFICATION.

### A.   "Substantial Compliance" Does Not Apply to Consumer-Goods Notifications Governed by UCC § 9-614.

M&T repeatedly argues that the UCC law involved in this case is too non-uniform in the various class jurisdictions for the case to appropriately be certified as a multi-state class. *E.g.,* DI 153 at 3-4, 37-39. Yet while attacking as "profoundly untrue" Mr. Pinks' representations concerning the uniformity of the UCC in his evidentiary submission, Appendix 3 (flagging variations in the UCC texts as enacted in the included jurisdictions), M&T failed to identify *any* textual variations in the various UCC notice provisions at all – other than in Maryland. DI 153 at 37-41. And, while it offered Maryland "by way of illustration" to show that "statutory textual differences exist," DI 153 at 4, the fact is that Maryland is not an "illustration" of any other state's law.  It is all that M&T can find in the way of variations in the applicable texts.

The statutory standard for secured party compliance with its UCC's notice obligations lies squarely within the express language of the uniform text for consumer-goods notices, UCC § 9-614(1), and is readily apparent when compared to the standard for non-consumer notices, UCC § 9-

613. These two statutes are addressed in Mr. Pinks' Appendix 2 of the Official Texts. DI 141-2 at 31-34. Both apply in all class jurisdictions. Appendix 3, DI 141-3. No state has any variation altering these standards in any class jurisdiction, and M&T does not claim otherwise.

Nevertheless, M&T argues that the secured party's compliance standards 1) must be subjected to individual, state-by-state judicial interpretations, and 2) that such interpretations would necessarily vary or be too difficult for this Court to "predict." DI 153 at 41-42. Mr. Pinks submits this could happen only if the respective courts were to ignore the plain wording of a uniform statute and its equally unambiguous Official Comments in order to misapply the law.

Some notice information, such as the statement of the debtor's right to an accounting of his unpaid indebtedness, is indeed required in both non-consumer (§ 9-613) notices and consumer (§ 9-614) notices. However, the standard for creditor compliance changes depending upon whether the notice is for a consumer or non-consumer transaction. The "substantial compliance" standard found in § 9-613(2)-(3) is expressly limited to non-consumer notices (*i.e.,* "except in a consumer-goods transaction"). On the other hand, a consumer notice "must provide" the prescribed information, making "strict compliance" the standard. UCC § 9-614(1), DI 141-2 at 33.

As this Court ruled in denying M&T's Motion to Dismiss, "notice in a consumer goods transaction which does not contain information required by the statute is 'insufficient as a matter of law.'" DI 22 at 5, citing Cmt. 2, Official Comment to UCC § 9-614, DI 141-2 at 34. The Official Comment cited by this Court specifically distinguishes "Section 9-613(2), under which the trier of fact may find a notification to be sufficient even if it lacks some information listed in paragraph (1) of that section." *Id.* See, White & Summers, *Uniform Commercial Code* § 34-1 (6th ed.) ("The 'substantially complying' notice rule of 9-613(3) does not apply to consumer transactions."); *Coxall v. Clover Commercial Corp.,* 4 Misc. 3d 654, 781 N.Y.S.2d 567 (N.Y. City Civ. Ct. 2004)(cited, DI 22 at 9); *States Res. Corp. v. Gregory,* 339 S.W.3d 591, 597 (Mo. Ct. App. 2011) (cited by M&T at DI 153 at 41)

("Section 400.9-613(2)-(3)…sets forth a more relaxed notification provision that is applicable 'except in consumer-goods transactions.' Section 400.9.614 provides the rules for consumer-goods transactions[.]")

M&T maintains that "some" jurisdictions "permit 'substantial compliance' with commercial code requirements." DI 153 at 41. As authority for this position M&T cites only two cases. *Id.* M&T's reliance is misplaced as both involved § 9-613 notices, not § 9-614 notices: *Waithe v. Citigroup, Inc.*, 983 N.Y.S. 2d 207, *5 (N.Y. Sup. Ct. 2013) (Finding notice "substantially complies with UCC § 9-613(b)."); *Gen. Elec. Capital Corp. v. NET Transportation, Inc.*, 2006 WL 3741828, *1-2 (D. Conn. Dec. 18, 2006). (Dispute involving "certain commercial equipment" governed by UCC § 9-613.) M&T remains unable to cite even one "substantial compliance" case involving UCC § 9-614.

Finally, M&T argues that the Official Comment to UCC § 9-614 actually indicates non-uniformity in many states because Kentucky "did not adopt any of the model UCC's commentary." DI 153 at 41 n. 23. This contention applies only to Kentucky and, for good measure, is wrong. KRS § 355.1-103(3) provides: "Official Comments to the Uniform Commercial Code…represent legislative intent of the General Assembly and shall be used as a guide for interpretation of [the Kentucky UCC.]" Accord, *Delphic Automotive Systems, LLC. v. Capital Community Economic/Industrial Development Corp., Inc.*, 434 S.W. 481, 485 (Ky. 2014) ("In this case, we also have the benefit of Official Comments to the UCC provisions, Comments which the legislature has indicated 'represent the express legislative intent of the General Assembly and shall be used as a guide for interpretation.'")

## B.   M&T's Unasserted, Purported Counterclaims Against Absent Class Members Cannot Defeat Certification in This Action.

M&T asserts that its own unadjudicated claims for deficiency balances against the putative class members are "compulsory counterclaims" under Fed. R. Civ. P. 13(a)(1)(A), and therefore, they must be asserted in this case upon certification. DI 153 at 45-47. Because its "compulsory

counterclaims" raise a host of individualized issues, as well as implicate different legal standards among the various class jurisdictions and destroy any predominance, M&T maintains that the case cannot be certified. *Id.*

There are two recognized approaches to the issue of counterclaims, neither of which defeats certification. The first approach, adhered to by "[m]ost courts," according to a leading treatise, holds squarely that "counterclaims against absent class members – even those arising out of the same transaction and occurrence – are not authorized by Rule 13 because they are not an 'opposing party' as the term is used in that Rule." William B. Rubenstein, *Newberg on Class Actions* § 9:24 (5th ed.). "This Court," per Judge Kaplan, "agrees with those [courts] that have held that non-party putative class members are not properly considered 'opposing parties' under Rule 13." *In re Bank of New York Mellon Corp. Forex Transactions Litig.,* 42 F.Supp.3d 520, 527 (S.D.N.Y. 2014)   In *Forex* the question arose pre-certification. *Forex,* 42 F.Supp.3d at 522.   However, as Professor Rubenstein's comment makes clear, under this approach absent, unnamed class members are not "opposing parties" under Rule 13 at any point.

Without addressing (or even mentioning) *Forex*, M&T cites *Cotchett v. Avis Rent A Car System,* 56 F.R.D. 549 (S.D.N.Y. 1979); *Parker v. George Thompson Ford, Inc.,* 83 F.R.D. 378 (N.D. Ga. 1979); *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.,* 254 F.R.D. 68, 72 (E.D. N.C. 2008), and *Heaven v. Trust Co. Bank,* 118 F.3d 385 (11th Cir. 1997), arguing the that where "compulsory counterclaims" against absent class members create manageability problems that threaten predominance, the case should not be certified. DI 153 at 45. Particularly in light of *Forex, supra,* these cases cannot carry the day in this Court.   *Farrar,* in which no counterclaims were raised, is *dictum. Cotchett* was the authority for *Nat'l. Super Spuds, Inc. v. New York Mercantile Exch.,* 75 F.R.D. 40, 42 (S.D.N.Y. 1977), which Judge Kaplan specifically disagreed with in *Forex.* 42 F.Supp.3d at 527 n. 24.   *Parker*, which agrees with *Nat'l Super Spuds* and *Cotchett*, must for that reason also fall by the wayside.

M&T's reliance on the *Heaven v. Trust Bank* decision as "affirming denial of class certification because consideration of counterclaims 'would require the court to engage in multiple separate factual determinations,'" DI 153 at 4, overlooks the Eleventh Circuit's much more recent pronouncement in *Allapattah Services v. Exxon Corp.,* 333 F.3d 1248, 1259 n. 14 (11th Cir. 2003) which effectively undermines *Heaven's* apparent acceptance of the concept of Rule 13 "compulsory counterclaims" in class actions:

> A court may properly conclude that absent class members are not opposing or litigation adversaries for the purposes of Rule 13, and therefore *Rule 13 is inapplicable in a class context.* Because compulsory counterclaims can only be potentially involved when Rule 13 applies, if absent class members are not opposing parties within the meaning of the rule, it follows that any counterclaims that may be permitted in a class action are not governed by Rule 13 and *are purely discretionary with the court.*

(first emphasis added, second emphasis original), quoting 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 4:34, at 299-300 (4th ed. 2002).

The problem with M&T's position is that even if this Court were to find that it might entertain counterclaims in a class action in its sound discretion, M&T's argument – that "[t]he Court would be required to conduct mini-trials on those claims with fact discovery, witness testimony and documentary evidence. Moreover, …the states have adopted different [legal] approaches" for handling deficiency claims" (DI 153 at 46) – weighs heavily against doing so. See also, DI 153 at 5, 45-47. M&T's arguments concerning Mr. Pinks' purported lack of typicality because he is no longer subject to a deficiency counterclaim are inapposite for the same reason. DI 153 at 55-56.

### C.   The Burden of Identifying Eligible Class Members and Applying Exclusions Based on M&T's Records Falls on the Plaintiff, Not M&T.

Based on the Declaration of its Vice-President, Michael Ryan (DI 154), M&T maintains that to identify class members and cull out those subject to various proposed exclusions, such as a bankruptcy discharge barring a class member's claim, would be "enormously time-consuming and expensive." *Id.,* ¶ 26. This is facially inadequate. Thus, in *Hallmark v. Cohen & Slamowitz, LLP,* 203

F.R.D. 410, 417-20 (W.D.N.Y. 2016), the district court rejected as "conclusory" and refused to "rubber stamp" similarly unsupported claims, even when stated with far more particularity.

Apart from its inadequacy on its face, M&T's conclusory claim of burden mentions only "review" of loan documents.   DI 154, ¶ 17. This misplaces the burden at issue. The task of producing individual loan files properly falls on M&T.  See *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S.Ct. 2380 (1978).  However, it is Mr. Pinks who must take on the task of identifying class members to whom notice must be mailed from these materials.  *Id.*  Mr. Pinks' Motion for Certification applies for an order "directing the expeditious production by M&T of documents and information of the type produced with respect to South Carolina" to expedite this process.

Mr. Pinks understands that it is his obligation in the first instance, based on M&T records, to apply exclusions, such as bankruptcy discharges,releases or waivers (DI 153 at 17), other than those which M&T itself can easily apply as part of the production process (*e.g.*, its own employees, officers, directors, if any).  Disputes as to who is in and who is out can readily be resolved, if need be, by the Court. Should the burdens which the law imposes on Mr. Pinks and his counsel prove too crushing, M&T will be the beneficiary, as this action would fail for want of required notice. See, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). Mr. Pinks reasonably expects, just as surely as M&T must reasonably fear, that this will not happen.

**D.   There Are No Non-uniform Accrual Events for Statute of Limitations Purposes Which Defeat Certification.**

Mr. Pinks' Class Definition includes a provision that the sale of the class members' collateral "occurred during the 'Class Period.'" DI 158 at 6. This is a problem according to M&T because the cause of action may accrue from the date of the Pinks Notice, not the date of sale, and any class member who was sent the Notice prior to the Class Period, but whose sale did not occur until the Class Period, would be time-barred. DI 153 at 44. M&T also argues that Mr. Pinks has provided no analysis under the laws of each state as to appropriate accrual circumstances. *Id.*

Mr. Pinks disagrees. Because M&T does not challenge the applicability or uniformity of UCC § 9-611 as enacted in these twenty jurisdictions, this Court will determine what is the accrual event for the Class Period under the express statutory language of § 9-611 and its Official Comment. Mr. Pinks submits that the proper accrual event is the date of each class member's sale of collateral. However, even if the Court determines this is incorrect and finds the statute of limitations runs from the date of the Pinks Notice instead, this is no bar to certification as the Court is still applying a common, external event controlled by a uniform statute and the Class Definition can be adjusted accordingly.

Absent application of a discovery rule, a "canon" of statutory construction is that the earliest a statutory cause of action accrues is the time that it becomes fully actionable such that the plaintiff can file a claim for relief: "The most helpful canon in this context is 'the standard rule' for limitations periods… Ordinarily, a 'limitations period commences *when the plaintiff has a complete and present cause of action*.'…[A] cause of action does not become 'complete and present' for limitations purposes until the plaintiff can obtain relief[.]" *Green v. Brennan,* 136 S.Ct. 1769, 1776 (2016) (internal citations omitted) (emphasis added.)

Mr. Pinks has sued M&T for a violation of UCC § 9-611(b) (*e.g.,* SC Code Ann., § 36-9-611(b)) which provides: "(b)…a secured party that disposes of collateral under Section 36-9-610 [*i.e.,* in a 'commercially reasonable' sale] shall send to the persons specified in subsection (c) [*i.e.,* 'the debtor and any secondary obligor'] a reasonable notification of disposition." DI 141-2 at 27; DI 1 ¶¶15, 16 (emphasis added.) Thus any secured party that sends a notice that does *not* result in a sale (such as when a debtor timely redeems) is not a secured party "that disposes of collateral under Section 36-9-610." M&T's interpretation of § 9-611 as accruing at the time the notice was sent reads the controlling phrase "a secured party that disposes of collateral" out of the statute.

On the other hand, UCC § 9-614, the notification contents statute, deals only with the "rules" concerning the contents of notice: "In a consumer-goods notification, the following *rules* apply: (1) A notification of disposition *must provide the following information*[.]" 141-2 at 33. Therefore, § 9-614 is actionable only when read in conjunction with § 9-611.

In *Vasquez v. Karjanis & Sons Motors, Inc., LLC.,* 2012 WL 6965392, at *3 (Conn. Sup. Ct. Dec. 21, 2012) the obligor brought a UCC damages claim for statutory damages under UCC § 9-625(c)(2), based upon the secured party's failure to send compliant notice, but the unsold collateral was still impounded at the time of trial: "It is difficult, at least for the court, to see how the…UCC provisions §§ 42a-613(1)(E) and 42a-614(3) would provide a remedy in this case. The just mentioned UCC sections must be read in the context of § 42a-9-611 of the UCC which sets forth the requirements of notification." The *Vasquez* court continued, distinguishing a prior decision which it said could not be read to "give some affirmative right of action in a situation where no sale has ever occurred (as here) because of failure to comply with notice provisions that would apply to a *hypothetical sale*[.]" *Id.* (emphasis added.)   M&T, however, relies upon a South Carolina trial court order reaching a contra result which fails even to mention UCC § 9-611. DI 153 at 44.

M&T's misreading of the statute also means the secured party could never avoid liability by sending a revised notice.  The Official Comment is directly contra: "Nor does this Article prevent a secured party from sending a revised notification if its plans for disposition change. This assumes, however, that the secured party acts in good faith, [and] the revised notification is reasonable[.]" Cmt. 8, Official Comment to § 9-611, DI 148-2 at 30 (emphasis added.)[5] Thus, it is the sale that cuts off its right to correct a non-compliant notice.

When a non-compliant notice is sent, but no sale has yet occurred, the consumer obligor still

---

[5]  Construing the statute according to its plain text and clear Comment also best conforms to the purpose of the notice: "The purpose of the notice is to give the debtor an opportunity either to discharge the debt and redeem the collateral, to produce another purchaser, or to see that the sale is conducted in a commercially reasonable manner." *Vasquez, supra,* at *3, citing § 34-12 White & Summers, *Uniform Commercial Code*, 6th ed.

has a remedy. UCC § 9-625(a) provides: "If it is established that a secured party is not proceeding in accordance with this chapter, a court may order or restrain…disposition of collateral on appropriate terms and conditions." DI 148-2 at 39. It may enjoin the forthcoming sale, but there is no "complete and present" violation of § 9-611 to support statutory damages until a sale occurs.

E.      **There Are No Tolling Issues in This Case.**

M&T's also argues this case cannot be certified because tolling of statutes of limitation under each jurisdiction's different rules would create fatal manageability problems that "Plaintiff's Motion failed to address." DI 153 at 44. This is mystifying. No tolling issue can arise when a claim is filed within the statutory period. Here, the Class Period for each jurisdiction is expressly limited to the applicable statute of limitations period for that jurisdiction: "The 'Class Period' [for each jurisdiction] is determined by the applicable statute of limitations," which the Court will decide. DI 158 at 7.  Even if the Court were to apply a different statute of limitations in any one jurisdiction than that suggested by Mr. Pinks, the Class Definition would then be changed to adjust the Class Period to the corrected limitations period – but still no tolling is, or can be, invoked. Any potential class member who would have to rely upon tolling to extend the limitations period is not included in this Class Definition, and simply would not be bound by the rulings in this action. Such person could still file individually to assert his claim, and argue that an applicable tolling rule extends his time to file, as this action does not adversely affect his rights.

III.    **M&T RAISES NO ISSUES THAT ADVERSELY IMPACT CLASS SIZE AND SCOPE.**

A.      **There Are No Actual or Potential "Conflicts" Between UCC § 9-614's Notice Provisions and the Notice Provisions under Connecticut's, Ohio's, D.C.'s or New York's Retail Installment Sales Acts.**

M&T points with alarm to "potential conflicts" in four jurisdictions included in this Class Definition (Connecticut, Ohio, D.C., and New York), between the UCC notice provisions at issue in this case, and those jurisdictions' notice provisions under their Retail Installment Sales Acts

("RISAs".) DI 153 at 38-39. M&T maintains this is so even where it acknowledges that there are no express exemptions for RISA-covered secured parties within the text of those jurisdictions' UCCs, as was the case in Maryland, or where there are no RISAs that expressly exclude or remove RISA transactions from the UCC's notice requirements. *Id.* at 39. According to M&T, this potential conflict nevertheless exists because the "highest courts [in these four jurisdictions] have yet to address *definitively* the statutory conflict provisions under the commercial codes as they relate to post-repossession notice provided in accordance with state RISAs[.]" *Id.* (emphasis added.) As a result, "this Court would be put in the unenviable and unmanageable position of addressing these issues [of potential conflicts] on a state-by-state basis." *Id.*

M&T fails to point to a single jurisdiction among the twenty remaining jurisdictions where it can claim an actual conflict exists between the UCC notice provisions and state-specific RISA notice provisions, or where a court has held as much. Second, as to each of the four jurisdictions M&T does discuss, this argument is a smoke screen – there is not even a potential "conflict" in those jurisdictions, or even a reasonable reading of the RISAs to support a finding that a "conflict" exists.

In fact, M&T does not even articulate a theory of conflict in the four jurisdictions, and with good reason.  Its argument contravenes a controlling decision of the Connecticut Supreme Court; the express language of Ohio's RISA permitting inclusion of the two RISA notices with the UCC notice; D.C.'s regulatory language providing for cumulative remedies with the UCC's notice provisions; and the fact that reading a purported "conflict" into N.Y.'s MVRISA would leave the New York consumer with no damages remedy for a New York UCC notice violation.

1) **Connecticut**, like all class jurisdictions, has enacted UCC § 9-201 and the Official Comments which provides:

> (b)    A transaction subject to this article [Article 9] is subject to any applicable rule of law which establishes a different rule for consumers and sections 36a-555 to 36a-573, inclusive, and sections 36a-770 to 36a-786, inclusive.
> (c)    *In case of conflict between this article and a rule of law, statute or regulation described in subsection (b), the rule of law, statute or regulation controls.* Failure to comply with a statute

or regulation described in subsection (b) has only the effect the statute or regulation specifies.

## OFFICIAL COMMENT

Subsection (b) makes clear that certain transactions, although subject to this Article, *also are subject* to other applicable laws relating to consumers or specified in that subsection. Subsection (c) provides that the other law is controlling in the event of a conflict, and that a violation of other law does not *ipso facto* constitute a violation of this Article.

C.G.S. § 42a-9-201 with Official Comment (emphasis added.)

Thus as the Comment "makes clear," Article 9 transactions "also are subject" to any other state law – including ones that provide different rules for consumers – such that Article 9 transactions are not exempt from the "other laws." This rule applies universally *except* "in the event of a conflict" between Article 9 and the "other law" – in which case the "other law" is controlling.

Connecticut's purportedly "conflicting" RISA notice provision, C.G.S. § 36a-785(d) (DI 153 at 39), is part of Connecticut's Retail Installment Sales Financing Act ("RISFA"), and provides:

The holder of the contract shall give the retail buyer not less than ten days' written *notice of the time and place of any public sale, or the time after which any private sale or other intended disposition is to be made*, either personally or by registered mail or by certified mail, return receipt requested, directed to the retail buyer at his last-known place of business or residence.

C.G.S. § 36a-785(d) (emphasis added.) The notice requirements emphasized above are identical to those required in UCC § 9-614(1) (DI 148-2 at 33), and cannot conflict.

In *Jacobs v. Healey Ford-Suburu, Inc.*, 652 A.2d 496, 497 (Conn. 1995), the Supreme Court of Connecticut addressed a situation where the secured party failed to provide any notification of disposition to a consumer debtor. The issue was whether the debtor could recover UCC statutory damages under superseded UCC § 9-507(1) (which provided identical statutory damages as UCC § 9-625(c)(2) in this case), *and* statutory damages under Connecticut's RISFA (at superseded 42-98(b), which is now § 36a-785, the section which M&T cites.)[6] The trial court had found that the

---

[6] "In that case [*Jacobs v. Healy*] the Supreme Court was asked to determine whether a defendant that was found to have violated both General Statutes § 42-98, now § 36a-785 of the Retail Installment Sales Financing Act (RISFA) and

consumer could not recover damages under both. *Jacobs,* 652 A.2d at 502. The Connecticut Supreme Court reversed, relying upon a pre-revision version of UCC § 9-201 that a "transaction subject to the UCC is also subject to RISFA. A creditor must therefore comply with both RISFA and the UCC *unless a conflict exists.*" *Id.* (emphasis added.) The court then ruled, relying upon cases from Delaware, Maine, Pennsylvania, Tennessee, California, and Texas, that where "both [statutes] can apply simultaneously," there is no "conflict." *Id.* at 503-504. The court reasoned that "consumer legislation must be interpreted so as to implement its remedial purpose of protecting consumer buyers" and thus held, "in accord with the reasoning of other jurisdictions [that] have applied to resolve this issue, we conclude that there is no conflict between the remedy provisions of the RISFA and the UCC, in the absence of a clear mandate that the remedies are exclusive." *Id.*

2) **Ohio**'s RISA contains two sections which M&T claims potentially conflict with its UCC – O.R.C. § 1317.12 and 1317.16(B). DI 153 at 39. Section 1317.12 requires a notice:

> setting forth specifically the circumstances constituting the default and the amount by itemization that the debtor is required to pay to cure the default. *Any notice required by section 1309.611* [*i.e.,* UCC § 9-611] *or 1317.16 of the Revised Code may be included as part of the notice required by this section.*

O.R.C. § 1317.12 (emphasis added.) Neither of these RISA requirements – that the debtor be given a notice of the "circumstances" of default or the itemization of the amount to cure – is required under the UCC. But neither makes it impossible for a secured party to comply with both.

Section 1317.16(B) of the RISA, which M&T also cites, requires that the holder of the installment contract shall send:

> notification of the time and place of such [public] sale and of the minimum price for which such collateral will be sold, together with a statement that the debtor may be held liable for any deficiency resulting from such sale[.]

---

relevant notice provisions of article nine of the UCC was liable for damages under both statutory schemes." *Ennis Management, LLC. v. Ennis Property Management, Inc.,* 2009 WL 468952559 at *4 (Conn. Sup. Ct., Nov. 17, 2009)

O.R.C. § 1317.16(B).  Section 1317.16(B)'s first requirement, "notification of time and place of such [public] sale," mirrors UCC § 9-614(1) for a public sale (*e.g.,* O.R.C. § 1309.614(1)(a).) The second requirement of a "statement that the debtor may be held liable for any deficiency resulting from the sale" corresponds to UCC § 9-614(1)(b)'s (*e.g.,* O.R.C. 1309.614(1)(b)'s) requirement that the debtor be provided with "a description of any liability for a deficiency." Two separate statutes imposing identical obligations are not in "conflict." *Jacobs v. Healy Ford-Suburu,* 652 A.2d at 502.   The "minimum price" of the sale is not required in a UCC notice; therefore, this is a "different rule" for a supplemental requirement which does not "conflict."

In fact,  O.R.C. § 1317.12 obviates even any theoretical conflict by expressly providing that the RISA cure notice under that section, as well as the RISA disposition notice under § 1317.16(B), "may be included" with "any notice required by section 1309.611," *i.e.,* UCC § 9-611. Permitting the information required in the two RISA notices to coexist in the same document with "any" UCC § 9-611 notice negates any claim that either can interfere or "conflict" with the other.

3) **D.C.**'s versions of UCC § 9-201 and the Official Comments are identical. M&T cites a D.C. RISA regulation as the source of potential "conflict" with D.C.'s UCC notice requirements. D1 153 at 39.  This regulation provides an installment sales holder for a motor vehicle contract to send:

> a written notice stating the following: (a) the buyer's right to redeem the vehicle; (b) the amount due and payable; (c) the buyer's rights with respect to resale of the vehicle; (d) the buyer's liability for a deficiency upon resale; (e) the exact address where the motor vehicle is stored; and (f) where any payment is to be made or notice delivered.

D.C. Mun. Regs. tit. 16 § 341.4.

For the reasons set forth above, there is no conflict with D.C.'s UCC notice provisions. Some of the requirements are supplemental to that which is required in the UCC (subsections a, b, c, and e), whereas subsections d and f are cumulatively required. The remedy for violating the regulation bars the holder from collecting a deficiency. D.C. Mun. Regs. tit. 16 § 346.1. The

regulations also expressly provide that this remedy is cumulative to the UCC notice remedies: "Remedies cited in § 346.1 and 346.2 shall be in addition to any other remedy provided by the laws of the District of Columbia, including…the Uniform Commercial Code." *Id.*, § 346.3. Cumulative remedies certainly cannot be based upon conflicting or preempted requirements.

4) **New York**, like the rest of the proposed jurisdictions, has enacted UCC § 9-201 with the Official Comment.  New York's Motor Vehicle Retail Installment Sales Act or "MVRISA", M&T's purportedly conflicting RISA (DI 153 at 4, 39), provides that the holder of a motor vehicle installment contract who repossesses a motor vehicle "pursuant to the provisions of article nine of the uniform commercial code . . . shall [send]…a written notice setting forth the right of such buyer to redeem such motor vehicle, the dollar amount necessary to redeem, and the name, address and telephone number of the holder from which information may be obtained regarding such redemption." N.Y. Pers. Prop. Law § 316.  The only UCC § 9-614 requirement also present in § 316 of the MVRISA is "a telephone number from which the amount that must be paid to the secured party to redeem the collateral…is available." N.Y. UCC § 9-614(a)(3).

M&T fails to explain or cite any authority as to why any New York court would find a "conflict" between the two statutes, particularly in light of the "obligation to give effect to all acts of the legislature and to avoid interpretations which result in a conflict between statutes." *Sheridan Suzuki, Inc. v. Caruso Auto Sales, Inc.*  442 N.Y.S.2d 957, 959 (Sup. Ct. 1981) (applying the UCC and the State Uniform Vehicle Title Act to the same transaction). MVRISA does not provide that any part of Article 9's notice requirements are displaced, which is understandable in that MVRISA does not provide a private right for damages. It only provides that a willful violator "shall be guilty of a misdemeanor and upon conviction shall be punished by a fine" (§ 307.1), and that the violation "shall bar [the holder's] recovery of any credit service charge, delinquency or collection charge[.]" § 307.3.  As MVRISA is designed to protect New York consumers, the consumer debtor would be left

with *no* damages remedy if this MVRISA section is read to displace or preempt the UCC notice provisions entirely in a motor vehicle repossession and sale otherwise subject to Article 9, an absurd result which no New York court would countenance.

Instead of confronting this lack of conflict within these statutes in the jurisdictions which M&T brought to this Court's attention, M&T relies upon an Ohio district court decision in which the court made the general statement – in a class action requesting certification for state RISA notice violations and a UCC notice violation under the laws of forty-nine states – that "in many states, UCC provisions are modified or superseded by provisions contained in other statutes." *Jenkins v. Hyundai Motor Financing Co.,* 2008 WL 781862, at * 7 (E.D. Ohio, Mar. 24 2008). DI 153 at 36. The named plaintiff in *Jenkins* "failed to provide the Court with a demonstrable method to maneuver through the hurdles posed by analyzing and applying the laws of 49 jurisdictions to her *several* state-law causes of action. The burden of analyzing and applying the nuances of multiple states' laws at issue in this case would, simply stated, *overwhelm a jury.*" *Jenkins* at * 7 (emphasis added.)

Here, where no jury is involved, Mr. Pinks asserts the same, single cause of action for himself and each class member, based upon a uniform law controlled by a uniform standard in UCC § 9-201 for addressing any potential conflicts between the UCC notice provisions at issue and the states' RISA notice provisions. Here, this Court is not addressing a general concern such as the *Jenkins* court raised with respect to RISAs in 49 states. Instead, this Court is examining four specific jurisdictions out of twenty, where M&T suggests a potential conflict *could* arise because courts in four jurisdictions *could* find that UCC provisions have been preempted or displaced.

**B.   M&T Does Not Dispute Mr. Pinks' Showing That a Three-year Statute of Limitations Applies in New York, Pennsylvania, Florida, Kentucky, New Hampshire, Rhode Island, Texas and Vermont and That a Two-year Period Applies in Virginia.**

M&T argues that the Court would be overwhelmed by the task of determining the applicable statute of limitations for each class jurisdiction. DI 153 at 43.   This is nonsense. In certain

jurisdictions there are simply no candidates for less than three years. M&T does not dispute that the New York borrowing statute applies via CLR § 202 (DI 153 at 42), and it concedes by silence that the proper statute to be "borrowed" is CPLR § 214(2), providing a three-year period for "any action to recover upon a liability, penalty or forfeiture created or imposed by statute." DI 148-1 at 16-17; *Hales v. HSBC U.S.A., NA,* 347 Fed. Appx. 698, 699 (2d Cir. 2009) (UCC § 9-625 damages claim in New York governed by CPLR § 214(2).)  Thus three years is the limitations period for all New York claims and is the maximum period elsewhere.

M&T also does not appear to contest that a 6 year "catch all" statute creates a three-year Class Period in Pennsylvania. DI 148-1 at 21, citing *Cubler v. Trumark Fin. Credit Union*, 83 A.3d 235, 237 (Pa. Ct. App. 2013) (applied in a UCC § 9-625 statutory damages claim by a consumer obligor for non-compliant notification of disposition.)

M&T nowhere disputes Mr. Pinks' showing that there are no candidates shorter than three years in Florida, Kentucky, New Hampshire, Rhode Island, Texas and Vermont. Though it denounces Appendix 1 as "wholly inadequate," M&T does not challenge a word of it as to these six jurisdictions. Mr. Pinks also asserts a two-year limitations statute in Virginia, as there is no shorter candidate there, again, a position M&T does not dispute as well as fails to identify any shorter candidate.

Thus, in ten jurisdictions out of the twenty either: 1) the Court is bound by controlling authority (Pennsylvania and South Carolina); 2) M&T does not challenge a three-year statute's applicability or Second Circuit authority applying a three-year statute (New York); or, 3) neither party has identified any potential candidate that is shorter than three years (in Florida, Kentucky, New Hampshire, Rhode Island, Texas and Vermont) or two years in Virginia.

**C.    In the Remaining Jurisdictions Controlling Appellate Authority Eliminates Any Potentially-Applicable Limitations Periods of Less than Three-years.**

M&T argues that in deciding which statutes to apply, "this Court would need to decide important issues of individual state law as a matter of first impression." DI 153 at 43. This would require, according to M&T, "a detailed analysis of each state's law to determine among other things, what constitutes a 'penal statute' or 'forfeiture.'" *Id.* In turn, this would be too challenging for this Court because Mr. Pinks "admits that 'no appellate authority' exists regarding the applicable limitations period in at least 18 of these states." *Id.*

Mr. Pinks "admits" no such thing. He repeatedly represented in Appendix 1 that there was "no [state] appellate authority applying a statute of limitations to UCC § 9-625 damages claims under the default provision of Article 9" in the remaining ten jurisdictions. DI 148-1. However, he identified *every* statutory candidate for a shorter term than three years in *each* of the ten jurisdictions, as well as identified controlling appellate authority from each state. M&T's response (after seeking additional pages to address these showings) was to complain that his showing was "wholly inadequate," while not identifying a single specific "inadequacy" by way of a missed statute or any missed or misapplied decisional authority. DI 153 at 43. The only state which it chose to address, Tennessee, is not an included state in this action. *Id.*

The final ten jurisdictions all have candidates shorter than three years, usually for recoveries under a "penal statute." These jurisdictions' appellate courts focus on three factors to determine whether the recovery is under a "penal statute": 1) whether the cause of action at issue may be brought solely by an injured party (*e.g.,* "the party aggrieved") versus the state or an informer; 2) whether the wrongful act was committed against a private individual versus against the state or the public; and, 3) the purpose of the underlying statute (*e.g.,* is it remedial or punitive.) Factors 1) and 2) are simple to apply because UCC § 9-625(c)(2) statutory damages cannot be recovered by anyone other than "the debtor" to the secured contract, and § 9-611 does not pertain to wrongs by a

secured party against the public or the state. In each relevant state, Mr. Pinks' Appendix 1 cites appellate authority providing the criteria for this Court's application of the statute to the UCC. M&T, as noted, offers no authority or critique in response.

In D.C., Georgia, Maine, and Massachusetts where recovery under the challenged statute is limited to the wronged individual, courts have ruled the statute is *not* a "penal statute." [7]  DI 148-1 at 4, 6-7, 9, 12.  Connecticut and New Jersey have ruled that courts are to apply their penal limitations statute when the wrongdoing giving rise to the claim was against the public or the state.[8] *Id.* at 1, 15.

North Carolina will consider a claim "penal" under its limitations statute *only* if the statute's sole purpose is to punish and has no remedial purpose.[9]  *Id.* at 18. Ohio applies a weighing test to determine whether a statute such as the UCC is primarily punitive, in which case the shorter limitations period for a penal statute applies. See, cases and analysis at DI 148-1 at 19. Delaware's

---

[7] **D.C.:** "Neither the liability imposed for the benefit of private persons, nor the remedy given for the enforcement of a civil action, is a statutory penalty in the proper legal sense." *Pavarini & Wyne, Inc. v. Title Guar. & Sur. Co.,* 36 App. D.C. 348, at *2 (D.C. App. 1911), construing identical predecessor statute to current one-year statute at DC ST § 12-301(5), DI 148-1 at 4; **Georgia:** Where the cause of action is given to an informer or to all persons or individuals who can prosecute for the penalty, one year statute applies. *Woodburn v. Western Union Telegraph Co,* 23 S.E. 116 (Ga. 1895) applying identical predecessor statute to current statute at Ga. Code Ann. § 9-3-28; "Statutes allowing actions by informers do not include"… "the idea that some right of the plaintiff [was] violated or some duty to the plaintiff [was] broken." *Atlanta & West Point R. Co. v. Coleman,* 84 S.E. 499, 500-501 (Ga. 1914) addressing same statute, *see also* DI 148-1 at 6-7; **Maine:** "If the right of action be given to the injured party…the statute and action are remedial…But if the right of action be given to others than the injured party, the statute and action are penal." *Hall v. Hall,* 91 A. 949, 950 (Me. 1914), construing identical predecessor statute to current one-year statute at 14 M.R.S. § 858, DI 148-1 at 9; **Massachusetts:** When the cause of action to recover is in favor of "the commonwealth, a wife or relative of some person connected with the transaction, or an informer, the cause of action is for the recovery of a penalty." *E.S. Parks Shellac Co. v. Harris,* 129 N.E. 617, 618 (Mass 1921), applying identical predecessor statute to current one-year statute at M.G.L.A. 260 § 5, DI 148-1 at 12.

[8] **Connecticut:** "[P]enal statutes, strictly and properly, are those imposing punishment for an offense against the state" and "does not ordinarily give a private action against a wrongdoer." *Plumb v. Griffin,* 50 A.1, 2 (Conn. 1901) ruling on identical predecessor statute to current one-year statute at C.G.S. § 52-585, DI 148-1 at 1 (emphasis added); **New Jersey:** "[A] penal statute has been defined as 'one which imposes punishment for an offense against the state as opposed to a wrong against an individual.'" *State Dept. of Environmental Protection v. Larchmont Farms,* 628 A.2d 761, 770 (N.J. App. 1993), ruling on N.J.S.A. § 2A:14-10, DI 148-1 at 15.

[9] **North Carolina:** Where statute is not "for the sole purpose of punishment…[h]aving multiple objectives of which some are not penal in nature, the statute cannot be deemed a penal statute" under N.C.G.S.C. § 1-54. *Holley v. Coggin Pontiac,* 43 N.C. App. 229, 242, 259 S.E.2d 1, 7 (1979), and also holding one-year limitations would not apply unless there is express statutory language that the statute is a "civil penalty." DI 148-1 at 18.

shorter statute applies to a "forfeiture upon a penal statute," such as civil *in rem* actions that are "not personal to the defendant."[10] *Id.* at 3 West Virginia has a shorter statute of two years for certain torts, but no statute for a "statutory liability" or "penalty," and has district court authority ruling UCC statutory damages under Article 9 do not fit within that shorter statute based upon West Virginia criteria. *Thomas v. Branch Banking &Trust,* 443 F. Supp. 2d 806, 811 (N.D. W.Va. 2006), DI 148-1 at 27-28.

## D. M&T's Affirmative Defenses of Set-off Are Manageable and Do Not Defeat Certification.

M&T continues to address its "affirmative defense" of set off with respect to those class members against whom it holds a deficiency judgment. M&T properly notes that Exclusion 6 of the Class Definition excludes "all persons against whom Defendants filed suit prior to March 14, 2013, seeking to collect a deficiency balance in connection with an account giving rise to a notification claim that is subject to this action[.]" DI 153 at 47, citing DI 158 at 7. Exclusion 1 excludes "all persons who prior to certification of this class…filed suit against Defendants in connection with a failure to comply with the UCC's notification of disposition provisions[.]" *Id.* Therefore, UCC claims related to actions in which M&T brought a deficiency action *before* this action began are excluded, as well as actions in which a plaintiff brought his own UCC claim against M&T at any time before certification, and where M&T asserted a deficiency counterclaim.

As a practical matter, there is no reason to believe that these two exclusions will not exclude *most* class members against whom M&T holds a deficiency judgment. Deficiency claims related to the Pinks Notice are very stale, as M&T represents that it stopped sending the Pinks Notice in all jurisdictions on July 24, 2012. Mr. Pinks has already informed this Court that any non-excluded class members, against whom M&T holds a deficiency judgment, would be subject to an administrative

---

[10] **Delaware:** "A forfeiture proceeding is by nature a civil action *in rem,* and thus is not personal to the defendant." *State v. Rositto,* 331 A.2d 385, 387 (Del. 1974) construing identical predecessor statute to current one-year limitations statute at 10 Del.C. § 8115, DI 148-1 at 3 (emphasis added.)

set off for the judgment to be applied at the damages phase and therefore, such set offs would not create manageability issues. *E.g.* DI  132 at 3, DI 138 at 1, 8.

Nevertheless, M&T maintains this *still* creates "manageability and predominance issues" with respect to class members "against whom M&T filed suit *after* March 14, 2013 for a deficiency balance where such action has been reduced to judgment." 153 at 47. Even though M&T would still receive its administrative set off, the underlying UCC claims would be subject to M&T's defense of *res judicata. Id.* And, even though M&T articulated the recognized standard for a *res judicata* defense*,* it maintains insurmountable manageability issues would arise in applying *res judicata* under "applicable state laws." *Id.* at 48. First, does M&T even have *any* deficiency judgments from actions filed *after* this action began and if so, how many or in what jurisdictions? In all of its many pages of declarations M&T did not put in *any* evidence that it has *any* judgments from actions that were filed after this case began. M&T did not so much as submit a declaration that its policy was to continue to file for deficiency judgments on long charged-off deficiencies. This Court bifurcated merits and class discovery, and that type of file-by-file examination necessary to review *res judicata* matters has not yet occurred. Generally, individualized affirmative defenses against class members are resolved after the common merits phase and at the individualized damages phase. If this Court disagrees, the exclusion should be adjusted to also exclude those persons against whom M&T filed suit prior to certification.

## E.    There Are No Manageability Issues in Calculating Ohio Statutory Damages.

Mr. Pinks also argued that the UCC texts enacted in all jurisdictions were uniform in requiring a common mathematical formula to compute statutory damages at UCC § 9-625(c)(2) which would greatly simplify the damages determinations, to be applied as a ministerial function of this Court. M&T points out that Ohio also has a non-uniform, state-specific, "add-on" found in

subsection (D) of the statutory damages section providing the secured party with an offset for money owed to it:

> [A]ny damages recovered by the debtor or secondary obligor under division (C) of this section [the statutory damages subsection] shall be reduced by the amount that the sum of the secured obligation, expense, and attorney's fees exceeds the proceeds of collection, enforcement, disposition, or acceptance.

O.R.C. § 1309.625(D).   Subsection (D) mandates this offset. However, adding this element to a mathematical formula for Ohio class members imposes no manageability problems.

## CONCLUSION

Having met all requirements for Rule 23 for the reasons set forth more fully herein, Plaintiff Jerry Pinks' Amended Motion for Certification pursuant to Fed.R.Civ.P. 23(b)(3) (DI 169) should be granted; the Class Definition, Class Jurisdictions (other than the state of Maryland), and Class Period as initially proposed adopted; Mr. Pinks appointed as Class Representative; and, the undersigned counsel appointed as Class Counsel.

Respectfully Submitted,

HERZFELD & RUBIN, P.C.

By: _____
    Daniel V. Gsovski (dg4413)
A Member of the Firm
125 Broad Street
New York, New York 10004-1300
Telephone: (212) 471-8512
E-mail: dgsovski@herzfeld-rubin.com

PHILIP FAIRBANKS, ESQ., P.C.
Philip Fairbanks, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580
E-mail philip@lowcountrybankruptcy.com
ADMITTED PRO HAC VICI

LAW OFFICE OF FREDERICK CORLEY
Frederick M. Corley, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 524-3232
E-mail: rick@1214law.com
*admitted pro hac vice*

KATHY D. LINDSAY, P.A.
Kathy D. Lindsay, Esq.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1581
E-mail klindsay@islc.net
*admitted pro hac vice*


Counsel for Plaintiff