UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-31-17

JERRY PINKS,
*individually and on behalf of others similarly situated,*

                                        Plaintiffs,

                    – against –

M&T BANK CORPORATION,

                                        Defendant.

:
:
:
:
:
:        **REPORT AND**
:        **RECOMMENDATION**
:        **13-CV-1730 (LAK) (RLE)**
:
:
:
:

To the HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

Plaintiff Jerry Pinks ("Pinks") commenced this putative class action on March 14, 2013.

He seeks mandatory statutory damages for the alleged failure of Defendant M&T Bank

Corporation ("M&T Bank") to comply with §§ 9-613 and 9-614 of the Uniform Commercial

Code ("the UCC") as adopted by the State of South Carolina when it issued him a Notice of

Repossession and Sale of Merchandise   Pinks alleges that M&T Bank failed to comply with the

UCC because the notice: 1) did not state that he was entitled to an accounting of his unpaid

indebtedness or state the charge, if any, for such an accounting; 2) did not include a description

of any liability for a deficiency; and 3) included additional information that materially misstated

his redemption rights under the UCC.  The Honorable Lewis A. Kaplan referred this case to the

undersigned on March 26, 2013, for general pretrial and dispositive motions. (Docket No. 4.)

On May 23, 2016, Pinks filed a Motion for Class Certification. (Doc. No. 142.) Pinks

seeks to certify a class of consumer obligors who had mailing addresses in twenty states[1] and the

---

[1] Connecticut, Delaware, Florida, Georgia, Kentucky, Maine, Maryland, Massachusetts, New
Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South
Carolina, Texas, Vermont, Virginia, and West Virginia.

District of Columbia[2] when M&T Bank, M&T Credit Services, LLC, or persons or entities acting on their behalf, sent them a Notification of Disposition in the form of Exhibit 2 to the Complaint (the "Pinks Notice"), prior to the disposition of collateral, where the disposition occurred during the "class period," which Pinks defines as being from March 14, 2011, in Virginia and from March 14, 2010, in all other class jurisdictions. (*Id.*) Pinks listed qualifications of individuals who are expressly excluded from the class. (*Id.*) Pinks also moves this Court to appoint him as class representative and to appoint his counsel as class counsel. Finally, Pinks moves the Court to compel production by M&T Bank of documents and information of the type produced with respect to South Carolina. (*Id.*)

After M&T Bank filed their Memorandum in Opposition to Pinks's motions, Pinks filed an Amended Motion for Class Certification removing Maryland from the list of states originally included in the class jurisdictions. (Doc. No. 169.) Defendants filed an opposition to Plaintiff's Amended Motion for Class Certification on August 3, 2016. (Doc. No. 172.) On March 28, 2017, this Court directed the Clerk of Court to terminate Pinks's original motion for class certification because it was superseded by the Amended Motion.[3] (Doc. No. 176.)

I recommend that Pinks's motions for class certification, to be appointed class representative, to appoint his counsel as class counsel, and to compel discovery production be **DENIED** for the reasons discussed below.

## I. Background

The facts herein were provided by Pinks in his Complaint. On August 6, 2008, Pinks entered into a Retail Installment Contract and Security Agreement ("RICSA") with Boat-N-RV

---

[2] [hereinafter "class jurisdictions"]
[3] [hereinafter "amended class jurisdictions" or "states" refers to the nineteen states and the District of Columbia included in the Amended Motion for Class Certification].

Megastore in Ridgeland, South Carolina to purchase a 2009 Big Country Fifth Wheel ("Big Country"), a consumer good. (Compl. ¶ 10.) The RICSA, attached to the Complaint as Exhibit 1, was then assigned to M&T Bank, which, under its terms, made M&T Bank the secured party. (*Id.* ¶ 11.) M&T Bank sent Pinks the Pinks Notice on or around July 29, 2010. (*Id.* ¶ 12.) The Pinks Notice stated that Pinks was in default under the terms of the RICSA, and as a result, M&T Bank had repossessed the Big Country. (*Id.* ¶ 13.) The Pinks Notice also stated that the Big Country was "subject to private sale" on or after August 7, 2010. (*Id.*) A section titled "Notice of Right to Redeem," stated the following:

> At any time before the sale, you have the right to redeem (get back) the collateral by paying certified funds to MTB at the address listed below, for the full amount of all past due installment payments under your contract (including all late charges) and the costs of repossession, preparing, holding, and advertising the collateral for sale. The amount due as of the date of this letter is as follows:
> Past Due Payments On Your Loan: 990.50
> Accrued Late Charges: 138.25
> Repossession Fees: 1,000
> Total Amount Due: 2,128.75
> This amount is subject to change as additional payments become due, or costs continue to accrue. Any additional amount must be paid in order to redeem the collateral. Once the sale of the collateral has taken place, MTB will deduct from the sales proceeds all amounts owed to it. If there is still money owing after this is done, you are responsible to pay MTB this deficiency. If there is money left over, MTB will pay you this surplus.

(Compl. Ex. 2.)

On or around September 21, 2010, M&T Bank sent Pinks a letter stating that the Big Country had been sold at a private auction on September 15, 2010. (*Id.* ¶ 14.)

## II. DISCUSSION

### A. Standing

M&T Bank argues that the Court should dismiss this action because Pinks lacks Article III standing 1) on his own behalf as he has failed to show a concrete injury-in-fact, and 2) to

pursue any claim under the laws of states in which he does not reside or in which he suffered no alleged injury on behalf of the purported class. (Doc. No. 153.)

### 1. Pinks lacks Article III standing to assert claims on his own behalf because he has failed to demonstrate that he suffered an injury-in-fact.

Federal courts are empowered to decide cases and controversies. U.S. Const. Art. III §§ 1 and 2. Article III standing requires the plaintiff to establish that he has 1) suffered an injury-in-fact, 2) that is fairly traceable to the challenged action of the defendant and 3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury-in-fact must be concrete and particularized as well as actual or imminent. *Id.* at 560.

M&T Bank argues that Pinks does not have Article III standing to assert his own claims under the South Carolina code because he has failed to show a concrete injury-in-fact. (Doc. No. 153 at 21-22.) M&T Bank relies on the recent Supreme Court decision in *Spokeo Inc. v. Robins*, which states that "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S.Ct. 1540, 1549 (2016). It argues that while the Pinks Notice may not have provided all the statutorily-required information, this constitutes a statutory violation from which Pinks has not suffered any concrete harm. (Doc. No. 153 at 22-24.) Absent a concrete harm, there is no injury-in-fact, and therefore no Article III standing.

Pinks claims the sale of his property in violation of the law is his injury-in-fact—actual, in that "it actually happened" and concrete and particularized in that it was "specific to his property and particularized as to him as the owner and debtor." (Doc. No. 170 at 2.) The Court disagrees. Because Pinks challenges M&T's Bank's failure to comply with the notice requirements of S.C. Code Ann. §§ 36-9-613 and 36-9-614, he must establish an injury-in-fact stemming from the allegedly legally-insufficient Pinks Notice. While the repossession of

4

Pinks's property did result in a loss to him, Pinks has failed to allege how this injury was traceable to the *challenged* conduct by M&T Bank—allegedly providing insufficient notice.

An injury is concrete if it "actually exists." *Spokeo,* 136 S.Ct. at 1548. Some intangible injuries may be considered concrete if they nevertheless are a) "traditionally regarded as providing a basis for a lawsuit in English or American court" or b) statutorily-defined. *Id.* at 1549. Neither basis is sufficient, however, to establish standing without showing concrete injury. *See Id.* at 1549-50. *Spokeo* clarified that a risk of real harm "satisf[ies] the requirement of concreteness." *Id.* at 1549-50.

Pinks maintains, however, that the failure to provide the statutorily-required information in the Pinks Notice is sufficient by itself to create an injury-in-fact. (Doc. No. 158 at 3.) To support his argument that an injury-in-fact exists when an entity fails to provide legally-required information, Pinks cites *Pub. Citizen v. U.S. Dep't of Justice*, in which the Supreme Court found that public interest groups seeking access to meetings and records to monitor the American Bar Association's judicial nomination process under the Federal Advisory Committee Act had standing to sue when they requested and were denied that access and information. *See* (Doc. No. 170 at 4), citing *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989)). Pinks also points to *Fed. Election Comm'n v. Akins*, in which the Supreme Court found that a group of voters had standing to challenge the Federal Election Committee's determination that the America Israel Public Affairs Committee (AIPAC) was not a political committee and therefore not subject to public reporting provisions. 524 U.S. 11 (1998). The Supreme Court defined the voters' injury-in-fact to be "their inability to obtain information . . . that . . . the statute requires" to be made public. *Id.* at 21.

Those cases are distinguishable from the case before the Court.  The plaintiffs in those cases were legally-entitled to the information they sought.  Their requests were denied or plaintiffs could not otherwise obtain the sought-after information. The efforts in those cases to obtain the information substantiated the concrete interests.  Pinks, on the other hand, readily admitted that he was not interested in the notice or even in recovering his property.  Pinks stated in deposition that he did not "even pay attention" to the Pinks Notice because he "wrote the letter to have Big Country repossessed, [ . . . ] didn't want it, [and . . . ] couldn't make payments on it." (Doc. No. 155-1 at 59:13-60:1.)

The sufficiency of the Pinks Notice was therefore not relevant to any alleged injury to Pinks. Indeed, Pinks provided authorization to M&T Bank to repossess the property. (Doc. No 155-7.)  His claim of harm caused by the Pinks Notice is meritless.  The Court agrees with M&T Bank that Pinks has failed to demonstrate that he has suffered an injury-in-fact.  Therefore, the Court finds that Pinks lacks Article III standing to assert his claim against M&T Bank.  It follows that he cannot act as class representative either in South Carolina or any of the other states.  I therefore recommend that class certification be denied on this basis.

### 2.  Pinks lacks Article III standing for claims under the laws of states other than South Carolina.

Pinks seeks to represent a class which includes claims in nineteen states and the District of Columbia, requiring each claim to be assessed pursuant to the laws of each of those states. M&T Bank argues that Pinks lacks Article III standing for claims under the laws of states other than South Carolina. (Doc. No. 153 at 24-27.) Pinks argued in opposition to M&T Bank's motion for partial judgment on the pleadings that in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145 (2d Cir. 2012) [hereinafter "*NECA*"], "the Second Circuit firmly rejected the notion that a named plaintiff who has Article III standing to bring his own

claim must also have Article III standing with respect to all class claims." (Doc. No. 57 at 1.) Even if the Court's Recommendation with respect to Pinks's individual Article III standing is not adopted, Pinks has failed to demonstrate Article III standing with respect to claims arising under the laws of states other than South Carolina.

Pinks attempts to avoid essential elements of Article III standing by relying on the standard for "class standing" as articulated in *NECA. See* Doc. No. 158 at 2 and Doc. No. 170 at 5, 6.) *NECA* involved a challenge to class certification based on standing for a class alleging injuries under the Securities Act. The Court in *NECA* determined that a "plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA*, 693 F.3d at 162 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)).

While the circumstances of each party's injuries differed slightly in *NECA*, the parties shared the same set of concerns as defined under the same statute. Here, the putative class members can all claim that injuries caused by the same deficient form notices create the same set of concerns. The alleged injuries, however, did not arise under the same law. Though M&T Bank may have used the Pinks Notice nationwide, a statutorily-created injury is defined by each state's interpretation of its laws. Pinks can attempt to establish standing in South Carolina, where he lives and where the alleged injury happened. He cannot successfully maintain claims for other states with different laws. Pinks's reliance on *NECA*, where every class member's claim arose under the same federal law, is misplaced.

7

As M&T Bank has noted, there is a critical distinction between class standing based on the same set of concerns that arise under the same statute versus class standing based on similar circumstances arising under different states' statutes. *See Okla. Police Pension and Retirement Sys. v. U.S. Bank National Association,* 986 F.Supp.2d 412, 418-19 (S.D.N.Y. 2013) ("Nevertheless, the claims that the plaintiff in *NECA* sought to bring on behalf of others were the same Securities Act claims that the plaintiff itself had standing to bring.") *See also In re Aggrenox Antitrust* Litigation, 94 F. Supp.3d 244, 250 (D. Conn. 2015), (noting that in the *NECA*, "the variation between the respective claims of named plaintiffs and absent class members [was] variation of…facts, but not of the law under which the claims are brought").

This interpretation of *NECA* is consistent with broader rulings in this Circuit which have found that named plaintiffs lack standing to assert claims under the laws of other states on behalf of class members.  *See Simington v. Lease Fin. Grp., LLC*, No. 10-CV-6052 (KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) (finding that the named plaintiffs of a putative nationwide class did not have standing to bring claims under other states' statutes because they did not have "an injury traceable to conduct that occurred in any other state than those in which they conduct business."); *Edwards v. North American Power and Gas, LLC*, 120 F.Supp.3d 132, 139 (D. Conn. 2015) (concluding that though the defendants engaged in the same conduct in other states, the named plaintiff could not plead that the defendant's conduct "impacted him in any state other than [his own]…which is required for injury-in-fact standing."); *In re HSBC BANK USA, N.A., Debit Card Overdraft Fee Litigation*, 1 F.Supp.3d 34, 49 (E.D.N.Y. 2014) (finding that "Plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state.")

The Court concludes that *NECA* did not overturn precedent that requires plaintiffs to have standing for every claim that he or she asserts, even when bringing a putative class action. *See Mahon v. Tico Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("It is well established that 'a plaintiff must demonstrate standing for each claim [s]he seeks to press.'")). Pinks is not exempt from demonstrating that he has an injury in every state for which he seeks to represent a claim. *See Simington*, 2012 WL 651130, at *9 ("Where plaintiffs themselves do not state a claim under their respective state's consumer statutes, however, they do not have standing to bring claims under other state statutes—even where they are named plaintiffs in a purported class action."). Because Pinks alleges no other injuries in the twenty other jurisdictions for which he seeks to assert claims, the Court finds that Pinks lacks Article III standing in states other than South Carolina.

Pinks argues that the Court has already rejected M&T Bank's position that he lacks Article III standing beyond South Carolina. (Doc. No. 170 at 4.) Pinks asserts that the Court's rulings in denying M&T Bank's Rule 12(c) Motion for Partial Judgment on the Pleadings, in denying reconsideration of that ruling, and in denying leave to appeal have resolved this issue. (Doc. Nos. 98, 104, and 113.) This position is meritless. The motion for partial judgment required application of a different standard than this class certification determination. *See* Judge Kaplan's Order Denying M&T Bank's Motion for Partial Judgment on the Pleadings, (Doc. No. 98 at 2):

> "these considerations bear on the class certification issue, not whether the plaintiff sufficiently has *alleged* claims on behalf of putative class members that implicate ''the same set of concerns' as the conduct alleged to have caused injury to' him. That he has done. Whether he will come forward with sufficient poof to warrant class certification will be another matter."

(Emphasis in original.)  The prior rulings by the Court only addressed the sufficiency of the *allegations* in the complaint. At this stage, Pinks is required to support those allegations with some proof.

Similarly, Pinks's reliance on this Court's Report and Recommendation on the Motion for Partial Judgment on the Pleadings is misplaced.  The Court did not hold that if Pinks could meet the requirements for class standing under *NECA*, he would not have to show Article III standing.  Indeed, the Court's Report and Recommendation distinguished Pinks's Article III standing in his own right from his class standing. (Doc. No. 89 at 7.)

## B. Individual questions of law predominate over class issues, requiring denial of class certification.

Pinks would need to establish predominance of class-wide issues and superiority of class litigation after meeting the minimum requirements for class certification. FRCP Rule 23(b)(3) and Rule 23(a).   The Court makes no findings as to whether Pinks would be able to establish the requirements for class certifications pursuant to FRCP Rule 23(a).  Pursuant to FRCP Rule 23(b)(3), the Court recommends denying class certification because Pinks has failed to show that "questions of law…common to class members predominate over any questions affecting only individual class members."  The multi-state nature of this putative class action creates many individualized issues that require the Court to look into the laws of twenty jurisdictions.  Even if Pinks could establish standing for himself and for the putative class, he would still not be able to maintain a class action.

Though the Uniform Commercial Code exists to create uniformity in the laws governing commercial transactions across the United States, it is ultimately adopted on a state-by-state basis, with varying degrees of tailoring for each state's specific needs. *See Jenkins v. Hyundai Motor Financing Co.*, C2-04-720, 2008 WL 781862 at *7 (S.D. Ohio 2008) (noting that

"variations do exist in the Notice requirements from state to state.") Even between states that have adopted uniform language, there may be differences in application as each state's statutes are subject to statutory interpretation by its respective courts. *See Jenkins*, 2008 WL 781862 at *7.

M&T Bank relies on the *Jenkins* case as support for its argument that class certification must be denied. In this case out of the Southern District of Ohio, the named plaintiff sought to certify a class of individuals in forty-nine states to whom the defendants had either failed to provide statutorily-required pre-disposition notices at all or failed to provide all of the statutorily-required information. In denying class certification, the court found the "burden of analyzing and applying the nuances in multiple state' laws…would…overwhelm a jury." *Jenkins*, 2008 WL 781862 at *7. While Pinks notes correctly that this case would not be tried to a jury, the "certification [here] would require this court to decide…issues of first impression for multiple foreign jurisdictions." *Id.* This Court agrees with the concerns raised by the court in *Jenkins*, and finds that the attempt to construe these various state interpretations is ill-advised. *See Allstate Ins. Co v. Serio*, 261 F.3d 143, 152 ("[F]ederal courts ought not to deprive the state courts of the opportunity to construe their own statutes . . . . For this too would infringe on the sovereign authority of the states.")

The Parties' memoranda confirm that differences between the laws of the states at issue exist. Specifically, the Parties dispute (1) potential conflicts between the notice requirements of each state's Retail Installment Sales Act ("RISA") versus each state's UCC; (2) what would be M&T Bank's ability to collect on an underlying deficiencies given the challenges to the sufficiency of the Pinks Notice; (3) whether there are compulsory counterclaims; (4) the applicable statutes of limitation; and (5) the times at which the members' claims accrue.

Proceeding with the proposed multistate class would require, at a minimum, the Court to evaluate, synthesize, and apply the laws of twenty jurisdictions with respect to these five areas of dispute. In addition, as Pinks concedes, in some areas, there may not be controlling precedent to follow, and the Court may be required to decide issues of first impression. (Doc. No. 170 at 28.)

The Parties' dispute concerning the applicable statutes of limitations is symptomatic of the challenges that would face the Court in administering Pinks's putative class action. Pursuant to New York's borrowing statute, for non-New York residents, the Court must apply the shorter statute of limitations of either New York or the jurisdiction where the cause of action accrued. CPLR § 202. When borrowing another state's statute of limitations, the Court must analyze and apply that state's judicial interpretations of its limitation period and tolling doctrines. *See In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 801 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). Pinks lays out the options for the Court in determining and applying the statutes of limitation:

> "In ten jurisdictions out of the twenty either 1) the Court is bound by controlling authority (Pennsylvania and South Carolina); 2) M&T does not challenge a three-year statute's applicability or Second Circuit authority applying a three-year statute (New York); or 3) neither party has identified any potential candidate that is shorter than three years (in Florida, Kentucky, New Hampshire, Rhode Island, Texas and Vermont) or two years (Virgina)."

(Doc. No. 170 at 29.)

Pinks then argues that "in the remaining jurisdictions, controlling appellate authority eliminates any potentially-applicable limitations periods of less than three-years." (*Id.* at 30.) Pinks goes on to state that in these jurisdictions, statutes of limitations shorter than three years are "usually for recoveries under a 'penal statute," and then states factors which these jurisdictions' appellate courts consider to determine whether recovery is under a penal statute. *Id.*

12

While Pinks maintains that this is a simple issue, he has outlined considerations and qualifications on the issue of statute of limitations which would require an individualized analysis by the Court for each of the twenty amended class jurisdictions. As M&T Bank points out, "when 'the claims of many class members may be subject to individual defenses such as…the statute of limitations then the proponent of class certification cannot overcome his burden.'" (Doc. No. 153 at 42, quoting *In re Rezulin*, 210 F.R.D. 61, 67 (S.D.N.Y. 2002). Because this is just one question of law that would face the Court in handling the putative class claims for each of the twenty amended class jurisdictions, Pinks has failed to meet his burden in demonstrating that common questions of law and fact would predominate over individualized issues. The Court therefore recommends denying class certification on the basis that Pinks has failed the predominance requirement under FRCP 23(b)(3).

**C. Other Issues Raised by M&T Bank**

M&T Bank raises several other issues in its opposition to Pinks's motion for class certification that the Court does not reach. Nevertheless, the Court's analysis above may impact the outcome of a determination on these issues.

M&T Bank claims that individualized issues predominate because of (1) the prospect of compulsory counterclaims for deficiency balances and (2) the existence of individualized defenses such as *res judicata*, set off, or recoupments for judgments obtained after the filing of the Complaint. (Doc. No. 153 at 45-49 ) For the other reasons explained above, the Court's Recommendation agrees that individual issues predominate, barring class certification.

M&T Bank also challenges whether there are common issues pursuant to FRCP 23(a) (*id.* at 54-55), and the superiority of the class action form of this litigation on the basis of manageability pursuant to FRCP 23(b) (*id.* at 49-50). The Court's analysis and finding that

13

individual issues predominate may provide considerations for determining whether common questions exist and whether class claims are the superior form of litigation. (*See supra,* Section B.)

M&T Bank disputes Pinks's ability to show that his claims are typical. (Doc. No. 153 at 51-55.) M&T Bank claims that Pinks would be subject to unique defenses, including that his claim is barred (a) "by South Carolina's one-year statute of limitations," (2) by "judicial estoppel due to his prior representations to the bankruptcy court that his claim was worth less than $5,000;" and (3) "because he engaged in a straw purchase of the Big Country trailer." (*Id.* at 51-54.)  The Court's findings may impact a conclusion concerning the typicality of the claims Pinks asserts.

M&T Bank also questions Pinks's adequacy to represent the class. (*Id.* at 55.)  M&T Bank claims that because Pinks has had a bankruptcy discharge his interests conflict with those of putative class members who would be subject to compulsory counterclaims.  (*Id.* at 55-56.)  M&T Bank also finds potential conflict in the fact that New York's three-year limitations period may truncate claims with statutes of limitation that are longer. (*Id.* at 56-57.)  For the reasons discussed above by the Court concerning Article III standing, Pinks's adequacy as a class representative may be impacted.

Finally, M&T Bank claims that the proposed class fails the implied ascertainibility standard required by the Second Circuit. (Doc. No. 153 at 57 (citing *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).)  The Court's findings may also impact M&T Bank's arguments, as the crux of these arguments is that the laws of the different states create barriers to determining the class members. (*Id.* at 57-59.)

### III. CONCLUSION

For the foregoing reasons, I recommend that Pinks's motions for class certification, to be appointed class representative, to appoint his counsel as class counsel, and to compel discovery production be **DENIED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Such objections shall be filed with the Clerk of Court and Served on all adversaries, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: March 31, 2017**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**