**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**JERRY PINKS,** individually and on behalf of
others similarly situated,

<em>Plaintiffs</em>,

v.

**M&T BANK CORP.,**

<em>Defendant.</em>

**No.: 1:13-cv-1730-LAK-RLE**
**PLAINTIFF'S OBJECTIONS TO**
**REPORT AND**
**RECOMMENDATIONS (DI 177)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................1

INTRODUCTION AND SUMMARY ......................................................................................3

I.    PINKS HAS ARTICLE III STANDING TO ASSERT HIS INDIVIDUAL
      CLAIM .........................................................................................................................4

II.   PINKS HAS "CLASS STANDING" WITH RESPECT TO ALL CLASS
      CLAIMS. .....................................................................................................................12

III.  THIS CASE MEETS ALL RULE 23 REQUIREMENTS ...........................................15

CONCLUSION .......................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Bautz v. ARS National Services, Inc.*,
   __F.Supp.3d__, 2016 WL 7422301 (E.D.N.Y. Dec. 23, 2016)........................................8

*Cantrell v. City of Long Beach*,
   241 F.3d 674 (9th Cir. 2001)...........................................................................................8

*Cubler v. Trumark Fin. Credit Union*,
   83 A.3d 235 (P.A. Ct. App. 2013)..................................................................................22

*Delaney v. First Fin. of Charleston, Inc.*,
   791 S.E.2d 546 (S.C. App. 2016) ..............................................................................20, 22

*Donoghue v. Bulldog Investors Gen. P'ship*,
   696 F.3d 170 (2d Cir. 2012)...........................................................................................10

*FMC Corp. v. Boesky*,
   852 F.2d 981 (7th Cir. 1988)...........................................................................................8

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363, 102 S.Ct. 1114 (1982) ..............................................................................9

*In re Bank of NY Mellon Corp. Forex Transactions Litig.*,
  42 F.Supp.3d 520 (S.D.N.Y. 2014) ................................................................ 18, 19

*In re U.S, Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2nd Cir. 2013), *cert. denied,* 134 S. Ct. 1938 (2014) ...................... 22

*Jacobs v. Healey Ford-Suburu, Inc.*,
  652 A.2d 496 (Conn. 1995) ............................................................................... 21

*Jenkins v. Hyundai Motor Fin. Co.*,
  2008 WL 7818162 (S.D. Ohio, Jun. 2, 2008) .............................................*passim*

*Landrum v. Blackbird Ent., LLC.*,
  2016 WL 6075446 (S.D. Tex. Oct. 3, 2016) ........................................................ 7

*Lexmark Intern Inc. v. Static Control of Components, Inc.*,
  134 S.Ct. 1377 (2014) ..................................................................................... 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................... 5, 7, 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 578 ..............................................................................................8, 11

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145,162 (2d Cir. 2012), cert. denied, 133 S. Ct. 1624 (2013) ............. 12

*Presley v. Tupperware Long Term Disability Plan*,
  55 F.3d 334 (4th Cir. 2009), DI 174 ................................................................ 22

*Retirement Bd. of the Policemen's Ann. & Benefit Fund of the City of Chicago v BNYM*,
  775 F.3d 154. (2d Cir. 2014) ........................................................................... 14

*In re Rezulin*,
  210 F.R.D. 61 (S.D.N.Y. 2002) ....................................................................... 22

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) .............................................................................. 11

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 1540 (2016)................................................................................*passim*

*State v. Rositto*,
  331 A.2d 385 (Del. 1974) ............................................................................... 23

*Strubel v. Comenity Bank*,
  842 F.3d 181 (2d Cir. 2016) .......................................................................*passim*

*Tenn. Elec. Power Co. v. TVA*,
  306 U.S. 118 (1939) ......................................................................................... 6

*In re U.S, Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2nd Cir. 2013), *cert. denied,* 134 S. Ct. 1938 (2014) ...................22

*Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*,
  528 F.3d 712 (10th Cir. 2008) ........ ..................................................................9

*Warth v. Selden*,
  422 U.S. 490 (1975)....................................................................................7, 10

**Statutes**

O.R.C. § 1317.12.................................................................................................................16

UCC § 9-201....................................................................................................................21

UCC § 9-601......................................................................................................................6

UCC § 601, Cmt. 3.............................................................................................................6

UCC § 9-602..................................................................................................................6-8

UCC § 9-602, Cmt. 2..........................................................................................................6

UCC § 9-610......................................................................................................................6

UCC § 9-611....................................................................................................6, 7, 9, 10

UCC § 9-613.........................................................................................................14, 16, 18

UCC § 9-614...............................................................................................................*passim*

UCC § 9-624..............................................................................................................5, 7, 9

UCC § 9-625(c)(2)......................................................................................................*passim*

UCC § 9-625, Cmt. 2.......................................................................................................7, 9

UCC § 9-626.................................................................................................................17, 18

**Other Authorities**

Fed. R. Civ. P. 12(c).........................................................................................................12

Fed.R.Civ.P. 13...........................................................................................................17, 19

Fed.R.Civ.P. 23(b)(3)........................................................................................................24

Fed.R.Civ.P. 72.................................................................................................................15

Fed. R. Civ. P. 23(a)..........................................................................................................15

## INTRODUCTION AND SUMMARY

Plaintiff Jerry Pinks ("Pinks") objects to all dispositive findings and conclusions in the Report and Recommendations issued March 31, 2017 (DI 177) (the "R&R") and submits these matters for the Court's *de novo* determination, based on all briefing and exhibits submitted on the Motion and these Objections.

Pinks has Article III standing to seek minimum, statutory damages, as provided by the drafters of Article 9 of the Uniform Commercial Code ("UCC"), to "insure that every noncompliance" with its relevant provisions "results in liability regardless of any injury that may have occurred." No governing standing doctrine has been changed in any material respect by *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540 (2016). All applicable precepts continue to support Pinks' standing as had previously been expressly conceded by Defendant M&T Bank ("M&T"). This includes the well-

settled doctrine that a legislature may "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before," 136 S. Ct. at 1549, which was expressly embraced by all members of the *Spokeo* Court. The R&R's findings to the contrary are in error.

The R&R's perception of an "Article III barrier" to Pinks' capacity to represent non-South Carolinians is also erroneous. This theory was rejected by this Court (DI 98), and that rejection is both law of the case and good law on its own.  Because Pinks has established his "class standing" to represent the putative class, the only criteria by which to measure Pinks' capacity to represent others are those provided by Rule 23, Fed.R.Civ.P. In that respect, the R&R at no point comes to grips with the actual showings made in support of certification, but instead, relies mainly on a wholly distinguishable Ohio district court opinion refusing certification of a 49 state monstrosity which included not only UCC claims such as Pinks' but additional claims under distinct, and widely varying, state Retail Installment Sales Acts ("RISAs"). Tellingly, in a passage missing from M&T's argument and the R&R, the Ohio district court specifically considered the exact claims at issue in this case in 49 states and found that "Plaintiff has established that common issues of law and fact predominate." This Court should do the same.

## I.     PINKS HAS ARTICLE III STANDING TO ASSERT HIS CLAIM.

The R&R recommends this Court find Pinks lacks Article III standing because he "failed to demonstrate that he suffered an injury-in-fact." DI 177 at 4. The R&R found the repossession of his collateral to be an "injury" that Pinks sustained, but it "was not traceable to the challenged conduct by M&T Bank," namely, its alleged failure to comply with the relevant notification of disposition of collateral sections of South Carolina's UCC.[1]  DI 177 4-5. The R&R determined that even if Pinks had alleged an intangible injury from the deprivation of "legally-required information" imposed by

---

[1]  Pinks claims no injury from the repossession itself. His claim flows from M&T's failure to provide compliant notification of disposition which occurred *after* repossession.

statute, he did not show that M&T's failure to provide compliant notification of disposition was "relevant to any alleged injury to" himself. *Id.* at 5-6.  Pinks respectfully objects.

Pinks has alleged a tangible, legally-protected property interest in his own collateral that M&T sold, allegedly in noncompliance with the default provisions of his financing contract with M&T (the "Retail Installment Contract and Security Agreement" or "RICSA"), as modified by and imposed upon that contract by the UCC. He also alleged a tangible, legally protected interest in his substantial deficiency liability that M&T imposed upon him as a result of its foreclosure sale process, allegedly conducted in noncompliance with his RICSA as regulated by the UCC.[2] And, he has alleged a concrete, legally-protected intangible interest in M&T's compliance with the provisions of the RICSA itself, including terms imposed by law upon that contract.

Pinks further submits that *if* all of the relevant provisions of the UCC were express terms found within the four corners of the RICSA – to include a requirement that upon default M&T send reasonable notification of disposition prior to its sale of his repossessed collateral (UCC § 611(b)); specific content information which must be included for that notification to be "reasonable notification" (UCC § 9-614(1)); an anti-waiver/modification of notification clause (UCC § 9-624); and, a damages provision permitting Pinks to choose either consequential damages or a minimum sum upon M&T's failure to comply (UCC § 9-625) – his Article III standing based upon these allegations would be beyond question. "[S]tanding can exist where 'the right invaded is a legal right – one of property, one arising  out of a contract, one protected against tortuous invasion, or one founded upon a statute which confers a privilege.'" *Spokeo,* 136 S.Ct. at 1554 (Thomas, J., concurring), citing *Tenn. Elec. Power Co. v. TVA,* 306 U.S. 118, 137-138 (1939) (emphasis added.) The question is whether Article 9 of the UCC, by imposing these requirements onto the parties'

---

[2]   It is undisputed that M&T sent Pinks a post-disposition letter, DI 13 at 3, informing him of that M&T claimed a $41,963.82 deficiency after the sale which Pinks subsequently discharged in Chapter 7 bankruptcy.

contractual relationship, somehow changes the Article III analysis concerning Pinks' underlying rights. It does not. "[T]here is absolutely no basis for making the Article III inquiry turn on the source of the asserted right." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 576, 112 S.C.t 2130, 2144 (1992).)

The UCC, though it "leaves to the agreement of the parties the circumstances giving rise to default," (Cmt. 3, Off. Cmt. to UCC § 9-601), prescribes the appropriate standard for M&T's conduct in the foreclosure sale process (*i.e.,* the "commercial reasonableness" standard). UCC § 9-610. And, it imposes specific performance provisions upon the secured party to meet that standard that are at issue here. These provisions, like all of the UCC provisions relevant to Pinks' claim, stem from the drafters' recognition that:

> *[I]n the context of rights and duties after default, our legal system traditionally has looked with suspicion upon agreements that limit the debtor's rights and free the secured party of its duties….* *The context of default offers great opportunity for overreaching.* The suspicious attitudes of the courts have been grounded in common sense. This [anti-waiver] Section…codifies this long-standing and deeply rooted attitude.

Cmt. 2, Off. Cmt. to UCC § 9-602. (emphasis added.)

The UCC thus regulates every RICSA to require it meet this standard in the foreclosure sale process: "Every aspect of a disposition of collateral, including the method, manner, time, place and other terms must be commercially reasonable." UCC § 9-610(b). Pinks alleges M&T's noncompliance with UCC § 9-611(b) which requires a secured party that disposes of collateral in a commercially reasonable sale to send the debtor "reasonable authenticated notification" of disposition first. DI 1, ¶ 16. Pinks alleges the information M&T sent to him in the Pinks Notice failed to comply with UCC § 9-614(1), which mandates specific contents of the notification which was missing from the Pinks Notice – specifically, a statement of the debtor's right to an accounting of his unpaid indebtedness and a description of any liability for a deficiency. DI 1, ¶ 17-18. This right to reasonable notification, to include this missing information, is so critical to the statutory

scheme that a debtor may not waive his right to notification under UCC § 9-611 unless he signs a written agreement after default waiving the right, UCC § 9-624(a), which Pinks did not do. DI 1, ¶ 20. The UCC permits a debtor to recover either actual damages or statutory damages under UCC § 9-625(c)(2) when the secured party fails to comply. Recovery of "minimum, statutory damages," "is designed to ensure that every noncompliance . . . in a consumer goods transaction results in liability, *regardless of any injury that may have resulted*." Cmt. 2, Off. Cmt. to UCC § 9-625, Cmt. 2 (emphasis added.) Any waiver or varying of that remedy is also prohibited by UCC § 9-602(13).

Even if Pinks' injury is construed as one which "exist[s] *solely* by virtue of statutes," rather than one arising out of statutorily-regulated contract rights, this does not end the inquiry. "'The ... injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Lujan v. Defenders of Wildlife,* 504 U.S. at 578, 112 S.Ct. at 2145, citing *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. at 2205 (1975). The UCC's requirement that M&T send him the information at issue under UCC § 9-614(1) creates a substantive right to this information. It is not a procedural right. There are no requirements in the UCC controlling the phrasing of the required information (UCC § 9-614(3)) or the format such information must take. UCC § 9-614(4). *E.g., Landrum v. Blackbird Ent., LLC.,* 2016 WL 6075446, at *4 (S.D. Tex. Oct. 3, 2016) (In the Fair Credit Reporting Act context, "a statutory right to information is substantive. A statutory right to receive that information in a particular format is procedural.")

This is significant because the Article III analysis for a direct invasion of a specific, "substantive" statutory interest, such as the right to be sent certain information about the foreclosure sale process, is different from an ancillary "procedural" violation that may or may not materially harm or present a real risk of harm to that interest. "The former, if sufficiently alleged, establishes concrete injury for purposes of Article III, whereas the latter, under *Spokeo* and *Strubel* [*v. Comenity Bank,* 842 F.3d 181 (2d Cir. 2016]*, requires a 'real risk of harm' to the underlying right to

ensure that the plaintiff does not seek relief for a 'bare procedural violation' that is not constitutionally cognizable." *Bautz v. ARS National Services, Inc.,* __F.Supp.3d__, 2016 WL 7422301 at *8 (E.D.N.Y. Dec. 23, 2016).

    *Spokeo* and *Strubel* both recognized long standing principles that a legislature is empowered to create new legal interests, including intangible interests, which create substantive, private rights where none existed before, and the invasion of which creates concrete, *de facto* injuries. "Congress[3] may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law.'" *Strubel,* 842 F.3d at 189, quoting *Spokeo,* 136 U.S. at 1549. *Spokeo* confirmed that in order to determine whether a concrete *de facto* injury was created, courts should consider the relationship between the statutory violation and a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," as well as "Congress's judgment in establishing the statutory right." *Spokeo,* 136 U.S. at 1549.

    In considering the first prong (the relationship to rights at common law) the UCC Official Comments evidence that its provisions are indeed "closely related to the harms that have been regarded as providing a basis for a lawsuit" at common law inasmuch as the relevant default statutes are consistent with "the suspicious attitudes of the courts [that] have been grounded in common sense" with respect to "agreements which limit the debtor's rights and free the secured party of its duties." Cmt. 2, Off. Cmt. to UCC § 9-602; *Lujan,* 504 U.S. at 580 (Kennedy, J., concurring.) (Standing based upon concrete *de facto* injuries is appropriately found where statutory rights have "clear analogs in our common-law tradition.")

---

[3] References to "Congress" in the case law apply equally to state legislatures. "Although Article III standing is a question of federal law, state law may create the asserted legal interest." *E.g., Utah ex rel. Div. of Forestry, Fire & State Lands v. United States,* 528 F.3d 712 (10th Cir. 2008); *Cantrell v. City of Long Beach,* 241 F.3d 674, 684 (9th Cir. 201); *FMC Corp. v. Boesky,* 852 F.2d 981, 993 (7th Cri. 1998) (same).

As to the second prong (the legislature's judgment in establishing a concrete injury), the UCC drafters determined that contractual default provisions "offer[] great opportunities" for creditor "overreaching," which the Code addresses by requiring that "reasonable notification of disposition" must include the specific information missing from M&T's notification (UCC § 9-611(b), § 9-614(1)); by prohibiting any oral, implied or pre-default waiver of notification by the debtor (UCC § 9-624); and, by mandating minimum statutory damages "regardless of any injury that may have resulted." Cmt. 2, Off. Cmt. to UCC § 9-625.

It is also well established that when statutes create substantive rights, the invasion of which establishes *de facto* injuries, "[a] plaintiff seeking to vindicate a statutorily-created private right need not allege actual harm beyond the invasion of that private right." *Spokeo,* at 1553 (Thomas, J., concurring), citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373-74, 102 S.Ct. 1114 (1982)  In *Havens Realty Co.* the Supreme Court found that that the Fair Housing Act created a new substantive right to truthful, non-discriminatory information about housing availability, such that a "tester" who set out not to buy or rent property but to gather evidence of racial discrimination had a *de facto* injury sufficient to confer standing. "Thus a tester who has been the object of misrepresentation made unlawful under § 804(d) [of the FHA] has suffered an injury in precisely the form the statute intended to guard against, and therefore has standing[.]" *Havens, supra.* In *Strubel,* the Second Circuit took particular note that the *Havens* plaintiff/tester "satisfactorily demonstrated injury in fact although the tester had no intent to buy or rent a home," and fully "expect[ed] to receive false information." *Strubel,* 842 F.3d at 190 n.8.

Here, the R&R considered that because Pinks made no efforts to obtain the statutorily required information; because he did not pay sufficient attention to the received notice; and, because he could not afford to redeem the collateral, he failed to demonstrate M&T's noncompliance was "relevant to any injury to [him]." DI 177 at 6. This is exactly the kind of conduct a claimant is *not*

required to prove to establish standing for an invasion of a statutory interest which creates a concrete *de facto* injury. Where the legislature has determined that Pinks has already sustained such an "invasion" prior to the disposition of his own collateral in exactly the way the UCC was designed to protect, he need not allege any additional harm.

Alternatively, even if Pinks' right to be sent this information is deemed "procedural," he has nevertheless alleged an injury-in-fact that is neither "bare" nor trivial:

> Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question. See *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (recognizing that injury required by Art. III may be based on "statutes creating legal rights" . . .); accord *Lujan v. Defs. of Wildlife*, 504 U.S. 578 (recognizing Congress's authority to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law")
>
> *****
>
> Where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient "risk of harm" to the underlying interest to establish a concrete injury without "need [to] allege any *additional* harm beyond the one Congress has identified." *Spokeo,* [] 136 S.Ct. at 1549 (emphasis in original.)

*Strubel,* 842 F.3d at 188, 189. See also, *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170 (2d Cir. 2012) (same, pre-*Spokeo*). Thus even when viewed as a purely "procedural" violation, M&T's noncompliance with the UCC's requirements of sending "reasonable notification of disposition" (UCC § 9-611(b), to include the specific disclosures required by UCC § 9-614(1), presents a self-evident and "sufficient risk of harm" to Pink's interest in accurate and informative pre-sale disclosure.

Here, the requirement that Pinks be notified prior to disposition that he had a right to an accounting of his unpaid indebtedness is not divorced from his interest in the "commercial reasonableness" of the foreclosure sale and his interest in complete information about his account. An accurate accounting enables a debtor to make informed decisions concerning whether to attempt to arrange other financing, other buyers, redemption, and the correct amount of his deficiency

exposure. On the other hand, if his accounting is inaccurate, this Court has already found that a debtor who has been informed of his right to an accounting is at an advantage over one who has not been so informed. DI 22 at 5. This is equally true with respect to a debtor's rights to a "description of any liability for a deficiency," a "real risk of harm" for any debtor as a result of his foreclosure sale. All Pinks must demonstrate to establish a "real risk of harm" for these "procedural" noncompliances is "a plausible claim of adverse effect on consumer behavior due to the informational deprivation." *Stubel*, 842 F.3d at 193.

Standing also requires that the claimed injury be "fairly traceable to the challenged action of the defendant, *and not the result [of] the independent action of some third party* not before the court." *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136 (internal citations omitted.) (emphasis added.) As the emphasized language makes clear, the "fairly traceable" inquiry focuses not on the strength or length of the causal chain but the identity of the actor at the end of it. "Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable *to the defendant's conduct*." *Lexmark Intern Inc. v. Static Control of Components, Inc.,* 134 S.Ct. 1377, 1391 n. 6 (2014) (emphasis added). "It is also 'wrong' to *'equate[] injury fairly traceable to the defendant with injury in which the defendant's actions are the very last step in the chain of causation.'" Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) (internal citations omitted) (emphasis original.) On this point, the R&R erroneously conflated proximate cause with the "fairly traceable" standard.

The R&R's focus on Pinks' "[a]dmission[s]" that "he 'did not pay attention to the Pinks Notice'" and that "he 'did not want [the collateral because he] couldn't make payments on it,'" also have nothing to do with whether his injury-in-fact is "fairly traceable" to M&T's conduct. DI 177 at 6. No amount of "paying attention" could have changed the Pinks Notice with respect to the missing information that M&T failed to send as required by the UCC. To deny standing because Pinks "couldn't make payments," as the R&R recommends, would effectively nullify the statutory

damage provision, as inability to pay is almost always the cause of a consumer debtor's default. This is exactly the type of scenario in which a legislature "has the power to define injuries and *articulate chains of causation* that will give rise to a case or controversy where none existed before." *Lujan,* 504 U.S. at 580, 112 S.Ct. at 2146-47 (Kennedy, J., concurring), citing *Warth v. Seldin,* 422 U.S. at 500, 95 S.Ct. at 2205. (emphasis added.)

## II. PINKS HAS "CLASS STANDING" TO REPRESENT THE CLASS.

The R&R finds that Pinks lacks Article III standing for class claims arising under the laws of states other than South Carolina (DI 177 at 6-10), and that he cannot meet the requirements of "class standing" for those same claims. DI 177 at 7-10.  The question whether Pinks is required to have Article III standing for any claim other than his own was resolved adversely to M&T (and contrary to the R&R) in this Court's denial of M&T's Motion for Judgment on the Pleadings under Rule 12(c), Fed. R. Civ. P.  DI 98.

M&T sought dismissal on the pleadings of any "class claims" outside the state of South Carolina, where Pinks lives, under Article III.  This Court denied that Motion and rejected its flawed Article III premise. DI 98. This Court held that the Complaint plausibly pled that Pinks' individual claim and that of the other class members implicate the "same set of concerns" under *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145,162 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1624 (2013)).  This obviated any purported "Article III issue" as to Pinks' ability to serve as a class representative, in or out of South Carolina, and effectively put Pinks to his proof of these assertions under Rule 23.  Except as it may overlap Rule 23, *NECA-IBEW* has no further role in this case.

In support of certification, Pinks has clearly proven his key class allegations, namely that his claim and the claim of each class member "(1)…arises from the same course of conduct that gives rise to the class members' claims; (2)… arises out of the same form Notice language; (3)… arises out of the same legal theory and uniform state statutory provisions of the UCC; and, (4)… gives rise to

identically-computed, minimum statutory damages determined according to UCC § 9-625(c)(2)." DI 1, ¶27.

(1) As to a uniform course of conduct, M&T has never disputed that it sent approximately 10,000 "Pinks Notices" following repossession and prior to sale of collateral during the class period, and it has in fact produced the records and presented these facts under oath in response to discovery. DI 158 at 5 and cited record materials. As to each class member, the only acts of M&T upon which liability to each class member is predicated are identical and admitted.   (2)  M&T  also has never disputed that the text of each "Pinks Notice" is in all material respects identical to Exhibit 2 to the Complaint.  Its discovery responses referred to above were all limited to transactions involving the "Pinks Notice" form. (3) As the Motion comes before this Court, no party has identified a single material variation in the relevant UCC texts. [4] Pinks' submissions prove that the UCC texts of the relevant sections of the UCC are either identical in all class jurisdictions or where variations exist, relate to no matters not at issue in this case. DI 148-1, -2, -3.  Most telling, M&T has submitted nothing which controverts this showing. (4) The decisional law on the relevant Article 9 provisions is no less uniform. There is not even a minority view concerning the elements of the underlying cause of action or the computations of statutory damages. The few cases concerning the information missing from the Pinks Notice all hold that proof of a violation in a consumer goods transaction mandates an award of minimum statutory damages, without the need of any further proof, such as materiality. *See*, DI 158 at 13 n.5.  While M&T attempted to argue that the secured party's standard of compliance with UCC § 9-614 varied by decisional authority in some jurisdictions where courts applied a "substantial compliance standard," whereas others applied a "strict compliance" standard, this argument is refuted by the uniform statutes themselves and the fact that

---

[4] M&T did identify one state initially included in the proposed class, Maryland, which indeed has a non-uniform add-on to UCC § 9-614.  Maryland has been removed from the proposed class.  DI 169.

the two cases M&T submitted for this point involved non-consumer notices under UCC § 9-613. *See,* Argument II. A., DI 174 at 14-16.

This uniformity was apparent from the first contested proceeding in this case.  Indeed, in briefing M&T's unsuccessful Motion to Dismiss, neither side could locate South Carolina decisional authority on the information missing from the Pinks Notice. Accordingly, both relied exclusively and interchangeably on non-South Carolina decisions in advancing their positions as to the applicable statutory provisions. DI 8, 12, 14 M&T itself argued that "because the UCC is a uniform law, this Court can and should rely on decisions from other courts in resolving these questions." DI 8 at 8 n.4.  Accordingly, in rejecting M&T's arguments that the Pinks Notice's contents complied with South Carolina's UCC, this Court directly relied solely on a decision from a lower New York City trial court. DI 22 at 9. M&T's arguments concerning its claimed compliance with the statute by providing alternative information were rejected based on an appellate decision from Illinois. DI 22 at 7-8.  Finally, Pinks' research has found no reported decision construing the damage formula of UCC § 9-625(c)(2) other than according to its plain arithmetical meaning. M&T has done no better. [5]

In fact, on every one of the "class allegations" in ¶ 27 of the Complaint (DI 1), which this Court determined were sufficiently alleged, Pinks' evidentiary showing and legal research have demonstrated uniformity of undisputed facts and controlling statutory and decisional law. M&T has not offered, and the R&R nowhere cites, anything in the record which controverts Pinks' showing. On the class "case in chief," common issues are not merely predominant, they are exclusive.  This easily meets the requirement that Pinks' "who has a  personal stake in *proving* [his] own claim against

---

[5] The only issue which M&T has raised in connection with the statutory damages is that Ohio has added an extra step in the mathematical formula, requiring a credit be given to the secured party for certain expenses, which M&T does not claim that this imposes a non-manageable variation. *See,* Argument III. E., DI 174 at 33-34.

the defendant has a sufficiently personal and concrete stake in proving other, related claims [of the absent class members] against the defendant," as his claim does *not* "turn on *very different proof*" than their claims. *Retirement Bd. of the Policemen's Ann. & Benefit Fund of the City of Chicago v BNYM,* 775 F.3d 154, 162-163. (2d Cir. 2014) (emphasis added.) This also satisfies his burden in connection with overlapping Rule 23 criteria.

### III.   THIS CASE MEETS RULE 23 CERTIFICATION REQUIREMENTS.

On numerous prerequisites to certification, the R&R makes no findings.  It completely bypasses numerosity, commonality, typicality and adequacy of representation under Rule 23(a). ("The Court makes no findings as to whether Pinks would be able to establish the requirements for class certifications pursuant to FRCP Rule 23(a).") DI 177 at 10. In fact, Pinks' showings in support of these prerequisites (See DI 158 at 10-15) are in large measure not even disputed. Thus, one finds little if any discussion in the R&R of Pinks' following key contentions:

> The elements of the UCC claim in this case are: (1) that the claimant was an obligor to a consumer-goods transaction to which M&T was the secured party; (2) that M&T sent the claimant a notification of disposition of his collateral that lacks one or more items of mandatory information required by § 9-614(1); and, (3) that M&T thereafter "disposed" of his collateral. Liability will be determined, as a matter of law, most likely at summary judgment, by an examination within the four corners of the three documents: the RICSA, and the two statutorily-required UCC notices, namely, the Pinks' Notice pursuant to § 9-614(1) and a post-sale explanation of calculation of surplus or deficiency pursuant to § 9-616(b)(1) and (c). (*e.g.,* DI 13, Ex. 1) Upon a finding of liability, the amount of his minimum statutory damages will be computed by mathematical formula as a ministerial function of this Court, applied to the express terms of his RICSA. None of this will entail any fact finding beyond the face of documents whose authenticity cannot be questioned. (DI 158 at 15-16.)

The R&R listed other non-Rule 23(a) issues on which it made no findings. DI 177 at 13-14. In accordance with this Court's *de novo* review under Rule 72, Fed.R.Civ.P., and in the interest of brevity, Pinks respectfully refers the Court to the his prior briefing, namely his Memorandum in Support of Class Certification (DI 158); his evidentiary submissions (DI 148-1, 148-2, 148-3); Pinks' Declaration (DI 140-1); Declarations of Counsel (DI 140-2, 140-3, 150, 1515); and, his Reply

15

Memorandum (DI 174) on all issues, and does not further discuss fully briefed issues on which the R&R declined to make findings.[6]

The R&R bases its recommendation against certification on five listed issues, as to which it finds that "individual questions of law predominate over class issues [which] requires denial of certification." DI 177 at 10-11.  We address these in turn.

First, the R&T found that variations or potential variations in state law exist in the proposed class jurisdictions with respect to the notification provisions of Article 9 of the UCC defeat predominance. DI 177 at 12-13. This finding is based almost entirely on *Jenkins v. Hyundai Motor Fin. Co.,* 2008 WL 7818162 (S.D. Ohio, Jun. 2, 2008):

> In [*Jenkins,*], the named plaintiff sought to certify a class of individuals in forty-nine states to whom the defendants had either failed to provide statutorily-required pre-disposition notices at all or failed to provide all of the statutorily required information. In denying class certification, the court found the "burden of analyzing and applying the nuances in multiple state laws ... would ... overwhelm a jury." *Jenkins,* 2008 WL 781862 at *7.  While Pinks notes correctly that this case would not be tried to a jury, the "certification [here] would require this court to decide ... issues of first impression for multiple foreign jurisdictions." *Id.* This Court agrees with the concerns raised by the court in *Jenkins,* and finds that the attempt to construe these various state interpretations is ill-advised.  (DI 177 at 11.)

The R&R's broad brush treatment of *Jenkins* glosses over major factual distinctions between that case and this one, while overlooking that as to the limited Article 9 notification requirements at issue in this case, *Jenkins* found exactly the uniformity which Pinks has demonstrated on the record here.

Like Pinks, the *Jenkins* class plaintiff alleged a violation of the UCC notice provisions of UCC § 9-613, and 614; however, unlike Pinks, she also sought relief from the finance company's deficiency claim under Ohio's Retail Installment Sales Act ("RISA"). (O.R.C. § 1317.12). *Jenkins,* 2008 WL 7818162, at *2.  These claims thus went beyond the notice of disposition at issue in this

---

[6] The current proposed class definition, as most recently modified, is set forth in the Second Amended Motion for Class Certification. DI 179.

case, and factually implicated the defendant's "subsequent attempts to collect on [her] deficiency balances," as violative of both UCC and RISA. *Jenkins, id.* The problems with Jenkins' claims were *not* uniformity of her statutory damages under UCC § 9-625(c)(2), but the thorny question of whether the debtor is still subject to a deficiency liability under UCC § 9-626 (*"Action in which deficiency or surplus is in issue."*), a provision which is not involved in this case at all. In addition to its inherent factual variations, such claims fall under a different provision of the UCC, which, in a consumer transaction, "leaves to the courts the determination of the proper rules" concerning a deficiency upon secured party noncompliance. UCC § 9-626(b). This expressly invites a welter of differing state statutes and interpretations. The *Jenkins* court's finding of differences in "Notice requirements from state to state, particularly as to the proper remedy for violations," *Jenkins*, at *7, refers to this interplay between UCC § 9-626(b) deficiency remedies and different state RISA requirements and remedies, neither of which is present in this case. The court ultimately refused to certify a multi-state class on manageability grounds. ("[T]he court finds…manageability, the most apposite and difficult to overcome.) (*Jenkins*, at * 7) (emphasis added.)

In these key respects, *Jenkins* differs fundamentally from this case. First, Pinks has no deficiency owed to M&T nor does he seek deficiency relief for the class, such as barring a deficiency or enjoining M&T from collecting a deficiency. M&T, as always, may bring suit outside this action against anyone who it claims owes a deficiency to it, as it has been free to do  while this action is pending. Pinks' action, however, is *not* "an action in which a deficiency… is in issue," (UCC § 9-626(b)), and any state law non-uniformity with respect to deficiencies is irrelevant to his action. Nor would M&T be able inject such issues into the case upon certification through counterclaims against absent class members, as they are not "opposing parties" for purposes on Rule 13, Fed.R.Civ.P., as this Court held. *In re Bank of NY Mellon Corp. Forex Transactions Litig.,* 42 F.Supp.3d 520, 527 (S.D.N.Y. 2014) *See,* Argument II. B., DI 174 at 16-18. Second, Pinks is not attempting to certify a

class under various, non-uniform state statues, such as RISAs, which provide their own requirements and remedies, as well as impact upon the deficiency rules of UCC § 9-626(b). Third, M&T has identified only four putative class jurisdictions where it asserts that other state laws such as state RISAs have the "potential" to "modify or supersede" UCC notification provisions, and which at most, would remove these jurisdictions from the class. DI 153 at 4-5. Finally, as the R&R notes but fails properly to appreciate, this case will not involve a jury.

*Jenkins*, however, when considering only the claims which Pinks asserts, supports Pinks' position as to UCC uniformity – even extended to 49 rather than 20 states. Jenkins specifically took note of eight items of information required to be sent to a consumer debtor in the notification of disposition under the UCC, including the ones at issue in this case – a statement of the debtor's right to an accounting of his unpaid indebtedness and his right to a description of any liability for a deficiency. *Jenkins*, *id.,* at *2. As to these provisions *Jenkins* found: "*the laws of all forty-nine states*…require creditors to send written notice…to debtors before creditors sell the collateral-vehicles. With the exception of North Dakota, *the statutory notice in all jurisdictions requires the following eight identical pieces of information." Id.* (emphasis added.) The *Jenkins* court also found that, like M&T in this case, the defendant had used the same "generic" notice form in 39 of the states and "substantially similar" notices to the generic model "in the other eleven states." *Id.*

The *Jenkins* court concluded, in contrast with the R&R here, that plaintiff had met her Rule 23 burden for a UCC multi-state damages class on both commonality and predominance grounds: Jenkins "identifies that the common legal issue is whether the notices Hyundai sent satisfy the requirements of each state's version of UCC 9-613 and 9-614…[T]he Court concludes Plaintiff has established that common issues of law and fact predominate." *Id.* Thus *Jenkins* expressly finds that the multi-state UCC class as proposed in this case does satisfy both commonality and predominance.

The second area of dispute which the R&R found barred certification involves purported state law variances concerning (1) "M&T's ability to collect on underlying deficiencies given the sufficiency of the Pinks Notice" and (2) "whether there are compulsory counterclaims" which defeat certification. Pinks asserts that neither of these two issues creates manageability problems defeating certification. There can be no such claims in this case, as "non-party putative class members are not properly considered 'opposing parties' under Rule 13." *Forex, supra. See,* Argument II. B., DI 174 at 16-18. Pinks also disputes that this issue creates typicality or adequacy issues for Pinks as the class representative. He is not subject to a Rule 13 counterclaim as a matter of law in this action, and neither are the putative class members as a matter of law. *Forex, supra.*

(3) The R&R also finds non-uniformity in connection with the event when class members' claims accrue for statute of limitations purposes. DI 177 at 11. The proposed Class Definition includes a provision that the disposition of the class members' collateral "occur[] during the 'Class Period.'" DI 158 at 6. M&T argued that if the claim accrued from the date of notification instead, some class members' claim would be time-barred because the notification could occur outside the applicable limitations period even if the subsequent sale occurred within the limitations period. DI 153 at 44. This would cause manageability problems defeating certification, according to M&T, because this Court would have to determine as a matter of first impression under various state laws when this UCC claim accrues. *Id.* A simple adjustment in the class definition obviates this issue, and takes appropriate account of state law development.

After briefing closed on the certification motion, the South Carolina Court of Appeals ruled that a UCC notification claim under SC Code Ann. § 36-9-611 and 614 (2003), (UCC § 9-611, 614) accrues for statute of limitations purposes "when the secured party sends noncompliance notice to the debtor, not when the secured party disposes of the collateral." *Delaney v. First Fin. of Charleston,*

19

*Inc.,* 791 S.E.2d 546, 552 (S.C. App. 2016))[7] Accordingly, Pinks has filed with these objections a Second Amended Motion for Class Certification (DI 179) which requires that both notification of disposition and disposition of collateral occur within the Class Period. Aside from reducing the class size (and M&T's exposure) by approximately 8.5%, this eliminates any manageability issues of non-uniform accrual events under various state laws, as the date of notification is the earliest date the claim could accrue.[8]

(4) The *Jenkins* court was concerned with the "modification or supersession" of UCC provisions due to other state laws in "many" jurisdictions, but with no manageability plan to address the problem. *Jenkins, supra* at *7. Here, M&T has identified only Connecticut, Ohio, D.C., and New York as jurisdictions where it claims a "potential" for this problem arises. DI 153 at 38-39. Pinks has demonstrated that there is no manageability problem here. *See,* Argument III. A., DI 174 at 22-28. Yet the R&R accepted M&T's position as one of the five issues which defeats certification of all jurisdictions. DI 177 at 11. The R&R thus erred because even if M&T's claims of problems due to such "potential" conflicts were valid in some or all of the four jurisdictions, which they are not, the only appropriate result is exclusion, not denial of certification of the remaining jurisdictions. Nothing about this even suggests unmanageability.

In any event, Pinks has demonstrated that there are no such problems in *any* of the four claimed jurisdictions. M&T concedes that none of the four have express provisions in either their

---

[7] Delaney's Petition for Rehearing was denied by the Court of Appeals on February 17, 2017, and his Petition for Certiorari was filed on March 20, 2017.

[8] The accompanying Declaration of Counsel (DI 180) attests that according to M&T's discovery responses with respect to South Carolina putative class members, the only state in which this type of detailed data is available, before the Amendment approximately 8.5% of putative class accounts had a date of notification beyond the three-year statute of limitations period, but with a date of sale occurring within the Class Period, and would thus be removed from the putative class. Projecting this to the nationwide numbers provided by M&T, this leaves approximately 9,500 individuals, all of whom are known by name and address, in the class.

UCCs or the RISAs which purport to "modify or supersede" the UCC notice provisions as was the concern in *Jenkins*. DI 153 at 38-39. Nevertheless, M&T maintains that there is still a "potential" for "conflict" within the four jurisdictions, and that these are matters of first impression which this Court should refrain from deciding. *Id.* M&T readily admits, however, that each of the four jurisdictions has adopted UCC § 9-201. DI 153 at 4. UCC § 9-201 provides that consumer secured transactions are subject to both the UCC and any other state law, but in the event of a "conflict" between the two, the other state law will prevail. M&T then argues, contrary to common sense and without authority from the UCC or otherwise, that where (1) certain information is cumulatively required in both the RISA notice and the UCC notice or (2) where the RISA provides for different information than that which is required by the UCC, a potential "conflict" exists. *Id.* M&T fails to explain why this is so or why a secured party cannot easily comply in all four jurisdictions with both laws, by simply sending all the information required by law. This is clearly not a "potential" conflict with respect to the notification information at issue here, as neither statute prevents or makes it impossible for the secured party to comply with both. *Jacobs v. Healey Ford-Suburu, Inc.,* 652 A.2d 496, 497 (Conn. 1995) (Finding that secured parties must comply with the notification provisions of Connecticut's UCC as well as its RISFA, because "where both statutes can apply simultaneously" there is no conflict.)

(5) The R&R lastly found the question of which statute of limitations to apply in the 20 proposed class jurisdictions was another area where state law variations defeat predominance with respect to *all* jurisdictions. DI 177 at 12-13. Pinks disputed this notion as advanced by M&T. *See,* Argument III. B., DI 174 at 28-32. First, Pinks submitted, without dispute from M&T and without a contrary finding in the R&R, that the New York borrowing statute applied to create a three year limitations period in New York and a three year maximum in all other class jurisdictions. DI 174 at 29. Yet the R&R completely ignored the effect of this mechanism on resolving manageability issues.

Pinks demonstrated, again without dispute, that in six other jurisdictions (Florida, Kentucky, New Hampshire, Rode Island, Texas, and Vermont) there is no shorter potential candidates than three years (two in Virginia), DI 174 at 28, and the R&R does not find to the contrary. Finally, Pinks submitted that in two other jurisdictions (Pennsylvania, via *Cubler v. Trumark Fin. Credit Union,* 83 A.3d 235, 237 (P.A. Ct. App. 2013), DI 174 at 29, and South Carolina, via *Presley v. Tupperware Long Term Disability Plan,* 55 F.3d 334, 339 (4th Cir. 2009), DI 174 at 7-8) this Court is bound to apply, not predict, the limitations periods for UCC claims consistent with those controlling decisions to create three year periods.[9]   The R&R refused to even address this issue and its effects on resolving any manageability issues.

Finally, the R&R determined that because the appropriate UCC limitations period has never been decided in the remaining proposed jurisdictions, resolving these questions would impermissibly require this Court to determine "individualized" state law questions as per *In re Rezulin,* 210 F.R.D. 61, 67 (S.D.N.Y. 2002). DI 177 at 13. However, the statute of limitations issues in *Rezulin* concerned complicated fact patterns which varied from class member to class member, not statute of limitations issues which will be decided as a matter of law in an across the board fashion in each jurisdiction. See, e.g., *In re U.S, Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 127 n. 10 (2nd Cir. 2013), *cert. denied,* 134 S. Ct. 1938 (2014), discussed at DI 158 at 17.

This also overlooks the fact that in each such jurisdiction (D.C., Georgia, Maine, Massachusetts, Connecticut, Delaware, New Jersey, North Carolina, Ohio, and West Virginia), Pinks has identified all shorter statutory candidates, and has provided the appropriate, well-established tests under state law for considering the applicability of each such statutes (which M&T has not

---

[9] *See* also, *Delaney v. First Fin. of Charleston, Inc, Delaney v. First Fin. of Charleston, Inc.,* 791 S.E.2d 546 (S.C. App. 2016) discussing the two potential statutory candidates at issue. This sets up *Presley's* binding test as to which to apply to a statutory penalty which is limited to a recovery by the "party aggrieved."

controverted) for the Court to apply to the UCC.   DI 174 at 30-32.   Nothing about this jurisprudence presents any genuine "first impression" issue. For example, in Delaware a shorter period than three years is established by a statutory candidate which will apply to any cause of action for a "forfeiture upon a penal statute." DI 174 at 31-32, DI 148-1 at 3. Pinks has submitted authority from the Supreme Court of Delaware, which M&T has not challenged, interpreting that statute as restricted to "civil action[s] *in rem." State v. Rositto,* 331 A.2d 385, 387 (Del. 1974).   There can be no real dispute that this forfeiture limitations statute is completely inapplicable to Pinks' UCC claim under both a plain reading of the statutory language and the Delaware Supreme Court's decision. Thus it cannot be an exercise in impermissible, state law predicting for this Court to so rule. Admittedly, other states within this group have different tests, the application of which may be more involved than in Delaware. Nevertheless, Pinks maintains that he has provided the appropriate tests to apply to the UCC in each such state, and that where a test permits this Court to apply the limitations statute to the UCC, he has carried his manageability burden with respect to statute of limitations issues.  Surely it is not beyond the capacity of this Court to discern and apply established governing law, which is inherently a class (or subclass) issue and not an individualized issue as the R&R maintains.

Finally, the R&R's suggestion that purely individual questions, such as tolling, might impermissibly individualize statute of limitations determinations (DI 177 at 12), is not on point. No tolling is claimed or needs to be, by a Class Definition and a Class Period defined solely with respect to the earliest accrual date occurring within shortest available, three-year limitations period (two years in Virginia), pursuant to the New York borrowing statute.

## CONCLUSION

Having met all requirements for Rule 23 for the reasons set forth more fully herein, Plaintiff Jerry Pinks submits that his Second Amended Motion for Certification pursuant to Fed.R.Civ.P.

23(b)(3) should be granted; the Class Definition, Class Jurisdictions, and Class Period as proposed herein be adopted; Mr. Pinks appointed as Class Representative; the undersigned counsel appointed as Class Counsel; and, that M&T be ordered to forthwith produce, as to all members of the class, the documentation already produced as to class members resident in South Carolina.

May 5, 2017

Respectfully Submitted,
HERZFELD & RUBIN, P.C.

Daniel V. Gsovski (DG 4413)
A Member of the Firm
125 Broad Street
New York, New York 10004
(212) 471-8512
dgsovski@herzfeld-rubin.com

PHILIP FAIRBANKS, ESQ.
1214 King Street
Beaufort, SC 29902
(843) 521-1580
philip@lowcountrybankruptcy.com
*admitted pro hac vice*

FREDERICK M. CORLEY, ESQ.
1214 King Street
Beaufort, SC 29902
Telephone: (843) 524-3232
E-mail: rick@1214law.com
*admitted pro hac vice*

KATHY D. LINDSAY, ESQ.
1214 King Street
Beaufort, SC 29902
(843) 521-1581
klindsay@islc.net
*admitted pro hac vice*

Counsel for Plaintiff