**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JERRY PINKS, individually and on behalf of others similarly situated,<br>　　　　　Plaintiff,<br>　　　　vs.<br>M & T BANK CORP.,<br>　　　　　Defendant. | Civil Action No. 13-cv-1730-LAK-RLE<br><br>**M&T BANK'S OPPOSITION TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION** |

## TABLE OF CONTENTS

I.　INTRODUCTION .................................................................................................. 4

II.　RELEVANT FACTS OF RECORD ..................................................................... 6

　　A.　Plaintiff Obtains Financing to Purchase A 2009 Big Country Fifth Wheel Trailer For His Daughter With No Intent To Repay The Debt Personally ............... 6

　　B.　M&T Repossesses The Big Country Trailer At Plaintiff's Request After His Daughter's Divorce ...................................................... 7

　　C.　Plaintiff Files Bankruptcy To Avoid Deficiencies Owed To M&T ............................. 8

　　D.　Plaintiff Files His Putative Nationwide Class Action Complaint Demanding Over $70,000 For Himself ...................................................... 9

　　E.　Plaintiff Seeks Class Certification, Jettisoning Putative Class Members In 25 States ............... 9

　　F.　Judge Ellis Recommends Denial Of Plaintiff's Motions For Class Certification ...................... 10

III.　APPLICABLE STANDARD OF REVIEW ........................................................ 10

IV.　PLAINTIFF'S MOTIONS FOR CLASS CERTIFICATION SHOULD BE DENIED ............ 11

　　A.　Judge Ellis Correctly Determined That Plaintiff Lacks Article III Standing Because He Has No Concrete Injury-In-Fact ................................. 11

　　B.　Judge Ellis Correctly Determined That Plaintiff Lacks Article III Standing To Assert Claims Under The Laws Of States Other Than South Carolina ............... 15

　　C.　Judge Ellis Correctly Determined That Plaintiff's Proposed "Class" Fails Rule 23(b)(3)'s Predominance Requirement Because A Host Of Individual Issues Exist Under The Laws Of 20 Different States ............... 17

　　D.　Plaintiff's Motions Fail To Satisfy Rule 23(a) And The Ascertainability Requirement ............. 24

V.　CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases:**

*Allstate Ins. Co. v. Serio*, 261 F.3d 143 (2d Cir. 2001)..................................................18

*Cafferty v. Scotti Bros. Records*, 969 F. Supp. 193 (S.D.N.Y. 1997)............................22

*Cephas v. Nash*, 328 F.3d 98 (2d Cir. 2003) ..................................................................11

*Cotchett v. Avis Rent A Car System, Inc.*, 56 F.R.D. 549 (S.D.N.Y. 1972)...................24

*Curley v. AMR Corp.*, 153 F.3d 5 (2d Cir. 1998) ...........................................................17

*DaimlerChrysler Corp. v. Cuna*, 547 U.S. 332 (2006)................................................5,15

*Delaney v. First Financial of Charleston, Inc.*, 2013 WL 9921461 (S.C. Com. Pl. Apr. 30, 2013) ...............23

*Delaney v. First Financial of Charleston, Inc.*, 791 S.E.2d 546 (S.C. Ct. App. 2017)......................................23

*Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132 (D. Conn. 2015) .................................16,17

*Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595 (S.D.N.Y. 1982)..............18

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576(S.D.N.Y. 2002)..........................8

*Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482 (N.Y. 1999) .....................................22

*Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264 (E.D.N.Y. 2010)  .....................................................16

*Haliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398 (2014). ............................20

*Henry v. Consumer Portfolio Servs.,Inc.*, 2007 WL 1053787 (Cal. Ct. App. Apr. 10, 2007)....................18,20

*IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19 (2d Cir. 2015) ......................22

*In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984)  ..................................................22

*In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224 (D. Conn. 2015) ...........................16

*In re Bank of NY Mellon Corp. Forex Transactions Litig.*, 42 F. Supp. 3d 520 (S.D.N.Y. 2014)................24

*In re Baycol Prod. Litig.*, 218 F.R.D. 197 (D. Minn. 2003) ..........................................19

*In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139 (S.D.N.Y. 2008)..............................19

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34 (E.D.N.Y. 2014)  .16,17

*In re Old Carco LLC*, 509 F. App'x 77 (2d Cir. 2013) ....................................................8

*In re Rezulin Products Liab. Litig.*, 210 F.R.D. 61 (S.D.N.Y. 2002)..................................................17,18,21

*In re Propranolol Antitrust Litig.*, 2017 WL 1287515 (S.D.N.Y. Apr. 6, 2017)..............15

*Jenkins v. Hyundai Motor Financing Co.*, 2008 WL 781862, (S.D. Ohio Mar. 24, 2008) ....................18,19

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015)................................17,18

*Jurgensen v. Felix Storch, Inc.*, 2012 WL 2354247 (S.D.N.Y. June 14, 2012) ...............................................15

*Kelen v. Nordstrom, Inc.*, 2016 WL 7373807 (S.D.N.Y. Dec. 16, 2016) ...........................................11,12,15

*Lewis c. Casey*, 518 U.S. 343 (1996) .....................................................................................................15,16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...........................................................................................11

*Mahon v. Tica Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) ....................................................................5,15,16

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) ......................................................................................21

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs* 693 F.3d 145 (2d Cir. 2012) .........................5,16

*Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*, 986 F. Supp. 2d 412 (S.D.N.Y. 2013) .....16

*Ortiz v. Barkley*, 558 F. Supp. 2d 444 (S.D.N.Y. 2008) .................................................................................11

*Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498 (S.D.N.Y. 2011)  .............................................................14,18

*Parks v. Dick's Sporting Goods, Inc.*, 2006 WL 1704477 (W.D.N.Y. June 15, 2006) ..................................16

*Presley v. Tupperware Long Term Disability Plan*, 55 F.3d 334 (4th Cir. 2009) .........................................24

*Richards v. Direct Energy Servs., LLC*, 120 F. Supp. 3d 148 (D. Conn. 2015) ............................................16

*SCM Grp., Inc. v. McKinsey & Co.*, 2011 WL 1197523 (S.D.N.Y. Mar. 28, 2011) ......................................22

*Simington v. Lease Fin. Grp., LLC*, 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012) ....................................15,17

*Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 647 N.E.2d 1308 (N.Y. 1995) ..............22

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ...............................................................11,12,14,15

*Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016) ..............................................................11,12,13,14,15

*Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007)  ....................................16

*Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62 (S.D.N.Y. 2013) .....................................................10

*Valencia ex rel. Franco v. Lee*, 316 F.3d 299 (2d Cir. 2003) .......................................................................18

*Vincent v. Money Store*, 304 F.R.D. 438 (S.D.N.Y. 2015) ......................................................................19,21

*Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986) .....................................................................14,18

*Waxman v. Cliffs Nat. Res. Inc.*, 2016 WL 7131545 (S.D.N.Y. Dec. 6, 2016) ............................................13

## I.  INTRODUCTION

M&T Bank Corp. ("M&T") opposes Plaintiff's objections to the Report and Recommendation ("Report") of Magistrate Judge Ronald L. Ellis recommending that Plaintiff's Motion and Amended Motion for Class Certification ("Plaintiff's Motions") be denied.  After conducting a rigorous analysis of the record, Judge Ellis correctly concluded, that Plaintiff's Motions should be denied.  This Court should adopt the well-reasoned Report.

Plaintiff seeks certification of a nebulous, fact-dependent, multi-state "class" of defaulting debtors who reside in 19 different states plus the District of Columbia (collectively, the "states") in order to pursue 20 different statutory, commercial code causes of action, based on a claim for which he asserts no concrete injury-in-fact.  Under these circumstances, Judge Ellis correctly determined that class certification is inappropriate, both because Plaintiff lacks Article III standing and because he fails to satisfy the requirements of Rule 23(b)(3).  In fact, Plaintiff has failed to cite a ***single*** case granting multi-state, class certification of the alleged state statutory claims.

First, Judge Ellis appropriately determined that Plaintiff has shown no concrete injury-in-fact necessary to support his own Article III standing to assert a violation of the South Carolina commercial code.  Specifically, he has not shown how he personally experienced any real injury from receiving M&T's Notice.  Dkt. 177 at 4-5.  As Judge Ellis observed, Plaintiff "readily admitted that he was not interested in the notice or even in recovering his property" and that Plaintiff "stated in deposition that he did not 'even pay attention' to the Pinks Notice because he 'wrote the letter to have Big Country repossessed, [. . .] didn't want it, [and . . .] couldn't make payments on it.'"  Dkt. 177 at 6 (quoting Dkt. 155-1 at 59:13-60:1).

Second, Judge Ellis found that Plaintiff lacks Article III standing to assert claims under the laws of states other than South Carolina.  Dkt. 177 at 6-10.  As he recognized, governing precedent requires a plaintiff to possess Article III standing for *each and every* claim that he or she asserts,

whether asserted individually or on behalf of a putative class.  *Id.*  Yet, Plaintiff already admitted that he cannot assert a statutory cause of action under any state law other than South Carolina.  Dkt. 56 at 4 ("It is undisputed that he would lack Article III standing to bring a UCC claim under any other states' laws in his own right.").  That admission is dispositive for the non-South Carolina claims.

Plaintiff argues that he can avoid the essential requirements of Article III standing by relying on the "class standing" standard articulated in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ("*NECA*"), 693 F.3d 145 (2d Cir. 2012).  However, unlike in *NECA*, Plaintiff's claim and those of putative class members do not all arise under the same law; Judge Ellis put the matter succinctly:  "Pinks can attempt to establish standing in South Carolina, where he lives and where the alleged injury happened.  He cannot successfully maintain claims for other states with different laws."  Dkt. 177 at 7.  Judge Ellis further found that *NECA* did not overturn established precedent requiring plaintiffs to show standing for every claim that he or she asserts, even when bringing a putative class action.  *Id.* at 9 (citing *Mahon v. Tica Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) and *DaimlerChrysler Corp. v. Cuna*, 547 U.S. 332, 335 (2006)).  He rightly ascertained that "Pink's reliance on *NECA*, where every class member's claim arose under the same federal law, is misplaced."  Dkt. 177 at 7.

Third, Judge Ellis also correctly decided that Plaintiff failed to show that questions of law common to the class predominate over questions affecting only individual class members under Rule 23(b)(3).  Relying on myriad decisions denying certification of multi-state classes, Judge Ellis noted that "[t]he multi-state nature of this putative class action creates many individualized issues that require the Court to look into the laws of twenty jurisdictions" and that "[e]ven if Pinks could establish standing for himself and for the putative class, he would still not be able to maintain a class action."  Dkt. 177 at 10.  For example, he determined that significant disputes exist as to: (1) potential conflicts between the notice requirements of each state's Retail Installment Sales Act

("RISA") and each state's commercial code; (2) M&T's ability to collect on underlying deficiencies; (3) the existence of compulsory counterclaims; (4) the applicable statutes of limitation; and (5) the times at which different state law commercial code claims accrue. *Id.* at 11. Accordingly, Judge Ellis found that "[p]roceeding with the proposed multistate class would require, at a minimum, the Court to evaluate, synthesize, and apply the law of twenty jurisdictions with respect to these five areas of dispute." *Id.* at 12.

As explained below, Plaintiff's Objections alternatively ignore or misconstrue controlling case law, fail to address Judge Ellis' findings and Plaintiff's admissions, and mischaracterize the prior opinions of both the Court and Judge Ellis. Perhaps most fundamentally, Plaintiff fails to even ask this Court to grant Plaintiff's Motions that were before Judge Ellis. Instead, he asks this Court to grant his "Second Amended Motion" filed after the Report was issued. Dkt. 182 at 16, 23. There is no justification for the request and the rules governing objections do not permit it. For all of these reasons and those set forth in its Opposition (Dkt. 153), M&T respectfully requests that the Court adopt the Report and deny Plaintiff's Motions.

## II.  RELEVANT FACTS OF RECORD

M&T submitted an extensive evidentiary record with its Opposition, which M&T incorporates and invites this Court to review. Dkts. 153 at 3-18, 154-155. These facts are briefly summarized here insofar as they pertain to the Report and Plaintiff's objections to it.

**A.    Plaintiff Obtains Financing To Purchase A 2009 Big Country Fifth Wheel Trailer For His Daughter With No Intent To Repay The Debt Personally.**

On August 6, 2008, Plaintiff purchased a 2009 Big Country fifth wheel trailer from a boat store in Ridgeland, South Carolina. Dkt. 155-1 at 25:8-21.[1] Plaintiff financed the purchase of the

---

[1]    Record citation page numbers in M&T's Opposition to Plaintiff's Objections ("Opposition") refer to deposition transcript page numbers rather than the electronic filing page numbers.

trailer with a retail installment and security contract governed by South Carolina law.  *Id.* at 28:11-21;
Dkt. 154-2.  The installment contract was assigned by the store to M&T.  Dkt. 1 ¶ 11; Dkt. 38 ¶ 11.

Plaintiff admitted that he purchased the Big Country trailer for his daughter, Deanna, and
then son-in-law, Paul Ray Marshall, because their credit was "too bad."  Dkt. 155-1 at 23:13-24:6; *id.*
at 26:12-23.  Under his contract, Plaintiff was required to pay 240 monthly payments in the amount
of $496.65, or a total amount of $119,676.  *Id.* at 29:2-25; Dkt. 154-2.  However, Plaintiff testified
that he had no intention of making the payments, did not have sufficient income to make the
payments, and did not intend to live in or use the trailer.  Dkt. 155-1 at 30:1-20; *id.* at 31:5-14.
Rather, Plaintiff expected his daughter and son-in-law to "live in" the trailer and make "all" the
monthly payments.  *Id.* at 30:17-20.

**B.      M&T Repossesses The Big Country Trailer At Plaintiff's Request After His
         Daughter's Divorce.**

On July 19, 2010, Plaintiff wrote to M&T and requested that it repossess the Big Country
trailer.  Dkt. 155-1 at 51:21-53:25; *id.* at 54:13-54:16; Dkt. 155-7.  In his handwritten letter, Plaintiff
explained that he was "authorizing M&T Bank to repossess on Fifth Wheel Camping Trailer."  Dkt.
155-1 at 51:21-53:2; Dkt. 155-7.  He also admitted: "This item was purchased for my daughter and
son in law who have now got divorced and quit making the payments on it.  I myself cannot make
the payments due to fact that I am on total and permanent disability and my only source of income
is social security disability."  Dkt. 155-1 at 51:21-53:2; Dkt. 155-7.[2]

From August 2008 until July 2010, Plaintiff never personally made a single payment on the
Big Country trailer.  Dkt. 155-1 at 30:6-30:20; 31:1-14.  He did not want the trailer and had no
intention of making the payments.  *Id.* at 64:1-8.  Based on his request, M&T repossessed the trailer.

---

[2]      In October 2008, Plaintiff financed the purchase of a 2008 Yellowstone motor home without any
ability to repay the debt.  He made no payments on the motor home debt and, within a few months, he
similarly voluntarily surrendered the motor home to M&T.  *See* Dkt. 153 at 9-10.

It then sent him a Notice of Repossession and Sale of Merchandise (the "Notice") dated July 29, 2010, itemizing the past due payments on the loan ($990.50), accrued late charges ($138.25), repossession fees ($1,000.00), and total amount due ($2,128.75).  Dkt. 155-1 at 58:11-59:12; Dkt. 154-1.  Plaintiff "didn't pay attention" to the Notice because he could not afford to redeem the vehicle or make the monthly payments.  Dkt. 155-1 at 59:13-60:1; *id.* at 64:1-8.  However, he admitted that, had he read the Notice, it would have provided him with the past due amounts owed.  *Id.* at 60:7-13.

The Notice accurately stated the past due payments on the loan, accrued late charges, repossession fees, and total amount due as of July 29, 2010.  Dkt. 154 ¶ 4.  M&T provided an actual accounting free of charge in the Notice because, based on its experience, the actual accounting provides a customer with the necessary information to allow him or her to promptly redeem the repossessed vehicle, if he or she so desires.  *Id.* ¶ 9.

After the Big Country trailer was sold at a private auction on September 15, 2010, a deficiency balance of $41,963.82 remained due and owing by Plaintiff to M&T.  Dkt. 155-1 at 61:4-62:21; Dkt. 154-3.  The Notice of Sale sent to Plaintiff accurately informed him of the "Total Amount Due/Deficiency."  Dkt. 154 ¶ 11; Dkt. 154-3.  Plaintiff has no personal knowledge about the circumstances surrounding the sale of the Big Country trailer.  Dkt. 155-1 at 63:14-23.  He was "hoping" that the sale proceeds would offset the debt owed on the trailer.  *Id.* at 63:3-13.

## C.    Plaintiff Files Bankruptcy To Avoid Deficiencies Owed To M&T.

On January 20, 2012, Plaintiff filed for chapter 7 bankruptcy in the U.S. Bankruptcy Court for the District of South Carolina.  Dkt. 155-1 at 64:14-16; *id.* at 70:16-23; Dkt. 155-8.[3]  At the March

---

[3]      The Court can take judicial notice of the filings made in the bankruptcy.  *See In re Old Carco LLC*, 509 F. App'x 77, 79 (2d Cir. 2013) (bankruptcy and district courts properly took judicial notice of debtor's bankruptcy filings); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 584 (S.D.N.Y. 2002) (Kaplan, J.) (taking judicial notice of electronic bankruptcy filings).

1, 2012 Meeting of Creditors and Examination of Debtor, in response to the bankruptcy trustee's question "Do you have any lawsuits you could file to collect money from someone else?," Plaintiff responded "No." Dkt. 155-11 at 6:13-15.  However, Plaintiff's counsel interjected and represented: "we have listed on the schedule as they have a potential UCC notice claim.  We believe that's worth about under $5,000.  There's a $39,000 deficiency claim against which it would be set off." *Id.* at 6:17-21.  Immediately after hearing those representations, the trustee declared the bankruptcy a "no asset case" and "abandon[ed] the schedule[d] property," including Plaintiff's "Potential UCC Notice Claim Against M&T Bank." *Id.* at 7:3-5.

**D.     Plaintiff Files His Putative Nationwide Class Action Complaint Demanding Over $70,000 For Himself.**

On March 14, 2013, Plaintiff filed his putative class action complaint in which he alleges a violation of the South Carolina Code relating to the Notice sent by M&T in connection with the repossession of the Big Country trailer.  Dkt. 1 ¶¶ 33-35.  He alleges no actual harm or actual damages.  Plaintiff's Complaint seeks only "statutory damages" in the amount of $70,144.20, *id.* ¶¶ 21, 35, although he valued his statutory damages claim in his bankruptcy at less than $5,000.  He sought to represent a putative nationwide or multi-state "class," even though: (1) he is the only named plaintiff and is a South Carolina resident who asserts a claim under the South Carolina Code; (2) the Big Country trailer was purchased, financed, and repossessed in South Carolina; and (3) he had no dealings with M&T outside of South Carolina.  *Id.* at ¶ 26.

**E.     Plaintiff Seeks Class Certification, Jettisoning Putative Class Members In 25 States.**

After taking discovery as to transactions in 44 states and the District of Columbia, Plaintiff abandoned any attempt to certify a class on behalf of customers in 24 states.  *Compare* Dkt. 1 with Dkt. 142.  On May 17, 2016, Plaintiff filed his Motion and Brief seeking certification of an alleged "class" of debtors located in 21 states.  Dkts. 140-141.  In support, Plaintiff filed his own lawyer-drafted declaration, as well as declarations from his lawyers.  Dkts. 140, 143-147.  Plaintiff also

attached three Appendices, which included additional legal argument focusing on various potential statutes of limitations in the 21 states, a copy of the model UCC and a summary chart of 21 distinct state statutes. Dkt. 148-1 to 148-3. Later, after M&T filed its Opposition, Plaintiff amended his Motion to remove the state of Maryland. Dkt. 169. Thus, he sought certification of a proposed "class" of debtors located in 20 different states. *Id.*

## F.    Judge Ellis Recommends Denial Of Plaintiff's Class Certification Motions.

On March 31, 2017, Judge Ellis issued his 15-page Report. Dkt. 177. As explained above, Judge Ellis determined that Plaintiff failed to meet his burden of proof to show that: (i) he has any concrete injury-in-fact sufficient to confer Article III standing; (ii) he has Article III standing to assert claims arising under state statutes enacted in states where he did not reside; and (iii) common issues predominate over individual issues for purposes of Rule 23(b)(3). Having determined that Plaintiff's Motions should be denied for these three reasons, Judge Ellis did not reach the additional Rule 23(a) requirements. He did find, however, that the reasons for his rejection of Plaintiff's Rule 23(b) arguments "impact" any analysis of the Rule 23(a) requirements, including: commonality, typicality, adequacy of representation, superiority, and ascertainability. *Id.* at 10, 13-14.

## III.  APPLICABLE STANDARD OF REVIEW

Rule 72(b)(2) permits an objecting party, such as Plaintiff, to "file specific written objections to" the Magistrate Judge's "proposed findings and recommendations." In resolving the objections, this Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The Court "has discretion in the weight placed on proposed findings and recommendations and may afford a degree of deference to the Report and Recommendation." *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 67 (S.D.N.Y. 2013). The Court "should not entertain new grounds for relief or additional legal arguments not presented to the magistrate[.]"

*Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).  "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003).

## IV.  PLAINTIFF'S MOTIONS FOR CLASS CERTIFICATION SHOULD BE DENIED.

### A.    Judge Ellis Correctly Determined That Plaintiff Lacks Article III Standing Because He Has No Concrete Injury-In-Fact.

To establish injury-in-fact sufficient to satisfy Article III, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The Supreme Court recently emphasized that in the context of Article III, "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term─'real,' and not 'abstract.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *see also Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) ("To be 'concrete,' an injury 'must actually exist[.]'").

Of particular relevance here, "Article III standing requires a concrete injury even in the context of a statutory violation" and thus a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Spokeo*, 136 S. Ct. at 1549; *see also Strubel*, 842 F.3d at 193 (finding no concrete injury where plaintiff did "not assert that the allegedly flawed notice caused her credit behavior to be different from what it would have been had the credit agreement tracked the pertinent 30-day notice language of [the model form]"); *Kelen v. Nordstrom, Inc.*, 2016 WL 7373807, at *4 (S.D.N.Y. Dec. 16, 2016) (finding no concrete injury where plaintiff did "not claim that she changed her behavior in any way based on Nordstrom's allegedly insufficient disclosures").

In this case, after conducting the required rigorous analysis of the uncontradicted evidentiary record, Judge Ellis correctly found that Plaintiff suffered no concrete harm sufficient to meet the injury-in-fact requirement.  Dkt. 177 at 4-6; Dkt. 153 at 20-24.  After Plaintiff financed the purchase

of the Big Country trailer, he personally made no payments on the debt.  Dkt. 155-1 at 30:6-30:20;

31:1-14.  He expected his daughter and son-in-law to "live in" the trailer and make "all" the

payments.  *Id.* at 30:17-20.  He did not want the trailer, had no intention of making any payments

and could not make the required payments.  *Id.* at 51:21-53:2; 54:13-54:16; 64:1-8.  After his

daughter and son-in-law divorced and stopped making payments, Plaintiff then wrote to M&T and

explained that he was "authorizing M&T Bank to repossess on Fifth Wheel Camping Trailer." *Id.* &

Dkt. 155-7.  After repossessing the Big Country trailer per Plaintiff's request, M&T sent Plaintiff the

Notice dated July 29, 2010 itemizing the past due payments on the loan, accrued late charges,

repossession fees, and total amount due.  Dkt. 155-1 at 58:11-59:12; Dkt. 154-1.  Plaintiff "didn't

pay attention" to the Notice because he could not afford to redeem the trailer or make the monthly

payments.  Dkt. 155-1 at 59:13-60:1; *id.* at 64:1-8.  And, Plaintiff's entire deficiency liability on the

trailer was extinguished in his bankruptcy.  Dkt. 155-13.  Plaintiff accordingly never made a payment

on the trailer, never intended to make a payment on the trailer and did not "even pay attention" to

the Notice because he had no interest in redeeming the trailer and could not afford to do so.

Plaintiff thus cannot satisfy his burden of showing a "concrete"—*i.e.*, "real"—harm from receipt of

the Notice and thus Judge Ellis correctly found that Plaintiff has no injury-in-fact sufficient to satisfy

Article III.  *See Spokeo*, 136 S. Ct. at 1548; *Strubel*, 842 F.3d at 193; *Kelen*, 2016 WL 7373807, at *4.

Plaintiff previously argued that he had a concrete injury because his injury "actually

happened" as a result of "[t]he sale of a specific item of a plaintiff's property in violation of the

law[.]"  Dkt. 170 at 2.  But Judge Ellis rejected this argument because it did not confer standing

under Article III.  Plaintiff cannot satisfy the concrete injury-in-fact requirement merely by alleging

that the trailer was repossessed.  He must show a concrete injury-in-fact "stemming from the

allegedly legally-insufficient Pinks Notice."  Dkt. 177 at 4-5.  However, Plaintiff specifically asked

M&T to repossess the collateral and he wanted the trailer sold to reduce his debt.  *Id.*; *see also* Dkt.

155-7.[4]  Plaintiff cannot claim to be injured by a notice of repossession sent in these circumstances because he did not incur any real harm and any purported injury was not traceable to M&T's conduct.

Plaintiff also asserts a number of new and scattershot arguments that he never made before Judge Ellis and he, therefore, waived.  *Compare* Dkt. 170 at 2-4 with Dkt. 182 at 4-12.  For example, he argues that "*if* all of the relevant provisions of the UCC were express terms within the four corners of the RICSA … his Article III standing based upon these allegations would be beyond question."  Dkt. 182 at 5.  In addition to the waiver, his new assertion lacks merit because it concerns a hypothetical set of facts not before the Court.  *Waxman v. Cliffs Nat. Res. Inc.*, 2016 WL 7131545, at *3 (S.D.N.Y. Dec. 6, 2016) ("[t]he Court cannot decide a case with a hypothetical injury that may never occur.").

Plaintiff also asserts for the first time that his claim is a "substantive" one that differs from the "procedural" violations in *Spokeo* and *Strubel*.  Dkt. 182 at 7.  Again, Plaintiff failed to make this argument before Judge Ellis and, therefore, it was waived.  And, in any event, this argument is based on a misinterpretation of *Strubel*.  *Strubel* did not differentiate between "substantive" and "procedural" violations; instead, it differentiated between situations where the court "can reasonably assume that defective notices about a consumer's own obligations raise a sufficient degree of real risk that the unaware consumer will not meet those obligations" with situations where consumers do "not assert that the allegedly flawed notice caused [their] credit behavior to be different from what it would have been[.]"  842 F.3d at 193.  Plaintiff, who did not "even pay attention" to the challenged Notice, Dkt. 155-1 at 59:13-60:1, clearly falls into the latter category of cases, where a concrete

---

[4]      On reply in support of certification, Plaintiff also argued that M&T had waived or failed to dispute Plaintiff's lack of standing when it sought dismissal of his complaint on other grounds via motions that required acceptance of Plaintiff's allegations as true.  *See* Dkt. 170 at 2.  That argument is meritless and Plaintiff has abandoned it in his Objections.  Dkt. 182 at 4-12.

injury-in-fact is absent.  Further, even conduct that falls within the first category lacks a concrete injury where there is "no material risk of harm" to the underlying interest. 842 F.3d at 190.  Here, there was "no material risk of harm" because Plaintiff did not "even pay attention" to the challenged Notice and his deficiency was extinguished by bankruptcy.  Dkt. 155-1 at 59:13-60:1; Dkt. 155-13.

Plaintiff's first-time contentions continue with his argument that he does not need to show that he suffered an injury-in-fact because he alleged a state law, statutory cause of action.  Dkt. 182 at 8.  This argument, too, was waived.  In any event, the clear teachings of *Spokeo* and *Strubel* demonstrate that there is no "automatic injury-in-fact" for statutory claims.  Both the Supreme Court and Second Circuit thus have recognized that "Congress's 'role in identifying and elevating intangible harms does *not* mean that a plaintiff *automatically* satisfies the injury-in-fact requirement *whenever* a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"  *Strubel*, 842 F.3d 188–89 (quoting *Spokeo*, 136 S. Ct. at 1549) (emphasis added).  Instead, a plaintiff must affirmatively demonstrate a "real harm." *Id.* at 190.[5]  Judge Ellis correctly found that Plaintiff failed to make this showing.

Plaintiff argues that if he is required to show "real harm," he has done so because the commercial code's notice provision was enacted to facilitate the conveyance of information and he allegedly did not receive "complete information about his account."  Dkt. 182 at 6-7, 10.[6]  However, Plaintiff's testimony shows that he was not interested in "complete information." *See* Dkt. 155-1 at

---

[5]  Plaintiff attempts to skirt this established law by citing Justice Thomas's individual concurring opinion in *Spokeo*.  Dkt. 182 at 9.  For obvious reasons, and as shown by the Second Circuit's post-*Spokeo* decision in *Strubel*, 842 F.3d at 192-95, Justice Thomas's solo concurrence is not controlling.

[6]  In asserting this new argument, Plaintiff does not even cite to the South Carolina Code; he cites to the model Uniform Commercial Code (UCC), as he does throughout his objections. Dkt. 182 at 6-7.  The model UCC, however, is not an enacted statute; it does not apply in its own right but was adopted with variations by state legislatures and thus "is not uniform."  *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011) (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) (Ginsburg, Ruth Bader, J.)).

59:13-60:1; *id.* at 64:1-8.  And, Plaintiff admitted that he we would have learned the past due amounts owed to M&T if he had read the Notice.  Dkt. 155-1 at 60:7-13.  Accordingly, he was unable to present any evidence that the Notice caused him to behave differently.  *See Strubel*, 842 F.3d at 193 (finding no concrete injury-in-fact for an alleged statutory notice violation because "Strubel does not assert that the allegedly flawed notice caused her credit behavior to be different from what it would have been").  From any perspective, therefore, Plaintiff has no concrete injury-in-fact.  *See Spokeo*, 136 S. Ct. at 1550; *Strubel*, 842 F.3d at 193; *Kelen*, 2016 WL 7373807, at *4.

**B.     Judge Ellis Correctly Determined That Plaintiff Lacks Article III Standing To Assert Claims Under The Laws Of States Other Than South Carolina.**

Plaintiff also lacks Article III standing to assert claims under the laws of states other than South Carolina.  *See* Dkt. 177 at 6-10; Dkt. 153 at 24-31.  A plaintiff "must demonstrate [Article III] standing for each claim he seeks to press."  *DaimlerChrysler Corp.*, 547 U.S. at 352; *see also Mahon*, 683 F.3d at 64.  The fact that a suit is a putative class action does not change this immutable requirement.  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) *Mahon*, 683 F.3d at 64 ("[Rule 23] cannot alter a constitutional requirement.").  *See also* 28 U.S.C. § 2072(b) (Rules Enabling Act).

Consistent with these directives, courts of this district repeatedly have held that a named plaintiff lacks Article III standing when he or she attempts to assert claims under the laws of states in which the named plaintiff does not reside.  *See, e.g., Simington v. Lease Fin. Grp., LLC*, 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) (finding no Article III standing to assert other states' statutory claims); *Jurgensen v. Felix Storch, Inc.*, 2012 WL 2354247, at *10 (S.D.N.Y. June 14, 2012) (same).  *See also In re Propranolol Antitrust Litig.*, 2017 WL 1287515, at *11 (S.D.N.Y. Apr. 6, 2017) (dismissing claims for lack of Article III standing because "'a plaintiff must demonstrate standing for each claim she seeks to press'" and therefore "each state law claim must be accompanied by a named

- 15 -

plaintiff who has suffered an injury under that state's statute, and class certification does not remedy this requirement") (quoting *Mahon*, 683 F.3d at 64).[7]

Rather, as Judge Ellis confirmed in rejecting Plaintiff's unsupported argument, Dkt. 177 at 7, *NECA* did not alter the principle that a named plaintiff lacks Article III standing to assert claims under different state laws. *See Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*, 986 F. Supp. 2d 412, 419 (S.D.N.Y. 2013) (addressing *NECA* and concluding that "there is no case law supporting the plaintiff's theory that a plaintiff can pursue a claim that it does not have on behalf of a class simply because the plaintiff suffered a 'similar injury' for a different claim"); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 250-51 (D. Conn. 2015) (rejecting plaintiffs' argument that *NECA* supported their position and dismissing "all claims under the laws of states (or territories) where the named [plaintiffs] do not allege to have suffered injury") (citing *Lewis*, 518 U.S. at 358 n.6 and *Mahon*, 683 F.3d at 64).

Plaintiff argues that this issue was "resolved adversely to M&T (and contrary to the R&R) in this Court's denial of M&T's Motion for Judgment on the Pleadings under Rule 12(c), Fed. R. Civ. P. DI 98." Dkt. 182 at 12. This contention, as Judge Ellis specifically noted, "is meritless." Dkt. 177 at 9. *See also* Dkt. 98 at 1-2. The Court previously addressed Judge Ellis' finding that Plaintiff lacked "class standing," Dkt. 98, which is a separate inquiry from Article III standing. *See NECA*, 693 F.3d at 158; *see also* Dkt. 177 at 10. As Judge Ellis determined in his recent Report, the previous ruling "required application of a different standard[.]" Dkt. 177 at 9; *see also id.* at 10. Furthermore,

---

[7]       The same goes for other district courts within the Second Circuit. *See* Dkt. 153, at 24-25 n.16 (citing *Richards v. Direct Energy Servs., LLC*, 120 F. Supp. 3d 148, 155-56 (D. Conn. 2015) (dismissing claims of named plaintiff asserted under law of state in which he did not reside for lack of standing); *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 139-40 (D. Conn. 2015) (same); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 250-51 (D. Conn. 2015) (same); *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49-50 (E.D.N.Y. 2014) (same); *Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 274-75 (E.D.N.Y. 2010) (same); *Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (same); *Parks v. Dick's Sporting Goods, Inc.*, 2006 WL 1704477, at *3 (W.D.N.Y. June 15, 2006) (same)).

with respect to that class standing standard, "[t]he prior rulings by the Court only addressed the sufficiency of the *allegations* in the complaint." *Id.* at 9-10 (citing Dkt. 98). In contrast, "[a]t this stage, Pinks is required to support those allegations with some proof." *Id.*

Accordingly, Plaintiff does not, because he cannot, refute Judge Ellis' determination that his interpretation of *NECA* is flawed and inconsistent with "broader rulings in this Circuit which have found that named plaintiffs lack standing to assert claims under the laws of other states on behalf of class members." Dkt. 177 at 8 (citing *Simington*, 2012 WL 651130, at *9; *Edwards*, 120 F. Supp.3d at 139; *In re HSBC*, 1 F. Supp.3d at 49). Plaintiff lacks Article III standing to assert claims under the laws of states other than South Carolina.

## C.    Judge Ellis Correctly Determined That Plaintiff's Proposed "Class" Fails Rule 23(b)(3)'s Predominance Requirement Because A Host Of Individual Issues Exist Under The Laws Of 20 Different States.

Judge Ellis correctly found that the "multi-state nature" of Plaintiff's proposed class "creates many individualized issues" requiring analysis under the "laws of twenty jurisdictions." Dkt. 177 at 10. In examining predominance under Rule 23(b)(3), the Court must assess: (1) the "elements of the claims and defenses to be litigated"; and (2) "whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). "When claims in a class action arise under state law—and the class comprises multiple states—the court must consider whether different state laws will apply to different members of the class." *Id.* at 140.[8] Federal courts "ought not to deprive the state courts of the

---

[8]    For this analysis, courts apply "the choice-of-law rules of the state in which the federal district court sits." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015); *In re Rezulin*, 210 F.R.D. 61, 69 (S.D.N.Y. 2002) (Kaplan, J.). "'In tort actions, if there is a conflict of laws, New York courts apply an interests analysis, under which the law of the jurisdiction having the greatest interest in the litigation is applied.'" *Rezulin*, 210 F.R.D. at 70 (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)). If there is "at least one actual conflict" between the laws of the various jurisdictions, then it is appropriate to proceed to
Continued on following page

opportunity to construe their own statutes, using the interpretive tools, presumptions, and standards they deem proper," particularly in a multi-state situation.  *See Allstate Ins. Co. v. Serio*, 261 F.3d 143, 152 (2d Cir. 2001); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[n]eedless decisions of state law should be avoided" to promote justice and comity).

Here, Judge Ellis agreed with prior decisions holding that the commercial codes enacted by the various states are not "uniform"[9] and found that there are multiple conflicts and other unresolved issues in the laws of the 20 states in question, including in particular: (1) state laws that interact with and affect the state commercial code provisions at issue; (2) different approaches to interpreting the state commercial code notice of repossession requirements; and (3) the applicable limitations' periods and time of claim accrual.  *See* Dkt. 177 at 11-13.

Where the laws of multiple states must be applied, the proponent of class certification must carry "the burden of providing an 'extensive analysis' of state law variations" to enable the Court to determine whether there are "'insuperable obstacles' to class certification."  *In re Rezulin Prod. Liab. Litig.*, 210 F.R.D. 61, 71 n.59 (S.D.N.Y. 2002) (Kaplan, J.) (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986)).  The extensive analysis is necessary because, "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance."  *Johnson*, 780 F.3d at 141.  "Once it is established that the substantive law of each class member's state will

---

Continued from previous page

an analysis of the jurisdiction having the greatest interest in each claim.  *Johnson*, 780 F.3d at 142*; see also Rezulin*, 210 F.R.D. at 70.  Because the dispositive factors for an interests analysis are, "almost exclusively, the parties' domiciles and the locus of the tort," the jurisdiction having the greatest interest in the case is where the putative class member resides.  *Rezulin*, 210 F.R.D. at 70-71; *see also Johnson*, 780 F.3d at 143-44.  Thus, an "interests analysis" is appropriate.  *See Rezulin*, 210 F.R.D. at 70-71.

[9]     *See* Dkt. 153 at 2-3, 35-36 (citing *Jenkins v. Hyundai Motor Financing Co.*, 2008 WL 781862, at *7 (S.D. Ohio Mar. 24, 2008); *Henry v. Consumer Portfolio Servs.,Inc.*, 2007 WL 1053787, at *5, 9 (Cal. Ct. App. Apr. 10, 2007); *Oscar*, 274 F.R.D. at 509; *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 605 (S.D.N.Y. 1982)).  *See also* Dkt. 98 at 1.  Moreover, contrary to Plaintiff's strained contention (Dkt. 182 at 14), a demurrer argument premised on Plaintiff's Complaint (Dkt. 8 at 8, n.4), does not preclude a subsequent argument demonstrating non-uniformity.

apply to his or her claims, the case for finding the predominance of common issues and the superiority of trying this case as a class action diminishes to the vanishing point." *Id.* at 146.

Indeed, numerous courts within the Second Circuit have held that variations in state laws preclude class certification. *See, e.g., id.* at 148 (vacating class certification order and concluding that "[t]he application of the different jurisdictions' laws … renders individual issues predominant"); *Vincent v. Money Store*, 304 F.R.D. 438, 442 (S.D.N.Y. 2015) (rejecting certification of multi-state class due to predominance of individual state law issues*), aff'd*, 649 F.App'x 103 (2d Cir. 2016); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 161 (S.D.N.Y. 2008); *Rezulin*, 210 F.R.D. at 71. These authorities reflect the reality that "[d]ifferences in state law, no matter how slight, are important and must be determined prior to certification because such differences may swamp any common issues and defeat predominance." *In re Baycol Prod. Litig.*, 218 F.R.D. 197, 208 (D. Minn. 2003).

In particular, the non-uniformity in state commercial codes shows itself with respect to the notice provisions at issue here. For example, in *Jenkins v. Hyundai Motor Financing Co.*, the court addressed a class certification motion for a claim that Hyundai repossessed and sold her vehicle without providing adequate post-repossession notice under the Ohio Commercial Code. 2008 WL 781862, at *1-2 (S.D. Ohio Mar. 24, 2008). The plaintiff asserted that the court should certify a multi-state "class" because Hyundai used similar notices in each of the states. *Id.* at *2.[10] The court in *Jenkins* denied class certification of the multi-state class because "[i]n many states, UCC provisions are modified or superseded by provision contained in other statutes" and certification of a multi-

---

[10]     Plaintiff failed to cite a single case granting multi-state class certification of state commercial code claims. Yet, he argues that Judge Ellis erred in relying on the *Jenkins* case, despite admitting that *Jenkins* involved similar commercial code notice claims. Dkt. 182 at 16. Contrary to his new argument, the class certification denial did not turn, at all, on the presence of the plaintiff's additional claims under the Ohio RISA or request to avoid deficiency liability. *Id.*

state class would require the court to decide "issues of first impression for multiple foreign jurisdictions, which it is not inclined to do." *Id.* at *7. Ultimately, the court concluded that "[t]he burden of analyzing and applying the nuances in multiple states' laws at issue in this case" would overwhelm the fact finder. *Id.*[11]

Plaintiff dismisses these nuances on the basis that this case will not involve a jury trial. His argument, however, leads nowhere. As Judge Ellis noted in rejecting this same argument: "the concerns raised by the court in *Jenkins*" show that "the attempt to construe these various state interpretations is ill-advised." Dkt. 177 at 11. A court, no less than a jury, faces the same numerous problems associated with the trial of his proposed multi-state class. And, it is Plaintiff's burden to "actually prove – not simply plead – that [his] proposed class satisfies each requirement of Rule 23," including predominance. *Haliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398, 2412 (2014).

Indeed, as Judge Ellis explained, the differences from state to state are significant. For example, differences exist with respect to how the commercial codes interact with other state consumer protection statutes. State commercial codes provide that the commercial code will defer to other state laws, such as RISAs, that conflict with the commercial code, thus creating the potential for non-uniformity. *See* Dkt. 153 at 37-41. Additionally, some states have enacted RISAs with notice provisions that do not provide for a right to an accounting of the borrower's unpaid indebtedness. *See id.* at 39. Additionally, notice provisions in the Connecticut and New York RISAs do not require a description of the liability for any deficiency. *See id.* Textual differences also may affect a secured party's ability to collect on an underlying deficiency when a borrower alleges that the

---

[11]    Similarly, in *Henry v. Consumer Portfolio Services, Inc.*, the California appellate court addressed the trial court's denial of class certification for a multi-state class wherein the plaintiff alleged that the creditor sent him a defective post-repossession notice. 2007 WL 1053787, at *1 (Cal. Ct. App. Apr. 10, 2007). The court held that "individual proof would predominate on class claims under the UCC claims given the differences in the UCC as adopted from state to state." *Id.* at *9.

secured party violated the commercial code's notice provisions and claims statutory damages. *See* Dkt. 153 at 45-47. However, these states' highest courts have yet to address definitively the statutory conflict provisions under the commercial codes as they relate to post-repossession notices provided in accordance with state RISAs and, as a result, this Court would be put in the unenviable and unmanageable position of addressing these issues on a state-by-state basis.

On top of these issues, state commercial code notice of repossession requirements are *interpreted* differently by courts in different states. Some courts require "strict compliance," while others permit "substantial compliance" with commercial code requirements. *See* Dkt. 153 at 41-42. Whether an explicit statement of the right to an accounting or the provision of an accounting itself is sufficient can depend on whether a state employs a "strict compliance" or a "substantial compliance" approach. *Id.* at 41. Therefore, a court would need to examine the case law of each of the 20 states proposed by Plaintiff to determine whether each state has adopted a "strict compliance" or "substantial compliance" approach and, if the issue has not yet been addressed, a court would need to predict the approach that the state's highest court would likely adopt based on the jurisprudence of each particular state. *Id.* at 41-42.

In addition, as Judge Ellis found, Dkt. 177 at 12-13, and Plaintiff concedes, Dkt. 182 at 21-23, the state statutory claims of the proposed 20 state classes are subject to multiple and different limitations periods. In assessing predominance, courts must consider potential defenses. *Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010). It is well-settled that when "the claims of many class members may be subject to individual defenses such as … the statute of limitations" the proponent of class certification cannot overcome his burden. *Rezulin*, 210 F.R.D. at 67; *see also Vincent*, 304 F.R.D. at 442 (court must consider "statute of limitation issues within Rule 23(b) analysis"). Plaintiff asserts that Judge Ellis erred in finding that the differences in the state statutes of limitation presented individual issues that predominated under Rule 23(b)(3). Dkt. 182 at 19-20, 21-23.

Here, New York has a borrowing statute, CPLR § 202, under which a non-resident plaintiff must file a claim within the **_shorter_** of either (1) the New York statute of limitations or (2) the statute of limitations of the jurisdiction in which the claim accrued. *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19, 21-22 (2d Cir. 2015); *Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482 (N.Y. 1999). When a court applies the New York borrowing statute to import a limitation period from a foreign state it imports the "total package" of the statute, including the state's interpretation of its limitation period and any tolling doctrines. *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 801 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *Smith Barney, Harris Upham & Co. v. Luckie*, 647 N.E.2d 1308, 1316 (N.Y. 1995). Thus, in applying the borrowing statute, the court must undergo extensive analysis of the foreign state's law. *See, e.g., SCM Grp., Inc. v. McKinsey & Co.*, 2011 WL 1197523, at *4 (S.D.N.Y. Mar. 28, 2011). In deciding which limitations period should apply, the court should "lean toward the result more likely to achieve the underlying policy" to prevent "forum shopping." *Cafferty v. Scotti Bros. Records*, 969 F. Supp. 193, 203 (S.D.N.Y. 1997); *Fitzgerald v. Thompson*, 187 A.D.2d 557, 558 (2d Dep't 1992).[12]

As a threshold matter, the Court would need to address which statute of limitations is applicable in each of the 20 states. And, as Plaintiff acknowledged, "no appellate authority" exists regarding the applicable limitations period in at least 18 of these states. Dkt. 148-1 (Pl. App. 1); Dkt. 177 at 12. As a result, in many instances, this Court would need to decide important issues of individual state law as a matter of first impression. *Id.* Once the Court determines which limitations

---

[12]     Plaintiff asserts that Judge Ellis ignored the effect of the New York borrowing statute. Dkt. 182 at 21. Plaintiff is wrong, again. Judge Ellis expressly recognized the New York borrowing statute—and the fact that the borrowing statute creates as many issues as it resolves: "When borrowing another state's statute of limitations, the Court must analyze and apply that state's judicial interpretations of its limitation period and tolling doctrines …. While Pinks maintains that this is a simple issue, he has outlined considerations and qualifications on the issue of statute of limitations which would require an individualized analysis by the Court for each of the twenty amended class jurisdictions." Dkt. 177 at 12-13.

period applies in each state, it would then need to analyze decisions interpreting that limitations period, including the application of tolling and discovery rules.

Plaintiff also argues that it should not matter that the state commercial codes all provide that the code will defer to other state laws, such as RISAs, that conflict with the commercial code, or that other states have enacted RISAs with notice provisions that do not provide for a right to an accounting of the borrower's unpaid indebtedness.  *See* Dkt. 153 at 37-41.  Plaintiff contends now that, although the statutory requirements may differ, the secured party should comply with both sets of requirements even if they are inconsistent.  Dkt. 182 at 21.  But this misses the point.  Plaintiff's new hypothetical notwithstanding, the relevant point is that the states' highest courts have yet to address definitively the statutory conflict provisions under the commercial codes as they relate to post-repossession notices provided in accordance with state RISAs and, as Judge Ellis recognized, this Court would be put in the unenviable and unmanageable position of addressing these issues on a state-by-state basis.  Dkt. 177 at 11-13.

Plaintiff's "Second Amended Motion," which was never presented to Judge Ellis and therefore cannot be the basis of any error, only underscores the flawed nature of his proposed "class."  *See* Dkt. 183.  Plaintiff's Motions incorrectly assume that a South Carolina claim accrues at the time of collateral disposition, rather than when the repossession notice is received.  *See* Dkt. 153 at 44 (citing *Delaney v. First Financial of Charleston, Inc.*, 2013 WL 9921461, at *3 (S.C. Com. Pl. Apr. 30, 2013)).  Plaintiff now seeks to amend his "class" definition, contending that his claim accrues upon receipt of the challenged notice and seeks to apply this rule to 20 states.  Dkt. 182 at 19. Plaintiff's amendment cures nothing.  The South Carolina intermediate appellate court, like the trial court, declined to decide whether the one-year or three-year statute of limitation applies to the South Carolina claim.  *Delaney v. First Financial of Charleston, Inc.*, 791 S.E.2d 546, 551 (S.C. Ct. App. 2016). As Plaintiff grudgingly admits, Dkt. 182 at 19-20, the South Carolina Supreme Court has yet to

determine when the claim accrues under the South Carolina Code and which statute of limitations applies. Even if the South Carolina Supreme Court rules on these issues, such a ruling would apply only in South Carolina.[13] There still would be no avoiding the labyrinth of issues under each state's commercial code. Applicable precedent and the doctrine of comity provide that such an undertaking is both imprudent and improper.[14] Judge Ellis thus correctly determined that Plaintiff cannot satisfy Rule 23(b)(3)'s predominance requirement.

### D.     Plaintiff's Motions Fail To Satisfy Rule 23(a) And The Ascertainability Requirement.

M&T showed that Plaintiff's proposed "class" fails the commonality, typicality, adequacy of representation, and ascertainability requirements of Rule 23(a). Dkt. 153 at 51-59. Plaintiff misleadingly suggests that Judge Ellis "completely bypasse[d]" Rule 23(a). Dkt. 182 at 15. But Judge Ellis specifically determined that it was unnecessary to reach the Rule 23(a) issues because Plaintiff had failed to meet his burden on other requirements. Dkt. 177 at 10. Plaintiff doubles down on his misdirection when he represents to this Court that his arguments about the Rule 23(a) requirements are "in large measure not even disputed." Dkt. 182 at 15. Yet, the record reveals vigorous disagreement by M&T on all Rule 23(a) requirements, except numerosity. Dkt. 153 at 51-59. Here,

---

[13]     Even under Plaintiff's myopic view, the Court would still be required, at a minimum, to apply 10 different tests for 10 different states to determine 10 different limitations periods. *See* Dkt. 182 at 22. Plaintiff's assertion that the Fourth Circuit's decision in *Presley v. Tupperware Long Term Disability Plan*, 55 F.3d 334, 339 (4th Cir. 2009), is "binding," Dkt. 182 at 22, with respect to the applicable statute of limitations under South Carolina law is patently false. A Fourth Circuit decision is not "binding" on a South Carolina law issue and does not constitute the last word from South Carolina on the applicable statute of limitations.

[14]     The existence of compulsory counterclaims against putative class members further magnifies the individual nature of any adjudication of a multi-state class by raising individual questions that, "at least in their aggregate, threaten to overwhelm the original claims." *Cotchett v. Avis Rent A Car System, Inc.*, 56 F.R.D. 549, 552 (S.D.N.Y. 1972). *See* Dkt. 153 at 45-47. Plaintiff's citation to *In re Bank of NY Mellon Corp. Forex Transactions Litig.*, 42 F. Supp. 3d 520, 527 (S.D.N.Y. 2014), is entirely inapposite because that case involved dismissal of conditional counterclaims asserted prior to class certification against non-parties. Curiously, Plaintiff tried unsuccessfully to "re-designate" M&T's set-off defense as a "conditional counterclaim" and to then dismiss the defense. Dkt. 131. Judge Ellis denied Plaintiff's motion and Plaintiff sought no further review. Dkt. 173. Plaintiff's "assertion" that the existence of M&T's set-off defense and its potential deficiency counterclaims against putative class members do not exist (Dkt. 182 at 19), is wishful thinking and belied by the unrefuted evidentiary record. Dkts. 153 at 45-49, 154-155, 173.

as Judge Ellis noted after rejecting Plaintiff's Motions on three independent grounds, M&T's Rule 23(b) arguments "impact" any analysis of the disputed Rule 23(a) requirements.  Dkt. 177 at 10, 13-14.  Plaintiff is an atypical, inadequate representative who has failed to propose an ascertainable and administratively feasible class.  M&T incorporates its prior Opposition as to the Rule 23(a) and ascertainability requirements.  Dkt. 153 at 51-59.  In addition to the many other deficiencies, Plaintiff's Motions fail these requirements.

## V.  CONCLUSION

Plaintiff's arguments in objecting to Judge Ellis' Report are waived, unsupported by the record or legally infirm.  This Court should put an end to Plaintiff's quest to certify an unwieldy, multi-state putative class action that lacks precedential support and was brought by a South Carolina resident who sustained no concrete injury-in-fact.  For all of these reasons and those set forth in its Opposition, M&T respectfully requests that the Court adopt Judge Ellis' Report and deny all three of Plaintiff's Motions for Class Certification (Dkts. 142, 169, 179/183).

Dated:  May 18, 2017

**REED SMITH LLP**

Steven Cooper
599 Lexington Avenue
New York, NY  10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

By:  */s/ Roy W. Arnold*
      Roy W. Arnold
      Andrew J. Soven
      Justin J. Kontul
      225 Fifth Avenue, Suite 1200
      Pittsburgh, PA  15222
      Telephone:  (412) 288-3916
      *Attorneys for Defendant M&T Bank Corp.*

## CERTIFICATE OF SERVICE

On May 18, 2017, I electronically filed the foregoing Opposition with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically via the CM/ECF system.   */s/ Roy W. Arnold*